IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID KRAMER, Individually, and as the President and Sole Owner of CERTIFIED CAR SALES, LLC, a Missouri Limited Liability Company,<br><br>           Plaintiff,<br><br>   v.<br><br>SHERIFF'S DEPUTY STEVEN STELTER; Individually and as a Deputy of the DuPage County Sheriff's Office; JOHN P. CREEDON, Individually and as Director of the Tri-County Auto Theft Unit; MICHAEL J. COLANDO, deceased, Individually and as a member of PUGI KIA, LLC and as the President and sole owner of D & M AUTO SALES, INC.; DOMINIC L. PUGLIANI, Individually, and as a member of PUGI KIA, LLC; LARRY M. HALL, Individually and as a Manager of PUGI KIA, LLC; ANTHONY J. COLANDO, Jr. Individually and as a Manager of PUGI KIA, LLC; ANTHONY J. COLANDO, Sr., not individually but as named executor in his capacity as executor of the estate of MICHAEL J. COLANDO, *deceased*; DOMINIC MANCINI, Individually and as an attorney; PUGI KIA, LLC; D & M AUTO SALES, INC.; KIA MOTORS AMERICA, INC.; VW CREDIT, INC.,<br><br>           Defendants. | FILED: MAY 02, 2008<br>08CV2530     TC<br>JUDGE CASTILLO<br>MAGISTRATE JUDGE KEYS<br><br><br>Case No.<br><br>Judge |

## VERIFIED COMPLAINT AT LAW

    NOW COMES the Plaintiff, DAVID KRAMER, Individually, and as the Sole Owner of CERTIFIED CAR SALES, LLC, by and through his attorneys, KOMIE AND ASSOCIATES,

and in support of his VERIFIED COMPLAINT AT LAW against the Defendants, MICHAEL J. COLANDO, *deceased*, Individually, as a member of PUGI KIA, LLC and as the President and sole owner of D & M AUTO SALES, INC.; DOMINIC L. PUGLIANI, Individually and as a member of PUGI KIA, LLC; LARRY M. HALL, Individually and as a Manager of PUGI KIA, LLC; ANTHONY J. COLANDO, Individually and as a Manager of PUGI KIA, LLC; ANTHONY J. COLANDO, not individually but as named executor in his capacity as executor of the estate of MICHAEL J. COLANDO, *deceased*; DOMINIC MANCINI, Individually and as an Attorney, PUGI KIA, LLC, D & M AUTO SALES, INC., OFFICER JOHN P. CREEDON, Individually and as Director of the Tri-County Auto Theft Unit, OFFICER STEVEN STELTER., Individually and as a Deputy of the DuPage County Auto Theft Task Force, VW CREDIT, INC., KIA MOTORS AMERICA, INC., hereby states as follows:

## PRELIMINARY STATEMENT

This is a claim under the Racketeer Influenced and Corrupt Practice Act, § 18 U.S.C. 1961-68 ("RICO"), and the laws of the State of Illinois that arises out of a series of individual frauds, forgeries, misrepresentations, falsified statements of accounting and outright conversions of property that occurred in conjunction with an over-arching scheme to sell the falsely inflated assets of a Kia car dealership and the dealership to the Plaintiff. The Plaintiff seeks redress for these frauds suffered as a consequence of Defendant's scheme.

Michael J. Colando ("Colando"), Anthony Colando ("Anthony Colando"), Dominic L. Pugliani ("Pugliani") and Larry M. Hall ("Hall"), controlled, managed and operated Pugi Kia, LLC ("Pugi Kia") and employed salespeople, accountants, finance managers and attorneys to run the affairs of Pugi Kia and D & M Auto Sales, Inc. ("D & M"). With the complicity of its agents and employees, Pugi Kia, Colando, Anthony Colando, Pugliani and Hall planned, organized and committed multiple frauds on the Plaintiff and his property. Using the credibility afforded by VW Credit, Inc. and Kia Motors America, Inc., the controllers and managers of Pugi Kia, along with its employees, organized and perpetrated a scheme that unlawfully deprived the Plaintiff of money and property. Together with a series of related fraudulent acts and through conspiracy with each other and with other organizations, Colando, Anthony Colando, Pugliani and Hall negotiated with Plaintiff and conducted fraudulent

transactions tangential to what was to be the eventual purchase of Pugi Kia and its assets by the Plaintiff.

Colando, Anthony Colando, Pugliani, and Hall along with other agents and employees of Pugi Kia and D & M and attorneys and accountants fraudulently inflated the value to Pugi Kia's assets by listing a new car that had been sold and was not the property of Pugi Kia.  Pugi Kia's books, as submitted to Plaintiff in conjunction with his interest in purchasing the dealership, listed this car as cleanly owned and unencumbered while, in fact, the sale of this car had benefited Colando, Anthony Colando, Pugliani and Hall personally and not Pugi Kia. Through these mechanisms, Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D&M, Motorsports with the knowing aid of their salespeople, agents, managers, accountants and attorneys, and VW Credit, Inc. with the knowing aid of its salespeople, agents, managers, accountants and attorneys, and Kia Motors America, Inc., with the knowing aid of its salespeople, agents, managers, accountants and attorneys, fraudulently overstated the assets of Pugi Kia and concealed its debts in conjunction with the proposed sale of the business to Plaintiff.

To pick the other pocket, Colando, Anthony Colando, Pugliani and Hall through their control of Pugi Kia, and with the knowing complicity of its salespeople, agents, managers, accountants and attorneys, D & M and with the knowing complicity of its salespeople, agents, managers, accountants and attorneys, VW Credit, Inc., with the knowing complicity of its salespeople, agents, managers, accountants and attorneys, and Kia Motors America, Inc., with the knowing complicity of its salespeople, agents, managers, accountants and attorneys, defrauded Plaintiff and unabashedly converted Plaintiff's cars held, in some instances, through trust assignments as collateral for loans and, in others, by title of ownership. To express his continuing interest in purchasing the assets of Pugi Kia, the Plaintiff lent money, collateralized

3

by Pugi Kia vehicles, and placed five of his personally held cars on Pugi Kia's lot for sale on consignment.  These cars, those collateralizing the Plaintiff's loans and those owned outright by the Plaintiff, were sold from Pugi Kia's lot by Colando, Anthony Colando, Pugliani, Hall and Pugi Kia and D & M salespeople, but the proceeds were not remitted to the Plaintiff.

When the Plaintiff recognized the fraud and attempted to mitigate his losses, Colando, Anthony Colando, Pugliani and Hall with the conspiratorial participation of DuPage County Police Officer, Steven Stelter and Tri County Auto Theft Director, John P. Creedon, and through multiple frauds perpetrated under color of law, unlawfully obtained the paper titles to the five cars for which the Plaintiff held lawful title.  Having fraudulently obtained Plaintiff's titles, Colando, Anthony Colando, Pugliani and Hall forged Plaintiff's signature or caused Plaintiff's signature to be forged, processed them through the Secretary of State of Illinois, and sent them via either a wire or the mails, to the Northern District of Illinois, for delivery to false purchasers who had previously driven Plaintiff's cars from Pugi Kia's lot without obtaining lawful title. Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M retained the proceeds of these sales personally and did not repatriate them with Pugi Kia or return them to Plaintiff causing Plaintiff to suffer damages as a result.

Each of these acts was conducted through the use of either a wire or the mails in violation of 18 U.S.C. §§ 1341 and 1343.  Further, the acts of the controllers, managers and operators of Pugi Kia violated the laws of the State of Illinois and affected the interstate commerce of the several states.  The acts of Officers Creedon and Stelter violated 42 U.S.C. § 1983, and, taken in the composite, the acts perpetrated by all Defendants through the control of Pugi Kia violated RICO provisions 1962(c) and (d).  Because of the ownership and management of Pugi Kia by Colando, Anthony Colando, Pugliani and Hall and the patterned series of frauds and racketeering activities perpetrated through Pugi Kia, D & M, VW Credit

and Kia Motors America, the Plaintiff seeks redress through this RICO action and seeks all damages allowed by law.

## JURISDICTION AND VENUE

1.  The Plaintiff seeks damages in excess of $75,000.00.

2.  This Court has jurisdiction of this action under 18 U.S.C. §§ 1964(a) and (c) as the cause of action alleges acts affecting the interstate commerce between the several states and activities specifically protected by 18 U.S.C § 1961, specifically 18 U.S.C. §§ 1341 and 1343.  Further, this court has jurisdiction of a Federal question under 28 U.S.C. § 1331 and concerning 42 U.S.C. § 1983.  Lastly, this court has jurisdiction under 28 U.S.C. §1332 because the parties described below are in complete diversity.

3.  Based on the pleadings to follow, the allegations contained herein constitute a matter which affects the interstate commerce of the several states and, based upon the presentation of the parties below, presents a condition of complete diversity of citizenship.

4.  Venue is proper in the Northern District of Illinois and this Court has personal jurisdiction over the Defendants pursuant to Paragraph 2, above.  Defendants are found within this District, have agents in this District, conduct business in this District and the activities of the Defendants giving rise to this action occurred, in large part, in this District.

## PARTIES

5.  Plaintiff David Kramer ("Kramer") is a citizen and domiciliary of Missouri and resides at 3280 Yaeger Road, St. Louis, Missouri, 63129.  David Kramer is in the business of buying and selling new and used cars often through auction.  He conducts his business

as Certified Car Sales, LLC and maintains business offices in 5419 Lemay Ferry, St. Louis, Missouri, 63129.

6.     Plaintiff Certified Car Sales, LLC is a limited liability company under the laws of Missouri and is wholly-owned by Plaintiff, David Kramer.  Its principal place of business is located at 5419 Lemay Ferry, St. Louis, Missouri 63129 and its registered agent is David Kramer located in St. Louis, Missouri. Certified Car Sales is in the business of purchasing new and used cars and holding them for sale to the public.

7.     Defendant Anthony J. Colando, Jr. ("Anthony Colando") is a citizen and domiciliary of Illinois who currently resides 6N274 Robert Ct, Medinah, Illinois 60157.  At all times relevant to this action, he was an employee and manager of Pugi Kia, LLC, which is licensed as a dealer of new and used cars and operates as a franchise of Kia Motors America, Inc.

8.     Defendant Anthony J. Colando, Sr. ("Executor"), not individually but as named executor in his capacity as executor of the estate of Michael J. Colando, *deceased* . Executor is a citizen and domiciliary of Illinois who resides 6N274 Robert Ct, Medinah, Illinois 60157.

9.     Defendant Michael J. Colando, *deceased*, was a citizen and domiciliary of Illinois who resides at 6N333 Greenwood Avenue, Medinah, Illinois 60157. At all times relevant to this action, he was an owner and manager of Pugi Kia, LLC which was licensed as a dealer of new and used cars and operates as a franchise of Kia Motors America, Inc. Michael Colando conducts additional business concerning the purchase, sale, transport, collateralization, and other aspects of trade in cars as D & M Auto Sales, Inc. ("D & M").  Michael Colando's sole partner in Pugi Kia, LLC is Defendant Dominic Pugliani.

10.     Defendant Officer John P. Creedon ("Creedon") is a Director of the Tri-County Auto Theft Unit operating principally out of 20 West Washington Street, Joliet, Illinois 60432.  At all times relevant to this action, he was an individual, and an officer with Tri- County Auto Theft Unit. Defendant Creedon is a citizen and domiciliary of Illinois.

11.     Defendant D & M Auto Sales, Inc. is incorporated under the laws of Illinois and is wholly-owned by Defendant Michael Colando. D & M Auto Sales is in the business of buying and selling new and used cars.  Its principal place of business is 22 W 231 North Avenue, Glen Ellyn, Illinois 60137 and its registered agent is Michael Colando located at 6 N 333 Greenwood Avenue, Medinah, Illinois 60157.

12.     Defendant Larry M. Hall is a citizen and domiciliary of Illinois who resides at 1204 Le Moyne Avenue, Romeoville, Illinois 60446. At all times relevant to this action, he was a manager of Pugi Kia, LLC, which is licensed as a dealer of new and used cars and operates as a franchise of Kia Motors America, Inc.

13.     Defendant, Kia Motors America, Inc.("KMA") is incorporated under the laws of California and does business as a foreign corporation in Illinois. Defendant Kia Motors America is in the business of buying and selling new and used cars. Its registered agent in Illinois is CT Corporation System located at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

14.     Defendant Dominic Mancini ("Mancini") is an attorney operating principally out of 133 Fuller Road, Hinsdale, Illinois 60521. At all times relevant to this action, he was an individual and an attorney representing the interests of  Pugi Kia, LLC, D&M Auto Sales, Inc., Dominic Pugliani, Michael Colando, Anthony Colando and Larry Hall. Defendant Mancini is a citizen and domiciliary of Illinois.

15.     Defendant Dominic L. Pugliani is a citizen and domiciliary of Illinois who resides at 506 Forest Mews Drive, Oakbrook, Illinois, 60523.  At all times relevant to this action, he was an individual, a member and manager of Pugi Kia, LLC, which is licensed as a dealer of new and used cars and operates as a franchise of Kia Motors America, Inc. Dominic Pugliani's sole partner in Pugi Kia, LLC is Defendant Michael Colando.

16.     Defendant Pugi Kia, LLC ("Pugi Kia") is chartered and licensed to sell new and used cars in the State of Illinois and is controlled by an operating agreement signed by Defendant Michael Colando and Defendant Dominic Pugliani, effective as of January 15, 2005.  Pugi Kia's sales floor and lot are located at 2020 West Ogden Avenue, Downers Grove, Illinois, 60515. Pugi Kia purchases new and used cars often employing credit extended by VW Credit, Inc. ("VW Credit") and Kia Motors America, Inc. ("KMA").  At all times relevant to this action, it held cars purchased and transported across state lines for sale to the public in Illinois.  Pugi Kia, LLC was involuntarily dissolved by the Illinois Secretary of State on October 15, 2007.

17.     Defendant Officer Steven Stelter ("Stelter") is a Deputy Director in the DuPage County Auto Theft Task Force operating principally out of 501 North County Farm Road Wheaton, Illinois, 60187.  At all times relevant to this action, he was an individual, and an officer with DuPage County. Defendant Stelter is a citizen and domiciliary of Illinois.

18.     Defendant, VW Credit, Inc. ("VW Credit") is incorporated under the laws of Delaware and does business as a foreign corporation in Illinois. Defendant VW Credit is in the business of financing the buying and selling of new and used cars. Its registered agent in Illinois is CT Corporation System located at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

## GENERAL ALLEGATIONS

**David Kramer, Interested in Acquiring An Automobile Dealership, Is Introduced to Michael Colando and Dominic Pugliani Regarding Pugi Kia**

19.    In August and September of 2005, David Kramer was in the business of buying and selling used cars through sales mechanisms such as auction, leverage, and bulk and purchased these cars from diverse locations and markets through the central United States.

20.    Kramer conducted his business as the sole shareholder of Certified Car Sales, LLC, which he operated out of St. Louis, Missouri since 2001.

21.    To expand his business, Kramer had let it be known that he was interested in acquiring an automobile dealership with a franchising deal with a major auto manufacturer.

22.    Around September of 2005, Kramer was informed by Dennis Alf that Pugi Kia was for sale.  Shortly thereafter, Kramer contacted Pugi Kia's fifty-percent owner Michael Colando who confirmed Pugi Kia's availability and invited Kramer to Chicago.

**Through Monthly Financial Statements, The Plaintiff Was Provided With A Fraudulent Rendering of Pugi KIA's Assets and Liabilities**

23.    Later in September of 2005, the Plaintiff arrived in Chicago and is met by Colando at a vehicle auction. The two visited Pugi Kia and D & M where Colando briefed the Plaintiff on the prospective terms of sale of Pugi Kia, introduced the Plaintiff to KMA executives and provided the Plaintiff with broad financial information regarding the assets and liabilities of Pugi Kia.

24.    The Plaintiff left for St. Louis to return to Chicago about one week later.  With him was his wife, Christine Kramer, ("Christine"), who is a licensed tax accountant.  Christine and the Plaintiff visited Pugi Kia, met with Defendant Pugliani, Defendant Colando's

fifty-percent partner in Pugi Kia, and received detailed financial information regarding the financial standing of Pugi Kia and an accounting of its assets and liabilities.

25. Based upon the valuation of Pugi Kia stated in the financial documentation as provided by Colando, Anthony Colando, Pugliani, Hall, D&M and Pugi Kia and taken with assurances from Colando, Anthony Colando, Pugliani, Hall, D&M, Pugi Kia and KMA executives, the Plaintiff took preliminary actions necessary to effectuate the purchase of Pugi Kia.

    a. Around mid-to late-October 2005, Kramer met with James Szarek, John Franz, Donald Pesceone, and James Reilly, all agents and executives of KMA, regarding an application necessary to own and manage a KMA sales franchise and operate under its franchise agreement.

    b. In an agreement taking effect on October 22, 2005, the Plaintiff agreed to purchase Pugliani's interest in Pugi Kia for $240,000.00. In consideration, the Plaintiff agreed to take 50% of Pugi Kia's assets and 50% of its liabilities.

    c. Around November, 2005, the Plaintiff's visits to Chicago become more frequent and he began staying at Colando's home during those visits. Work on the Plaintiff's acquisition of Colando's interest in Pugi Kia picked up pace.

    d. In late November 2005, Colando, Anthony Colando, Pugliani and Hall asked Plaintiff to purchase cars and place them on the Pugi Kia lot for sale on consignment.

    e. On November 30, 2005, Plaintiff purchased 2004 Kia Rio 0125 (STK# KP191) known as 2004 KIA 0125 and placed it on the Pugi Kia lot for sale on consignment.

f.    In early December, 2005 Pugliani recommended Plaintiff open an account at Oakbrook Bank and thereafter introduced Plaintiff to Darin Campbell at Oakbrook Bank, with whom Pugliani had a relationship, to facilitate the process of opening an account.

g.    In December, The Plaintiff opened an account at Oakbrook Bank under the name Pugi Kia, with Plaintiff as a signatory, and deposited $10,000.

h.    The Plaintiff had previously obtained financing in the amount of $500,000.00 from Parish National Bank in Florida and continued working with KMA to execute an effective application to operate a KMA franchise.

i.    On December, 13, 2005, the Plaintiff deposited $400,000.00 in Oakbrook Bank to have capital on hand to purchase cars while preparing to purchase Pugi Kia.

j.    On December 16, 2005, Plaintiff, Colando, Pugliani and Hall sign a Consulting Agreement whereby Plaintiff was to "assume full responsibility of the day to day operation of [Pugi Kia]."

k.    By the end of December 2005, Plaintiff was at Pugi Kia every day running some of the operations.

26.    In running some of the day to day operations the Plaintiff became aware of liabilities of Pugi Kia which were not disclosed by Colando, Anthony Colando, Pugliani or Hall.

27.    Despite the execution of the Consulting Contracts, discussed *infra*, which provided that Plaintiff shall have access to all financial accounts and shall receive all funds payable to Pugi Kia as of December 16, 2005, Colando, Anthony Colando, Pugliani and Hall repeatedly refused to provide Plaintiff access to Pugi Kia's corporate bank account.

28.    The Plaintiff remained interested in purchasing Pugi Kia and, upon discussing any discrepancies with respect to the assets and liabilities of Pugi Kia, received assurances

11

from Colando, Anthony Colando, Pugliani and Hall that his purchase price of shares of

Pugi Kia would be reduced by the amounts which were not previously disclosed.

29.    As a result of these assurances, Plaintiff continued to partially run the day to day

operations of Pugi Kia with the intent of purchasing the dealership.

**Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D&M Fraudulently Inflate The Value Of Pugi Kia By Listing A 2005 Kia Sorrento On Its Inventory That It Sold And Was Not Its Property**

30.    On November 4, 2005, to allow the Plaintiff to continue his examination of Pugi Kia's

assets and liabilities in contemplation of its acquisition, Plaintiff was provided with an

inventory listing all cars owned by Pugi Kia.

31.    On November 8, 2005, to allow the Plaintiff to continue his examination of Pugi Kia's

assets and liabilities in contemplation of its acquisition, he was provided with an

inventory listing all such cars owned by Pugi Kia.

32.    On January 3, 2005, to allow the Plaintiff to continue his examination of Pugi Kia's

assets and liabilities in contemplation of its acquisition, he was provided with an

inventory listing all such cars owned by Pugi Kia.

**Details of Fraud Surrounding a 2005 Kia Sorento (STK# K170) Known As 2005 Kia 7059**

33.    A November 9, 2005 Illinois Standard Buyer's Order reflected the sale of a new 2005

Kia Sorrento (STK# K170) known as 2005 Kia 7059. Frank Stanek and Anthony

Colando were listed as the salespeople involved in the transaction.

