# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DAVID KRAMER, Individually, and as    )
the President and Sole Owner of CERTIFIED    )
CAR SALES, LLC, a Missouri Limited    )
Liability Company,    )
    )    Case No. 08 CV 2530
    Plaintiff,    )
v.    )    Honorable Ruben Castillo
    )
SHERIFF'S DEPUTY STEVEN STELTER;    )    Magistrate Judge Arlander Keys
Individually and as Deputy    )
of the DuPage County Sheriff's Office;    )
et al.,    )
    Defendants.    )

## DEFENDANT STELTER'S MOTION TO DISMISS 'VERIFIED COMPLAINT AT LAW' PURSUANT TO RULE 12(b) (6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

**NOW COMES** DuPage County Sheriff's Deputy STEVEN STELTER (hereinafter

'Stelter'), by and through his attorney, JOSEPH E. BIRKETT, DuPage County State's Attorney,

and his Assistants Paul F. Bruckner and William R. Roberts, and pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, respectfully moves this Court to dismiss plaintiff's 'Verified

Complaint at Law' (hereinafter Verified Complaint) against him and in support thereof states as

follows:

## INTRODUCTION

On November 13, 2006, Certified Car Sales, LLC, filed a ten (10) page, forty-six (46)

paragraph, five (5) count Complaint (hereinafter Complaint) in Case Number 06 C 6192 "under

42 U.S.C. § 1983, commonly known as the Civil Rights Act of 1971" (Complaint at pg. 1, ¶ 1)

against Defendants John E. Zaruba, Sheriff of DuPage County, Illinois, Steven Stelter, John P.

Creedon, Pugi Kia, LLC, Dominic L. Pugliani and Michel Colando. The Complaint alleged, in

pertinent part, that Stelter violated plaintiff's Fourth Amendment Constitutional right against

'unreasonable seizures'. On January 30, 2007, the Court dismissed the Complaint against

1

Defendant Zaruba with prejudice and against all other defendants without prejudice. Plaintiff was given until March 2, 2007 to file an amended complaint.

On March 2, 2007 'Certified Car Sales, LLC, filed a six (6) page, nineteen (19) paragraph First Amended Complaint (hereinafter Amended Complaint) in Case Number 06 C 6192 "under 42 U.S.C. § 1983 *et seq.*, commonly known as the Civil Rights Act of 1971" (Amended Complaint at pg. 1, ¶ 1) against Defendants Steven Stelter and John P. Creedon. The Amended Complaint alleged, in pertinent part, that Stelter violated plaintiff's Fourth Amendment Constitutional right against 'unreasonable seizures'.

In response to plaintiff's Amended Complaint (06 C 6192) Stelter filed a Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on March 23, 2007. In reply to plaintiff's response to said Motion to Dismiss, Stelter specifically requested this Court to dismiss the Amended Complaint with prejudice. On September 14, 2007, the Court issued a Memorandum Opinion and Order granting Stelter's [and Defendant Creedon's] motion[s] to dismiss "finding that no reasonable trier of fact could conclude that the defendants violated Certified's constitutional rights. Accordingly, the Court grants the motions to dismiss filed by defendants Steven Stelter and John P. Creedon." (Copy of 06 C 6192 Memorandum and Opinion Order attached hereto as Exhibit 1 – pg. 11). On or about the same date, the Court entered a judgment in Case Number 06 C 6192 by deciding that "[t]his action came to trial or hearing before the Court. The issues having been tried or heard and a decision has been rendered . . . that the Court grants the Motion to Dismiss by Defendants Stelter and Creedon." (Copy of 06 C 6192 Judgment in a Civil Case attached hereto as Exhibit 2).

On September 17, 2007, plaintiff's counsel appeared before the Court seeking leave to file "additional authority and also amend the complaint." (Transcript of 'Report of Proceedings before the Honorable Magistrate Judge Arlander Keys' – September17, 2007 (hereinafter

Transcript) – pg. 5, lines 12-13 attached here to as Exhibit 3). On September 17, 2007, plaintiff was advised by the Court that the aforementioned Motions to Dismiss had been granted and the case had been dismissed. (Exhibit 3 at pg. 2, lines 17-19, lines 20-21). Plaintiff was further advised by the Court he could "certainly file an appeal" (Exhibit 3 at pg. 13, line 14) and plaintiff's counsel asked the Court to "reconsider based on that case." (Exhibit 3 at pg. 13, lines 20-21). On September 17, 2007, plaintiff's "motion to file Second Amended Complaint" was denied. (Copy of September 17, 2007 order attached hereto as Exhibit 4). Stelter has had no notice that plaintiff either filed a timely appeal or asked the Court to reconsider its final decision in Case Number 06 C 6192. Clearly, the Court entered a final judgment in Case Number 06 C 6192.

On May 2, 2008, plaintiff ("David Kramer, Individually, and as the President and Sole owner of Certified Car Sales, LLC") filed this one-hundred and eight (108) page, five-hundred and twenty-five (525) paragraph, forty-five (45) count Verified Complaint (Case Number 08 CV 2530), against "Steven Stelter, . . . John P. Creedon, . . . Michael J. Colando, . . . Dominic L. Pugliani, . . . Larry M. Hall, . . . Anthony J. Colando, Jr., . . . Anthony J. Colando, Sr., . . . Dominic Mancini, . . . Pugi Kia, LLC; D & M Auto Sales, Inc.; Kia Motors America, Inc.; VW Credit, Inc.". Plaintiff's Verified Complaint seeks damages in excess of Seventy-five thousand dollars ($75,000.00). Plaintiff alleges "a claim under the Racketeer Influenced and Corrupt Practice Act, § 18 U.S.C. 1961-1968 ("RICO"), and the laws of the State of Illinois that arise out of a series of individual frauds, forgeries, misrepresentations, falsified statements of accounting and outright conversions of property that occurred in conjunction with an over-arching scheme to sell falsely inflated assets of a Kia car dealership and the dealership to the Plaintiff. Plaintiff seeks redress for these frauds as a consequence of Defendants' scheme." (Verified Complaint at pg. 2). Specifically, as to Stelter, plaintiff claims a "deprivation of civil rights under 42 U.S.C. §

3

1983 fraudulent seizure of personal property in contravention of rights held under the 4th Amendment of the United States Constitution". (Verified Complaint at pg. 50).

## THIS 'VERIFIED COMPLAINT AT LAW' ARISES FROM ALLEGATIONS COMMON TO ALL COMPLAINTS

Plaintiff's Verified Complaint in this matter arises from allegations made in both the Complaint and Amended Complaint filed in Case Number 06 C 6192 and dismissed by this Court.