34.    A title search conducted through the Illinois Secretary of State confirmed that title to the

2005 Kia 7059 was sold by Pugi Kia on November 9, 2005.

35.    An auto sale recap sheet showed 2005 Kia 7059 was sold to Bertrand Stoecklin on

November 9, 2005 by Pugi Kia salesman Frank Stanek as supervised by Colando.

36.    An invoice confirmed that Pugi Kia collected $24,429.43, the remainder due on the
2005 Kia 7059, on November 15, 2005. Additionally, KMA issued a rebate for $6,500.

37.    Pugi Kia sold 2005 Kia 7059 for $24,429.43, but did not report this sale to VW Credit,
violating the terms of the loan on the 2005 Kia 7059.

38.    VW Credit, a lender of operating capital to Pugi Kia, had 2005 Kia 7059 listed as part
of Pugi Kia's inventory on December 16, 2005.

39.    Colando, Anthony Colando, Pugliani and Hall presented a December 31, 2005
inventory sheet to the Plaintiff to aid his evaluation of Pugi Kia's assets and liabilities
that listed 2005 Kia 7059 as the property of Pugi Kia.

40.    Colando, Anthony Colando, Pugliani and Hall's statements of assets and liabilities, as
they were presented to Plaintiff, fraudulently represented the $24,429.43 they collected
for the 2005 Kia 7059 as capital at the same time they fraudulently represented the 2005
Kia 7059 as inventory, thus artificially inflating the assets two-fold.

**The Plaintiff Loans $20,500 To Pugi Kia In Exchange For Trust Receipt Collateralizing
Loan With Used Cars On Pugi Kia's Lot**

41.    On November 29, 2005, as negotiations between the Plaintiff and Colando, Anthony
Colando, Pugliani and Hall for the sale of shares of Pugi Kia were ongoing, the Plaintiff
agreed to lend $20,500 to Pugi Kia.

42.    Through Colando, Anthony Colando, Pugliani and Hall, Pugi Kia agreed to secure this
loan by granting the Plaintiff an interest in Pugi Kia assets.

43.    As Colando, Anthony Colando, Pugliani and Hall represented to the Plaintiff, Pugi Kia
did not yet possess the title to a 2005 Kia Sorento (STK# K126A) known as 2005 Kia
9661 but would collateralize the Plaintiff's loan through a trust agreement.

44.    As such, on November 29, 2005, Larry Hall provided a Trust Receipt agreement to the
Plaintiff, which listed 2005 Kia 9661 as collateral for the $20,500 loan Plaintiff made to

Pugi Kia. At that time, Hall represented to the Plaintiff that this Trust Agreement would secure his loan to Pugi Kia until such time as Pugi Kia could obtain the title to the 2005 Kia 9661.

45.    On December 3, 2005, Pugi Kia sold 2005 Kia 9661 to Josephine Hatch-Skipper.

46.    The Plaintiff was not told of the sale of 2005 Kia 9661 for which he held a Trust Receipt guaranteeing his interest in the proceeds of 2005 Kia 9661.

47.    At the end of December, the Plaintiff became aware that 2005 Kia 9661 had been sold and his Trust Receipt had not been honored.

48.    The Plaintiff remained interested in purchasing Pugi Kia and, upon discussing any discrepancies with respect to the assets and liabilities of Pugi Kia, received assurances from Colando, Anthony Colando, Pugliani and Hall that his purchase price of shares of Pugi Kia would be reduced by the amounts owed him under the Trust Receipt agreement.

49.    As a result of these assurances, Plaintiff continued to partially run some of the day to day operations of Pugi Kia with the intent of purchasing the dealership.

**The Plaintiff Loans $42,000 To Pugi Kia In Exchange For Trust Receipt Collateralizing Loan With Used Cars On Pugi Kia's Lot**

50.    On December 22, 2005, before the Plaintiff recognized Pugi Kia's failure to honor his Trust Receipt for 2005 Kia 9661, the Plaintiff agreed to loan Pugi Kia an additional $42,000.

51.    On December 22, 2005, to secure Plaintiff's loan of $42,000 to Pugi Kia, Pugi Kia, through Colando, Anthony Colando, Pugliani and Hall, granted the Plaintiff a Trust Agreement securing the right to the proceeds from the prospective sale of five used cars on Pugi Kia's lot.

     a.     A 2001 Ford F150 Pickup (STK# KP103) known as 2001 Ford 7084 secured the Plaintiff's advance of $12,000.

     b.     A 2002 Chevrolet Suburban (STK# KP146) known as 2002 Chevy 1998 secured the Plaintiff's advance of $14,000.

     c.     A 2001 Ford Ranger 4 X 4 (STK# KP157) known as 2001 Ford 6616 secured the Plaintiff's advance of $6,000.

     d.     A 2000 GMC Tahoe 4 X 4 (STK# KP135A) known as 2000 GMC 2430 secured the Plaintiff's advance of $8,000.

     e.     A 1996 Nissan Altima (STK# K101A) known as 1996 Nissan 9033 secured the Plaintiff's advance of $2,000.

52.     On January 26, 2006, 2001 Ford 7084 was sold through the Greater Chicago Auto Auction to Bob Martin Auto Sales for $14,000.00.

53.     Subtracting Greater Chicago Auto Auction's fee, Pugi Kia, through sole owners Colando, Anthony Colando, Pugliani and Hall, received $13,750.00 for the sale of 2001 Ford 7084.

54.     The Plaintiff was not informed of the sale of 2001 Ford 7084 and the proceeds of such sale were not remitted to the Plaintiff per the terms of the Trust Receipt agreement. As such, Plaintiff was deprived of his interest in 2001 Ford 7084 which deprived him of the proceeds from the sale and the collateralization of $12,000 of the $42,000 loan Plaintiff made to Pugi Kia.

**The Plaintiff Through His Wholly-Owned Company, Certified Car Sales, Agrees to Place Cars On Pugi Kia's Lot And Hold Them For Sale To The Public On Consignment**

55.     Around November, 2005, Pugliani and Colando asked the Plaintiff to place cars owned by his wholly-owned business, Certified Car Sales, on Pugi Kia's lot to hold for sale to the public on consignment.

56.     As an additional good faith showing of his genuine interest in Pugi Kia and his expectation that he would shortly be a partner in the dealership, the Plaintiff agreed to Colando's request and moved several of his used cars to Pugi Kia's lot and offered them for sale on consignment.

**The 2005 Kia Rio (STK# KP 221) Known as 2005 Kia 7152**

57.     A 2005 Kia Sorrento (STK# KP221) known as 2005 Kia 7152 was purchased by the Plaintiff's wholly-owned business, Certified Car Sales, from Bill Kay Honda on January 10, 2006.

58.     Agreeing to Colando, Anthony Colando, Pugliani and Hall's request, the Plaintiff placed 2005 Kia 7152 on Pugi Kia's lots and held it out for sale to the public on the basis of consignment.

59.     Using title to 2005 Kia 7152, the Plaintiff borrowed against 2005 Kia 7152 from VW Credit to make additional car purchases. Plaintiff received $7,200 of the $9,065 purchase price from VW Credit and, due to VW Credit's policies, $1,865 was still owed to Plaintiff. As a result, the title to 2005 Kia 7152 remained in Plaintiff's possession.

60.     On May 4, 2006, the Plaintiff's concerns solidified and fearing further loss and beginning to recognize the potential for multiple and overlapping frauds perpetrated by Colando, Anthony Colando, Pugliani and Hall against his financial interests and the continuing risk presented by the consignment arrangement under which 2005 Kia 7152 was to be sold, the Plaintiff repossessed 2005 Kia 7152 and presented it at the Greater Chicago Auto Auction for sale.

61.     While fully aware that the Plaintiff had rightfully repossessed his property, Colando, Anthony Colando, Pugliani and Hall reported 2005 Kia 7152 as stolen.

62. At the Greater Chicago Auto Auction, Michael Fogerty, a representative of Greater Chicago Auto Auction, informed Plaintiff of the report of 2005 Kia 7152's theft.

63. Defendant Officer John Creedon reported to Chicago auction and demanded that the Plaintiff surrender title to 2005 Kia 7152.

64. The Plaintiff explained the actions of Colando, Anthony Colando, Pugliani and Hall to Officer Creedon and, while reluctant to do so, the Plaintiff allowed Officer Creedon to make a photocopy of title to 2005 Kia 7152. This was only after Creedon made assurances to Plaintiff that the original title would be returned to him.

65. On May 4, 2006, Officer Creedon arranged a meeting between the Plaintiff and Officer Steven Stelter at Pugi Kia to determine the status of 2005 Kia 7152.

66. With the promise to return the original title to 2005 Kia 7152 to the Plaintiff, Officer Stelter left the Plaintiff sitting in his car in the parking lot and entered Pugi Kia to meet with Colando.

67. Officer Stelter returned moments later and handed the Plaintiff a photocopy of the title to 2005 Kia 7152.  The paper title to 2005 Kia 7152 unlawfully remained with Pugi Kia and was held unlawfully by Colando, Anthony Colando, Pugliani and Hall. Stelter gave Plaintiff an electronic funds transfer notice from VW Credit showing the $7,200 credit to Plaintiff's Pugi account with Oakbrook bank, and informed Plaintiff he was keeping all titles until the investigation was over.

68. The photocopy delivered to the Plaintiff on May 4, 2006 by Officer Stelter reflected the fact that the Plaintiff was the properly titled owner of 2005 Kia 7152.

69. Having fraudulently obtained the paper title, Colando, Anthony Colando, Pugliani and Hall sold 2005 Kia 7152 to Rino Nardo for monies on July 8, 2006.

70. To falsely perfect the sale, Colando, Anthony Colando, Pugliani and Hall signed or caused to be signed the Plaintiff's signature to the title to 2005 Kia 7152 and mailed it to the Illinois Secretary of State in the Northern District of Illinois, thus depriving Plaintiff of its interest in 2005 Kia 7152. The forged sale from the Plaintiff to Pugi Kia was fictitiously backdated to have occurred January 10, 2006.

71. The photocopy of the title handed to the Plaintiff on May 4, 2006 by Officer Stelter does not list the assignment of 2005 Kia 7152 from the Plaintiff to Pugi Kia.

**The Kia Rio 4-Door (STK# KP 191) Known As 2004 Kia 0125**

72. On November 30, 2005, the Plaintiff purchased a Kia Rio 4-Door (STK# KP 191) Known as 2004 Kia 0125 through his wholly-owned business, Certified Car Sales, at the Kansas City Auto Auction.

73. As a continuing show of his good faith interest in purchasing Pugi Kia and by agreement with Colando, Anthony Colando, Pugliani and Hall, the Plaintiff delivered 2004 Kia 0125 to Pugi Kia's lot for sale on consignment.

74. On November 30, 2005, title for 2004 Kia 0125 was assigned to the Plaintiff through the Plaintiff's authentic signature on the reverse side of the title.

75. On December 22, 2005, Pugi Kia through Colando, Anthony Colando, Pugliani and Hall, sold 2004 Kia 0125 to Mary Trucksa and did not report this sale to the Plaintiff or remit the purchase price of 2004 Kia 0125 to the Plaintiff per the terms of the consignment agreement, thus depriving Plaintiff of its interest in 2004 Kia 0125.

76. On March 17, 2006, Dominic Mancini, attorney for Pugliani, sent a letter to Hardt & Stern, the Plaintiff's attorneys, demanding that the Plaintiff return the title of 2004 Kia 0125 to Pugi Kia.

77.     On May 4, 2006, the incident transpired at the Greater Chicago Auto Auction concerning a 2005 Kia Rio known as 2005 Kia 7152, as described above in paragraphs 56 through 70.

78.     Having told Officers Creedon and Stelter of the acts of fraud perpetrated by Colando, Anthony Colando, Pugliani, Hall, and certain salespersons, accountants and agents of Pugi Kia and D & M, participating with what he believed was a lawful police action to square title to 2004 Kia 0125, and only after receiving assurances that the original title would be returned to him after a copy was made, the Plaintiff ceded paper title to 2004 Kia 0125 to Officer Stelter.

79.     Following a promise to return the original title to the Plaintiff, Officer Stelter took the paper title to 2004 Kia 0125 into Pugi Kia and unlawfully transferred possession to Colando, Anthony Colando, Pugliani and Hall.

80.     Officer Stelter returned to the parking lot where the Plaintiff had been waiting and returned a photocopy of the paper title to 2004 Kia 0125.

81.     This photocopy did not reflect a transfer of title from the Plaintiff or Certified Car Sales to any of the Defendants.

82.     To perfect the fraudulent transfer from Pugi Kia to Theresa Copack, Colando, Anthony Colando, Pugliani and Hall forged or caused to be forged the Plaintiff's signature to show that the Plaintiff had assigned 2004 Kia 0125 to Pugi Kia. This fraudulent assignment was backdated to December 22, 2005, the day of the purported sale to Mary Trucksa.

83.     Defendants mailed this fraudulent assignment to the Secretary of State of Illinois for delivery in the Northern District of Illinois, thus depriving Plaintiff of its interest in 2004 Kia 0125.

**The 2005 Pontiac Sunfire Coupe (STK# KP218) Known as 2005 Pontiac 3477**

84.    On December 28, 2005, the Plaintiff through his wholly-owned business Certified Car Sales, purchased a used 2005 Pontiac Sunfire Coupe (STK# KP218) Known as 2005 Pontiac 3477 from the Metro Milwaukee Auto Auction for $9,550.  At the time of purchase, the back of the title to 2005 Pontiac 3477 was filled up. As such, Plaintiff needed to obtain a new title.

85.    As a continuing show of his good faith interest in purchasing Pugi Kia and by agreement with Colando, Anthony Colando, Pugliani and Hall, the Plaintiff delivered 2005 Pontiac 3477 to Pugi Kia's lot for sale on consignment.

86.    On December 30, 2005, Pugi Kia sold 2005 Pontiac 3477 to Theresa Copack for monies and did not report this sale to the Plaintiff or remit the purchase price of 2005 Pontiac 3477 to the Plaintiff per the terms of the consignment agreement, thus depriving Plaintiff of its interest in 2005 Pontiac 3477.

87.    On February 21, 2006, the State of Missouri issued the new title to 2005 Pontiac 3477 to the Plaintiff's wholly-owned business, Certified Car Sales.

88.    On March 17, 2006, Dominic Mancini, attorney for Pugliani sent a letter to Hardt & Stern, the Plaintiff's attorneys, demanding that the Plaintiff return the title of 2005 Pontiac 3477 to Pugi Kia.

89.    On May 4, 2006, the incident transpired at the Greater Chicago Auto Auction concerning a 2005 Kia Rio known as 2005 Kia 7152, as described above in paragraphs 56 through 70.

90.    Having told Officers Creedon and Stelter of the acts of fraud perpetrated  by Colando, Anthony Colando, Pugliani, Hall, and certain salespersons, accountants and agents of Pugi Kia and D&M, and participating with what he believed was a lawful police action

to square title to 2005 Pontiac 3477, and only after receiving assurances that the original title would be returned to him after a copy was made, the Plaintiff ceded paper title to 2005 Pontiac 3477 to Officer Stelter.

91.     Following a promise to return the original title to the Plaintiff, Officer Stelter took the paper title to 2005 Pontiac 3477 into Pugi Kia and unlawfully transferred possession to Colando, Anthony Colando, Pugliani and Hall.

92.     Officer Stelter returned to the parking lot where the Plaintiff had been waiting and returned a photocopy of the paper title to 2005 Pontiac 3477.

93.     This photocopy did not reflect a transfer of title from the Plaintiff or Certified Car Sales to any of the Defendants.

94.     To perfect the fraudulent transfer from Pugi Kia to Theresa Copack, Defendants forged or caused to be forged the Plaintiff's signature to show that the Plaintiff had assigned 2005 Pontiac 3477 to Pugi Kia.  This fraudulent assignment was backdated to December 29, 2005, the day before the purported sale to Theresa Copack.  Pugi Kia sold this car to Theresa Copack on December 30, 2005 for monies which were not transmitted to Plaintiff.

95.     After forging Kramer's name and back-dating the alleged sale, Pugi Kia mailed this fraudulent assignment to the Secretary of State of Illinois for delivery in the Northern District of Illinois, thus depriving Plaintiff of its interest in 2005 Pontiac 3477.

**The 2003 Chevy Silverado C1500 Extended (STK# KP220) Known As 2003 Chevy 4424**

96.     On January 10, 2006, the Plaintiff through his wholly-owned business Certified Car Sales, purchased a 2003 Chevy Silverado C1500 Extended (STK# KP220) Known as 2003 Chevy 4424 from Arena Auto Auction for $10,085.  Subsequently, Plaintiff invested $800 in repairs to 2003 Chevy 4424.

97.    Title to 2003 Chevy 4424 listed Certified Car Sales as the purchaser of 2003 Chevy 4424 and owned by Kramer.

98.    As a continuing show of his good faith interest in purchasing Pugi Kia and by agreement with Colando, Anthony Colando, Pugliani and Hall, the Plaintiff delivered 2003 Chevy 4424 to Pugi Kia's lot for sale on consignment.

99.    On January 12, 2006, Pugi Kia through Colando, Anthony Colando, Pugliani and Hall, sold 2003 Chevy 4424 to Hugo de Casas for $15,995 and did not report this sale to the Plaintiff or remit the purchase price of 2003 Chevy 4424 to the Plaintiff per the terms of consignment, thus depriving Plaintiff of its interest in 2003 Chevy 4424.

100.    On March 17, 2006, Dominic Mancini, attorney for Pugliani sent a letter to Hardt & Stern, the Plaintiff's attorneys, demanding that the Plaintiff return the title of 2003 Chevy 4424 to Pugi Kia.

101.    On May 4, 2006, the incident transpired at the Greater Chicago Auto Auction concerning a 2005 Kia Rio known as 2005 Kia 7152, as described above in paragraphs 56 through 70.

102.    Having told Officers Creedon and Stelter of the acts of fraud perpetrated  by Colando, Anthony Colando, Pugliani, Hall, and certain salespersons, accountants and agents of Pugi Kia and D&M, and participating with what he believed was a lawful police action to square title to 2003 Chevy 4424, and only after receiving assurances that the original title would be returned to him after a copy was made, the Plaintiff ceded paper title 2003 Chevy 4424 to Officer Stelter.

103.    Following a promise to return the original title to the Plaintiff, Officer Stelter took the paper title to 2003 Chevy 4424 into Pugi Kia and unlawfully transferred possession to Colando, Anthony Colando, Pugliani and Hall.

104.  Officer Stelter returned to the parking lot where the Plaintiff had been waiting and returned a photocopy of the paper title to 2003 Chevy 4424.

105.  This photocopy did not reflect a transfer of title from the Plaintiff or Certified Car Sales to any of the Defendants.

106.  To perfect the fraudulent transfer from Colando to Hugo de Casas, Colando, Anthony Colando, Pugliani and Hall forged or caused to be forged the Plaintiff's signature to show that the Plaintiff had assigned 2003 Chevy 4424 to Pugi Kia.  This fraudulent assignment was backdated to January 11, 2006, the day before the purported sale to Hugo de Casas.

107.  Pugi Kia then mailed this fraudulent assignment to the Secretary of State of Illinois for delivery in the Northern District of Illinois.

**The 2004 Kia Spectra EX (STK# KP 211) Known As 2004 Kia 8308**

108.  On December 20, 2005, the Plaintiff purchased a Kia Spectra EX (STK# KP 211) Known as 2004 Kia 8308 for $8,650.00 from Kia Motors America agent Ric Harris at the Columbus Fair Auto Auction.

109.  Because "closed-sale" purchases from Kia Motors America are available only to persons licensed to operate a Kia dealership and approved for Kia credit, Colando and Pugliani authorized the Plaintiff to act as an agent of Pugi Kia at the Columbus Fair Auto Auction.

110.  On December 15, 2005, the Plaintiff and Colando, Anthony Colando, Pugliani and Hall signed an addendum to the previously signed Operating Agreement that incorporated the Consulting Agreement, which established that the Plaintiff had the right to control the day-to-day operations of Pugi Kia and manage its finances.

111.  While Colando and Pugliani breached their promise to grant the Plaintiff signing authority to personally control Pugi Kia corporate accounts held at West Suburban Bank (Account #s 071923349 # 4300066213), the Plaintiff was permitted access to "closed-sale" auctions and to make purchases on behalf of Pugi Kia. Plaintiff used its Oakbrook Bank Account in Pugi Kia's name to make these purchases.