Plaintiff alleged in case Number 06 C 6192, and now alleges in Case Number 08 C 2530, that Stelter was the "Deputy Director in the DuPage County Auto Theft Task Force" and he has been named in both his individual and official capacities. (Complaint at pg. 2, ¶ 4; Amended Complaint at pg. 2, ¶ 4; Verified Complaint at pg. 8, ¶ 17). Plaintiff alleged in Case Number 06 C 6192, and now alleges in Case Number 08 C 2530, that Stelter violated 42 U.S.C. ¶ 1983 in contravention of his Fourth Amendment rights against unreasonable seizure. (Complaint – Count I at pg. 6, ¶ 22, ¶ 24; Amended Complaint at pg. 5, ¶ 17; Verified Complaint – Count XI at pg. 50-51, ¶ 225-233).

Plaintiff alleged in case Number 06 C 6192, and now alleges in Case Number 08 C 2530, that he agreed to place automobiles he had purchased for sale on a consignment basis with Pugi KIA. (Complaint at pg. 3, ¶ 10; Amended Complaint at pg. 2, ¶ 6; Verified Complaint at pg. 10, ¶ 25e; pg. 16, ¶ 56; pg. 18, ¶ 73, pg. 20, ¶ 85; pg. 22, ¶ 98).  Plaintiff alleged in Case Number 06 C 6192, and now alleges in case Number 08 C 2530, that he tendered (or 'ceded') titles to at least four (4) automobiles to Stelter. (Complaint at pg. 5, ¶ 17; Amended Complaint at pg. 4, ¶ 12; Verified Complaint at pg. 19, ¶ 78; pg. 20-21, ¶ 90; pg. 22, ¶ 102).

Plaintiff alleged in case Number 06 C 6192, and now alleges in case Number 08 C 2530, violation of his Fourth Amendment constitutional rights which arise from allegations that Stelter unlawfully seized titles to at least four (4) automobiles for which Plaintiff held title. (Complaint

4

at pg. 5, ¶ 17; Amended Complaint at pg. 4, ¶ 12; Verified Complaint at pg. 17, ¶ 65-67; pg. 19,

¶ 78-79; pg. 22, ¶102-104; pg. 50, ¶ 228).

Plaintiff alleged in case Number 06 C 6192, and now alleges in Case Number 08 C 2530, that the

titles at issue include titles to a '2005 Kia Rio', a '2004 Kia Rio 4-Door', a '2005 Pontiac Sunfire

Coupe' and a '2003 Chevy '. (Complaint at pg. 4, ¶ 11a., 11b., 11c., 11d.; Amended complaint at

pg. 3, ¶ 7a., 7b., 7c., 7d.; Verified Complaint at pg. 52, ¶ 237a., 237b., 237c., 237d).

## PLAINTIFF'S VERIFIED COMPLAINT AGAINST DEFENDANT STELTER IS BARRED UNDER *RES JUDICATA*

> "Under res judicata, 'a final judgment on the merit bars further claims by parties or their privies based on the same cause of action.'" *Brown*, 442 U.S., at 131, 99 S.Ct. at 2209 (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). In determining the scope of a "cause of action," this circuit has utilized the "same transaction" test. *Alexander*, 773 F.2d at 854, *Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1241 (7th Cir.1983); *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 944 (7th Cir. 1981). Under this test, a "cause of action" consists of 'a single core of operative facts" which gives rise to a remedy." *Alexander*, 773 F.2d at 854; *see also Mandarino v. Pollard*, 718 F.2d 845, 849 (7th Cir. 1983). This "same transaction" test is decidedly fact-oriented. Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost. Thus, "a mere change in the legal theory does not create a new cause of action." *Alexander*, 773 F.2d at 854. Therefore, prior litigation acts as a bar not only to those issues which were raised and decided in the earlier litigation but also to those issues which *could* have been raised in that litigation. [citations omitted]. *Car Carriers, Inc. v. Ford Motor Company*, 789 F.2d 589 (7th Cir. 1986).

In *Car Carriers, Inc.*, the United States Court of Appeals, Seventh Circuit went on to identify

"[t]he three threshold requirements of res judicata [as]: 1) an identity of the parties or their

privies, 2) an identity of the causes of action, and 3) a final judgment on the merits." FN9 citing

*Alexander v. Chicago Park District*, 773 F.2d 850, 854 (7th Cir. 1985); *Lee v. City of Peoria*, 685

F.2d 196, 199 (7th cir. 1982).

As to the first requirement of *res judicata*, in this matter the "parties or their privies" are

clearly the same as in the previous action filed under Case Number 06 C 6192. In the previous

action, "Certified Car Sales, LLC, a Missouri Limited Liability Company", filed suit and in this

matter "David Kramer, Individually, and as the President and Sole Owner of [that same] Certified Car Sales, LLC" is the named plaintiff. In both actions Plaintiff named Stelter as a defendant alleging he was the "Deputy Director in the DuPage County Auto Theft Task Force". In both matters, Stelter has been named in both his individual and official capacities. (Complaint at pg. 2, ¶ 4; Amended Complaint at pg. 2, ¶ 4; Verified Complaint at pg. 8, ¶ 17). Clearly, both Case Number 06 C 6192 and Case Number 08 C 2530 involved the 'same parties'.

As to the second requirement of *res judicata*, the 'cause of action' against Stelter complained of in Case Number 08 C 2530 arise from the "single core of operative facts which give rise to a remedy" alleged in both the original Complaint and Amended Complaint in Case Number 06 C 6192. *Alexander v. Chicago Park District*, 773 F.2d 850 (7th Cir. 1985). This 'single core of operative facts' in all three pleadings (as enumerated above) is consistent as to Stelter's alleged actions against plaintiff.

As to the third requirement of *res judicata*, there has been a final judgment on the merits. Count XI of plaintiff's Verified Complaint alleges "deprivation of civil rights under 42 U.S.C. §1983 fraudulent seizure of personal property in contravention of rights held under the 4th Amendment of the United States Constitution". (Verified Complaint at pg. 50). In all three pleadings, and based upon the same "core of operative facts", plaintiff has complained that Stelter violated his Fourth Amendment right to be free from unreasonable seizure. This Court has already ruled, in Case Number 06 C 6192, that "the allegations establish that the papers were not "seized"; rather, as the allegations make clear, Mr. Kramer offered the documents and willingly handed them over when asked. Thus, to the extent these papers can be said to have been "seized", they were seized with consent, and there can be no Fourth Amendment violation and no § 1983 claim." (Exhibit 1 – pg. 9).