112.  Plaintiff purchased 2004 Kia 8308 while acting under the Operating Agreement he entered with Pugi Kia, but because he had no access to Pugi Kia capital accounts, he was forced to do so with the capital of his Oakbrook Bank Account in Pugi Kia's name.

113.  2004 Kia 8308 was a new car and carried only a manufacturer's statement of origin (MSO) title.  The Plaintiff placed 2004 Kia 8308 as purchased with Certified Car Sales capital with the understanding that he was shortly to acquire an interest in Pugi Kia's operating capital and assets.

114.  The Plaintiff placed 2004 Kia 8308 on Pugi Kia's lot and held it for sale to the public as a continuing show of his good faith interest in purchasing Pugi Kia and by agreement with Colando, Anthony Colando, Pugliani and Hall.

115.  On December 26, 2005, Pugi Kia through Colando sold 2004 Kia 8308 to Della Taglia and did not report this sale to the Plaintiff or remit the purchase price of 2004 Kia 8308 to the Plaintiff as due, thus depriving Plaintiff of its interest in 2004 Kia 8308.

116.  Pugi Kia mailed this fraudulent assignment to the Secretary of State of Illinois for delivery in the Northern District of Illinois. When title issued to 2004 Kia 8308, the Illinois Secretary of State listed Della Taglia as owner of 2004 Kia 8308 through purchase from Pugi Kia on December 26, 2005.

117.   The Plaintiff maintained receipts showing a diminution in the assets of Certified Car

Sales based upon his use of its capital to purchase 2004 Kia 8308 as an agent of Pugi

Kia.

### COUNT I—WIRE FRAUD (18 U.S.C. § 1343)
### MICHAEL COLANDO, DOMINIC PUGLIANI, LARRY HALL,
### ANTHONY COLANDO, VW CREDIT, KMA, PUGI KIA AND D&M
### FRAUDULENT PRESENTATION OF FINANCIAL STATEMENTS

118.   Plaintiff incorporates by reference the allegations in paragraphs 1 through 116 of this

complaint as if fully set forth in this count.

119.   Between in or around October 2005 and May 2006, in the Northern District of Illinois

and elsewhere, the defendants, Michael Colando, Dominic Pugliani, Larry Hall,

Anthony Colando, VW Credit, KMA Pugi Kia, and D&M did knowingly and

intentionally devise and conspire to devise a material scheme and plan to defraud, and

to obtain money and property by means of materially false and fraudulent promises,

representations and statements, well knowing that the promises, representations and

statements were materially false when made.  That scheme included, in part, the

fraudulent aggrandizing of Pugi Kia's financial standing through the use of a wire.

120.   On numerous occasions(s) starting in mid-to late-November 2005 and lasting up to the

Plaintiff's recognition of the fraud(s), Defendants Colando, Pugliani, Hall and Anthony

Colando presented the Plaintiff with monthly statements detailing the assets and

liabilities of Pugi Kia.  These statements listed both cash collected for specific cars(s)

sold from Pugi Kia's lot as well as those specific cars(s). As such, these statements were

false in two dimensions; first, by inflating Pugi Kia's assets by claiming more cars than

Pugi Kia actually owned and, second, by aggrandizing Pugi Kia's cash position by

omitting liabilities.  Because these statements were contained in statements of financial

position that did not reflect an accurate accounting, they were false on their face.

25

121.    As the sole owners, managers, officers and accountants of Pugi Kia, Colando, Anthony Colando, Pugliani, and Hall knew these financial statements to be false.

122.    The Plaintiff had been negotiating in good faith with Colando, Anthony Colando, Pugliani and Hall regarding the sale of Pugi Kia and had been residing with Colando over his visits to Chicago.  The Plaintiff received several accountings and statements of Pugi Kia's assets and liabilities and had those statements reviewed by his tax accountant wife, Christine Kramer.  The Plaintiff had no reason to believe the financial statements provided by Defendants Colando, Pugliani, Hall and Anthony Colando to be false or to believe those statements would claim ownership of vehicles that were not the property of Pugi Kia or to believe those statements would fraudulently misstate Pugi Kia's cash position.  The Plaintiff believed the monthly financial accountings of Pugi Kia provided by Defendants Colando, Anthony Colando, Pugliani and Hall contained the full and whole truth of Pugi Kia's financial standing.

123.    Through the issuance of the false itemization of used cars through the mails, the Plaintiff suffered financial damages including:

a.    Encouraged by the false belief of Pugi Kia's assets, the Plaintiff loaned first $20,500.00 and then $42,000.00 to Pugi Kia that was collateralized with trust agreements to cars that Colando, Anthony Colando, Pugliani and Hall later sold without reimbursing the Plaintiff;

b.    Encouraged the Plaintiff to loan money to Pugi Kia based on his understanding of the assets of Pugi Kia, which he believed he was soon to acquire, in share.  These assets were falsely aggrandized by the fraudulent itemization;

c.      Encouraged by the purported assets of Pugi Kia and at the suggestion of Colando, Anthony Colando, Pugliani and Hall, the Plaintiff agreed to place his vehicles[1] on Pugi Kia's lot to be sold on consignment.  These cars which were eventually converted by Colando, Anthony Colando, Pugliani, Hall, and Officers Creedon and Stelter, and their titles, once forged with the Plaintiff's signature, were mailed to the Illinois Secretary of State;

d.      Encouraged Plaintiff to understand a certain valuation of Pugi Kia, which led him to continue his negotiations with Colando, Anthony Colando, Pugliani and Hall and forego inquiries into other car dealerships seeking new investors, which caused him a lost chance at other business ventures.

e.      Encouraged the Plaintiff to enter into a Operating Agreement through which the Plaintiff managed the day-to-day affairs of Pugi Kia, with the expectation of direct compensation in the form of selling cars for profit and to facilitate his eventual purchase of Pugi Kia.

124.    This fraud affected the interstate commerce between the several states.

125.    Plaintiff has been injured by the Defendants in an amount in excess of  $300,000.00 plus interest.


        WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $300,000.00 plus reasonable attorney's fees, interest and costs.

---

[1]  Plaintiff's vehicles were owned through his wholly-owned firm, Certified Car Sales.  These vehicles include vehicles known as: 1) 2005 Kia 7152, 2) 2005 Pontiac 3477, 3) 2003 Chevy 4424, 4) 2004 Kia 0125 and 2004 Kia 8308.

**COUNT II—WIRE FRAUD (18 U.S.C. § 1343)**
**MICHAEL COLANDO, DOMINIC PUGLIANI, LARRY HALL,**
**ANTHONY COLANDO, VW CREDIT, KMA, PUGI KIA AND D&M**
**FRAUDULENT PRESENTATION OF INVENTORY STATEMENTS**

126.  Plaintiff incorporates by reference the allegations in paragraphs 1 through 124, specifically 117 through 124, of this complaint as if fully set forth in this count.

127.  Between in or around October 2005 and May 2006, in the Northern District of Illinois and elsewhere, the defendants, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, VW Credit, KMA Pugi Kia, and D&M did knowingly and intentionally devise and conspire to devise a material scheme and plan to defraud, and to obtain money and property by means of materially false and fraudulent promises, representations and statements, well knowing that the promises, representations and statements were materially false when made.

128.  On November 4, 2005, at the direction of Michael Colando, Dominic Pugliani, Larry Hall and Anthony Colando, Pugi Kia sent the Plaintiff a facsimile sent by Larry Hall through a phone wire that itemized the used vehicle inventory of Pugi Kia.  The inventory of Pugi Kia was a material fact concerning the value of Pugi Kia and its assets and liabilities. The itemization showed Pugi Kia had $251,697 worth of cars in inventory, i.e. equity of $251,697. At that time, Pugi Kia actually had equity of less then $100,000. As such, this itemization was patently false.

129.  All Defendants verbally authenticated and substantiated the truth and completeness of the inventories faxed to the Plaintiff.

130.  As sole owners, managers and accountants of Pugi Kia and D&M, Colando, Pugliani, Hall and Anthony Colando knew this itemization to be false.

131.  Because Colando, Anthony Colando, Pugliani and Hall were in current and open negotiations with the Plaintiff concerning the sale of Pugi Kia and various tangential

transactions involving individual vehicles and groups of vehicles, this itemization was strictly and solely intended to encourage the Plaintiff to act.

132.     The Plaintiff had been negotiating in good faith with Colando, Anthony Colando, Pugliani and Hall regarding the sale of Pugi Kia and had been residing with Colando over his visits to Chicago.  The Plaintiff received several accountings and statements of Pugi Kia's assets and liabilities.  The Plaintiff had no reason to believe the itemization provided by Colando, Anthony Colando, Pugliani and Hall to be false or to list vehicles that were not the property of Pugi Kia and therefore the Plaintiff believed in its full and whole truth.

133.     Through the issuance of the false itemization of used cars through a wire, the Plaintiff suffered financial damages including having been:

a.     Encouraged by the false belief of Pugi Kia's assets, the Plaintiff loaned first $20,500.00 and then $42,000.00 to Pugi Kia that was collateralized with Trust Agreements to cars that Colando, Anthony Colando, Pugliani and Hall later sold without reimbursing the Plaintiff;

b.     Encouraged the Plaintiff to loan money to Pugi Kia based on his understanding of the fraudulently aggrandized assets of Pugi Kia, which he believed he was soon to acquire, in share;

c.     Encouraged by the purported assets of Pugi Kia and at the suggestion of Colando, Anthony Colando, Pugliani and Hall, the Plaintiff agreed to place his vehicles on Pugi Kia's lot to be sold on consignment.  These cars which were eventually converted by Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and Officers Creedon and Stelter, and their paper titles forged with the Plaintiff's signature and mailed to the Illinois Secretary of State;

d.  Encouraged the Plaintiff to understand a certain valuation of Pugi Kia, which led him to continue his negotiations with Colando, Anthony Colando, Pugliani and Hall and forego inquiries into other car dealerships seeking new investors, which caused him a lost chance at other business ventures.

e.  Encouraged the Plaintiff to enter into an agreement through which the Plaintiff managed the day-to-day affairs of Pugi Kia, with the expectation of direct compensation in the form of profit from selling cars and to facilitate his eventual purchase of Pugi Kia.

134.  This fraud affected the interstate commerce between the several states.

135.  Plaintiff has been injured by the Defendants in an amount in excess of  $300,000.00 plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $300,000.00 plus reasonable attorney's fees, interest and costs.


**COUNT III—WIRE FRAUD (18 U.S.C. § 1343)**
**MICHAEL COLANDO, DOMINIC PUGLIANI, LARRY HALL,**
**ANTHONY COLANDO, VW CREDIT, KMA, PUGI KIA AND D&M**
**FRAUDULENT PRESENTATION OF INVENTORY STATEMENTS**

136.  Plaintiff incorporates by reference the allegations in paragraphs 1 through 132 of this complaint as if fully set forth in this count.

137.  Between in or around October 2005 and May 2006, in the Northern District of Illinois and elsewhere, the defendants, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, VW Credit, KMA, Pugi Kia, and D&M did knowingly and intentionally devise and conspire to devise a material scheme and plan to defraud, and to obtain money and property by means of materially false and fraudulent promises,

representations and statements, well knowing that the promises, representations and statements were materially false when made. That scheme involved, in part, the fraudulent listing of a 2005 Kia Sorento known as 2005 Kia 7059 on Pugi Kia's inventory sheets and delivery of that fraudulent listing through the use of the a wire.

138. On November 8, 2005, at the direction of Michael Colando, Anthony Colando, Dominic Pugliani, and Larry Hall, Pugi Kia sent the Plaintiff a facsimile signed by Larry Hall through a phone wire that itemized the used vehicle inventory of Pugi Kia. The inventory of Pugi Kia was a material fact concerning the value of Pugi Kia and its assets and liabilities. The itemization showed Pugi Kia had $251,697 worth of cars in inventory, i.e. equity of $251,697. At that time, Pugi Kia actually had equity of less then $100,000. As such, this itemization was patently false.

139. All Defendants verbally authenticated and substantiated the truth and completeness of the inventories faxed to the Plaintiff.

140. As sole owners, managers and accountants of Pugi Kia, Colando, Anthony Colando, Pugliani, and Hall knew this itemization to be false. KMA issued a $6,500 rebate for this vehicle to Pugi Kia. As such, they knew or should have known the car was sold back in November, 2005, and thus any inventory including this vehicle was patently false. VW Credit had an obligation to insure that vehicle was on the Pugi Kia lot. From November 4, 2005 to January 31, 2006 VW Credit failed to fulfill that obligation. As such, they knew or should have known that Pugi Kia was "out of trust" on the 2005 Kia 7059 for three months. Thus, VW Credit knew or should have known that any inventory including 2005 Kia 7059 was patently false.

141. Because Colando, Anthony Colando, Pugliani and Hall were in current and open negotiations with the Plaintiff concerning the sale of Pugi Kia and various tangential

transactions involving individual vehicles and groups of vehicles, this itemization was strictly and solely intended to encourage the Plaintiff to act.

142.    The Plaintiff had been negotiating in good faith with Colando, Anthony Colando, Pugliani and Hall regarding the sale of Pugi Kia and had been residing with Colando over his visits to Chicago.  The Plaintiff received several accountings and statements of Pugi Kia's assets and liabilities.  The Plaintiff had no reason to believe the itemization provided by Colando, Anthony Colando, Pugliani and Hall to be false or to list vehicles that were not the property of Pugi Kia and therefore the Plaintiff believed in its full and whole truth.

143.    Through the issuance of the false itemization of used cars through a wire, the Plaintiff suffered financial damages including:

a.    Encouraged by the false belief of Pugi Kia's assets, the Plaintiff loaned first $20,500.00 and then $42,000.00 to Pugi Kia that was collateralized with trust agreements to cars that Colando, Anthony Colando, Pugliani and Hall later sold without reimbursing the Plaintiff;

b.    Encouraged the Plaintiff to loan money to Pugi Kia based on his understanding of the fraudulently aggrandized assets of Pugi Kia, which he believed he was soon to acquire, in share;

c.    Encouraged by the purported assets of Pugi Kia and at the suggestion of Colando, Anthony Colando, Pugliani and Hall, the Plaintiff agreed to place his vehicles2 on Pugi Kia's lot to be sold on consignment.  These cars which were eventually converted by Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and Officers

---

[2] Plaintiff's vehicles were owned through his wholly-owned firm, Certified Car Sales.  These vehicles include vehicles known as: 1) 2005 Kia 7152, 2) 2005 Pontiac 3477,3) 2003 Chevy 4424, and 4) 2004 Kia 0125, and 5) 2004 Kia 8308 (MSO).

Creedon and Stelter, and their paper titles forged with the Plaintiff's signature and mailed to the Illinois Secretary of State;

d.   Encouraged the Plaintiff to understand a certain valuation of Pugi Kia, which led him to continue his negotiations with Colando, Anthony Colando, Pugliani and Hall and forego inquiries into other car dealerships seeking new investors, which caused him a lost chance at other business ventures.

e.   Encouraged the Plaintiff to enter into a Operating Agreement through which the Plaintiff helped manage the day-to-day affairs of Pugi Kia, with the expectation of direct compensation in the form of selling cars for a profit and to facilitate his eventual purchase of Pugi Kia.

144.   This fraud affected the interstate commerce between the several states.

145.   Plaintiff has been injured by the Defendants in an amount in excess of $300,000.00 plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $300,000.00 plus reasonable attorney's fees, interest and costs.


**COUNT IV—WIRE FRAUD (18 U.S.C. § 1343)**
**MICHAEL COLANDO, DOMINIC PUGLIANI, LARRY HALL,**
**ANTHONY COLANDO, VW CREDIT, KMA, PUGI KIA AND D&M**
**FRAUDULENT PRESENTATION OF INVENTORY STATEMENTS**

146.   Plaintiff incorporates by reference the allegations in paragraphs 1 through 144 of this complaint as if fully set forth in this count.

147.   Between in or around October 2005 and May 2006, in the Northern District of Illinois and elsewhere, the defendants, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, VW Credit, KMA, Pugi Kia, and D&M did knowingly and

intentionally devise and conspire to devise a material scheme and plan to defraud, and to obtain money and property by means of materially false and fraudulent promises, representations and statements, well knowing that the promises, representations and statements were materially false when made. That scheme involved, in part, the fraudulent listing of 2005 Kia 7059 on Pugi Kia's inventory sheets and delivery of that fraudulent listing through the use of the a wire.

148.    On January 3, 2006, at the direction of Michael Colando, Anthony Colando, Dominic Pugliani, and Larry Hall, Pugi Kia sent the Plaintiff a facsimile through a phone wire of a floor plan from VW Credit itemizing the vehicle inventory of Pugi Kia. The inventory of Pugi Kia was a material fact concerning the value of Pugi Kia and its assets and liabilities. The floor plan showed 2005 Kia 7059 as part of Pugi Kia's inventory. However, an auto sale recap sheet showed 2005 Kia 7059 was sold to Bertrand Stoecklin on November 9, 2005 by Pugi Kia salesman, Frank Stanek. An invoice confirms that Pugi Kia collected $24,429.43, the remainder due on the 2005 Kia 7059, on November 15, 2005. Thus, at the time Defendants provided the floor plan to Plaintiff showing 2005 Kia 7059 in inventory, it had already been sold and was no longer on Pugi Kia's lot. As such, this representation was fraudulent. Despite the fact that VW Credit last reported seeing 2005 Kia 7059 on November 4, 2005, on January 31, 2006, during an audit, 2005 Kia 7059 was reported sold and paid for as of January 27, 2006.

149.    All Defendants verbally authenticated and substantiated the truth and completeness of the inventories faxed to the Plaintiff.

150.    As sole owners, managers and accountants of Pugi Kia, Colando, Anthony Colando, Pugliani, and Hall knew this itemization to be false. KMA issued a $6,500 rebate for this vehicle to Pugi Kia. As such, they knew or should have known the car was sold

back in November, 2005, and thus any inventory including this vehicle was patently false. VW Credit had an obligation to insure that vehicle was on the Pugi Kia lot. From November 4, 2005 to January 31, 2006 VW Credit failed to fulfill that obligation. As such, they knew or should have known that Pugi Kia was "out of trust" on the 2005 Kia 7059 for three months. Thus, VW Credit knew or should have known that any inventory including 2005 Kia 7059 was patently false.

151.    Because Colando, Anthony Colando, Pugliani and Hall were in current and open negotiations with the Plaintiff concerning the sale of Pugi Kia and various tangential transactions involving individual vehicles and groups of vehicles, this itemization was strictly and solely intended to encourage the Plaintiff to act.

152.    The Plaintiff had been negotiating in good faith with Colando, Anthony Colando, Pugliani and Hall regarding the sale of Pugi Kia and had been residing with Colando over his visits to Chicago.  The Plaintiff received several accountings and statements of Pugi Kia's assets and liabilities.  The Plaintiff had no reason to believe the itemization provided by Colando, Anthony Colando, Pugliani, Hall VW Credit and KMA to be false or to list vehicles that were not the property of Pugi Kia and, therefore, the Plaintiff believed in its full and whole truth.

153.    Through the issuance of the false itemization of used cars through a wire, the Plaintiff suffered financial damages including:

a.      Encouraged by the false belief of Pugi Kia's assets, the Plaintiff loaned first $20,500.00 and then $42,000.00 to Pugi Kia that was collateralized with trust agreements to cars that Colando, Anthony Colando, Pugliani and Hall later sold without reimbursing the Plaintiff;

b.      Encouraged the Plaintiff to loan money to Pugi Kia based on his understanding of the fraudulently aggrandized assets of Pugi Kia, which he believed he was soon to acquire, in share;

c.      Encouraged by the purported assets of Pugi Kia and at the suggestion of Colando, Anthony Colando, Pugliani and Hall, the Plaintiff agreed to place his vehicles[3] on Pugi Kia's lot to be sold on consignment.  These cars which were eventually converted by Colando, Anthony Colando, Pugliani, Hall, Pugi Kia, D&M and Officers Creedon and Stelter, and their paper titles forged with the Plaintiff's signature and mailed to the Illinois Secretary of State;

d.      Encouraged the Plaintiff to understand a certain valuation of Pugi Kia, which led him to continue his negotiations with Colando, Anthony Colando, Pugliani and Hall and forego inquiries into other car dealerships seeking new investors, which caused him a lost chance at other business ventures.

e.      Encouraged the Plaintiff to enter into an agreement through which the Plaintiff helped manage the day-to-day affairs of Pugi Kia, with the expectation of direct compensation in the form of  selling cars for a profit and to facilitate his eventual purchase of Pugi Kia.