To the degree plaintiff has now alleged other, or 'new', theories, *res judicata* "acts as a bar not only to those issues which were raised and decided in the earlier litigation but also to those issues which *could* have been raised in that litigation." *Car Carriers, Inc.* at 593. Plaintiff now makes the conclusory allegations that "Stelter aided and conspired with Colando, Anthony Colando, Pugliani and Hall to fraudulently obtaining (*sic*) the Plaintiff's paper titles to his vehicular property." (Verified Complaint at pg. 51, ¶ 230). However, this Court has already ruled that

> [t]urning to title documents, a reasonable trier of fact would similarly be unable to conclude that deputy Stelter's conduct amounts to a constitutional violation. Initially, the only possessory interest the "seizure" of the title documents interfered with is the possessory interest in those pieces of paper; nothing the defendants are alleged to have done interfered with Certified's possessory rights in the three vehicles covered by the titles (the same is not true of the Kia Rio, but the Court has already addressed that seizure). (Exhibit 1 – pg. 9).

Further, these conclusory allegations of 'conspiracy' and 'fraud' arise from the 'same transaction' which gave rise to the claim of a violation of plaintiff's Fourth Amendment right to be free from unreasonable seizure. To the degree plaintiff contends the 'conspiracy' and 'fraud' claims are now 'new' issues, these claims clearly could have been raised in the prior litigation but were not, and, as such, are barred under *res judicata*.

Additionally as to the third requirement of *res judicata*, again, in response to plaintiff's 'Amended Complaint' (06 C 6192) Stelter filed a 'Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure' on March 23, 2007. In reply to plaintiff's response to said 'motion to dismiss', Stelter specifically requested this Court to dismiss the Amended Complaint with prejudice. On September 14, 2007, this Court issued a 'Memorandum Opinion and Order' granting Stelter's [and Defendant Creedon's] motion[s] to dismiss. On or about the same date, this Court entered a 'judgment' in Case Number 06 C 6192 by deciding that "[t]his action came to trial or hearing before the Court. The issues having been tried or heard and a

7

decision has been rendered . . . that the Court grants the Motion to Dismiss by Defendants Stelter and Creedon." (Exhibit 2).

Plaintiff has been advised by this Court that the aforementioned 'motions to dismiss' had been granted and the case had been dismissed. (Exhibit 3 at pg. 2, lines 17-19, lines 20-21). Plaintiff was advised by this Court that he could "certainly file an appeal" (Exhibit 3 at pg. 13, line 14) and plaintiff's counsel asked the Court to "reconsider based on that case." (Exhibit 3 at pg. 13, lines 20-21) but plaintiff's "motion to file Second Amended Complaint" was been denied. (Exhibit 4). Plaintiff now attempts to relitigate the same issues which have already been decided by this Court by filing a new lawsuit under Case Number 08 C 2530. Clearly, the Court entered a final judgment in Case Number 06 C 6192 and, as such, Case Number 08 C 2530 should be barred under the doctrine of *res judicata*.

**WHEREFORE**, based on the foregoing, DuPage County Sheriff's Deputy STEVEN STELTER respectfully requests this Honorable Court to dismiss this matter with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for such other further relief as might be appropriate.

Respectfully submitted,

By: s/*William R. Roberts*
William R. Roberts
Assistant State's Attorney

JOSEPH E. BIRKETT
DuPage County State's Attorney
By: Paul F. Bruckner, Assistant State's Attorney
Attorney No. 6206660
By: William R. Roberts, Assistant State's Attorney
Attorney No. 6275784
503 N. County Farm Road
Wheaton, Illinois 60187
630/407-8200

CERTIFICATE OF SERVICE

To:  See attached service list

The undersigned being first duly sworn upon oath states that:

On the 8th day of July, 2008, I served a copy of DEFENDANT STELTER'S MOTION TO DISMISS 'VERIFIED COMPLAINT AT LAW' PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE, according to Fed.R.Civ.P. 5(a,), by e-filing a copy to each of the above-referenced individuals.

JOSEPH E. BIRKETT
By: William R. Roberts, ASA
Attorney No.6275784
503 N. County Farm Road
Wheaton, Illinois 60187
(630)407-8200

By:  s/  William R. Roberts
William R. Roberts
Assistant State's Attorney

*Kramer et al. v. Stelter et al.*
Case No. 08 cv-02530

## SERVICE LIST

Stephen M. Komie
Komie & Associates
One North LaSalle Street
Suite 4200
Chicago, IL 60602-5002
312-263-2800
Email: stephen_m_komie@komie-and-associates.com
(Lead Attorney for plaintiffs – David Kramer & Certified Car Sales, LLC)

Paul E. Kelly
Kelly & King, P.C.
20 North Clark Street
Suite 2900
Chicago, IL 60602
312-553-5290
312-553-5291(fax)
Email: pek@kellykinglaw.com
(Lead Attorney for defendants – Pugi Kia, LLC, Dominic L. Pugliani, Larry M. Hall & Dominic
Mancini)

David Laurence King
Kelly & King, P.C.
20 North Clark Street
Suite 2900
Chicago, IL 60602
312-553-5290
312-553-5291(fax)
Email: dlk@kellykinglaw.com
(Attorney for defendants – Pugi Kia, LLC, Dominic L. Pugliani, Larry M. Hall & Dominic
Mancini)

Michael Kellett McConville
Kelly & King, P.C.
20 North Clark Street
Suite 2900
Chicago, IL 60602
312-553-5290
312-553-5291(fax)
Email: mkm@kellykinglaw.com
(Attorney for defendants – Pugi Kia, LLC, Dominic L. Pugliani, Larry M. Hall & Dominic
Mancini)

James J. Roche
James J. Roche and Associates
642 North Dearborn Street
Chicago, IL 60610
312-335-0044
Email: jroche@jjroche.net
(Lead Attorney for defendants D & M Auto Sales, Inc., Anthony J. Colando, Jr. and Anthony J. Colando, Sr.)

Justyna A. Ziolo
James J. Roche and Associates
642 North Dearborn Street
Chicago, IL 60610
312-335-0044
Email: jkolodziej@jjroche.net
(Attorney for defendants D & M Auto Sales, Inc., Anthony J. Colando, Jr. and Anthony J. Colando, Sr.)