154.    This fraud affected the interstate commerce between the several states.

155.    Plaintiff has been injured by the Defendants in an amount in excess of  $300,000.00 plus interest.

156.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $300,000.00 plus reasonable attorney's fees, interest and costs.

---

[3] Plaintiff's vehicles were owned through his wholly-owned firm, Certified Car Sales.  These vehicles include vehicles known as: 1) 2005 Kia 7152, 2) 2005 Pontiac 3477,3) 2003 Chevy 4424, and 4) 2004 Kia 0125, and 4) 2004 Kia 8308 (MSO).

**COUNT V— MAIL AND WIRE FRAUD (18 U.S.C. §§ 1341, 1343)
MICHAEL COLANDO, DOMINIC PUGLIANI, LARRY HALL, ANTHONY
COLANDO, DOMINIC MANCINI, VW CREDIT, KMA, PUGI KIA AND D&M**

**The 2005 Kia Sorento Known As 2005 Kia 7059**

157.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 154 of this

complaint as if fully set forth in this count..

158.    Between in or around October 2005 and May 2006, in the Northern District of Illinois

and elsewhere, the defendants, Michael Colando, Dominic Pugliani, Larry Hall,

Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M did

knowingly and intentionally devise and conspire to devise a material scheme and plan

to defraud, and to obtain money and property by means of materially false and

fraudulent promises, representations and statements, well knowing that the promises,

representations and statements were materially false when made.  That scheme

involved, in part, mailing the title of a 2005 Kia Sorento known as 2005 Kia 7059 to the

Illinois Secretary of State.

159.    On November 9, 2005, Defendant sold a 2005 Kia Sorento known as 2005 Kia 7059 to

Bernard Stocklin for $30,729. A deposit of $6,500 was collected at the time of the sale

and the remaining balance of $24,229 was financed through Hyundai Finance.

160.    Shortly after the sale of this car, Michael Colando, Anthony Colando, Dominic Pugliani

and Larry Hall caused the full amount of the sale, $30,729, to be deposited via wire

with West Suburban Bank. Michael Colando, Anthony Colando, Dominic Pugliani,

Larry Hall, Pugi Kia, and D&M  failed to reimburseVW Credit for the loan on this car

until January 27, 2006. KMA issued a $6,500 rebate for this vehicle to Pugi Kia. As

such, they knew or should have known the car was sold back in November, 2005, and

thus any inventory including this vehicle was patently false. VW Credit had an obligation to insure that vehicle was on the Pugi Kia lot. From November 4, 2005 to January 31, 2006 VW Credit failed to fulfill that obligation. As such, they knew or should have known that Pugi Kia was "out of trust" on the 2005 Kia 7059 for three months. Thus, VW Credit knew or should have known that any inventory including 2005 Kia 7059 was patently false. Plaintiff was deprived of his interest in 2005 Kia 7059 due to the actions of Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M.

161.   On or around November 9, 2005, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M caused title to be mailed to the Illinois Secretary of State for delivery in the Northern District of Illinois.

162.   A fraudulent statement of Pugi Kia's inventory materially listed 2005 Kia 7059 as Pugi Kia's property.

163.   Plaintiff has been injured by the Defendants in an amount in excess of $30,729.00 plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $30,729.00 plus reasonable attorney's fees, interest and costs.

### COUNT VI— MAIL AND WIRE FRAUD (18 U.S.C. §§ 1341, 1343) MICHAEL COLANDO, DOMINIC PUGLIANI, LARRY HALL, ANTHONY COLANDO, DOMINIC MANCINI, VW CREDIT, KMA, PUGI KIA AND D&M

**The 2005 Kia Sorento Known As 2005 Kia 7152**

164.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 161 of this complaint as if fully set forth in this count.

165.    Between in or around October 2005 and May 2006, in the Northern District of Illinois and elsewhere, the defendants, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M did knowingly and intentionally devise and conspire to devise a material scheme and plan to defraud, and to obtain money and property by means of materially false and fraudulent promises, representations and statements, well knowing that the promises, representations and statements were materially false when made.  That scheme involved, in part, the conversion of a 2005 Kia Rio known as 2005 Kia 7152 through fraud perpetrated through the use of wire and the mails.

166.    At the request of Defendants Colando, Anthony Colando, Pugliani and Hall and to show a continuing good faith interest in acquiring Pugi Kia, Plaintiff agreed to transport vehicles owned by Certified Car Sales, the Plaintiff's wholly-owned company, to Pugi Kia's lot and hold them for sale on consignment.

167.    On January 10, 2006, Certified Car Sales purchased a 2005 Kia Rio known as 2005 Kia 7152 from Bill Kay Honda for $9,065 at the Arena Auto Auction in Bolingbrook, Illinois and transported it to Pugi Kia's used-car lot where he offered it for sale on consignment.

168.    The Plaintiff retained title to 2005 Kia 7152.

169.  Pursuant to verbal agreement with Colando, Anthony Colando, Pugliani and Hall and the objective of a consulting agreement entered into by Colando, Anthony Colando, Pugliani and the Plaintiff, 2005 Kia 7152 was not the property of Pugi Kia.  The Defendants' statements agreeing that the Plaintiff was selling 2005 Kia 7152 from Pugi Kia's lot for his personal benefit was a material aspect of the Plaintiff's agreement to enter the consignment arrangement.

170.  As the sole owners, operators, managers and accountants of Pugi Kia, Defendant's Colando, Anthony Colando, Pugliani and Hall knew these statements to be false.

171.  Due to the deepening financial constraints of Pugi Kia, Colando, Anthony Colando, Pugliani and Hall required access to 2005 Kia 7152 and made statements that encouraged the Plaintiff's interest in the consignment arrangement to gain access to the 2005 Kia 7152. In conjunction with Officers Creeden and Stelter's show of unlawful police force, the fraudulent conversion of 2004 Kia 0125 was furthered by Colando, Anthony Colando, Mancini, Pugliani and Hall's use of false pretenses to obtain the paper title to 2004 Kia 0125.

172.  Once obtaining the paper title to 2005 Kia 7152 through false pretenses, Colando, Anthony Colando, Mancini, Pugliani, Hall, Pugi Kia and D&M forged or caused to be forged the Plaintiff's signature on the paper title to 2005 Kia 7152.

173.  Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M mailed or caused to be mailed the forged title of 2005 Kia 7152 to the Secretary of State of Illinois for delivery in the Northern District of Illinois.

174.  The Plaintiff was damaged by the conversion of 2005 Kia 7152 from his possession to Colando, Anthony Colando, Mancini, Pugliani and Hall's possession. Colando,

Anthony Colando, Pugliani and Hall sold 2005 Kia 7152 to Rino Nardo on July 8, 2006 and retained the proceeds which were wired to the West Suburban bank account, to which Plaintiff was denied access, thus depriving Plaintiff of his interest in 2005 Kia 7152.

175.    These proceeds were deposited in West Suburban bank account.

176.    The fraud surrounding the conversion of 2005 Kia 7152 affected the interstate commerce between the several States.

177.    Plaintiff has been injured by the Defendants in an amount in excess of the sale price of 2005 Kia 7152, plus interest.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of the sale price of 2005 Kia 7152, plus reasonable attorney's fees, interest and costs.

### COUNT VII—MAIL AND WIRE FRAUD (18 U.S.C. §§ 1341, 1343) MICHAEL COLANDO, DOMINIC PUGLIANI, LARRY HALL, ANTHONY COLANDO, DOMINIC MANCINI, VW CREDIT, KMA, PUGI KIA AND D&M

**The Kia Rio 4-Door (STK# KP 191) Known As 2004 Kia 0125**

178.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 175 of this complaint as if fully set forth in this count.

179.    Between in or around October 2005 and May 2006, in the Northern District of Illinois and elsewhere, the defendants, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M did knowingly and intentionally devise and conspire to devise a material scheme and plan to defraud, and to obtain money and property by means of materially false and fraudulent promises, representations and statements, well knowing that the promises,

41

representations and statements were materially false when made. That scheme involved, in part, the conversion of a Kia Rio 4-Door known as 2004 Kia 0125 through fraud perpetrated through the use of wire and the mails.

180. At the request of Defendants Colando, Anthony Colando, Pugliani and Hall and to show a continuing good faith interest in acquiring Pugi Kia, Plaintiff agreed to transport vehicles owned by Certified Car Sales, the Plaintiff's wholly-owned company, to Pugi Kia's lot and hold them for sale on consignment.

181. Colando, Anthony Colando, Pugliani and Hall materially represented to the Plaintiff that 2004 Kia 0125 was the Plaintiff's property and that when 2004 Kia 0125 was sold from Pugi Kia's lot, the Plaintiff was entitled to the proceeds.

182. Because Colando, Anthony Colando, Pugliani and Hall did not honor the terms of the consignment arrangement, but, rather, converted 2004 Kia 0125 to Pugi Kia's possession, those representations were patently false and fraudulent.

183. As the sole owners, operators, managers and accountants of Pugi Kia, Defendant's Colando, Anthony Colando, Pugliani and Hall knew these statements to be false.

184. In conjunction with Officers Creeden and Stelter's show of unlawful police force, the fraudulent conversion of 2004 Kia 0125 was furthered by Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M's use of false pretenses to obtain the paper title to 2004 Kia 0125.

185. Once obtained, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M completed the fraudulent conversion of 2004 Kia 0125 by forging or causing to be forged the Plaintiff's signature on the paper title to 2004 Kia 0125 and mailing that title to the Illinois Secretary of State for delivery in the Northern District of Illinois.

186.    The Plaintiff was damaged by the conversion of 2004 Kia 0125 from his possession to Pugi Kia to the direct benefit of Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M.

187.    Without possessing legal title, Colando, Anthony Colando, Pugliani and Hall had sold 2004 Kia 0125 to Mary Trucksa on December 22, 2005 and did not report this sale to the Plaintiff or remit the purchase price of 2004 Kia 0125 to the Plaintiff per the terms of the consignment agreement, and retained the proceeds which were wired to the West Suburban bank account, to which Plaintiff was denied access, thus, depriving Plaintiff of its interest in 2004 Kia 0125.

188.    The fraud surrounding the conversion of 2004 Kia 0125 affected the interstate commerce between the several States.

189.    Plaintiff has been injured by the Defendants in an amount in excess of $9,995.00 plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $9,995.00 plus reasonable attorney's fees, interest and costs.


**COUNT VIII—MAIL AND WIRE FRAUD (18 U.S.C. §§ 1341, 1343)
MICHAEL COLANDO, DOMINIC PUGLIANI, LARRY HALL, ANTHONY
COLANDO, DOMINIC MANCINI, VW CREDIT, KMA, PUGI KIA AND D&M**

**The 2005 Pontiac Sunfire Coupe (STK# KP 218) Known as 2005 Pontiac 3477**

190.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 187 of this complaint as if fully set forth in this count.

191.    Between in or around October 2005 and May 2006, in the Northern District of Illinois and elsewhere, the defendants, Michael Colando, Dominic Pugliani, Larry Hall,

Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M did knowingly and intentionally devise and conspire to devise a material scheme and plan to defraud, and to obtain money and property by means of materially false and fraudulent promises, representations and statements, well knowing that the promises, representations and statements were materially false when made. That scheme involved, in part, the conversion of a 2005 Pontiac Sunfire Coupe known as 2005 Pontiac 3477 through fraud perpetrated through the use of wire and the mails.

192.   At the request of Defendants Colando, Anthony Colando, Pugliani and Hall and to show a continuing good faith interest in acquiring Pugi Kia, Plaintiff agreed to transport vehicles owned by Certified Car Sales, the Plaintiff's wholly-owned company, to Pugi Kia's lot and hold them for sale on consignment.

193.   Colando, Anthony Colando, Pugliani and Hall materially represented to the Plaintiff that 2005 Pontiac 3477 was the Plaintiff's property and that when 2005 Pontiac 3477 was sold from Pugi Kia's lot, the Plaintiff was entitled to the proceeds.

194.   Because Colando, Anthony Colando, Pugliani and Hall did not honor the terms of the consignment arrangement, but, rather, converted 2005 Pontiac 3477 to Pugi Kia's possession, those representations were patently false and fraudulent.

195.   As the sole owners, operators, managers and accountants of Pugi Kia, Defendant's Colando, Anthony Colando, Pugliani and Hall knew these statements to be false.

196.   In conjunction with Officers Creeden and Stelter's show of unlawful police force, the fraudulent conversion of 2005 Pontiac 3477 was furthered by Colando, Anthony Colando, Dominic Mancini, Pugliani and Hall's use of false pretenses to obtain the paper title to 2005 Pontiac 3477.

197.   Once obtained, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M completed the fraudulent conversion of 2005 Pontiac 3477 by forging or causing to be forged the Plaintiff's signature on the paper title to 2005 Pontiac 3477, backdating the sale to December 29, 2005 and mailing that title to the Illinois Secretary of State for delivery in the Northern District of Illinois.

198.   The Plaintiff was damaged by the conversion of 2005 Pontiac 3477 from his possession to Pugi Kia's possession to directly benefit Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M.

199.   Without possessing legal title or the ability to transfer 2005 Pontiac 3477 for Pugi Kia's benefit, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M had sold 2005 Pontiac 3477 to Theresa Copack on December 30, 2005, for $15,700, and did not report this sale to the Plaintiff or remit the purchase price of 2005 Pontiac 3477 to the Plaintiff per the terms of the consignment agreement, and retained the proceeds which were wired to the West Suburban bank account, to which Plaintiff was denied access, thus depriving Plaintiff of its interest in the 2005 Pontiac 3477.

200.   The fraud surrounding the conversion of 2005 Pontiac 3477 affected the interstate commerce between the several States.

201.   Plaintiff has been injured by the Defendants in an amount in excess of  $15,700.00 plus interest.


        WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $15,700.00 plus reasonable attorney's fees, interest and costs.

## COUNT IX—MAIL AND WIRE FRAUD (18 U.S.C. §§ 1341, 1343)
## MICHAEL COLANDO, DOMINIC PUGLIANI, LARRY HALL, ANTHONY
## COLANDO, DOMINIC MANCINI, VW CREDIT, KMA, PUGI KIA AND D&M

**The 2003 Chevy Silverado C1500 Extended (STK# KP220) Known As 2003 Chevy 4424**

202.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 199 of this
complaint as if fully set forth in this count.

203.    Between in or around October 2005 and May 2006, in the Northern District of Illinois
and elsewhere, the defendants, Michael Colando, Dominic Pugliani, Larry Hall,
Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M did
knowingly and intentionally devise and conspire to devise a material scheme and plan
to defraud, and to obtain money and property by means of materially false and
fraudulent promises, representations and statements, well knowing that the promises,
representations and statements were materially false when made.  That scheme
involved, in part, the conversion of a 2003 Chevy Silverado C1500 Extended known as
2003 Chevy 4424 through fraud perpetrated through the use of wire and the mails.

204.    At the request of Defendants Colando, Anthony Colando, Pugliani and Hall and to show
a continuing good faith interest in acquiring Pugi Kia, Plaintiff agreed to transport
vehicles owned by Certified Car Sales, the Plaintiff's wholly-owned company, to Pugi
Kia's lot and hold them for sale on consignment.

205.    Colando, Anthony Colando, Pugliani and Hall materially represented to the Plaintiff
that 2003 Chevy 4424 was the Plaintiff's property and that when 2003 Chevy 4424 was
sold from Pugi Kia's lot, the Plaintiff was entitled to the proceeds.

206.    Because Colando, Anthony Colando, Pugliani and Hall did not honor the terms of the consignment arrangement, but, rather, converted 2003 Chevy 4424 to Pugi Kia's possession, those representations were patently false and fraudulent.

207.    As the sole owners, operators, managers and accountants of Pugi Kia, Defendant's Colando, Anthony Colando, Pugliani and Hall knew these statements to be false.

208.    In conjunction with Officers Creeden and Stelter's show of unlawful police force, the fraudulent conversion of 2003 Chevy 4424 was furthered by Colando, Anthony Colando, Pugliani and Hall's use of false pretenses to obtain the paper title to 2003 Chevy 4424.

209.    Once obtained, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M completed the fraudulent conversion of 2003 Chevy 4424 by forging or causing to be forged the Plaintiff's signature on the paper title to 2003 Chevy 4424 and mailing that title to the Illinois Secretary of State for delivery in the Northern District of Illinois.

210.    The Plaintiff was damaged by the conversion of 2003 Chevy 4424 from his possession to Pugi Kia's possession to directly Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M.

211.    Without possessing legal title or the ability to transfer 2003 Chevy 4424 for Pugi Kia's benefit, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M had sold 2003 Chevy 4424 to Hugo de Casas on January 12, 2006, for $15,995, and did not report this sale to the Plaintiff or remit the purchase price of 2003 Chevy 4424 to the Plaintiff per the terms of the consignment agreement, and retained the proceeds which were wired to the West

Suburban bank account, to which Plaintiff was denied access, thus, depriving Plaintiff of its interest in the 2003 Chevy 4424.

212. The fraud surrounding the conversion of 2003 Chevy 4424 affected the interstate commerce between the several States.

213. Plaintiff has been injured by the Defendants in an amount in excess of $15,995.00 plus interest.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $15,995.00 plus reasonable attorney's fees, interest and costs.

### COUNT X—MAIL AND WIRE FRAUD (18 U.S.C. §§ 1341, 1343) MICHAEL COLANDO, DOMINIC PUGLIANI, LARRY HALL, ANTHONY COLANDO, DOMINIC MANCINI, VW CREDIT, KMA, PUGI KIA AND D&M

**The 2004 Kia Spectra EX ( STK# KP 211) Known As 2004 Kia 8308**

214. Plaintiff incorporates by reference the allegations in paragraphs 1 through 211 of this complaint as if fully set forth in this count.

215. Between October 2005 and May 2006, in the Northern District of Illinois and elsewhere, the defendants, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M did knowingly and intentionally devise and conspire to devise a material scheme and plan to defraud, and to obtain money and property by means of materially false and fraudulent promises, representations and statements, well knowing that the promises, representations and statements were materially false when made. That scheme involved, in part, the conversion of a 2004 Kia Spectra EX known as 2004 Kia 8308 through fraud perpetrated through the use of wire and the mails.

48

216. At the request of Defendants Colando, Anthony Colando, Pugliani and Hall and to show a continuing good faith interest in acquiring Pugi Kia, Plaintiff agreed to transport vehicles owned by Certified Car Sales, the Plaintiff's wholly-owned company, to Pugi Kia's lot and hold them for sale on consignment.

217. Colando, Anthony Colando, Pugliani and Hall materially represented to the Plaintiff that 2004 Kia 8308 was the Plaintiff's property and that when 2004 Kia 8308 was sold from Pugi Kia's lot, the Plaintiff was entitled to the proceeds.

218. Because Colando, Anthony Colando, Pugliani and Hall did not honor the terms of the consignment arrangement, but, rather, converted 2004 Kia 8308 to Pugi Kia's possession, those representations were patently false and fraudulent.

219. As the sole owners, operators, managers and accountants of Pugi Kia, Defendant's Colando, Anthony Colando, Pugliani and Hall knew these statements to be false.

220. The Plaintiff was damaged by the conversion of 2004 Kia 8308 from his possession to Pugi Kia's possession to directly benefit Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M, thus depriving Plaintiff of its interest in the 2004 Kia 8308.

221. Without possessing actual title or the ability to transfer 2004 Kia 8308 for Pugi Kia's benefit, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M had sold 2004 Kia 8308 to Della Taglia on December 26, 2005 and did not report this sale to the Plaintiff or remit the purchase price of 2004 Kia 8308 to the Plaintiff per the terms of the consignment agreement, and retained the proceeds which were wired to the West Suburban bank account, to which Plaintiff was denied access, thus depriving Plaintiff of its interest in 2004 Kia 8308.

222.    Colando, Anthony Colando, Pugliani and Hall completed the fraudulent conversion of 2004 Kia 8308 by mailing notice of the sale to KMA, VW Credit, West Suburban Bank, and the Secretary of State of Illinois.

223.    The fraud surrounding the conversion of 2004 Kia 8308 affected the interstate commerce between the several States.

224.    Plaintiff has been injured by the Defendants in an amount in excess of $13,000.00 plus interest.


        WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $13,000.00 plus reasonable attorney's fees, interest and costs.