Kelly Kathleen Kachmarik
James J. Roche and Associates
642 North Dearborn Street
Chicago, IL 60610
312-335-0044
Email: kmkachmarik@jjroche.net
(Attorney for defendants D & M Auto Sales, Inc., Anthony J. Colando, Jr. and Anthony J. Colando, Sr.)

Randall Lee Oyler
Barack, Ferrazzano, Kirschbaum, Perlman & Nagelberg
200 West Madison Street
Suite 3900
Chicago, IL 60606
312-984-3100
Email: randall.oyler@bfkpn.com
(Attorney for defendant Kia Motors America, Inc.)

Brandon C. Prosansky
Barone & Jenkins, PC
635 Butterfield Road
Suite 145
Oakbrook Terrace, IL 60181
630-472-0037
Email: Brandon.prosansky@bkfn.com
(Attorney for defendant Kia Motors America, Inc.)

Roger Hudson Stetson
Barack, Ferrazzano, Kirschbaum, Perlman & Nagelberg
200 West Madison Street
Suite 3900
Chicago, IL 60606
312-984-3100
Email: roger.stetson@bfkn.com
(Attorney for defendant Kia Motors America, Inc.)

Jeffrey Hoke Bergman
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, IL 60602
312-977-4402
312-977-4405 (fax)
Email: jbergman@uhlaw.com
(Lead attorney for defendant VW Credit, Inc.)

Richard Scott Alsterda
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, IL 60602
312-977-9203
Emai: rsalsterda@uhlaw.com
(Attorney for defendant VW Credit, Inc.)

William R. Roberts, Asst. State's Attorney
Paul F. Bruckner, Asst. State's Attorney
DuPage County State's Attorney's Office
503 N. County Farm Road
Wheaton, Illinois 60187
630-407-8200
(Attorneys for Steven Steltner)

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 6192 | **DATE** | 9/14/2007 |
| **CASE TITLE** | CERTIFIED CAR SALES, LLC. Vs. SHERIFF'S DEPUTY STEVEN STEELER, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in the attached Memorandum Opinion and Order, the Court Grants the Motions to Dismiss filed by Defendants Steven Stetler [30] and John P. Creedon [42]. *AK*

Docketing to mail notices.

**EXHIBIT**

**1**

| | Courtroom Deputy Initials: | |
|---|---|---|

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CERTIFIED CAR SALES, LLC,          )
a Missouri Limited Liability       )
Company,                           )
                                   )   No. 06 C 6192
            Plaintiff,             )
                                   )   Magistrate Judge
      v.                           )   Arlander Keys
                                   )
SHERIFF'S DEPUTY STEVEN STETLER,   )
individually and as a Deputy of    )
the DuPage County Sheriff's Office,)
and JOHN P. CREEDON, individually  )
and as Director of the Tri-County  )
Auto Theft Unit,                   )
                                   )
            Defendants.            )

## MEMORANDUM OPINION AND ORDER

Certified Car Sales, a company owned and operated by David
Kramer, agreed to buy used cars and place them on consignment
with Pugi Kia, a dealership, for resale.  Pugi agreed to market
and sell each car, and to pay Certified the sales price, less a
commission.  The relationship was short-lived; Certified
terminated its relationship with Pugi less than 4 months later
and learned that Pugi had sold three of four cars Certified had
delivered within the contract period, yet had not paid a dime to
Certified.  According to the allegations in the complaint,
Certified "took possession" of the fourth car, a 2005 Kia Rio,
from Pugi, and brought it to the Greater Chicago Auto Auction to
sell it.  Certified retained the titles on all four of the

vehicles it had placed with Pugi under the contract, including the three that Pugi had already sold.

Pugi reported (falsely, allegedly) the 2005 Rio stolen, and John Creedon, then director of the Tri-County Auto Theft Unit, was dispatched to the Auto Auction to investigate. After meeting with Certified's Kramer, who told him that the Rio belonged to Certified, Director Creedon took the Rio and delivered it to Pugi; he also directed Mr. Kramer to meet with Steven Stetler, a Deputy DuPage County Sheriff. Mr. Kramer did so, and told Deputy Stetler that Certified held title to the Rio, as well as the other three cars Pugi had sold on Certified's behalf. Mr. Kramer showed Deputy Stetler the original titles to all four cars; Deputy Stetler took them, made copies and gave the copies back to Mr. Kramer, keeping the originals. He later gave the original title documents to Pugi and advised Mr. Kramer that Certified would not be getting the original titles back.

Certified sued Director Creedon and Deputy Stetler, alleging that the above-described conduct violates several of Certified's constitutional rights.[1] The parties consented to proceed before a United States magistrate judge, and the case was reassigned to this Court on April 19, 2007. The case is now before the Court

---

[1] In its original complaint, Certified also sued Pugi Kia and John Zaruba, the Sheriff of DuPage County, as well as three other defendants; they have all been dismissed, leaving Creedon and Stetler as the only defendants named in the amended complaint presently before the Court.

on motions to dismiss filed by defendants Stetler and Creedon under Federal Rule of Civil Procedure 12(b)(6).

Defendant Stetler argues that the complaint against him should be dismissed because Certified has pled facts in its amended complaint that undermine Certified's allegation that Deputy Stetler took the actions he took with malice, willfulness and reckless indifference to the rights of others; on the contrary, Deputy Stetler argues, the facts, as alleged, show that Deputy Stetler requested the titles and that Mr. Kramer voluntarily surrendered the titles to him.  Defendant Creedon argues that the complaint against him should be dismissed because the facts, as pled, show that he had probable cause to act.

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint, and dismissal of an action under this rule is warranted only if 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 458 (7th Cir. 2007)(quoting *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)).  In ruling on a motion to dismiss, the Court construes the complaint's allegations in the light most favorable to the plaintiff, and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993).  To withstand a motion to dismiss for failure to

state a claim, the complaint need only "'outline or adumbrate a violation of the statute or constitutional provision upon which the plaintiff relies and connect the violation to the named defendants.'" *Christensen*, 483 F.3d at 459 (quoting *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992)).

   To state a claim under 42 U.S.C. §1983, the plaintiff must allege that a government official, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. *Christenson*, 483 F.3d at 459 (citing *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). In its amended complaint, Certified alleges that "[n]either Creedon nor Stetler had an arrest warrant, search warrant or any lawful authority whatsoever to seize the Titles or the 2005 Kia Rio from Certified's possession, to turn them over to Pugi Kia or to refuse to return them to Certified." Amended Complaint, ¶16. Certified alleges that, by acting as described above, and without any legal authority, defendants Creedon and Stetler violated Certified's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. *Id.*, ¶17. Certified further alleges that defendants Creedon and Stetler did what they did "with malice, willfulness, and reckless indifference to the rights of others," causing Certified to suffer financial damage in an amount equal to the value of the

4

four cars, plus "additional damages including but not limited to the loss of property and mental stress and anguish." *Id.*, ¶¶18-19.