### COUNT XI— DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C § 1983 FRAUDULENT SEIZURE OF PERSONAL PROPERTY IN CONTRAVENTION OF RIGHTS HELD UNDER THE 4TH AMENDMENT OF THE UNITED STATES CONSTITUTION

### OFFICER STEVEN STELTER

225.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 222 of this complaint as if fully set forth in this count.

226.    The Plaintiff maintained a Federal right under the United States Constitution's Fourth Amendment to be free from warrantless seizures of his property.

227.    Officer Stelter, a Deputy Director in the DuPage County Auto Theft Task Force, is entrusted with the use of police power to carry out orders of the executive authority of the State of Illinois.

228.    Without the necessary warrant, Officer Stelter seized paper title to Plainitff's property, which included:

    a.      A 2005 Kia Rio Known As 2005 Kia 7152;

    b.      The Kia Rio 4-Door Known As 2004 Kia 0125;

    c.      The 2005 Pontiac Sunfire Coupe Known as 2005 Pontiac 3477; and

    d.      The 2003 Chevy Silverado C1500 Extended Known As 2003 Chevy 4424.

229.    Officer Stelter aided and conspired with Colando, Anthony Colando, Pugliani and Hall to fraudulently obtaining the Plaintiff's paper titles to his vehicular property.

230.    Without Officer Stelter's complicity in their scheme to defraud the Plaintiff and convert his property, Colando, Anthony Colando, Pugliani and Hall could not have succeeded.

231.    Officer Stelter acted under color of law and by show of police force to seize and appropriate to his benefit the Plaintiff's paper titles.

232.    The wrongful seizure of Plaintiff's paper titles was part and parcel of the larger fraud perpetrated by Colando, Anthony Colando, Pugliani and Hall and affected the interstate commerce of the several States.

233.    Plaintiff has been injured by the Defendants in an amount in excess of  $300,000.00 plus interest.


    WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $300,000.00 plus reasonable attorney's fees, interest and costs.


**COUNT XII— DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C § 1983 FRAUDULENT SEIZURE OF PERSONAL PROPERTY IN CONTRAVENTION OF RIGHTS HELD UNDER THE 4TH AMENDMENT OF THE UNITED STATES CONSTITUTION**

**OFFICER JOHN CREEDON**

234.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 231 of this complaint as if fully set forth in this count..

235.    The Plaintiff maintained a Federal right under the United States Constitution's Fourth
        Amendment to be free from warrantless seizures of his property.

236.    Officer Creedon, a Director of the Tri-County Auto Theft Unit, is entrusted with the use
        of police power to carry out orders of the executive power of the State of Illinois.

237.    Without the necessary warrant, Officer Stelter seized paper title to Plainitff's property,
        which included:

        a.    A 2005 Kia Rio Known As 2005 Kia 7152;

        b.    The Kia Rio 4-Door Known As 2004 Kia 0125;

        c.    The 2005 Pontiac Sunfire Coupe Known as 2005 Pontiac 3477; and

        d.    The 2003 Chevy Silverado C1500 Extended Known As 2003 Chevy 4424.

238.    Officer Creedon aided and conspired with Colando, Anthony Colando, Pugliani and
        Hall to fraudulently obtaining the Plaintiff's paper titles to his vehicular property.

239.    Without Creedon's complicity in their scheme to defraud the Plaintiff and convert his
        property, Colando, Anthony Colando, Pugliani and Hall could not have succeeded.

240.    Officer Creedon acted under color of law and by show of police force to seize and
        appropriate to his benefit the Plaintiff's paper titles.

241.    The wrongful seizure of Plaintiff's paper titles was part and parcel of the larger fraud
        perpetrated by Colando, Anthony Colando, Pugliani and Hall and affected the interstate
        commerce of the several States.

242.    Plaintiff has been injured by the Defendants in an amount in excess of  $300,000.00
        plus interest.


        WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess
of $300,000.00 plus reasonable attorney's fees, interest and costs.

## COUNT XIII—RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## 18 U.S.C. § 1962(c)

**The Scheme to Defraud the Plaintiff**

243. Plaintiff incorporates by reference the allegations in paragraphs 1 through 240 of this complaint as if fully set forth in this count.

244. From late October, 2005, through May, 2006, one or more of the following constituted an association or an association-in-fact and was therefore an enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c): Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M.

245. At all times relevant to this Complaint, the enterprise named above was engaged in and its activities affected the interstate commerce between the several states.

246. The enterprise named above had a purpose separate and distinct from the racketeering activity conducted by its controlling members, agents and affiliates.

247. Michael Colando is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and was a person who controlled, operated and managed Pugi Kia (the enterprise) as a 50% partner in the entity and D&M as a sole principal in the entity and possessed the ability to contractually bind Pugi Kia and D&M, draw money from Pugi Kia's and D&M's corporate accounts, direct the day-to-day business of Pugi Kia and D&M and conduct all other managerial functions.

248. Dominic Pugliani is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and was a person who controlled, operated and managed Pugi Kia (the enterprise) as a 50% partner in the entity and possessed the ability to contractually bind Pugi Kia, draw money from Pugi Kia's corporate accounts, direct the day-to-day business of Pugi Kia and conduct all other managerial functions.

249.    Larry Hall is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and was a person employed by Pugi Kia and D&M as a finance manager, accountant and sales manager of Pugi Kia and D&M who was authorized to sign documents on behalf of Pugi Kia and D&M and operated Pugi Kia and D&M at the direction of Colando and Pugliani.

250.    Officer John Creedon is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and was a person employed as a Director of the Tri-County Auto Theft Unit who, as a result of his position as a police officer, convinced Plaintiff he was authorized to take the titles to Plaintiff's cars at the direction of Colando, Anthony Colando, Pugliani and Hall.

251.    Officer Steven Stelter a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and was a Deputy Director in the DuPage County Auto Theft Task Force who, as a result of his position as a police officer, convinced Plaintiff he was authorized to take the titles to Plaintiff's cars at the direction of Colando, Anthony Colando, Pugliani and Hall.

252.    Dominic Mancini is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and was a person employed by Pugi Kia as an attorney of Pugi Kia, D&M, Dominic Pugliani, Anthony Colando, Michael Colando and Larry Hall and who was authorized to sign documents on behalf of Pugi Kia and D&M and worked at the direction of Colando, Anthony Colando, Pugliani and Hall.

253.    Anthony Colando is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and was a person employed by Pugi Kia as a sales agent and finance manager of Pugi Kia who was authorized to sign documents on behalf of Pugi Kia and sold cars at Pugi Kia at the direction of Colando, Pugliani and Hall.

254.  Pugi Kia is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

255.  D & M Motorsports is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

256.  VW Credit  is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

257.  KMA is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

258.  While controlling, managing and operating Pugi Kia and D&M through its corporate and organizational structures, the Defendants named in paragraphs 7 through 17 conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs, and conspired so to do, through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c), which included multiple instances of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 that resulted in the conversion of Plaintiff's property. These specific underlying acts of racketeering are described with greater particularity within Paragraphs 18 through 241, supra, and individually and collectively affected the commerce between the several States. Additionally, the acts of racketeering all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

259.  All of the predicate acts of racketeering as described in paragraphs 18 through 242, supra, constituted a pattern as described in 18 U.S.C. § 1962(c) because they: 1) sought a common purpose; 2) led to similar results; 3) included similar parties; 4) involved the same or similar agreements between the same parties; 5) were conducted with the same or similar modes of commission; and, in each case, 6) the Plaintiff was the intended target of each individual act of racketeering.

260.  The predicate acts of wire and mail fraud were related and extended over a significant span of time.  Beginning with the Plaintiff's interest in purchasing Pugi Kia, the

predicate acts were continuous, became Pugi Kia's and D&M's regular way of doing

business and would have continued unabated if not discovered by the Plaintiff.

261.    To unspecified amounts, the Plaintiff was directly and proximately damaged by the

pattern of racketeering activity conducted by the defendants through the enterprise.

Those damages include, but are not limited to: the purchase price of five vehicles, the

value of collaterized loans extended to Pugi Kia and D&M, and loss of a business

opportunity.

262.    The Plaintiff, under RICO, is entitled to recover threefold the damages sustained as well

as reasonable attorney's fees and costs of suit. Plaintiff has been injured by the

Defendants in an amount in excess of  $300,000.00 plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess

of $900,000.00 plus reasonable attorney's fees, interest and costs.


## COUNT XIV—Racketeer Influenced and Corrupt Organizations Act
## 18 U.S.C. § 1962(d)

**The Conspiracy to Defraud the Plaintiff**

263.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 260 of this

complaint as if fully set forth in this count.

264.    Defendants, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando,

Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M's salespeople, accountants

and attorneys conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct or

participate in the affairs of the enterprise referred to in paragraphs 241 through 260

above that consisted of a pattern of racketeering activity within the meaning of 18

U.S.C. § 1961(1)(B) and (5), that is, multiple acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

265.    These acts, as furthered and facilitated by Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M's salespeople, accountants and attorneys sales persons, accountants and attorneys, would satisfy all of the elements of a substantive RICO criminal offense if completed. Each of the persons affiliated with the enterprise adopted the goal of furthering and facilitating the criminal endeavor.

266.    The Plaintiff was injured in his business and property by reason of a violation of 18 U.S.C. § 1962(d) as committed by the defendants within the meaning of 18 U.S.C. § 1964(c). As a direct and proximate result of the activities of the persons affiliated with the enterprise, the Plaintiff's money and property were fraudulently converted from the Plaintiff and are due and owing to the Plaintiff and have been unlawfully withheld. The unlawful withholding of monies due and owing has directly and proximately caused the Plaintiff to incur substantial expense to obtain payment of the monies, to lose the use of his monies from late November, 2005, through the date of the complaint, and to forego other business opportunities during the period that these monies were unlawfully withheld.

267.    The Plaintiff, under RICO, is entitled to recover threefold the damages sustained as well as reasonable attorney's fees and costs of suit. Plaintiff has been injured by the Defendants in an amount in excess of $300,000.00 plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $900,000.00 plus reasonable attorney's fees, interest and costs.

## CLAIMS UNDER THE LAWS OF THE STATE OF ILLINOIS

## COUNT XV—FRAUDULENT MISREPRESENTATION

### The Financial Statements And Inventory Sheets

268.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 265 of this complaint as if fully set forth in this count.

269.    The financial statements and inventory sheets presented to the Plaintiff by Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M that detailed the assets and liabilities of Pugi Kia and the current automobile holdings of Pugi Kia listed a 2005 Kia Sorento known as 2005 Kia 9661.

270.    Because 2005 Kia 9661 had been sold and was not the property of Pugi Kia, these financial statements and inventory sheets contained false statements material to Plaintiff's decision to purchase Pugi Kia and his ability to accurately evaluate Pugi Kia.

271.    Because they were the sole controllers, managers, accountants and operators of Pugi Kia, Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M knew that its inventory sheets falsely contained 2005 Kia 9661.

272.    Because KMA and VW Credit lent money on the vehicle, issued rebates to Pugi Kia and were required to monitor the inventory of Pugi Kia they knew or should have known that Pugi Kia's inventory sheets falsely contained 2005 Kia 9661. KMA issued a $6,500 rebate for this vehicle to Pugi Kia. As such, they knew or should have known the car was sold back and thus any inventory including this vehicle was patently false. VW Credit had an obligation to insure that vehicle was on the Pugi Kia lot. VW Credit failed to fulfill that obligation. As such, they knew or should have known that Pugi Kia

was "out of trust" on the 2005 Kia 9661. Thus, VW Credit knew or should have known that any inventory including 2005 Kia 7059 was patently false.

273.    Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M were in active negotiations with the Plaintiff concerning the sale of Pugi Kia to the Plaintiff. The presentation of Pugi Kia's financial standing and inventory were intended to encourage the Plaintiff to act.

274.    The Plaintiff had no reason to doubt the veracity of the financial statements and inventory sheets and acted with justifiable reliance upon Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M's representations. Given the information contained in Pugi Kia's financial statements and inventory sheets, the Plaintiff took preliminary actions necessary to effectuate the purchase of Pugi Kia, including:

    a.    Around mid-to late-October, the Plaintiff met with James Szarek, John Franz, Donald Pesceone, and James Reilly, all agents of Kia Motors America, regarding an application necessary to own and manage a Kia sales franchise and operate under its franchise agreement.

    b.    In an agreement taking effect on October 22, 2005, the Plaintiff agreed to purchase Pugliani's interest in Pugi Kia for $240,000.00.  In consideration, the Plaintiff agreed to take 50% of Pugi Kia's assets and 50% of its liabilities.

    c.    Around November, 2005, the Plaintiff's visits to Chicago become more frequent and he began staying at Colando's home during those visits.  Work on the Plaintiff's acquisition of Colando's interest in Pugi Kia picked up pace.

    d.    The Plaintiff sought financing from Parish National Bank in Florida and continued working with Kia Motors America to execute an effective application to operate a Kia franchise.

e.   The Plaintiff loaned $20,500 on November 29, 2005 and $42,000 on December 22, 2005 to Pugi Kia, which Colando, Anthony Colando, Pugliani, Hall and Pugi Kia collateralized with vehicles owned by Pugi Kia.

f.   The Plaintiff placed five cars owned by his wholly-owned business, Certified Car Sales, on Pugi Kia's lot and placed them for sale on consignment.

g.   The Plaintiff opened an account at Oakbrook Bank under the name Pugi Kia, with Plaintiff as a signatory, and deposited $400,000.00 to have capital on hand to purchase cars while preparing to purchase Pugi Kia.

h.   The Plaintiff entered into a Consulting Agreement with Colando and Pugliani and Plaintiff assumed partial responsibility of the day to day operations of Pugi Kia.

275.   Through the issuance of the false itemization of used cars through a wire, the Plaintiff suffered financial damages including:

a.   Encouraged by the false belief of Pugi Kia's assets, the Plaintiff loaned first $20,500.00 and then $42,000.00 to Pugi Kia that was collateralized with Trust Agreements to cars that Colando, Anthony Colando, Pugliani and Hall later sold without reimbursing the Plaintiff;

b.   Encouraged the Plaintiff to loan money to Pugi Kia, which they never intended to re-pay, based on his understanding of the fraudulently aggrandized assets of Pugi Kia, which he believed he was soon to acquire, in share;

c.   Encouraged by the purported assets of Pugi Kia and at the suggestion of Colando, Anthony Colando, Pugliani and Hall, the Plaintiff agreed to place his vehicles[4] on Pugi Kia's lot to be sold on consignment.  These cars which were eventually

---

[4] Plaintiff's vehicles were owned through his wholly-owned firm, Certified Car Sales.  These vehicles include vehicles known as: 1) 2005 Kia 7152, 2) 2005 Pontiac 3477, 3) 2003 Chevy 4424, and 4) 2004 Kia 0125, and 5) 2004 Kia 8308 (MSO) purchased at Closed Kia Sale by Kramer with funds from the Oakbrook Bank Account under the name Pugi Kia).

converted by Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, D&M and Officers Creedon and Stelter, and their paper titles forged with the Plaintiff's signature and mailed to the Illinois Secretary of State;

d.    Encouraged the Plaintiff to understand a certain valuation of Pugi Kia, which led him to continue his negotiations with Colando, Anthony Colando, Pugliani and Hall and forego inquiries into other car dealerships seeking new investors, which caused him a lost chance at other business ventures.

e.    Encouraged the Plaintiff to enter into an Operating Agreement through which the Plaintiff helped manage the day-to-day affairs of Pugi Kia, with the expectation of direct compensation in the form of salary and to facilitate his eventual purchase of Pugi Kia.

276.    This fraud affected the interstate commerce between the several states.

277.    Plaintiff has been injured by the Defendants in an amount in excess of $300,000.00 plus interest.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $300,000.00 plus reasonable attorney's fees, interest and costs.

## COUNT XVI—FRAUDULENT MISREPRESENTATION

**The November 29, 2005 Trust Agreement Securing $20,500 Loan**

278.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 275 of this complaint as if fully set forth in this count.

279.    Between in or around October 2005 and May 2006, in the Northern District of Illinois and elsewhere, the defendants, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M did knowingly and intentionally devise and conspire to devise a material scheme and plan to defraud, and to obtain money and property by means of materially false and fraudulent promises, representations and statements, well knowing that the promises, representations and statements were materially false when made.  That scheme involved, in part, a fraudulent November 29, 2005 Trust Receipt that was presented to the Plaintiff.

280.    Colando, Anthony Colando, Pugliani and Hall requested that the Plaintiff loan Pugi Kia operating capital as a show of his good faith interest in purchasing Pugi Kia and its assets and liabilities.

281.    Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M presented the Plaintiff with a trust agreement that secured the Plaintiff's loan of $20,500 with a 2005 Kia Sorento known as 2005 Kia 9661.

282.    On November 29, 2005, Colando signed Trust Receipt agreement securing the Plaintiff's loan of $20,500 to Pugi Kia that listed 2005 Kia 9661 as collateral.

283.    On December 3, 2005, Pugi Kia sold 2005 Kia 9661 to Josephine Hatch-Skipper.

284.    The Plaintiff was not told of the sale of 2005 Kia 9661 for which he held a Trust Receipt guaranteeing his interest in the proceeds of 2005 Kia 9661.

285.    To perfect the fraudulent sale of 2005 Kia 9661 to Josephine Hatch-Skipper, Colando, Anthony Colando, Pugliani and Hall mailed or caused to be mailed the title of 2005 Kia 9661 to the Illinois Secretary of State for delivery in the Northern District of Illinois.

286.  At the end of December, the Plaintiff became aware that 2005 Kia 9661 had been sold and his Trust Receipt had not been honored. At that time, Michael Colando, Anthony Colando, Dominic Pugliani and Larry Hall made assurances to Plaintiff that the price of the Pugi Kia dealership would be reduced to reflect his interest in 2005 Kia 9661.

287.  The collateralization of 2005 Kia 9661 was a material fact concerning the Plaintiff's decision to loan $20,500 to Pugi Kia.  This statement was patently false.

288.  Continuing the multiple frauds perpetrated against the Plaintiff and as sole controllers, operators and managers of Pugi Kia, Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M knew the Trust Agreement's purported collateralization was false.

289.  Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M issued the Trust Agreement to the Plaintiff to encourage him to loan Pugi Kia $20,500.

290.  The Plaintiff's reliance upon the Trust Agreement as an essential component of his agreement to loan $20,500 to Pugi Kia was reasonable and justified.

291.  As a result of the materially false statement issued by Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M the Plaintiff suffered damages including:

    a.  Loss of the $20,500 loaned to Pugi Kia;

    b.  Loss of the opportunity to invest his $20,500 elsewhere;

    c.  Encouraged the Plaintiff to continue and advance his interest in purchasing Pugi Kia from Colando, Anthony Colando, Pugliani and Hall.

292.  The fraud concerning 2005 Kia 9661 affected the interstate commerce between the several States.

293.  Plaintiff has been injured by the Defendants in an amount in excess of  $20,500.00 plus interest.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $20,500.00 plus reasonable attorney's fees, interest and costs.

## COUNT XVII—BREACH OF CONTRACT

**The November 29, 2005 Trust Agreement Securing $20,500 Loan**

294.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 291 of this complaint as if fully set forth in this count.

295.    A contract was drawn between Colando, Anthony Colando, Pugliani and Hall as managers of Pugi Kia, and D & M and the Plaintiff in which the Plaintiff agreed to loan $20,500 to Pugi Kia and D & M in exchange for a collateral interest in the proceeds of the sale of a 2005 Kia Sorento known as 2005 Kia 9661.

296.    The Plaintiff performed his obligation under the contract, remitting $20,500 to Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M on November 29, 2005.

297.    Upon the sale of 2005 Kia 9661, Defendants Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M were in breach of contract.  The proceeds earned from the sale of 2005 Kia 9661 were not remitted, in whole or in part, to the Plaintiff, but rather held and maintained for the benefit of Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M.

298.    The Plaintiff's reliance upon the Trust Agreement as an essential component of his agreement to loan $20,500 to Pugi Kia and D & M was reasonable and justified.

299.    The Plaintiff has suffered damages due to this breach that included: 1) the loan of $20,500, 2) the loss of business opportunity and investment of his $20,500 in alternative ventures, 3) the inability to move the business of Certified Car Sales into the Greater Chicago Area, and 4) the loss of business opportunity to purchase Pugi Kia from

Colando, Anthony Colando, Pugliani and Hall and the investment of time and capital

necessary to perform due diligence on such a purchase.

300. Plaintiff has been injured by the Defendants in an amount in excess of $20,500.00 plus

interest.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess

of $20,500.00 plus reasonable attorney's fees, interest and costs.