The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The amendment does not prohibit all seizures, only those that are unreasonable. Here, Certified alleges different conduct by each defendant; it alleges that Director Creedon seized the Kia Rio in violation of its Fourth Amendment rights and that Deputy Stetler seized the title documents in violation of its Fourth Amendment rights.

Turning first to the allegations relating to the 2005 Kia Rio, Director Creedon physically took this vehicle away from Mr. Kramer; to be sure, this would amount to a "seizure" within the meaning of the Fourth Amendment. *See, e.g., Soldal v. Cook County, Illinois*, 506 U.S. 56, 61 (1992)(a "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property.")(citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). But the Fourth Amendment does not protect against all seizures, only those that are "unreasonable." Thus, the real question is whether the allegations in the amended complaint can fairly be read to sustain a claim that the seizure was unreasonable.

Certified's allegations appear to challenge as

unconstitutional not only the initial seizure of the Kia Rio, but also the continued seizure of the Rio in light of the title documents that Mr. Kramer displayed, and also the turn over of the Rio to Pugi. Taking them one at a time, the Court finds as a matter of law that Director Creedon had probable cause to seize the Kia Rio initially; Pugi's stolen car report would have provided that. *See Pasiewicz v. Lake County Forest Preserve District*, 270 F.3d 520, 524 (7th Cir. 2001)(information obtained by a police officer that establishes the elements of a crime is generally, absent information that the person providing the information is not credible, sufficient to provide probable cause). *See also Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994)("When the question of probable cause arises in a damages suit its resolution typically falls within the province of the jury, though a conclusion that probable cause existed as a matter of law is appropriate when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.")(citing *Maxwell v. City of Indianapolis,* 998 F.2d 431, 434 (7th Cir. 1993); *Gerald M. v. Conneely,* 858 F.2d 378, 384-385 (7th Cir. 1988); *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 438 (7th Cir. 1986)). And, if Director Creedon had probable cause to seize the Rio, Certified's §1983 claim necessarily fails. *See Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007).

6

Certified argues that the fact that Mr. Kramer advised Director Creedon that Certified, not Pugi, was the true owner of the Rio changes things. But it doesn't. That Mr. Kramer, on behalf of Certified, disputed the stolen car report is immaterial to the question of probable cause. *See Askew v. City of Chicago*, 440 F.3d 894, 895 (7th Cir. 2006)(it does not matter that accused denies allegations giving rise to probable cause; police need not conduct an investigation but may arrest and let prosecutors and courts determine who is telling the truth)(citing *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432 (7th Cir. 1986); *Wilson v. McRae's, Inc.*, 413 F.3d 692 (7th Cir. 2005); *Dreibel v. Milwaukee*, 298 F.3d 622, 643-44 (7th Cir. 2002); *Pasiewicz*, 270 F.3d at 524). Of course, this principle has exceptions, but the facts alleged do not suggest that one applies; they do not, for example, provide any basis to suggest that the defendants knew or should have known that the report was false, or that they knew or should have known that Pugi somehow harbored a grudge against Mr. Kramer and Certified.

Moreover, the Seventh Circuit has rejected the idea that a state actor's refusal to return once lawfully obtained property can amount to an unreasonable seizure (i.e, that the refusal can transform the seizure from reasonable to unreasonable). *See Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003) ("*Soldal's* 'meaningful interference with a possessory interest' definition

7

is limited to an individual's interest in retaining his
property"; "once an individual has been meaningfully
dispossessed, the seizure of property is complete, and once
justified by probable cause, that seizure is reasonable.").
Thus, the fact that Director Creedon failed to return the Rio –
in fact, turned it over to Pugi – does not give rise to a
constitutional violation.  In fact, given the police report, the
defendants were under no obligation to investigate Mr. Kramer's
claim that Certified, not Pugi, was lawfully entitled to
possession of the Rio.  *See Reynolds*, 488 F.3d at 766; *Pasiewicz*,
270 F.3d at 524.

    In response to Director Creedon's motion to dismiss,
Certified admits that the mere seizure of the Kia Rio would
"probably not" have resulted in a lawsuit; it argues, however,
that, because Director Creedon turned the car over to Pugi, a
reasonable jury could find that he lacked probable cause.  *See*
Plaintiff's Response to Defendant John Creedon's Motion to
Dismiss, p. 6.  But *Lee* says otherwise; as does *Pasiewicz.*  Once
Certified concedes that Director Creedon had probable cause to
seize the Rio, its Fourth Amendment claim falls away.

    Turning to the title documents, a reasonable trier of fact
would similarly be unable to conclude that Deputy Stetler's
conduct amounts to a constitutional violation.  Initially, the
only possessory interest the "seizure" of the title documents

8

interfered with is the possessory interest in those pieces of
paper; nothing the defendants are alleged to have done interfered
with Certified's possessory rights in the three vehicles covered
by the titles (the same is not true of the Kia Rio, but the Court
has already addressed that seizure).  More importantly,  the
allegations establish that the papers were not "seized"; rather,
as the allegations make clear, Mr. Kramer offered the documents
and willingly handed them over when asked.  Thus, to the extent
these papers can be said to have been "seized," they were seized
with consent, and there can be no Fourth Amendment violation and
no §1983 claim.  *See, e.g., Schneckloth v. Bustamonte,* 412 U.S.
218, 219 (1973).  That Mr. Kramer may later have tried to revoke
his consent and get the papers back does not change that result.
*See Lee,* 330 F.3d at 456.

The Court similarly finds that the allegations of the
amended complaint fail to state a claim for violation of the
Fifth Amendment.  Even if the Court were to find that the conduct
alleged in the amended complaint amounted to a "taking" within
the context of the Fifth Amendment, Certified's complaint does
not allege – and the Court therefore has no basis to find – that
Certified has been denied just compensation for any such taking.
Accordingly, any Fifth Amendment claim must be dismissed as
premature.  *See, e.g., Peters v. Village of Clifton,* No. 06-3735,
— F.3d —, 2007 WL 2377385, at *2 & n.4 (7th Cir. Aug. 22,

2007)(no constitutional violation occurs until the property
owner's claim for just compensation has been denied)(citing
*Williamson County Reg. Planning Comm'n v. Hamilton Bank of
Johnson County*, 473 U.S. 172, 194-195 (1985)).  Indeed, Certified
concedes as much and has agreed to dismiss the Fifth Amendment
claim.  *See* Plaintiff's Response to Defendant John Creedon's
Motion to Dismiss, p. 14 n.4.