## COUNT XVIII—FRAUDULENT MISREPRESENTATION

**The December 22, 2005 Trust Agreement Securing $42,000 Loan**

301. Plaintiff incorporates by reference the allegations in paragraphs 1 through 295 of this

complaint as if fully set forth in this count.

302. Between in or around October 2005 and May 2006, in the Northern District of Illinois

and elsewhere, the defendants, Michael Colando, Dominic Pugliani, Larry Hall,

Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M did

knowingly and intentionally devise and conspire to devise a material scheme and plan

to defraud, and to obtain money and property by means of materially false and

fraudulent promises, representations and statements, well knowing that the promises,

representations and statements were materially false when made. That scheme

involved, in part, a fraudulent December 22, 2005 Trust Receipt that was presented to

the Plaintiff.

303. Colando, Anthony Colando, Pugliani and Hall requested that the Plaintiff loan Pugi Kia

operating capital as a show of his good faith interest in purchasing Pugi Kia and its

assets and liabilities.

304.    Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M presented the Plaintiff with a Trust Agreement that secured the Plaintiff's loan of $42,000, in part, with a 2001 Ford F150 Pickup known as 2001 Ford 7084.

305.    On December 22, 2005, Colando signed Trust Receipt agreement securing the Plaintiff's loan of $42,000 to Pugi Kia that listed a 2001 Ford F150 Pickup known as 2001 Ford 7084 as serving as collateral for $12,000 of that loan.

306.    The December 22, 2005 Trust Receipt was presented to Plaintiff.

307.    On January 26, 2006, 2001 Ford 7084 was sold through the Greater Chicago Auto Auction to Bob Martin Auto Sales for $14,000.00.

308.    Subtracting Greater Chicago Auto Auction's fee, Pugi Kia, through Colando, Anthony Colando, Pugliani and Hall, received $13,750.00 for the sale of 2001 Ford 7084.

309.    The Plaintiff was not informed of the sale of 2001 Ford 7084 and the proceeds of such sale were not remitted to the Plaintiff per the terms of the Trust Receipt agreement, thus, depriving Plaintiff of its interest in 2001 Ford 7084.

310.    To perfect the fraudulent sale of 2001 Ford 7084 to Bob Martin, Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M mailed or caused to be mailed the title of 2001 Ford 7084 to the Illinois Secretary of State for delivery in the Northern District of Illinois.

311.    At some point thereafter, the Plaintiff became aware that 2001 Ford 7084 had been sold and his Trust Receipt had not been honored. At that time, Michael Colando, Anthony Colando, Dominic Pugliani and Larry Hall made assurances to Plaintiff that the price of the Pugi Kia dealership would be reduced to reflect his interest in 2001 Ford 7084.

312.    The collateralization of 2001 Ford 7084 was a material fact concerning the Plaintiff's decision to loan $42,000 to Pugi Kia and D & M.  This statement was patently false.

313.    Continuing the multiple frauds perpetrated against the Plaintiff and as sole controllers, operators and managers of Pugi Kia, Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M knew the Trust Agreement's purported collateralization was false.

314.    Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M issued the Trust Agreement to the Plaintiff to encourage him to loan Pugi Kia and D & M $42,000.

315.    The Plaintiff's reliance upon the Trust Agreement as an essential component of his agreement to loan $42,000 to Pugi Kia and D & M was reasonable and justified.

316.    As a result of the materially false statement issued by Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M, the Plaintiff suffered damages including:

    a.    Loss of the $42,000 loaned to Pugi Kia and D & M;

    b.    Loss of the opportunity to invest his $42,000 elsewhere;

    c.    Encouraged the Plaintiff to continue and advance his interest in purchasing Pugi Kia from Colando, Anthony Colando, Pugliani and Hall.

317.    The fraud concerning 2001 Ford 7084 affected the interstate commerce between the several States.

318.    Plaintiff has been injured by the Defendants in an amount in excess of  $42,000.00 plus interest.


    WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $42,000.00 plus reasonable attorney's fees, interest and costs.

## COUNT XIX—BREACH OF CONTRACT

**The December 22, 2005 Trust Agreement Securing $42,000 Loan**

319.   Plaintiff incorporates by reference the allegations in paragraphs 1 through 313 of this complaint as if fully set forth in this count.

320.   A contract was drawn between Colando, Anthony Colando, Pugliani and Hall as managers of Pugi Kia and D & M and the Plaintiff in which the Plaintiff agreed to loan $42,000 to Pugi Kia and D & M in exchange for a collateral interest in $12,000 of the proceeds of the sale of a 2001 Ford F150 Pickup known as 2001 Ford 7084.

321.   The Plaintiff performed his obligation under the contract, remitting $42,000 to Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M on December 22, 2005.

322.   Upon the sale of 2001 Ford 7084, Defendants Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M were in breach of contract.  The proceeds earned from the sale of 2001 Ford 7084 were not remitted, in whole or in part, to the Plaintiff, but rather held and maintained for the benefit of Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M.

323.   The Plaintiff's reliance upon the Trust Agreement as an essential component of his agreement to loan $42,000 to Pugi Kia and D & M was reasonable and justified.

324.   The Plaintiff has suffered damages due to this breach that included: 1) the loan of $42,000, 2) the loss of business opportunity and investment of his $42,000 in alternative ventures, 3) the inability to move the business of Certified Car Sales into the Greater Chicago Area, and 4) the loss of business opportunity to purchase Pugi Kia from Colando, Anthony Colando, Pugliani and Hall and the investment of time and capital necessary to perform due diligence on such a purchase.

325.    Plaintiff has been injured by the Defendants in an amount in excess of  $42,000.00 plus

interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess

of $42,000.00 plus reasonable attorney's fees, interest and costs.


## COUNT XX—FRAUDULENT MISREPRESENTATION

**The 2005 Kia Rio (STK# KP 221) Known As 2005 Kia 7152**

326.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 324 of this

complaint as if fully set forth in this count.

327.    Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M made materially

fraudulent statements concerning their intent to remit the proceeds of the sale of 2005

Kia 7152 to the Plaintiff when the consignment sale occurred.

328.    As the sole owners, operators, managers and accountants of Pugi Kia, and with

knowledge of the deepening financial straights of Pugi Kia, Colando, Anthony Colando,

Pugliani and Hall knew these statements to be false.

329.    Because of the ongoing negotiations concerning the sale of Pugi Kia to the Plaintiff and

Colando, Anthony Colando, Pugliani and Hall's interest in maintaining 2005 Kia 7152

on Pugi Kia's lot, Colando, Anthony Colando, Pugliani and Hall's fraudulent statements

were intended to encourage the Plaintiff to act.

330.    The Plaintiff justifiably relied on these material statements and would not have placed

2005 Kia 7152 on Pugi Kia's lot in the absence of Colando, Anthony Colando, Pugliani

and Hall's representation that the sale of 2005 Kia 7152 was on the basis of

consignment.

331.    Colando, Anthony Colando, Pugliani and Hall's fraudulent statements caused Plaintiff to place 2005 Kia 7152 on Pugi Kia's lots, which, in turn, directly caused the Plaintiff to suffer damages, including, but not limited to, the conversion of 2005 Kia 7152 from his lawful possession and ownership to Colando, Anthony Colando, Pugliani, and Pugi Kia's unlawful benefit.

332.    Plaintiff has been injured by the Defendants in an amount in excess of the sale price of 2005 Kia 7152, plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $300,000.00 plus reasonable attorney's fees, interest and costs.

### COUNT XXI—CONVERSION

**The 2005 Kia Rio (STK# KP 221) Known As 2005 Kia 7152**

333.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 331 of this complaint as if fully set forth in this count.

334.    The Plaintiff has a right to possess 2005 Kia 7152 or its proceeds from consignment sale from Pugi Kia's lot.

335.    Because he is the lawful holder of title to 2005 Kia 7152, the Plaintiff has an absolute and unconditional right to immediately possess 2005 Kia 7152 or its proceeds from consignment sale from Pugi Kia's lot.

336.    Plaintiff demanded the rightful return of 2005 Kia 7152, 2005 Kia 7152's paper title and the proceeds from the consignment sale of 2005 Kia 7152.

337.    Defendants Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M unlawfully and without authorization assumed control, dominion, or ownership over 2005 Kia 7152 through

acts of fraud and forgery, including not only the forgery of Plaintiff's name on the title, but also an additional forgery on an Affirmation of Correction, dated January 10, 2006.

338.    Plaintiff has been injured by the Defendants in an amount in excess of the sale price of 2005 Kia 7152, plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $300,000.00 plus reasonable attorney's fees, interest and costs.


**COUNT XXII—TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY**

**The 2005 Kia Rio (STK# KP 221) Known As 2005 Kia 7152**

339.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 337 of this complaint as if fully set forth in this count.

340.    On May 4, 2006, the Plaintiff placed a 2005 Kia Rio known as 2005 Kia 7152 for sale by auction at the Greater Chicago Auto Auction and expected to earn the proceeds of that sale.

341.    Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M knew that the Plaintiff owned 2005 Kia 7152 and that the Plaintiff planned to auction 2005 Kia 7152 at the Greater Chicago Auto Auction.

342.    Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M intentionally and maliciously reported 2005 Kia 7152 as stolen, which Defendants knew would frustrate or terminate the Plaintiff's ability to auction 2005 Kia 7152.

343.    The Plaintiff was financially damaged by the inability to auction 2005 Kia 7152, which

includes the direct cash damages and the costs appurtenant to deliver the car to the

Greater Chicago Auto Auction and access that forum.

344.    Additionally, the Plaintiff suffered damages to his broader business interests because

the commotion at the Greater Chicago Auto Auction caused by Michael Fogerty's and

Officer Creedon's statements concerning the Plaintiff's theft of 2005 Kia 7152 caused a

loss of reputation and decreased the Plaintiff's ability to conduct similar transactions.

Plaintiff has been injured by the Defendants in an amount in of $300,000.00 plus

reasonable attorney's fees, interest and costs.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess

of $300,000.00 plus reasonable attorney's fees, interest and costs.


## COUNT XXIII—BREACH OF CONTRACT

**The Consignment Agreement Concerning A 2005 Kia Rio (STK# KP 221) Known As 2005 Kia 7152**

345.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 342 of this

complaint as if fully set forth in this count.

346.    An oral contract was drawn between Colando, Anthony Colando, Pugliani and Hall as

managers of Pugi Kia and the Plaintiff in which the Plaintiff agreed to place 2005 Kia

7152 on Pugi Kia's lot and hold it for sale on consignment and Colando, Anthony

Colando, Pugliani and Hall agreed to allow the Plaintiff the use of their lot to conduct

such sale.

347.    This contract was to Michael Colando, Dominic Pugliani, Larry Hall, Anthony

Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M's legal benefit

because the placement of 2005 Kia 7152 on Pugi Kia's lot impressed the desirability of Pugi Kia's assets upon Pugi Kia's potential customers and increased the apparent inventory of Pugi Kia.  Additionally, Colando, Anthony Colando, Pugliani and Hall legally benefited from the placement of 2005 Pugi Kia 7152 on Pugi Kia's lot through the understanding that such placement brought Defendants closer to closing the sale of Pugi Kia to the Plaintiff.

348.    The contract was to the Plaintiff's legal benefit because he 1) expected to receive proceeds from the sale of 2005 Kia 7152, 2) offered the opportunity to introduce the business of Certified Car Sales, his wholly owned business, into new markets, and 3) allowed him to display a continuing good faith interest in purchasing Pugi Kia from Colando, Anthony Colando, Pugliani and Hall.

349.    The Plaintiff performed his obligation under the contract. 2005 Kia 7152 was placed on Pugi Kia's lot and held for sale to the public on consignment.  2005 Kia 7152 was sold under the terms of the agreement on July 8, 2006 for monies to Rino Nardo.

350.    Upon the sale of 2005 Kia 7152, Defendants were in breach of contract.  The proceeds earned from the sale of 2005 Kia 7152 were not remitted, in whole or in part, to the Plaintiff, but rather held and maintained for the benefit of Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M.

351.    The Plaintiff has suffered damages due to this breach that included: 1) the purchase price of 2005 Kia 7152, 2) the loss of business opportunity and investment of the proceeds of 2005 Kia 7152 in subsequent automobile purchases, 3) the inability to move the business of Certified Car Sales into the Greater Chicago Area, and 4) the loss of business opportunity to purchase Pugi Kia from Colando, Anthony Colando, Pugliani

and Hall and the investment of time and capital necessary to perform due diligence on such a purchase.

352. Plaintiff has been injured by the Defendants in an amount in excess of the sale price of 2005 Kia 7152, plus interest.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $300,000.00 plus reasonable attorney's fees, interest and costs.

## COUNT XXIV—PROMISSORY ESTOPPEL

**The 2005 Kia Rio (STK# KP 221) Known As 2005 Kia 7152**

353. Plaintiff incorporates by reference the allegations in paragraphs 1 through 350 of this complaint as if fully set forth in this count.

354. Defendants unambiguously promised that the sale of 2005 Kia 7152 from Pugi Kia's lot was to be on the basis of consignment with the proceeds of the sale of 2005 Kia 7152 to be remitted to the Plaintiff. Further, Defendants recognized that the titled owner of 2005 Kia 7152 was Certified Car Sales, the Plaintiff's wholly-owned business.

355. The Plaintiff relied on this promise and would not have placed 2005 Kia 7152 on Pugi Kia's lot to gratuitously benefit Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M.

356. The Plaintiff's reliance on Defendant's promise to remit the proceeds of the consigned sale of 2005 Kia 7152 was expected and foreseeable by Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M.

357. The Plaintiff's reliance was to his determent in that the 2005 Kia 7152 was converted from his ownership to wrongfully benefit Michael Colando, Dominic Pugliani, Larry

74

Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M. Additionally, the Plaintiff's reliance on the promise caused him to forgo the opportunity to place 2005 Kia 7152 for sale through other forums.

358.    Plaintiff has been injured by the Defendants in an amount in excess of the sale price of 2005 Kia 7152, plus interest.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $300,000.00 plus reasonable attorney's fees, interest and costs.

### COUNT XXV—FRAUDULENT MISREPRESENTATION

**The Kia Rio 4-Door (STK# KP 191) Known As 2004 Kia 0125**

359.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 357 of this complaint as if fully set forth in this count.

360.    Colando, Anthony Colando, Pugliani and Hall made materially fraudulent statements concerning their intent to remit the proceeds of the sale of 2004 Kia 0125 to the Plaintiff when the consignment sale occurred.

361.    As the sole owners, operators, managers and accountants of Pugi Kia, and with knowledge of the deepening financial straights of Pugi Kia, Colando, Anthony Colando, Pugliani and Hall knew these statements to be false.

362.    Because of the ongoing negotiations concerning the sale of Pugi Kia to the Plaintiff and Colando, Anthony Colando, Pugliani and Hall's interest in maintaining 2004 Kia 0125 on Pugi Kia's lot, Colando, Anthony Colando, Pugliani and Hall's fraudulent statements were intended to encourage the Plaintiff to act.

363.    The Plaintiff justifiably relied on these material statements and would not have placed 2004 Kia 0125 on Pugi Kia's lot in the absence of Colando, Anthony Colando, Pugliani

and Hall's representation that the sale of 2004 Kia 0125 was on the basis of consignment.

364.    Colando, Anthony Colando, Pugliani and Hall's fraudulent statements caused Plaintiff to place 2004 Kia 0125 on Pugi Kia's lots, which, in turn, directly caused the Plaintiff to suffer damages, including, but not limited to, the conversion of 2004 Kia 0125 from his lawful possession and ownership to Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M's unlawful benefit.

365.    Plaintiff has been injured by the Defendants in an amount in excess of $9,995.00, plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess $9,995.00 plus reasonable attorney's fees, interest and costs.


## COUNT XXVI—CONVERSION

**The Kia Rio 4-Door (STK# KP 191) Known As 2004 Kia 0125**

366.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 363 of this complaint as if fully set forth in this count.

367.    The Plaintiff has a right to possess 2004 Kia 0125 or its proceeds from consignment sale from Pugi Kia's lot.

368.    Because he is the lawful holder of title to 2004 Kia 0125, the Plaintiff has an absolute and unconditional right to immediately possess 2004 Kia 0125 or its proceeds from consignment sale from Pugi Kia's lot.

369.    Plaintiff demanded the rightful return of 2004 Kia 0125, 2004 Kia 0125's paper title and the proceeds from the consignment sale of 2004 Kia 0125.

370.    Defendant's Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M unlawfully and without authorization assumed control, dominion, or ownership over 2004 Kia 0125 through acts of fraud and forgery.

371.    Plaintiff has been injured by the Defendants in an amount in excess of  $$9,995.00 plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $$9,995.00 plus reasonable attorney's fees, interest and costs.


## COUNT XXVII—TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

**The Kia Rio 4-Door (STK# KP 191)  Known As 2004 Kia 0125**

372.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 369 of this complaint as if fully set forth in this count.

373.    On November 30, 2005, the Plaintiff bought the 2005 Kia Rio 4-Door known as 2004 Kia 0125 in Kansas City, Moussori for $7,300 and placed it for sale on Pugi Kia's lot on the basis of consignment and expected to earn the proceeds of that sale. Defendants sold the 2004 Kia 0125 for $9,995 on December 23, 2005 to Mary Trucksa and did not remit the proceeds to Plaintiff, thus depriving Plaintiff of its interest in 2004 Kia 0125.

374.    Defendants knew that the Plaintiff owned 2004 Kia 0125 and that the Plaintiff planned to benefit from the proceeds of the consignment sale of 2004 Kia 0125 from Pugi Kia's lot.

375.    Defendants sold 2004 Kia 0125 from Pugi Kia's lot, and in conjunction with reporting 2005 Kia 7125 as stolen and through frauds and forgeries intentionally and maliciously retained the proceeds of the sale of 2004 Kia 0125. Defendants knew that retaining the proceeds from the sale of 2004 Kia 0125 would frustrate or terminate the Plaintiff's ability to benefit from the consignment sale of 2004 Kia 0125.

376.    The Plaintiff was financially damaged by the inability to sell 2004 Kia 0125 on consignment, which includes the direct cash damages and the tangential costs incurred by the Plaintiff in attempting to complete the consignment sale as planned, loss of alternative business opportunity and the inability to invest the expected proceeds of the consignment sale on business expansion.

377.    Plaintiff has been injured by the Defendants in an amount in excess of $9,995.00 plus interest.


       WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $9,995.00 plus reasonable attorney's fees, interest and costs.


## COUNT XXVIII—BREACH OF CONTRACT

**The Consignment Agreement Concerning The Kia Rio 4-Door (STK# KP 191) Known As 2004 Kia 0125**

378.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 375 of this complaint as if fully set forth in this count.

379.    An oral contract was drawn between Colando, Anthony Colando, Pugliani and Hall as managers of Pugi Kia and the Plaintiff in which the Plaintiff agreed to place 2004 Kia 0125 on Pugi Kia's lot and hold it for sale on consignment and Defendants agreed to allow the Plaintiff the use of their lot to conduct such sale.

380.    This contract was to Defendants' legal benefit because the placement of 2004 Kia 0125 on Pugi Kia's lot impressed the desirability of Pugi Kia's assets upon Pugi Kia's potential customers and increased the apparent inventory of Pugi Kia. Additionally, Defendants legally benefited from the placement of 2004 Kia 0125 on Pugi Kia's lot through the understanding that such placement brought Defendants closer to closing the sale of Pugi Kia to the Plaintiff.

381.    The contract was to the Plaintiff's legal benefit because he 1) expected to receive proceeds from the sale of 2004 Kia 0125, 2) offered the opportunity to introduce the business of Certified Car Sales, his wholly owned business, into new markets, and 3) allowed him to display a continuing good faith interest in purchasing Pugi Kia from Defendants.

382.    The Plaintiff performed his obligation under the contract. 2004 Kia 0125 was placed on Pugi Kia's lot and held for sale to the public on consignment. 2004 Kia 0125 was sold under the terms of the agreement on or around December 22, 2005 for $9,995 to Mary Trucksa.

383.    Upon the sale of 2004 Kia 0125, Defendants were in breach of contract. The proceeds earned from the sale of 2004 Kia 0125 were not remitted, in whole or in part, to the Plaintiff, but rather held and maintained for the benefit of Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M

384.    The Plaintiff has suffered damages due to this breach that included: 1) the purchase price of 2004 Kia 0125, 2) the loss of business opportunity and investment of the proceeds of 2004 Kia 0125 in subsequent automobile purchases, 3) the inability to move the business of Certified Car Sales into the Greater Chicago Area, and 4) the loss of

business opportunity to purchase Pugi Kia from Colando and Pugliani and the investment of time and capital necessary to perform due diligence on such a purchase.