Although Certified has made no similar concessions
concerning any attempt to state a claim under the Fourteenth
Amendment or to state a claim against the defendants in their
official capacities, neither claim can be sustained based upon
the facts alleged in the amended complaint.  *See Hanno v.
Sheahan*, No. 01 C 4677, 2004 WL 2967442, at *10 (N.D. Ill. Nov.
29, 2004)(citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))(no
Fourteenth Amendment due process claim if a meaningful
postdeprivation remedy for the loss is available); *Porco v.
Trustees of Indiana University*, 453 F.3d 390, 394-95 (7th Cir.
2006)(Eleventh Amendment bars damages claims against state actors
in their official capacities)(citing *See, e.g., Edelman v.
Jordan,* 415 U.S. 651, 663 (1974); *Lapides v. Bd. of Regents,* 535
U.S. 613, 617 (2002); *Doe v. Heck,* 327 F.3d 492, 508 n. 13 (7th
Cir. 2003)).

## Conclusion

As more fully explained above, the Court finds that no reasonable trier of fact could conclude that the defendants violated Certified's constitutional rights.  Accordingly, the Court grants the motions to dismiss filed by defendants Steven Stetler [#30] and John P. Creedon [#42].

Dated: September 14, 2007

ENTER:

ARLANDER KEYS
United States Magistrate Judge

11

AO 450(Rev. 5/85)Judgment in a Civil Case



# United States District Court
## Northern District of Illinois
### Eastern Division

Certified Car Sales

v.

Sheriffs Deputy Steven Steeler

**JUDGMENT IN A CIVIL CASE**

Case Number: 06 C 6192

☐    Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

☒    Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the Court grants the Motions to Deismissed filed by Defendants Stetler and Creedon.

Michael W. Dobbins, Clerk of Court

Date: 9/14/2007

/s/ Alicia Castillo, Deputy Clerk

EXHIBIT
2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS (Chicago)

CERTIFIED CAR SALES, LLC.,      )
a Missouri Limited Liability    )
Company,                        )
                                )
            Plaintiff,          )
                                )        Docket No. 06-cv-6192
        v.                      )
                                )
JOHN E. ZARUBA, et al.,         )
                                )        Chicago, Illinois
            Defendants.         )        September 17, 2007


REPORT OF PROCEEDINGS
BEFORE THE
HONORABLE MAGISTRATE JUDGE ARLANDER KEYS


APPEARANCES:

For Plaintiffs:              STEPHEN M. KOMIE
                             KOMIE & ASSOCIATES
                             One North LaSalle Street
                             Suite 4200
                             Chicago, IL  60602


For Defendants:              PAUL BRUCKNER
                             Assistant State's Attorney
                             DuPage County States Attorney's Ofc.
                             503 North County Farm Road
                             Wheaton, IL  60187


    PLEASE PROVIDE CORRECT VOICE IDENTIFICATION

Transcribed by:              Riki Schatell
                             6033 North Sheridan Road, 28-K
                             Chicago, Illinois  60660-3046
                             773/728-7281


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

EXHIBIT

3

1          THE CLERK:  Certified Car Sales vs. Zaruba, motion to

2    dismiss.

3          THE COURT:  Good morning, counsel.

4          MR. KOMIE:  Good morning, your Honor, I'm Stephen,

5    S-t-e-p-h-e-n, middle M., last name Komie, K-o-m-i-e.  You

6    granted my motion for leave to file my appearance last week.

7          THE COURT:  Okay.

8          MR. KOMIE:  On behalf of the plaintiffs.

9          THE COURT:  All right.

10          MR. BRUCKNER:  Good morning, your Honor, Paul

11    Bruckner, Assistant State's Attorney, on behalf of the DuPage

12    defendants.

13          THE COURT:  Good morning, counsel.

14          MR. KOMIE:  Judge, I was informed by your wonderful

15    minute clerk that you are in the middle of deliberating a

16    motion to dismiss.

17          THE COURT:  Well, maybe then I was but I have already

18    -- This case has been decided.  This case was dismissed on

19    Friday.

20          MR. KOMIE:  Was it?

21          THE COURT:  It was dismissed.  I granted the motion

22    to dismiss.

23          MR. KOMIE:  Were you aware that we filed a motion

24    with additional authority from the Seventh Circuit that had an

25    identical fact pattern?

3

1          THE COURT:  Well, I was -- I know you filed some

2      stuff.  I granted you leave to appear in this case and I

3      assumed at that time that it was for the purpose of appealing

4      to the Seventh Circuit perhaps.

5          MR. KOMIE:  No, Judge.  I can --

6          THE COURT:  But it was not.  I can tell you, Mr.

7      Komie, the problem in this case -- And you have some real

8      problems in this case, and that is that we set some deadlines

9      in this case for dispositive motions back in May.  The deadline

10     was May 29th, I believe.  And everybody met those deadlines

11     with prior counsel.

12         I've been waiting to issue -- I indicated to both

13     parties that I was going to issue my ruling in this case prior

14     to Friday, this past Friday, and at a July 11th status hearing

15     your client was there.  Mr. Kramer, I believe his name was.  Is

16     that his name, Kramer?

17         MR. KOMIE:  You know, I'm sure the Court did all the

18     right things and I'm not here --

19         THE COURT:  Right, I did all the right things.

20         MR. KOMIE:  And I'm not here criticizing the Court in

21     any way.  I'm here making sure the Court is aware that in

22     August the Seventh Circuit decided an identical case where a

23     deputy took away the titles of people at a car operation in

24     Indiana.

25         THE COURT:  Um-hum.

4

1          MR. KOMIE:  And it was almost an identical case so I

2   wanted to make sure you saw that before you ruled in any manner

3   on the case so that you were aware --

4          THE COURT:  Well, I can tell you, I didn't -- I

5   remember reading that case when it first came down and in the

6   Zip opinion a couple of months ago, I believe it was, but I

7   didn't -- I wasn't, you know, you didn't bring it to my

8   attention until after I had issued the opinion, but it's okay.

9    I understand that you have a legal position that -- But what

10  you are asking for, though, Mr. Komie, you're asking for leave

11  to amend the complaint to make additional allegations, and

12  that's -- I can't do that.  And obviously I can't do that

13  because this case was fully briefed as of May 29th, I believe.