385.    Plaintiff has been injured by the Defendants in an amount in excess of $9,995.00 plus interest.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $9,995.00 plus reasonable attorney's fees, interest and costs.

## COUNT XXIX—PROMISSORY ESTOPPEL

### The Kia Rio 4-Door Known As 2004 Kia 0125

386.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 383 of this complaint as if fully set forth in this count.

387.    Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M unambiguously promised that the sale of 2004 Kia 0125 from Pugi Kia's lot was to be on the basis of consignment with the proceeds of the sale of 2004 Kia 0125 to be remitted to the Plaintiff.  Further, Defendants recognized that the titled owner of 2004 Kia 0125 was Certified Car Sales, the Plaintiff's wholly-owned business.

388.    The Plaintiff relied on this promise and would not have placed 2004 Kia 0125 on Pugi Kia's lot to gratuitously benefit Defendants.

389.    The Plaintiff's reliance on Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M's promise to remit the proceeds of the consigned sale of 2004 Kia 0125 was expected and foreseeable by Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M.

390.    The Plaintiff's reliance was to his determent in that the 2004 Kia 0125 was converted

from his ownership to wrongfully benefit Michael Colando, Dominic Pugliani, Larry

Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M.

Additionally, the Plaintiff's reliance on the promise caused him to forgo the opportunity

to place 2004 Kia 0125 for sale through other forums.

391.    Plaintiff has been injured by the Defendants in an amount in excess of $9,995.00 plus

interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess

of $9,995.00 plus reasonable attorney's fees, interest and costs.


## COUNT XXX—FRAUDULENT MISREPRESENTATION

**The 2005 Pontiac Sunfire Coupe (STK# KP 218) Known As 2005 Pontiac 3477**

392.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 389 of this

complaint as if fully set forth in this count.

393.    Colando, Anthony Colando, Pugliani and Hall made materially fraudulent statements

concerning their intent to remit the proceeds of the sale of 2005 Pontiac 3477 to the

Plaintiff when the consignment sale occurred.

394.    As the sole owners, operators, managers and accountants of Pugi Kia, and with

knowledge of the deepening financial straights of Pugi Kia, Colando, Anthony Colando,

Pugliani and Hall knew these statements to be false.

395.    Because of the ongoing negotiations concerning the sale of Pugi Kia to the Plaintiff and

Defendants' interest in maintaining 2005 Pontiac 3477 on Pugi Kia's lot, Colando,

Anthony Colando, Pugliani and Hall's fraudulent statements were intended to encourage the Plaintiff to act.

396.    The Plaintiff justifiably relied on these material statements and would not have placed 2005 Pontiac 3477 on Pugi Kia's lot in the absence of Defendnats' representation that the sale of 2005 Pontiac 3477 was on the basis of consignment.

397.    Defendants' fraudulent statements caused Plaintiff to place 2005 Pontiac 3477 on Pugi Kia's lots, which, in turn, directly caused the Plaintiff to suffer damages, including, but not limited to, the conversion of 2005 Pontiac 3477 from his lawful possession and ownership to Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M's unlawful benefit.

398.    Plaintiff has been injured by the Defendants in an amount in excess of $15,700, plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $15,700.00 plus reasonable attorney's fees, interest and costs.


## COUNT XXXI—CONVERSION

**The 2005 Pontiac Sunfire Coupe (STK# KP 218) Known As 2005 Pontiac 3477**

399.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 396 of this complaint as if fully set forth in this count.

400.    The Plaintiff has a right to possess 2005 Pontiac 3477 or its proceeds from consignment sale from Pugi Kia's lot.

401.　Because he is the lawful holder of title to 2005 Pontiac 3477, the Plaintiff has an absolute and unconditional right to immediately possess 2005 Pontiac 3477 or its proceeds from consignment sale from Pugi Kia's lot.

402.　Plaintiff demanded the rightful return of 2005 Pontiac 3477, 2005 Pontiac 3477's paper title and the proceeds from the consignment sale of 2005 Pontiac 3477.

403.　Defendants Colando, Anthony Colando, Pugliani, Hall, Creedon, Stelter, Pugi Kia and D & M unlawfully and without authorization assumed control, dominion, or ownership over 2005 Pontiac 3477 through acts of fraud and forgery.

404.　Plaintiff has been injured by the Defendants in an amount in excess of the $15,700, plus interest.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $15,700.00 plus reasonable attorney's fees, interest and costs.

### COUNT XXXII—TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

**The 2005 Pontiac Sunfire Coupe Rio (STK# KP 218) Known As 2005 Pontiac 3477**

405.　Plaintiff incorporates by reference the allegations in paragraphs 1 through 402 of this complaint as if fully set forth in this count.

406.　On December 28, 3005, the Plaintiff purchased a 2005 Pontiac Sunfire Coupe known as 2005 Pontiac 3477 for $9,550 and placed it for sale on Pugi Kia's lot on the basis of consignment and expected to earn the proceeds of that sale.

407.　Defendants knew that the Plaintiff owned 2005 Pontiac 3477 and that the Plaintiff planned to benefit from the proceeds of the consignment sale of 2005 Pontiac 3477 from Pugi Kia's lot.

408.   Defendants sold 2005 Pontiac 3477 from Pugi Kia's lot for $15,700, and in conjunction with reporting 2005 Kia 7125 as stolen and through frauds and forgeries intentionally and maliciously retained the proceeds of the sale of 2005 Pontiac 3477.  Defendants knew that retaining the proceeds from the sale of 2005 Pontiac 3477 would frustrate or terminate the Plaintiff's ability to benefit from the consignment sale of 2005 Pontiac 3477.

409.   The Plaintiff was financially damaged by the inability to sell 2005 Pontiac 3477 on consignment, which includes the direct cash damages and the tangential costs incurred by the Plaintiff in attempting to complete the consignment sale as planned, loss of alternative business opportunity and the inability to invest the expected proceeds of the consignment sale on business expansion.

410.   Plaintiff has been injured by the Defendants in an amount in excess $15,700, plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $15,700.00 plus reasonable attorney's fees, interest and costs.


## COUNT  XXXIII—BREACH OF CONTRACT

**The Consignment Agreement Concerning A 2005 Pontiac Sunfire Coupe (STK# KP 218) Known As 2005 Pontiac 3477**

411.   Plaintiff incorporates by reference the allegations in paragraphs 1 through 408 of this complaint as if fully set forth in this count.

412.   An oral contract was drawn between Colando, Anthony Colando, Pugliani and Hall as managers of Pugi Kia and D & M and the Plaintiff in which the Plaintiff agreed to place

2005 Pontiac 3477 on Pugi Kia's lot and hold it for sale on consignment and Defendants agreed to allow the Plaintiff the use of their lot to conduct such sale.

413. This contract was to Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M's legal benefit because the placement of 2005 Pontiac 3477 on Pugi Kia's lot impressed the desirability of Pugi Kia's assets upon Pugi Kia's potential customers and increased the apparent inventory of Pugi Kia.  Additionally, Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M legally benefited from the placement of 2005 Pontiac 3477 on Pugi Kia's lot through the understanding that such placement brought Defendants closer to closing the sale of Pugi Kia to the Plaintiff.

414. The contract was to the Plaintiff's legal benefit because he 1) expected to receive proceeds from the sale of 2005 Pontiac 3477, 2) offered the opportunity to introduce the business of Certified Car Sales, his wholly owned business, into new markets, and 3) allowed him to display a continuing good faith interest in purchasing Pugi Kia from Colando, Anthony Colando, Pugliani and Hall.

415. The Plaintiff performed his obligation under the contract.  On or around December 28, 2005, Pontiac 3477 was placed on Pugi Kia's lot and held for sale to the public on consignment. 2005 Pontiac 3477 was sold under the terms of the agreement on December 30, 2005 for $15,700 to Theresa Copack.

416. Upon the sale of 2005 Pontiac 3477, Defendants were in breach of contract.  The proceeds earned from the sale of 2005 Pontiac 3477 were not remitted, in whole or in part, to the Plaintiff, but rather held and maintained for the benefit of Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M.

417.   The Plaintiff has suffered damages due to this breach that included: 1) the purchase price of 2005 Pontiac 3477, 2) the loss of business opportunity and investment of the proceeds of 2005 Pontiac 3477 in subsequent automobile purchases, 3) the inability to move the business of Certified Car Sales into the Greater Chicago Area, and 4) the loss of business opportunity to purchase Pugi Kia from Colando and Pugliani and the investment of time and capital necessary to perform due diligence on such a purchase.

418.   Plaintiff has been injured by the Defendants in an amount in excess of $15,700.00 plus interest.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $15,700.00 plus reasonable attorney's fees, interest and costs.

## COUNT XXXIV—PROMISSORY ESTOPPEL

**The 2005 Pontiac Sunfire Coupe(Stk# Kp 218) Known As 2005 Pontiac 3477**

419.   Plaintiff incorporates by reference the allegations in paragraphs 1 through 416 of this complaint as if fully set forth in this count.

420.   Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M unambiguously promised that the sale of 2005 Pontiac 3477 from Pugi Kia's lot was to be on the basis of consignment with the proceeds of the sale of 2005 Pontiac 3477 to be remitted to the Plaintiff.  Further, Defendants recognized that the titled owner of 2005 Pontiac 3477 was Certified Car Sales, the Plaintiff's wholly-owned business.

421.   The Plaintiff relied on this promise and would not have placed 2005 Pontiac 3477 on Pugi Kia's lot to gratuitously benefit Defendants.

422.   The Plaintiff's reliance on Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M's promise to remit the proceeds of the consigned sale of 2005 Pontiac 3477 was expected and foreseeable by Defendants.

423.   The Plaintiff's reliance was to his determent in that the 2005 Pontiac 3477 was converted from his ownership to wrongfully benefit Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M.  Additionally, the Plaintiff's reliance on the promise caused him to forgo the opportunity to place 2005 Pontiac 3477 for sale through other forums.

424.   Plaintiff has been injured by the Defendants in an amount in excess of $15,700.00 plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $15,700.00 plus reasonable attorney's fees, interest and costs.


### COUNT XXXV—FRAUDULENT MISREPRESENTATION

**A 2003 Chevy Silverado C1500 Extended (STK# KP 220) Known As 2003 Chevy 4424**

425.   Plaintiff incorporates by reference the allegations in paragraphs 1 through 422 of this complaint as if fully set forth in this count.

426.   Colando, Anthony Colando, Pugliani and Hall made materially fraudulent statements concerning their intent to remit the proceeds of the sale of 2003 Chevy 4424 to the Plaintiff when the consignment sale occurred.

427.   As the sole owners, operators, managers and accountants of Pugi Kia, and with knowledge of the deepening financial straights of Pugi Kia, Colando, Anthony Colando, Pugliani and Hall knew these statements to be false.

428.    Because of the ongoing negotiations concerning the sale of Pugi Kia to the Plaintiff and Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M's interest in maintaining 2003 Chevy 4424 on Pugi Kia's lot, Colando, Anthony Colando, Pugliani and Hall's fraudulent statements were intended to encourage the Plaintiff to act.

429.    The Plaintiff justifiably relied on these material statements and would not have placed 2003 Chevy 4424 on Pugi Kia's lot in the absence of Colando, Anthony Colando, Pugliani and Hall's representation that the sale of 2003 Chevy 4424 was on the basis of consignment.

430.    Colando, Anthony Colando, Pugliani and Hall's fraudulent statements caused Plaintiff to place 2003 Chevy 4424 on Pugi Kia's lots, which, in turn, directly caused the Plaintiff to suffer damages, including, but not limited to, the conversion of 2003 Chevy 4424 from his lawful possession and ownership to Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M's unlawful benefit.

431.    Plaintiff has been injured by the Defendants in an amount in excess of $15,995.00, plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $15,995.00 plus reasonable attorney's fees, interest and costs.


## COUNT XXXVI—CONVERSION

**The 2003 Chevy Silverado C1500 Extended (STK# KP 220) Known As 2003 Chevy 4424**

432.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 429 of this complaint as if fully set forth in this count.

433.   The Plaintiff has a right to possess 2003 Chevy 4424 or its proceeds from consignment sale from Pugi Kia's lot.

434.   Because he is the lawful holder of title to 2003 Chevy 4424, the Plaintiff has an absolute and unconditional right to immediately possess 2003 Chevy 4424 or its proceeds from consignment sale from Pugi Kia's lot.

435.   Plaintiff demanded the rightful return of 2003 Chevy 4424, 2003 Chevy 4424's paper title and the proceeds from the consignment sale of 2003 Chevy 4424.

436.   Defendant's Colando, Anthony Colando, Pugliani, Hall, Creedon, Stelter and Pugi Kia unlawfully and without authorization assumed control, dominion, or ownership over 2003 Chevy 4424 through acts of fraud and forgery.

437.   Plaintiff has been injured by the Defendants in an amount in excess of $15,995.00, plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $15,995.00 plus reasonable attorney's fees, interest and costs.


## COUNT XXXVII—TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

**The 2003 Chevy Silverado C1500 Extended (STK# KP 220) Known As 2003 Chevy 4424**

438.   Plaintiff incorporates by reference the allegations in paragraphs 1 through 435 of this complaint as if fully set forth in this count.

439.   On January 10, 2006 Plaintiff purchased a 2003 Chevy Silverado C1500 known as 2003 Chevy 4424 and placed it for sale on Pugi Kia's lot on the basis of consignment and expected to earn the proceeds of that sale.

440. Defendants knew that the Plaintiff owned 2003 Chevy 4424 and that the Plaintiff planned to benefit from the proceeds of the consignment sale of 2003 Chevy 4424 from Pugi Kia's lot.

441. Defendants sold 2003 Chevy 4424 from Pugi Kia's lot, and in conjunction with reporting 2005 Kia 7125 as stolen and through frauds and forgeries intentionally and maliciously retained the proceeds of the sale of 2003 Chevy 4424. Defendants knew that retaining the proceeds from the sale of 2003 Chevy 4424 would frustrate or terminate the Plaintiff's ability to benefit from the consignment sale of 2003 Chevy 4424.

442. The Plaintiff was financially damaged by the inability to sell 2003 Chevy 4424 on consignment, which includes the direct cash damages and the tangential costs incurred by the Plaintiff in attempting to complete the consignment sale as planned, loss of alternative business opportunity and the inability to invest the expected proceeds of the consignment sale on business expansion.

443. Plaintiff has been injured by the Defendants in an amount in excess of $15,995.00 plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $15,995.00 plus reasonable attorney's fees, interest and costs.


### COUNT XXXVIII—BREACH OF CONTRACT

**The Consignment Agreement Concerning A 2003 Chevy Silverado C1500 Extended (STK#KP 220) Known As 2003 Chevy 4424**

444. Plaintiff incorporates by reference the allegations in paragraphs 1 through 441 of this complaint as if fully set forth in this count.

445.    An oral contract was drawn between Colando, Anthony Colando, Pugliani and Hall as managers of Pugi Kia and D & M and the Plaintiff in which the Plaintiff agreed to place 2003 Chevy 4424 on Pugi Kia's lot and hold it for sale on consignment and Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M agreed to allow the Plaintiff the use of their lot to conduct such sale.

446.    This contract was to Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M's legal benefit because the placement of 2003 Chevy 4424 on Pugi Kia's lot impressed the desirability of Pugi Kia's assets upon Pugi Kia's potential customers and increased the apparent inventory of Pugi Kia.  Additionally, Defendants legally benefited from the placement of 2003 Chevy 4424 on Pugi Kia's lot through the understanding that such placement brought Colando, Anthony Colando, Pugliani and Hall closer to closing the sale of Pugi Kia to the Plaintiff.

447.    The contract was to the Plaintiff's legal benefit because he 1) expected to receive proceeds from the sale of 2003 Chevy 4424, 2) offered the opportunity to introduce the business of Certified Car Sales, his wholly owned business, into new markets, and 3) allowed him to display a continuing good faith interest in purchasing Pugi Kia from Colando, Anthony Colando, Pugliani and Hall.

448.    The Plaintiff performed his obligation under the contract.  On or around January 10, 2006, 2003 Chevy 4424 was placed on Pugi Kia's lot and held for sale to the public on consignment. 2003 Chevy 4424 was sold under the terms of the agreement on January 12, 2006 for $15,995 to Hugo DeCasas.

449.    Upon the sale of 2003 Chevy 4424, Defendants Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M's were in breach of contract.  The proceeds earned from the sale of 2003 Chevy 4424 were not remitted, in whole or in part, to the Plaintiff, but

rather held and maintained for the benefit of Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M.

450.    The Plaintiff has suffered damages due to this breach that included: 1) the purchase price of 2003 Chevy 4424, 2) the loss of business opportunity and investment of the proceeds of 2003 Chevy 4424 in subsequent automobile purchases, 3) the inability to move the business of Certified Car Sales into the Greater Chicago Area, and 4) the loss of business opportunity to purchase Pugi Kia from Colando and Pugliani and the investment of time and capital necessary to perform due diligence on such a purchase.

451.    Plaintiff has been injured by the Defendants in an amount in excess of $15,995.00 plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $15,995.00 plus reasonable attorney's fees, interest and costs.


## COUNT XXXIX—PROMISSORY ESTOPPEL

**The 2003 Chevy Silverado C1500 Extended (STK# KP 220) Known As 2003 Chevy 4424**

452.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 449 of this complaint as if fully set forth in this count.

453.    Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M unambiguously promised that the sale of 2003 Chevy 4424 from Pugi Kia's lot was to be on the basis of consignment with the proceeds of the sale of 2003 Chevy 4424 to be remitted to the Plaintiff.  Further, Defendants recognized that the titled owner of 2003 Chevy 4424 was Certified Car Sales, the Plaintiff's wholly-owned business.

454.    The Plaintiff relied on this promise and would not have placed 2003 Chevy 4424 on Pugi Kia's lot to gratuitously benefit Defendants.

455.    The Plaintiff's reliance on Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M's promise to remit the proceeds of the consigned sale of 2003 Chevy 4424 was expected and foreseeable by Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M.

456.    The Plaintiff's reliance was to his determent in that the 2003 Chevy 4424 was converted from his ownership to wrongfully benefit Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M. Additionally, the Plaintiff's reliance on the promise caused him to forgo the opportunity to place 2003 Chevy 4424 for sale through other forums.

457.    Plaintiff has been injured by the Defendants in an amount in excess of $15,995.00 plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $15,995.00 plus reasonable attorney's fees, interest and costs.


## COUNT XL—FRAUDULENT MISREPRESENTATION

**The 2004 Kia Spectra Ex (STK# KP 211) Known As 2004 Kia 8308**

458.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 455 of this complaint as if fully set forth in this count.

459.    Colando, Anthony Colando, Pugliani and Hall made materially fraudulent statements concerning their intent to remit the proceeds of the sale of 2004 Kia 8308 to the Plaintiff when the consignment sale occurred.

460.   As the sole owners, operators, managers and accountants of Pugi Kia, and with knowledge of the deepening financial straights of Pugi Kia, Colando, Anthony Colando, Pugliani and Hall knew these statements to be false.

461.   Because of the ongoing negotiations concerning the sale of Pugi Kia to the Plaintiff and Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M's interest in maintaining 2004 Kia 8308 on Pugi Kia's lot, Colando, Anthony Colando, Pugliani and Hall's fraudulent statements were intended to encourage the Plaintiff to act.

462.   The Plaintiff justifiably relied on these material statements and would not have placed 2004 Kia 8308 on Pugi Kia's lot in the absence of Colando, Anthony Colando, Pugliani and Hall's representation that the sale of 2004 Kia 8308 was on the basis of consignment.

463.   Colando, Anthony Colando, Pugliani and Hall's fraudulent statements caused Plaintiff to place 2004 Kia 8308 on Pugi Kia's lots, which, in turn, directly caused the Plaintiff to suffer damages, including, but not limited to, the conversion of 2004 Kia 8308 from his lawful possession and ownership to Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M's unlawful benefit.

464.   Plaintiff has been injured by the Defendants in an amount in excess of $13,000.00 plus interest.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $13,000.00 plus reasonable attorney's fees, interest and costs.

## COUNT XLI—CONVERSION

**The 2004 Kia Spectra Ex (STK# KP 211) Known As 2004 Kia 8308**

465.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 462 of this complaint as if fully set forth in this count.

466.    The Plaintiff has a right to possess 2004 Kia 8308 or its proceeds from consignment sale from Pugi Kia's lot.

467.    Because he is the lawful holder of title to 2004 Kia 8308, the Plaintiff has an absolute and unconditional right to immediately possess 2004 Kia 8308 or its proceeds from consignment sale from Pugi Kia's lot.