14  Was it May 29th?

15          I believe was -- Yes, May 29th --

16          MR. KOMIE:  Well, Judge --

17          THE COURT:  -- for reply, and it was briefed on a

18  theory.  Now whether you agreed with that theory that prior

19  counsel proceeded on or you think that you could have raised

20  better arguments than prior counsel did, the case is as it was

21  as of May 29th.  That is, a motion to dismiss was filed by the

22  defendants, a response was made, and a reply was made pursuant

23  to my schedule.

24          I then had a -- Then the prior counsel filed a motion

25  to withdraw, saying that he had irreconcilable differences with

1  the client and the client appeared for that motion and the

2  client said I want them to withdraw, and told me that he had

3  retained a Michael Rogers as new counsel.  So from July 11th

4  to, well, last week, I guess, I never heard anything from Mr.

5  Rogers.

6         But then the day before I was going to issue the

7  opinion, obviously the opinion was ready to go.  I just hadn't

8  signed it because I spent a week, an entire week of judicial

9  time drafting that dismissal, considering the motion and the

10  arguments and drafting the opinion.  So I learned on the day

11  that I was issuing the opinion that -- actually issuing it --

12  that you then filed a motion to cite additional authority and

13  also to amend the complaint.  And you think that you need more

14  discovery and tell me how this doesn't prejudice the defendants

15  here.

16         MR. KOMIE:  Well, your Honor, I see that you have

17  excellent recall of the facts of the case.  However, we did not

18  file our appearance to be appellate counsel; we filed our

19  appearance to be trial court counsel.

20         THE COURT:  Right.

21         MR. KOMIE:  Secondly, when we motioned that up, we

22  did not know your Honor's schedule and we motioned it up with

23  the expectation we would have had the privilege of standing in

24  front of you to make the motion till we were called by

25  telephone by your very good clerk to tell us not to come, but

1   the expectation was is that when we came before you we would

2   explain the posture of the case from the perspective of the

3   plaintiff.  When --

4           THE COURT:  But you knew that I was going to rule

5   prior to the 14th.

6           MR. KOMIE:  No, we didn't have a schedule for your

7   ruling.  Your minute orders don't --

8           THE COURT:  You didn't read the minute order?

9           MR. KOMIE:  No, the dockets don't tell us the date

10  you were intending to rule.

11          THE COURT:  No, it said the Court would rule on the

12  pending dispositive motion before the next status hearing.

13          MR. KOMIE:  We were under the impression that it was

14  under advisement.  That was the impression the plaintiff had.

15  So anyway, finally --

16          THE COURT:  Okay, I don't take cases on advisement.

17          MR. KOMIE:  Well, but the motion hadn't been

18  decided at the time --

19          THE COURT:  Okay.

20          MR. KOMIE:  -- he came in and retained us.  We then

21  reviewed the case and discovered that the titles had been

22  negotiated and the signatures on the titles forged by parties

23  who may or may not be a part of the case today.

24          We then were in the intention immediately to bring to

25  your attention both the authority of the Seventh Circuit, where

7

1    the Seventh Circuit said the District Court couldn't grant
2    summary judgment where a constable of a town in Indiana had
3    pressured the titles out of the hands of people who had been
4    stopped on the Indiana Toll Road; their cars towed to the tow
5    yard, and the deputy comes over, the constable comes over there
6    and orders them to surrender their titles to the possession of
7    the towing operator who had a lien, under Indiana law, for
8    towing the car.

9         And it's an identical situation in that the plaintiff
10   here is pressured out of his titles in favor of somebody who
11   claims a superior right without going to court and without
12   anybody intervening in a judicial process to obtain a judicial
13   decision as to who is the lawful owner of the cars and who has
14   a right to the title.

15        So we immediately felt, once we learned from your
16   clerk that you intended to rule, because that's all we knew at
17   the time, that you intended to rule in the very near future, we
18   then made the motion for leave to file additional authority
19   because if you're not going to grant us ability to amend the
20   complaint and put everything in front of the Court, then we're
21   in the posture of making sure your Honor is being treated very
22   fairly by each side, and that you have been told what's out
23   there in the way of precedent which may apply to whatever you
24   are considering.

25        Now, you know, both cases are civil rights cases.

8

1    Both cases a person with a badge shows up and takes a title
2    away from a citizen and tells the citizen that the title really
3    belongs to the person who has other claims, without the benefit
4    of a court order or any court process.
5            So with respect to the motion to, you know, grant
6    leave to file additional authority, I can't possibly see why
7    your Honor wouldn't grant that motion in light of the fact it
8    helps you do your job and your function in deciding the case.
9            Secondly is the question of whether or not you're
10   going to let us file an amended complaint.  At the time we
11   filed that motion the docket doesn't reflect the decision on
12   the case, and as of so far, I can't tell there's a decision on
13   the case as of Friday when I closed business on Friday, there
14   was no docketed decision on the motion.
15           THE COURT:  Um-hum.
16           MR. KOMIE:  Now maybe your Honor, you know, has
17   penned the decision and with the, you know, process and
18   machinery of government it doesn't quite make it through the
19   docket by the time I stand before your Honor.  I am, in good
20   faith appearing before you both to let you know about that case
21   and also to tell you that if you haven't decided the case, we
22   would like to file an amended complaint because, quite frankly,
23   you know, once the title is negotiated it's a stolen title.
24   And if it's negotiated that may have a bearing on your
25   resolution of the case for whatever basis.

1           THE COURT:  Um-hum.  There's one issue here that I

2   think that you might be not addressing here, and that is that

3   you know, when a court -- We don't just decide something.  I'm

4   going to pen a decision tomorrow or today to be issued

5   tomorrow.  There's a lot goes into that as you probably know.

6   As you know.

7           MR. KOMIE:  Sure.

8           THE COURT:  I've got to consider the arguments of

9   both sides and do my own research and decide which side is

10  correct on the law here, and so we have, and the Seventh

11  Circuit Court of Appeals, has repeatedly admonished counsel

12  that judges have a right to control their docket, that they

13  have -- If I've got a list of cases that I want to be worked on

14  in order and I told you that I'm going to issue this decision

15  prior to 9-14, everybody should have been aware that I'm not

16  going to wait until 9-13 to do work on this case.  And it's not

17  going to be helpful to judicial economy to not consider, I mean

18  to consider your argument at this late date and I think that

19  the defendants have some rights here.  I haven't heard from you

20  and I'm not going to make your case for you, so go ahead, Mr.