468.    Plaintiff demanded the rightful return of 2004 Kia 8308, 2004 Kia 8308's paper title and the proceeds from the consignment sale of 2004 Kia 8308.

469.    Defendant's Colando, Anthony Colando, Pugliani, Hall, Creedon, Stelter, Pugi Kia and D & M's unlawfully and without authorization assumed control, dominion, or ownership over 2004 Kia 8308 through acts of fraud and forgery.

470.    Plaintiff has been injured by the Defendants in an amount in excess of $13,000.00 plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $13,000.00 plus reasonable attorney's fees, interest and costs.


## COUNT XLII—TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

**The 2004 Kia Spectra Ex (STK# KP 211) Known As 2004 Kia 8308**

471.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 466 of this complaint as if fully set forth in this count.

472.    On December 20, 2005, the Plaintiff purchased a 2004 Kia Spectra Ex known as 2004 Kia 8308 for $8,950 and placed it for sale on Pugi Kia's lot on the basis of consignment and expected to earn the proceeds of that sale.

473.    Defendants knew that the Plaintiff owned 2004 Kia 8308 and that the Plaintiff planned to benefit from the proceeds of the consignment sale of 2004 Kia 8308 from Pugi Kia's lot.

474.    Defendants sold 2004 Kia 8308 from Pugi Kia's lot for approximately $13,000 on December 26, 2005, and in conjunction with reporting 2005 Kia 7125 as stolen and through frauds and forgeries intentionally and maliciously retained the proceeds of the sale of 2004 Kia 8308.  Defendants knew that retaining the proceeds from the sale of 2004 Kia 8308 would frustrate or terminate the Plaintiff's ability to benefit from the consignment sale of 2004 Kia 8308.

475.    The Plaintiff was financially damaged by the inability to sell 2004 Kia 8308 on consignment, which includes the direct cash damages and the tangential costs incurred by the Plaintiff in attempting to complete the consignment sale as planned, loss of alternative business opportunity and the inability to invest the expected proceeds of the consignment sale on business expansion.

476.    Plaintiff has been injured by the Defendants in an amount in excess of $13,000.00 plus interest.


WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $13,000.00 plus reasonable attorney's fees, interest and costs.

## COUNT XLIII—BREACH OF CONTRACT

**The Consignment Agreement Concerning A 2004 Kia Spectra Ex (STK# KP 211) Known As 2004 Kia 8308**

477.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 474 of this complaint as if fully set forth in this count.

478.    An oral contract was drawn between Colando, Anthony Colando, Pugliani and Hall as managers of Pugi Kia and D & M and the Plaintiff in which the Plaintiff agreed to place 2004 Kia 8308 on Pugi Kia's lot and hold it for sale on consignment and Colando, Anthony Colando, Pugliani and Hall agreed to allow the Plaintiff the use of their lot to conduct such sale.

479.    This contract was to Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M's legal benefit because the placement of 2004 Kia 8308 on Pugi Kia's lot impressed the desirability of Pugi Kia's assets upon Pugi Kia's potential customers and increased the apparent inventory of Pugi Kia.  Additionally, Defendants legally benefited from the placement of 2004 Kia 8308 on Pugi Kia's lot through the understanding that such placement brought Colando, Anthony Colando, Pugliani and Hall closer to closing the sale of Pugi Kia to the Plaintiff.

480.    The contract was to the Plaintiff's legal benefit because he 1) expected to receive proceeds from the sale of 2004 Kia 8308, 2) offered the opportunity to introduce the business of Certified Car Sales, his wholly owned business, into new markets, and 3) allowed him to display a continuing good faith interest in purchasing Pugi Kia from Colando, Anthony Colando, Pugliani and Hall.

481.    The Plaintiff performed his obligation under the contract.  On December 24, 2005, 2004 Kia 8308 was placed on Pugi Kia's lot and held for sale to the public on consignment.

2004 Kia 8308 was sold under the terms of the agreement on December 26, 2005 for approximately $13,000 to Della Taglia.

482. Upon the sale of 2004 Kia 8308, Defendants Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M were in breach of contract. The proceeds earned from the sale of 2004 Kia 8308 were not remitted, in whole or in part, to the Plaintiff, but rather held and maintained for the benefit of Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M.

483. The Plaintiff has suffered damages due to this breach that included: 1) the purchase price of 2004 Kia 8308, 2) the loss of business opportunity and investment of the proceeds of 2004 Kia 8308 in subsequent automobile purchases, 3) the inability to move the business of Certified Car Sales into the Greater Chicago Area, and 4) the loss of business opportunity to purchase Pugi Kia from Colando, Anthony Colando, Pugliani and Hall and the investment of time and capital necessary to perform due diligence on such a purchase.

484. Plaintiff has been injured by the Defendants in an amount in excess of $13,000.00 plus interest.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $13,000.00 plus reasonable attorney's fees, interest and costs.

## COUNT XLIV—PROMISSORY ESTOPPEL

**The 2004 Kia Spectra Ex Known As 2004 Kia 8308**

485. Plaintiff incorporates by reference the allegations in paragraphs 1 through 482 of this complaint as if fully set forth in this count.

486. Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M unambiguously promised that the sale of 2004 Kia 8308 from Pugi Kia's lot was to be on the basis of consignment with the proceeds of the sale of 2004 Kia 8308 to be remitted to the Plaintiff.  Further, Defendants recognized that the titled owner of 2004 Kia 8308 was Certified Car Sales, the Plaintiff's wholly-owned business.

487. The Plaintiff relied on this promise and would not have placed 2004 Kia 8308 on Pugi Kia's lot to gratituously benefit Defendants.

488. The Plaintiff's reliance on Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M's promise to remit the proceeds of the consigned sale of 2004 Kia 8308 was expected and foreseeable by Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M.

489. The Plaintiff's reliance was to his determent in that the 2004 Kia 8308 was converted from his ownership to wrongfully benefit Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit, KMA, Pugi Kia, and D&M. Additionally, the Plaintiff's reliance on the promise caused him to forgo the opportunity to place 2004 Kia 8308 for sale through other forums.

490. Plaintiff has been injured by the Defendants in an amount in excess of  $13,000.00 plus interest.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $13,000.00 plus reasonable attorney's fees, interest and costs.

## COUNT XLV—BREACH OF CONTRACT

**The Operating/Consulting Agreement**

491.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 488 of this complaint as if fully set forth in this count.

492.    On December 16, 2005, Plaintiff, Colando, Anthony Colando, Pugliani and Hall signed a Consulting Agreement, entitled "Ownership Control Agreement" and thereafter signed an addendum to the previously signed Operating Agreement "Addendum to Operating Agreement" that incorporated the Consulting Agreement (Ownership Control Agreement and Addendum to Operating Agreement hereinafter the "Consulting Contracts"). The Consulting Contracts established that the Plaintiff had the right to operate the Company on a day to day basis with full control over the operations and to have all rights of decision making and handling of the finances of the Company.

493.    As such, pursuant to the Consulting Contracts, by the end of December 2005, Plaintiff was at Pugi Kia every day running some of the operations.

494.    As a result, Plaintiff became aware of liabilities of Pugi Kia which were not disclosed by Colando, Anthony Colando, Pugliani or Hall.

495.    Despite the execution of the Consulting Contracts which provided that Plaintiff shall have access to all financial accounts and shall receive all funds payable to Pugi Kia as of December 16, 2005, Colando, Anthony Colando, Pugliani and Hall repeatedly refused to provide Plaintiff access to Pugi Kia's corporate bank account.

496.    The Plaintiff remained interested in purchasing Pugi Kia and, upon discussing any discrepancies with respect to the assets and liabilities of Pugi Kia, received assurances from Colando, Anthony Colando, Pugliani and Hall that his purchase price of shares of Pugi Kia would be reduced by the amounts which were not previously disclosed.

497.    As a result of these assurances, Plaintiff continued to partially run the day to day operations of Pugi Kia with the intent of purchasing the dealership.

498.    As an additional good faith showing of his genuine interest in Pugi Kia and his expectation that he would shortly be a partner in the dealership, and with the assurances inherent in have a contract authorizing Plaintiff to operate Pugi Kia, Plaintiff agreed to place its cars on Pugi Kia's lot to hold for sale to the public on consignment.

499.    Because "closed-sale" purchases from Kia Motors America are available only to persons licensed to operate a Kia dealership and approved for Kia credit, Colando, Anthony Colando and Pugliani authorized the Plaintiff to act as an agent of Pugi Kia at the Columbus Fair Auto Auction. However, the Plaintiff was permitted access to "closed-sale" auctions and to make purchases on behalf of Pugi Kia.

500.    Colando, Anthony Colando and Pugliani breached their promise to grant the Plaintiff signing authority to personally control Pugi Kia corporate accounts held at West Suburban Bank (Account #s 071923349 # 4300066213). Plaintiff used its Oakbrook Bank Account in Pugi Kia's name to make these purchases.

501.    Plaintiff purchased five cars[5] while acting under the Consulting Contracts he entered with Pugi Kia, but because he had no access to Pugi Kia capital accounts, he was forced to do so with the capital of his Oakbrook Bank Account in Pugi Kia's name.

502.    Plaintiff placed these cars, as purchased with Certified Car Sales capital with the understanding that he was shortly to acquire an interest in Pugi Kia's operating capital and assets, on Pugi Kia's lot and held it for sale to the public as a continuing show of his good faith interest in purchasing Pugi Kia and by agreement with Colando, Anthony Colando, Pugliani and Hall.

---

[5] These vehicles include vehicles known as: 1) 2005 Kia 7152, 2) 2005 Pontiac 3477, 3) 2003 Chevy 4424, 4) 2004 Kia 8308 and 5) 2004 Kia 0125.

503. Pugi Kia through Colando, Anthony Colando, Pugliani and Hall sold these cars and did not report the sales to the Plaintiff or remit the purchase prices to Plaintiff as due, thus depriving Plaintiff of its interest in these cars.

504. Colondo, Pugliani and Hall breeched the Consulting Contracts with Plaintiff by failing to grant the Plaintiff signing authority to personally control Pugi Kia corporate accounts held at West Suburban Bank; failing to grant Plaintiff operational control over the Company and its finances; and violating the terms of the consignment arrangement whereby Plaintiff was to place its cars on Pugi Kia's lot to hold for sale to the public on consignment.

505. As a result, Plaintiff suffered damages. Plaintiff was unable to recoup the amount of money invested in the cars. Plaintiff was unable to recoup the lost profits on those cars. Plaintiff was unable to recoup the monies loaned to Pugi Kia and D&M pursuant to the trust agreements. Plaintiff's intention to purchase the dealership was frustrated. Likewise, Plaintiff was encouraged to understand a certain valuation of Pugi Kia, which led him to continue his negotiations with Colando, Anthony Colando, Pugliani and Hall and forego inquiries into other car dealerships seeking new investors, which caused him a lost chance at other business ventures.

**The Trust Agreements**

506. On November 29, 2005, as negotiations between the Plaintiff and Colando, Anthony Colando, Pugliani and Hall for the sale of shares of Pugi Kia were ongoing, the Plaintiff agreed to lend $20,500 to Pugi Kia.

507. Through Colando, Anthony Colando, Pugliani and Hall, Pugi Kia agreed to secure this loan by granting the Plaintiff an interest in Pugi Kia assets.

508.   As Colando, Anthony Colando, Pugliani and Hall represented to the Plaintiff, Pugi Kia did not yet possess the title to a 2005 Kia Sorento (STK# K126A) known as 2005 Kia 9661 but would collateralize the Plaintiff's loan through a trust agreement.

509.   As such, on November 29, 2005, Larry Hall provided a Trust Receipt agreement to the Plaintiff, which listed 2005 Kia 9661 as collateral for the $20,500 loan Plaintiff made to Pugi Kia. At that time, Hall represented to the Plaintiff that this Trust Agreement would secure his loan to Pugi Kia until such time as Pugi Kia could obtain the title to the 2005 Kia 9661.

510.   On December 3, 2005, Pugi Kia sold 2005 Kia 9661 to Josephine Hatch-Skipper.

511.   The Plaintiff was not told of the sale of 2005 Kia 9661 for which he held a Trust Receipt guaranteeing his interest in the proceeds of 2005 Kia 9661.

512.   At the end of December, the Plaintiff became aware that 2005 Kia 9661 had been sold and his Trust Receipt had not been honored.

513.   On December 22, 2005, before the Plaintiff recognized Pugi Kia's failure to honor his Trust Receipt for 2005 Kia 9661, the Plaintiff agreed to loan Pugi Kia an additional $42,000.

514.   On December 22, 2005, to secure Plaintiff's loan of $42,000 to Pugi Kia, Pugi Kia, through Colando, Anthony Colando, Pugliani and Hall, granted the Plaintiff a Trust Agreement securing the right to the proceeds from the prospective sale of five used cars on Pugi Kia's lot.

   a.   A 2001 Ford F150 Pickup (STK# KP103) known as 2001 Ford 7084 secured the Plaintiff's advance of $12,000.

   b.   A 2002 Chevrolet Suburban (STK# KP146) known as 2002 Chevy 1998 secured the Plaintiff's advance of $14,000.

     c.     A 2001 Ford Ranger 4 X 4 (STK# KP157) known as 2001 Ford 6616 secured the Plaintiff's advance of $6,000.

     d.     A 2000 GMC Tahoe 4 X 4 (STK# KP135A) known as 2000 GMC 2430 secured the Plaintiff's advance of $8,000.

     e.     A 1996 Nissan Altima (STK# K101A) known as 1996 Nissan 9033 secured the Plaintiff's advance of $2,000.

515.    On January 26, 2006, 2001 Ford 7084 was sold through the Greater Chicago Auto Auction to Bob Martin Auto Sales for $14,000.00.

516.    Subtracting Greater Chicago Auto Auction's fee, Pugi Kia, through sole owners Colando, Anthony Colando, Pugliani and Hall, received $13,750.00 for the sale of 2001 Ford 7084.

517.    The Plaintiff was not informed of the sale of 2001 Ford 7084 and the proceeds of such sale were not remitted to the Plaintiff per the terms of the Trust Receipt agreement. As such, Plaintiff was deprived of his interest in 2001 Ford 7084 which deprived him of the proceeds from the sale and the collateralization of $12,000 of the $42,000 loan Plaintiff made to Pugi Kia.

518.    The Plaintiff remained interested in purchasing Pugi Kia and, upon discussing any discrepancies with respect to the assets and liabilities of Pugi Kia, received assurances from Colando, Anthony Colando, Pugliani and Hall that his purchase price of shares of Pugi Kia would be reduced by the amounts owed him under the Trust Receipt agreement.

519.    As a result of these assurances, Plaintiff continued to partially run some of the day to day operations of Pugi Kia with the intent of purchasing the dealership.

520.   Through the issuance of the false itemization of used cars through a wire, the Plaintiff suffered financial damages including having been:

    a.   Encouraged by the false belief of Pugi Kia's assets, the Plaintiff loaned first $20,500.00 and then $42,000.00 to Pugi Kia that was collateralized with Trust Agreements to cars that Defendants later sold without reimbursing the Plaintiff;

    b.   Encouraged the Plaintiff to loan money to Pugi Kia based on his understanding of the fraudulently aggrandized assets of Pugi Kia, which he believed he was soon to acquire, in share;

    c.   Encouraged by the purported assets of Pugi Kia and at the suggestion of Colando, Anthony Colando, Pugliani and Hall, the Plaintiff agreed to place his vehicles on Pugi Kia's lot to be sold on consignment.  These cars which were eventually converted by Colando, Anthony Colando, Pugliani, Pugi Kia, D&M, Mancini, VW Credit, KMA, and Officers Creedon and Stelter, and their paper titles forged with the Plaintiff's signature and mailed to the Illinois Secretary of State;

    d.   Encouraged the Plaintiff to understand a certain valuation of Pugi Kia, which led him to continue his negotiations with Colando, Anthony Colando, Pugliani and Hall and forego inquiries into other car dealerships seeking new investors, which caused him a lost chance at other business ventures.

    e.   Encouraged the Plaintiff to enter into a Operating Agreement through which the Plaintiff managed the day-to-day affairs of Pugi Kia, with the expectation of direct compensation in the form of salary and to facilitate his eventual purchase of Pugi Kia.

521.   Colando, Anthony Colando, Pugliani and Hall through their control of Pugi Kia, and with the knowing complicity of its salespeople, agents, managers, accountants and

attorneys, D & M and with the knowing complicity of its salespeople, agents, managers, accountants and attorneys, VW Credit, Inc., with the knowing complicity of its salespeople, agents, managers, accountants and attorneys, and Kia Motors America, Inc., with the knowing complicity of its salespeople, agents, managers, accountants and attorneys, defrauded Plaintiff and unabashedly converted Plaintiff's cars held, in some instances, through trust assignments as collateral for loans and, in others, by title of ownership.

522.    To express his continuing interest in purchasing the assets of Pugi Kia, the Plaintiff lent money, collateralized by Pugi Kia vehicles, and placed five of his personally held cars on Pugi Kia's lot for sale on consignment.  These cars, those collateralizing the Plaintiff's loans and those owned outright by the Plaintiff, were sold from Pugi Kia's lot by Colando, Anthony Colando, Pugliani, Hall and Pugi Kia and D & M salespeople, but the proceeds were not remitted to the Plaintiff.

523.    When the Plaintiff recognized the fraud and attempted to mitigate his losses, Colando, Anthony Colando, Pugliani and Hall, with the conspiratorial participation of DuPage County Police Officer, Steven Stelter and Joliet Police Officer, John P. Creedon, and through multiple frauds perpetrated under color of law, unlawfully obtained the paper titles to the five cars for which the Plaintiff held lawful title.

524.    Having fraudulently obtained Plaintiff's titles, Defendants forged Plaintiff's signature or caused Plaintiff's signature to be forged, processed them through the Secretary of State of Illinois, and sent them either a wire or the mails, to the Northern District of Illinois, for delivery to false purchasers who had previously driven Plaintiff's cars from Pugi Kia's lot without obtaining lawful title. Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D & M retained the proceeds of these sales personally and did not repatriate

them with Pugi Kia or return them to Plaintiff causing Plaintiff to suffer damages as a result.

525.   Plaintiff has been injured by the Defendants in an amount in excess of $300,000.00, plus interest.

WHEREFORE, Plaintiff prays this Honorable Court to award them damages in excess of $300,000.00 plus reasonable attorney's fees, interest and costs.

WHEREFORE, Plaintiff prays this Honorable Court to enter an Order granting the following relief:

a.   Award damages against Defendants and its employees and agents and for a sum of money equal to the amount of injury that the Plaintiff has suffered.

b.   To award prejudgment interest on the amount of damages that the Plaintiff has sustained.

c.   Treble the amount of said damages pursuant to 18 U.S.C. §1964(c);

d.   Award reasonable attorney's fees, costs, disbursements and expenses pursuant to 18 U.S.C. § 1964(c);

e.   Hold Defendants and its agents and employees jointly and severally liable for any and all damages, attorney's fees, costs, disbursements and expenses that are awarded;

f.   All other legal or equitable relief that the Court deems just and proper.

Respectfully submitted,

DAVID KRAMER, Plaintiff,
By and through, its attorney,
Komie and Associates.

By:     _____
Stephen M. Komie
Attorney for Plaintiff


Stephen M. Komie and Associates
One North LaSalle Street, Suite 4200
Chicago, Illinois  60602
312.263.2800
            ARDC # 01505181

STATE OF ILLINOIS )
) SS:
COUNTY OF COOK )

### **VERIFICATION**

I, DAVID KRAMER, being duly placed under oath, sworn, and state that the following matters described below are true to the best of my personal knowledge:

1.   I am above the age of 21 and suffer from no mental or physical disability which would render me legally incapable of giving sworn testimony.

2.   I am the president of Certified Car Sales, Inc.

3.   I have read and reviewed the attached Complaint.

4.   To the best of my knowledge all allegations contained within the four corners of said Complaint are true and correct, except where the allegations are based upon information and belief, I believe them to be true.

5.   FURTHER AFFIANT SAYETH NOT.

DAVID KRAMER

SUBSCRIBED AND SWORN TO
before me this _|_ day
of _May____, 2008.

NOTARY PUBLIC

OFFICIAL SEAL
MARY ROSE KOZICZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/19/09

LAW OFFICES
**KOMIE AND ASSOCIATES**
One North LaSalle Street - Suite 4200
Chicago, Illinois 60602-4011
Telephone (312) 263-2800