21  Bruckner?

22          MR. BRUCKNER:  No, I have nothing to add, your Honor.

23   I haven't seen the decision yet.

24          THE COURT:  You didn't see it?

25          MR. BRUCKNER:  No, we -- Actually I haven't entered

1   my appearance on this case yet.

2           THE CLERK:  It was mailed, Judge, if I can

3   (inaudible) by mail.

4           THE COURT:  Wouldn't it also get to the docket?

5           THE CLERK:  Well, it's probably going to be docketed

6   today.  (Inaudible) get docketed today.

7           MR. KOMIE:  That was the point I was making, Judge,

8   is there's no way we could know in advance before we got

9   here --

10          THE COURT:  Well, I'm not going to chastise you for

11  doing that you did.  You did the best you could.  You know,

12  you're representing a party and that's fine with me, but I just

13  wanted you to know that the decision has issued and including a

14  judgment has issued in this case and it was issued, I believe

15  it was, Friday morning.  It should -- I'm surprised that it

16  hasn't been --

17          THE CLERK:  No, I don't (inaudible) the docket.

18  Imaged first, there's a delay while it gets imaged and placed

19  onto the CMCS system.

20          THE COURT:  Okay.

21          THE CLERK:  And then (inaudible).

22          THE COURT:  So --

23          MR. KOMIE:  I'm not critical of the Court.  All I'm

24  saying --

25          THE COURT:  Right.

1          MR. KOMIE:  -- is that when I went to bed, my law

2  firm went to bed on Friday, we had no idea that you had decided

3  the case and that you know, we were trying to be fair to you by

4  bringing this before you.

5          THE COURT:  But when were you retained in this case,

6  Mr. Komie?

7          MR. KOMIE:  Just recently.

8          THE COURT:  Because he'd indicated back in July that

9  he had a Michael Rogers that he had retained.

10         MR. KOMIE:  Yes, well, I'm not Mike Rogers,

11  (inaudible).

12         THE COURT:  Obviously you're not Michael Rogers.  You

13  were just retained in the last week probably.

14         MR. KOMIE:  Yes.

15         THE COURT:  Okay.

16         MR. KOMIE:  And when -- I think it's largely a

17  situation of financing of a pro se defendant at that point.  I

18  think it was a matter of him getting sufficient funds to come

19  before the Court.

20         THE COURT:  Um-hum.  Well, the case is what it is,

21  and I've -- I'm going to -- Again, I grant -- I always grant --

22  You paid your filing fee, didn't you?

23         MR. KOMIE:  I didn't have to because I'm additional

24  counsel.

25         THE COURT:  No, no, you're substitute counsel.

1          MR. KOMIE:  Substitute counsel pays a fee now?

2          THE COURT:  A whole new law firm?

3          MR. KOMIE:  Yeah.  You pay a new fee every time you

4  file an appearance down here now?

5          THE COURT:  Yes.  Well, you might --

6          MR. KOMIE:  I'm so used to criminal, you know, where

7  I --

8          THE COURT:  You might want to check with --

9          THE CLERK:  (Inaudible).

10          THE COURT:  Felicia, Mr. Komie is coming in.  You

11  remember the prior counsel represented the plaintiff in this

12  case and they withdrew.  Does Mr. Komie have to pay a fee?

13          THE LAW CLERK:  For filing an appearance?

14          THE COURT:  Yes.

15          THE LAW CLERK:  Oh, no.

16          THE COURT:  He doesn't.

17          THE LAW CLERK:  Not for filing an appearance, no.

18          MR. KOMIE:  Thank God there's one free service left.

19          THE COURT:  All right.  See, that stuff, I know that

20  that's your, you know, I wasn't sure about that procedural

21  stuff but if she says no --

22          MR. KOMIE:  Great.

23          THE COURT:  It doesn't help me at all.  I didn't want

24  any money.  I just wanted to make sure that procedurally that

25  you had done what you're supposed to do.  So your appearance, I

13

1    granted that.  And -- But as I always do.  I don't want a pro

2    se plaintiff out there when I can have someone who has

3    indicated they want to represent him.  So your appearance is

4    granted.  And in fact, you were served with a copy of the

5    opinion.

6              THE CLERK:  Okay.  I know.

7              THE COURT:  She did.

8              THE CLERK:  And I have extras here.

9              MR. KOMIE:  So we're being served in open court.

10             THE COURT:  Well, it --

11             THE CLERK:  Extra copies.

12             THE COURT:  Extra copies.  We'll give you extra ones.

13             So we'll see how that plays out.  I mean you

14    certainly can file an appeal on that if you like, Mr. Komie,

15    and cite the case that you cited to me and saying that --

16             MR. KOMIE:  Well, I'm not so much enjoying the idea

17    of going elsewhere as I might very well come back before your

18    Honor and --

19             THE COURT:  Right.

20             MR. KOMIE:  -- ask you to reconsider based on that

21    case, you know?  I may say, you know, give the guy a fair shot

22    at it, you know?

23             THE COURT:  Well, we'll see.

24             MR. KOMIE:  You know?

25             THE COURT:  All right.  So your motion to appear

14

1  obviously is granted already, and the other motions I'm

2  denying.

3          MR. KOMIE:  They're moot, I guess, for the moment.

4          THE COURT:  They're moot.

5          MR. KOMIE:  Yes.

6          THE COURT:  Denied as moot because case has been

7  dismissed.

8          MR. KOMIE:  Right.

9          THE COURT:  All right.

10         MR. KOMIE:  Well, thank you, Judge.

11         THE COURT:  You're welcome.

12         MR. KOMIE:  It's a pleasure to meet you.

13         THE COURT:  Nice meeting you, sir.

14                    (Hearing adjourned.)


        I, RIKI SCHATELL, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.

/s/ Riki Schatell

                                June 29, 2008
                                Date

Order Form (01/2005)          Case 1:06-cv-06192    Document 69    Filed 09/17/2007    Page 1 of 1

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 6192 | **DATE** | 9/17/07 |
| **CASE TITLE** | Certified Car Sales LLC v. Zaruba et al | | |

**DOCKET ENTRY TEXT**

Motion hearing held on Plaintiff Certified Car Sales LLC 's motion for to file Second Amended Complaint. The motion is denied for the reasons stated on the record (#63). *AK*

Docketing to mail notices.

U.S. DISTRICT COURT

2007 SEP 17 PM 4: 12

FILED

| | Courtroom Deputy Initials: | AC |
|---|---|---|

06C6192

**EXHIBIT**

**4**

Page 1 of 1