**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID KRAMER, Individually, and as the President and Sole Owner of CERTIFIED CAR SALES, LLC, a Missouri Limited Liability Company, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 08 C 2530 |
| SHERIFF'S DEPUTY STEVEN STELTER, Individually and as a Deputy of the DuPage County Sheriff's Office; *et al.*, | ) ) ) ) | Judge Castillo Magistrate Judge Keys |
| Defendants. | ) ) ) | |

**DEFENDANT VW CREDIT, INC.'S MOTION TO STRIKE AND DISMISS**

*Of Counsel:*
R. Scott Alsterda
Jeffrey H. Bergman
UNGARETTI & HARRIS LLP
3500 Three First National Plaza
Chicago, Illinois  60602
312-977-4400
312-977-4405 (Fax)

## TABLE OF CONTENTS

I.      Introduction ............................................................................................. 1

II.     The Complaint Should Be Stricken Or Dismissed Because It Violates The
        Requirements of Rule 8 ............................................................................. 1

III.    The Complaint Does Not Plead A Cause Of Action Against VWC ............. 4

        A.     Counts 1 Through 10 Should Be Dismissed Because There Is No
               Private Right Of Action For Mail or Wire Fraud ............................. 4

        B.     Count 14 Does Not Plead The Elements Of A Conspiracy To Violate
               RICO Against VWC ......................................................................... 5

        C.     Kramer Has Not Pleaded The Elements Of Fraudulent
               Misrepresentation Against VWC ..................................................... 8

        D.     Because Kramer Never Contracted With VWC, He Cannot Plead A
               Cause Of Action For Breach Of Contract Against It ...................... 13

        E.     Kramer Has Not Pleaded A Cause Of Action For Conversion Against
               VWC ............................................................................................. 13

        F.     Kramer Has Not Pleaded Tortious Interference With A Business
               Expectancy Against VWC ............................................................. 15

        G.     Kramer Has Not Pleaded A Cause Of Action For Promissory
               Estoppel against VWC .................................................................. 16

IV.     Conclusion ............................................................................................ 19

# TABLE OF CASES

*Adcock v. Brakegate, Ltd.*
   645 N.E.2d 888, 894 (Ill.1994) ............................................................. 12

*Bologna v. Allstate Ins. Co.*
   138 F. Supp. 2d 310, 327 (E.D.N.Y. 2001) ............................................. 5

*Brouwer v. Raffensperger, Hughes & Co.*
   199 F.3d 961, 967 (7th Cir. 2000) ......................................................... 8

*Cirrincione v. Johnson*
   184 Ill. 2d 109, 114, 703 N.E.2d 67, 70 (1998) ................................... 14

*Cohabco Cigar Co. v. United States Tobacco Co.*
   1998 WL 773696 *6-7 (N.D. Ill. Oct. 30, 1998) .................................. 12

*Cramer v. Insurance Exchange Agency*
   174 Ill. 2d 513, 528, 675 N.E.2d 897, 905 (1996) .............................. 8, 9

*Delloma v. Consolidation Coal Co.*
   996 F. 2d 168, 170-71 (7th Cir. 1993) ................................................. 15

*DiLeo v. Ernst & Young*
   901 F.2d 624, 627 (7th Cir. 1990) ......................................................... 9

*Dumas v. Infinity Broadcasting Corp.*
   416 F.3d 671, 677 (7th Cir. 2005) ....................................................... 17

*Eisenhauer v. Stern*
   2000 WL 136011, *2 (N.D. Ill. Jan. 27, 2000) .................................... 12

*Golden v. Nadler, Pritikin & Mirrabelli, LLC*
   2005 WL 2897397 at *7 (N.D. Ill. Nov. 1, 2005) .................................. 7

*Hartz v. Friedman*
   919 F.2d 469, 471 (7th Cir. 1990) ......................................................... 3

*Herion v. Village of Bensonville*
   2000 WL 1648937 (N.D. Ill. Nov. 1, 2000) .......................................... 12

*Industrial Specialty Chemicals, Inc. v. Cummins Engine Co.*
   902 F. Supp. 805, 814 (N.D. Ill. 1995) ............................................... 3, 4

*Kamboj v. Eli Lily & Co.*
   2007 WL 178434 at *9 (Jan. 18, 2007) ............................................... 17

*McHenry v. Renne*
    84 F.3d 1172, 1179-80 (9th Cir. 1996)................................................... 3, 4

*Rose v. MONY Life Ins. Co.*
    2001 WL 214200 at *5 (N.D. Ill. Mar. 2, 2001) ...................................... 12

*Slaney v. The Int'l Amateur Athletic Fed'n*
    244 F.3d 580, 600 (7th Cir. 2001)............................................................ 7

*U.S. Textiles, Inc. v. Anheuser-Busch Companies, Inc.*
    911 F.2d 1261, 1266 (7th Cir. 1990)......................................................... 6

*Van Der Molen v. Washington Mut. Finance, Inc.*
    359 Ill.App.3d 813, 823, 835 N.E.2d 61, 69 (1st Dist. 2005) ............... 13

*Wisdom v. First Midwest Bank*
    167 F.3d 402, 408 (8th Cir. 1999)............................................................ 5

*Wooley v. Jackson Hewitt, Inc.*
    540 F. Supp. 2d 964, 973 (N.D. Ill. 2008)........................................... 5, 7

Defendant VW Credit, Inc. ("VWC"), by its attorneys, pursuant to Rule 8 and Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully moves this court for an order striking and dismissing Plaintiff David Kramer's ("Kramer") claims against it in his Verified Complaint At Law in this matter. In support of this motion, VWC states as follows:

## I.    Introduction

Kramer's 108 page Verified Complaint At Law (the "Complaint") violates the requirements of Rule 8 that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and that each allegation must be "simple, concise and direct." For this reason alone, it should be stricken, or dismissed without prejudice. Further, for all its verbosity, the Complaint fails to plead any cause of action against VWC for which relief can be granted. If the Court chooses not to dismiss the Complaint on Rule 8 grounds, then it should dismiss every count against VWC pursuant to Rule 12(b)(6).

## II.    The Complaint Should Be Stricken Or Dismissed Because It Violates The Requirements of Rule 8

The gravamen of Kramer's claims seems to be that 1) the owners of Pugi Kia tricked him into lending a total of $62,500 to Pugi Kia, and into managing the business for them, by giving him financial statements that overstated the value of Pugi Kia's inventory; and 2) that the owners of Pugi Kia sold four cars and a truck that Kramer had placed on Pugi Kia's lot for sale on consignment, and kept the proceeds for themselves. Out of this dispute, Kramer has

produced a Complaint that is 108 pages long, and contains 525 numbered paragraphs. It is broken down into 45 counts, each with its own separate *ad damnum.* Of these 45 counts, fourteen purport to plead claims arising under federal law: four for violations of the wire fraud statute (Counts 1-4); six for violations of both the federal mail and wire fraud statutes (Counts 5-10); two for civil rights violations, although not against VWC (Counts 11 and 12); and two for RICO violations (Counts 13 and 14). The other 31 counts purport to state causes of action under Illinois state law: eight for fraudulent misrepresentation (Counts 15, 16, 18, 20, 25, 30, 35, and 40); eight for breach of contract (Counts 17, 19, 23, 28, 33, 38, 43, and 45); five for conversion (Counts 21, 26, 31, 36, and 41); five for tortious interference with a business expectancy (Counts 22, 27, 32, 37 and 42); and five for promissory estoppel (Counts 24, 29, 34, 39, and 44).

Kramer's Complaint violates the requirements of Rule 8 that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and that each allegation must be "simple, concise and direct." Rules 8(a)(1) and 8(d)(1), Fed. R. Civ. P. It is prolix, repetitive, and difficult to understand. Even after repeated readings, it is impossible to tell with certainty just what VWC is alleged to have done wrong, or under which counts Kramer seeks relief from VWC, as opposed to the other defendants.

As the Ninth Circuit has said, "prolix, confusing complaints impose unfair burdens on litigants and judges. As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use [such] a

complaint . . , and must prepare outlines to determine who is being sued for what.  Defendants are then put at risk that their outline differs from the judge's, that plaintiffs will surprise them with something new at trial which they reasonably did not understand to be in the case at all, and that *res judicata* effects of settlement or judgment will be different from what they reasonably expected." *McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996).

Failure to comply with the requirements of Rule 8 may justify dismissal, "albeit usually without prejudice." *Industrial Specialty Chemicals, Inc. v. Cummins Engine Co.*, 902 F. Supp. 805, 814 (N.D. Ill. 1995), *citing Hartz v. Friedman*, 919 F.2d 469, 471 (7th Cir. 1990).  In *Industrial Specialty Chemicals,* Judge Aspen struck an overly-long complaint for violating the requirements of Rule 8, explaining his ruling as follows:

> ISC's complaint spans sixty pages, and contains approximately 115 paragraphs, some of which span several pages.  The Background section, which is incorporated into all of the six counts, contains ninety-five paragraphs alone.  Much of the complaint contains material which might be relevant at trial, but which certainly need not be alleged in order to state a claim.  While there is no strict limitation on the length of complaints, the instant document is far more detailed and cumbersome than necessary.  Accordingly, we conclude that plaintiff should amend its complaint in order to weed out the clearly extraneous material.

Kramer's Complaint is much worse.  It is almost twice as long as the complaint in *Industrial Specialty Chemicals*, and contains almost four times as many numbered paragraphs.  The Preliminary Statement is three pages long, and the General Allegations section, which is incorporated into every count,

contains 98 paragraphs, and is 19 pages long.  And while it might be possible

for some case, somewhere, to be so complex as to justify a complaint of this

length, Kramer's dispute with Pugi Kia is not that case.  As in *Industrial*

*Specialty Chemicals*, the Complaint is "far more detailed and cumbersome than

necessary."  There is a great deal of "clearly extraneous material" in the

Complaint that could be weeded out, and it would be an unfair burden on VWC

to have to respond to it in its current bloated state.[1]

## III.    The Complaint Does Not Plead A Cause Of Action Against VWC

Again, one of the principal defects of the Complaint under Rule 8 is that

it is not clear which counts are directed at VWC, and which are not.  It is also

not clear just what VWC is supposed to have done wrong.  Even with these

defects, however, the Complaint can also be dismissed against VWC pursuant

to Rule 12(b)(6) for failure to plead a cause of action.

### A.    Counts 1 Through 10 Should Be Dismissed Because There Is No Private Right Of Action For Mail or Wire Fraud

This one is easy.  Counts 1 through 4 allege violations of the federal wire

fraud statute, 18 U.S.C. § 1343, and Counts 5 through 10 allege violations of

both the federal wire fraud statute and the federal mail fraud statute, 18 U.S.C.

§ 1341.  Even if Kramer had adequately pleaded the substance of violations of

those statutes (and he has not with respect to VWC), it wouldn't matter –

---

[1] Kramer may respond by pointing out that his fraud claims are subject to the particularity requirements of Rule 9(b), and arguing that these requirements justify, or even mandate, the length and repetitiveness of his Complaint.  Not so.  As the Ninth Circuit said in *McHenry v. Renne, supra,* "[a] heightened pleading standard is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity."  84 F.3d at 1178.

neither statute creates a private right of action, and Kramer cannot recover damages under either of them.  *See, e.g., Wisdom v. First Midwest Bank*, 167 F.3d 402, 408 (8th Cir. 1999); *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 327 (E.D.N.Y. 2001).

**B.    Count 14 Does Not Plead The Elements Of A Conspiracy To Violate RICO Against VWC**

Count 13 attempts to plead a cause of action under 18 U.S.C. § 1962(c). It appears that VWC is not meant to be included as a defendant under that count.  In Paragraph 258 of the Complaint, only those defendants "named in paragraphs 7 through 17" are alleged to have "conducted an enterprise's affairs through a pattern of racketeering activity," and VWC is not named in Paragraphs 7 through 17; it is named in Paragraph 18.

However, Count 14 accuses VWC of violating 18 U.S.C. § 1962(d) by conspiring, along with defendants Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, Kia Motors America, Inc. ("KMA"), Pugi Kia, LLC, and D & M Auto Sales, Inc.'s "salespeople, accountants and attorneys" to violate 18 U.S.C. § 1962(c).  (Complaint, ¶ 264.)  This count does not state a cause of action against VWC.

As this Court has recognized, RICO was "never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions."  *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 973 (N.D. Ill. 2008).  That is exactly what Kramer is trying to do, and he shouldn't be allowed to get away with it.

The "pattern of racketeering" requirement is the bulwark that keeps garden variety commercial fraud from falling within the ambit of the federal anti-racketeering statute. It is therefore not surprising that, among other defects, the Complaint fails the well-known four factor test promulgated by the Seventh Circuit for establishing a pattern of racketeering activity under RICO. Under this test, to determine whether a pattern of racketeering activities has been alleged, the Court should examine (1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and, (4) the occurrence of distinct injuries. *U.S. Textiles, Inc. v. Anheuser-Busch Companies, Inc.*, 911 F.2d 1261, 1266 (7th Cir. 1990). Kramer alleges only one victim, himself, and a single scheme that lasted only six months, from November 2005 through May 2006. This by itself is fatal to a RICO action. Additionally, he alleges only mail and wire fraud as predicate acts. This further militates against a finding that a pattern of racketeering activity has been pleaded, because, as the Seventh Circuit has said, "a multiplicity of mailings [or wires] does not necessarily translate into a 'pattern' of racketeering activity." *Id.*

Without a pattern of racketeering activity, there can be no RICO violation, and no conspiracy to violate RICO, either. For this reason alone, both Count 13 and Count 14 should be dismissed against all defendants, including VWC.

Further, even if Kramer had successfully pleaded a substantive RICO violation in Count 13, his conspiracy claim would still be defective. Section

1962(d) makes it unlawful for "any person to conspire to violate any of the provisions of subsections (a), (b), or (c)" of Section 1962.  In order to state a viable claim for conspiracy under Section 1962(d), a plaintiff must allege that (1) the defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant further agreed that someone would commit at least two predicate acts constituting a pattern of racketeering activity to accomplish those goals.  *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 600 (7th Cir. 2001); *Golden v. Nadler, Pritikin & Mirrabelli, LLC*, 2005 WL 2897397 at *7 (N.D. Ill. Nov. 1, 2005).  A RICO plaintiff is required to allege sufficient facts to support each element, and cannot simply allege these elements using boilerplate language.  *Wooley v. Jackson Hewitt, Inc.*, *supra*, 540 F. Supp. 2d at 973.

With respect to the first element under Section 1962(d), where, as here, a conspiracy to violate Section 1962(c) is alleged, the Seventh Circuit has said that:

> To conspire to commit a subsection (c) offense, . . . one does not need to agree personally to be an operator or manager [of the enterprise].  On the other hand, one cannot conspire to violate subsection (c) by agreeing that somehow an enterprise should be operated or managed by someone.  That would impose a meaningless requirement and cast a frighteningly wide net.  Rather, one's agreement must be to knowingly facilitate the activities of the operators or managers to whom subsection (c) applies.  One must knowingly agree to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner.  It is an agreement, not to operate or manage the enterprise, but personally to facilitate the activities of those who do.

*Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000).

The only allegations in Kramer's Complaint concerning VWC's role in the alleged RICO conspiracy are boilerplate. There are no allegations that VWC knowingly agreed to perform specific services which facilitated the activities of those defendants who allegedly operated an enterprise in an illegal manner. Further, there are no allegations that VWC agreed that anyone should commit any of the alleged acts of mail or wire fraud. The mere conclusory allegations of Count 14, that VWC and others "conspired to violated 18 U.S.C. § 1962(c) by agreeing to conduct or participate in the affairs of the enterprise referred to in paragraphs 241 through 260 above that consisted of a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B) and (5), that is, multiple acts of mail and wire fraud" (Complaint, ¶ 264), are not enough to state a cause of action against VWC, and not enough to justify making VWC defend a federal racketeering charge.

### C.    Kramer Has Not Pleaded The Elements Of Fraudulent Misrepresentation Against VWC

Fraud is an intentional tort. Under Illinois law, its elements are 1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury. *Cramer v. Insurance Exchange Agency*,

174 Ill. 2d 513, 528, 675 N.E.2d 897, 905 (1996).  Under Rule 9(b), Fed. R. Civ.

P., the circumstances constituting fraud must be pleaded with particularity.

This means that the Complaint must contain the "who, what, when, where,

and how: the first paragraph of any newspaper story" with respect to the

alleged misrepresentations.  *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.

1990).

Eight counts of the Complaint seek to recover from VWC on a fraudulent

misrepresentation theory.  None of these counts contain any particularized

allegations that VWC ever made any statements at all to Kramer; the "who,

what, when, where, and how" are entirely missing.  Also missing is any

allegation that VWC knew or believed that any statement it made to Kramer

was untrue, or that VWC made any statements to Kramer with an intent that

he rely on them.

What, then, is the basis for the allegations of fraud against VWC?  VWC

was a lender to Pugi Kia.  (Complaint, ¶ 38.)  Count 15 deals with the alleged

fraudulent scheme first described in Paragraphs 30 through 39 of the

Complaint.  In the introductory heading to those paragraphs, Kramer alleges

that "[Michael J.] Colando, Anthony Colando, Pugliani, Hall, Pugi Kia and D&M

fraudulently inflate[d] the value of Pugi Kia by listing a 2005 Kia Sorrento

known as 2005 Kia 7059 on its inventory that it had sold and was not its

property."  Kramer alleges that Pugi Kia sold this car on November 9, 2005,

and received $24,429.43 for it, "but did not report this sale to VW Credit

[VWC], violating the terms of the loan on the 2005 Kia 7059." (Complaint, ¶¶

33-37.)  Kramer further alleges that VWC listed the sold car on a Pugi Kia

inventory on December 16, 2005, and that "[Michael J.] Colando, Anthony

Colando, Pugliani and Hall presented a December 31, 2005 inventory sheet to

Plaintiff . . that listed 2005 Kia 7059 as the property of Pugi Kia." (Complaint,

¶¶ 38-39.)

From these paragraphs, several facts are apparent.  First, VWC had

nothing to do with sending the incorrect inventory sheet to Kramer.

Defendants Michael J. Colando, Anthony Colando, Dominic Pugliani and Larry

Hall sent it.  Second, VWC did not know that the inventory sheet was incorrect,

or that it had been sent to Kramer, or the purpose for which the Colandos,

Pugliani and Hall sent it.  The fraud, if there was any, was committed by the

Colandos, Pugliani and Hall.  Indeed, VWC itself may have been a victim if they

deliberately withheld the information from VWC that Pugi Kia had sold a

vehicle that collateralized VWC's loan.

Nevertheless, Count 15 seeks to hold VWC liable for the alleged fraud

involving false inventory sheets and financial statements.  VWC, Kramer

claims, "knew or should have known" that any inventory statement that listed

this car was false, and he alleges conclusorily that VWC had a obligation

(presumably to Kramer, although the Complaint doesn't say so, or why) to

insure that the vehicle 2005 Kia 7059 listed on Pugi Kia's inventory sheet was

in fact on Pugi Kia's lot.  (Complaint, ¶ 272.)

This is absurd.  The allegation that VWC knew that 2005 Kia 7059 had

been sold is directly contradicted by the allegation in Paragraph 37 of the

Complaint that Pugi Kia did not report the sale to VWC.  And if VWC did in fact know that 2005 Kia 7059 had been sold, why would VWC still list the car on a Pugi Kia inventory that it prepared?  As for the conclusory allegation that VWC "should have known" that the car had been sold, the unanswered question is how?  Should VWC constantly have monitored the Pugi Kia lot, checking to make sure that the cars that collateralized its loans to Pugi Kia had not been sold without its knowledge?  And why would VWC have a duty to third parties such as Kramer to make sure that its reports of Pugi Kia's inventory were correct?  If, as Kramer suggests, VWC was negligent in monitoring its own collateral, that still would not make VWC liable for the Pugi Kia defendants' use of a VWC inventory report that those defendants knew was incorrect.  Count 15 fails to state a cause of action against VWC, and should be dismissed against it.

Counts 16 and 18 involve alleged fraud by the Pugi Kia defendants in obtaining loans from Kramer using trust agreements secured by Pugi Kia inventory.  No specific actions by VWC are alleged.  Instead, the Complaint merely alleges, without any elaboration, that VWC, along with the other defendants, "did knowingly and intentionally devise and conspire to devise a material scheme and plan to defraud, and to obtain money and property by means of materially false and fraudulent promises, representations and statements, well knowing that the promises, representations and statements were materially false when made."  (Complaint, ¶¶ 279, 302.)

These boilerplate allegations are not sufficient to state a cause of action

for conspiracy to commit fraud against VWC.  As this Court held in *Rose v.*

*MONY Life Ins. Co.*, 2001 WL 214200 at *5 (N.D. Ill. Mar. 2, 2001):

> To properly allege a civil conspiracy, a plaintiff must plead: (1) a
> combination of two or more persons; (2) for the purpose of
> accomplishing by some concerted action; (3) either an unlawful
> purpose or a lawful purpose by unlawful means. *Adcock v.*
> *Brakegate, Ltd.,* 645 N.E.2d 888, 894 (Ill.1994).  In addition, this
> Court has required that conspiracy must be pled with particularity
> under Federal Rule of Civil Procedure 9(b).  *See Cohabco Cigar Co.*
> *v. United States Tobacco Co.,* 1998 WL 773696 *6-7 (N.D. Ill. Oct.
> 30, 1998).

> An allegation of civil conspiracy must state facts, not mere
> conclusions. "[S]imply mouthing conclusory assertions of
> 'conspiracy' in the context of an asserted fraud will not suffice."
> *Eisenhauer v. Stern,* 2000 WL 136011, *2 (N.D. Ill. Jan. 27, 2000).
> A plaintiff must allege specific facts showing the existence of an
> agreement between the alleged conspirators. *Herion v. Village of*
> *Bensonville,* 2000 WL 1648937 (N.D. Ill. Nov. 1, 2000).

Kramer has not pleaded any facts showing that VWC agreed with the

Pugi Kia defendants that they should defraud Kramer, as alleged in Counts 16

and 18.  Rather, he has simply mouthed conclusory allegations of conspiracy.

Counts 16 and 18 therefore should be dismissed against VWC.

The five remaining fraud counts, Counts 20, 25, 30, 35, and 40, each

relate to an incident in which the Pugi Kia defendants allegedly sold one of

Kramer's cars that had been placed on the Pugi Kia lot on consignment, and

then refused to remit the proceeds to Kramer.  VWC is not alleged to have

made any statements to Kramer, false or otherwise, or to have had any

involvement in the fraudulent schemes.  The only allegations concerning VWC

are conclusory allegations in Counts 25, 30, and 35 that it, along with

defendant Kia Motors America and the Pugi Kia defendants, "unlawfully benefitted" from the conversion of Kramer's vehicles.  (See Complaint, ¶¶ 364, 397, and 430.)  Counts 20 and 40 do not say anything about VWC at all.  But even if VWC had benefited from the Pugi Kia defendants' conversion of Kramer's vehicles (and the Complaint does not explain how VWC benefitted), for the reasons stated above that still would not be enough to hold VWC liable for fraud.  Counts 20, 25, 30, 35, and 40 should also be dismissed against VWC.

**D.    Because Kramer Never Contracted With VWC, He Cannot Plead A Cause Of Action For Breach Of Contract Against It.**

Under Illinois law, to recover for the breach of a contract, a plaintiff must establish: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.  *Van Der Molen v. Washington Mut. Finance, Inc.*, 359 Ill.App.3d 813, 823, 835 N.E.2d 61, 69 (1st Dist. 2005).  In none of his eight breach of contract counts does Kramer allege a contract between himself and VWC, and in none of them does he allege a breach of any contract by VWC.  VWC therefore cannot be held liable to Kramer for breach of contract, and should be dismissed from Counts 17, 19, 23, 28, 33, 38, 43, and 45.

**E.    Kramer Has Not Pleaded A Cause Of Action For Conversion Against VWC**

To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the

defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114, 703 N.E.2d 67, 70 (1998).

Each of the five conversion counts relates to one of the five consignment vehicles that the Pugi Kia defendants allegedly sold without remitting the proceeds to Kramer. The last two, counts 36 and 41, do not mention VWC at all. In the first three, Counts 21 (relating to 2005 Kia 7152), 26 (relating to 2004 Kia 0125), and 31 (relating to 2005 Pontiac 3477), there is a boilerplate statement that "Defendants Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit [VWC], KMA, Pugi Kia and D&M unlawfully and without authorization assumed control, dominion, or ownership over [the vehicle at issue] through acts of fraud and forgery." In Count 21, Kramer adds to this statement the words "including not only the forgery of Plaintiff's name on the title, but also and additional forgery on an Affirmation of Correction, dated January 10, 2006." (Complaint, ¶¶ 337, 370, and 403.)

The General Allegations section of the Complaint, however, completely contradicts the conclusory allegations that VWC wrongfully assumed control, dominion, or ownership over the vehicles at issue. The paragraphs concerning the sale of 2005 Kia 7152, Paragraphs 57 through 71, make it clear that Michael J. Colando, Anthony Colando, Dominic Pugliani, and Larry Hall were the only defendants involved in the alleged conversion of the vehicle and the proceeds of its sale. Similarly, the facts pleaded in the section concerning the

alleged conversion of 2004 Kia 0125 (Paragraphs 72 through 83), and the section concerning the alleged conversion of 2005 Pontiac 3477 (Paragraphs 84 through 95), make it clear that VWC had nothing to do with the alleged conversions.  VWC is not mentioned at all, and it is clear that it never assumed control, dominion, or ownership over the vehicles at issue.

When a plaintiff pleads specific facts that show that he has no claim, he has pleaded himself out of court, and the claims may be dismissed.  *Ware v. Fairman,* 884 F. Supp. 1201, 1205 (N.D. Ill. 1995).  In this case, the allegations of Paragraphs 57 through 95 of the Complaint show that VWC had nothing at all to do with the alleged conversion of any of the vehicles at issue in the three conversion counts that mention VWC.  Accordingly, all of the conversion counts against VWC should be dismissed.

### F.    Kramer Has Not Pleaded Tortious Interference With A Business Expectancy Against VWC

The elements of tortious interference with a prospective economic advantage or a prospective contractual relationship are 1) the plaintiff's reasonable expectation of entering into a valid business relationship; 2) the defendant's knowledge of the plaintiff's expectancy; 3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from being fulfilled; and 4) damages to the plaintiff resulting from the defendant's interference.  If the defendant's interference is privileged, the plaintiff bears the burden of proving that the defendant's conduct was malicious.  *Delloma v. Consolidation Coal Co.,* 996 F. 2d 168, 170-71 (7th Cir. 1993).

Like the conversion counts, each of the tortious interference counts involves one of the five consignment vehicles.  In Count 22, Kramer alleges that VWV, along with the two Colandos, Dominic Pugliani, Larry Hall, Dominic Mancini, KMA, Pugi Kia, and D&M "intentionally and maliciously reported 2005 Kia 7152 as stolen, which Defendants know would frustrate or terminate the Plaintiff's ability to auction 2005 Kia 7152."  (Complaint, ¶342.)  Once again, this conclusory and incredible allegation is contradicted by the section of the General Allegations that relate to the story of 2005 Kia 7152, Paragraphs 57 through 71 of the Complaint.  These paragraphs make it clear that VWC had nothing to do with the incident.  Further, Paragraph 61 makes it clear that it was the Colandos, Pugliani and Hall, and not VWC, who reported the vehicle stolen.  Kramer has pleaded VWC out of Count 22, and Count 22 therefore should be dismissed against VWC.

The other four tortious interference counts, Counts 27, 32, 37 and 42, do not refer specifically to VWC at all, but merely recite that "Defendants" sold the vehicle at issue from the lot, and retained the proceeds.  Once again, the General Allegations section of the Complaint make it clear that VWC had nothing to do with the sales at issue – it was only the Pugi Kia defendants who sold the vehicles.  Kramer has therefore pleaded VWC out of Counts 27, 32, 37 and 42 as well.

### G. Kramer Has Not Pleaded A Cause Of Action For Promissory Estoppel against VWC

As an initial matter, it is not clear under Illinois law whether promissory estoppel can be used as a "sword" -- that is, pleaded as an independent cause

of action -- or only used as a "shield"-- that is, pleaded as an affirmative

defense. *See, Kamboj v. Eli Lily & Co.*, 2007 WL 178434 at \*9 (Jan. 18, 2007)

(stating that "Illinois law is in a state of potential flux concerning promissory

estoppel," and collecting Illinois Appellate Court cases).  Nevertheless, this

Court stated in *Kamboj* that to the extent that such a cause of action does still

exist under Illinois law, its elements are "(1) defendants made an unambiguous

promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance

was expected and foreseeable by defendants, and (4) plaintiff relied on the

promise to its detriment." *Id.*  Further, the Court goes on to say that:

> The Seventh Circuit, applying Illinois law, has emphasized,
> however, that "[p]romissory estoppel is not a doctrine designed to
> give a party ... a second bite at the apple in the event that it fails to
> prove a breach of contract. Under Illinois law, a claim for
> promissory estoppel will only succeed where all the other elements
> of a contract exist, but consideration is lacking."
>
> *Id., citing Dumas v. Infinity Broadcasting Corp.*, 416 F.3d 671, 677 (7th

Cir. 2005).

Once again, Kramer has affirmatively pleaded facts showing that all of

the promises allegedly made to him were made by defendants other than VWC.

Further, he has not pleaded the necessary contract element that he

communicated the acceptance of an offer to VWC.  He therefore has not

pleaded a cause of action for promissory estoppel.

Like the counts for breach of contract and tortious interference with

business expectancy, each of the five promissory estoppel counts, Counts 24,

29, 34, 39, and 44, relates to one of the five consignment vehicles.  Of these

five counts, it appears that only Count 29, which relates to the vehicle known

as 2005 Kia 7152, includes VWC as a defendant. In Paragraph 354 of Count 29, Kramer alleges that "Defendants unambiguously promised that the sale of 2005 Kia 7152 from Pugi Kia's lot was to be on the basis of consignment, with the proceeds of the sale of 2005 Kia 7152 to be remitted to the Plaintiff." Further, in Paragraph 356 of Count 29, Kramer alleges that "The Plaintiff's reliance on Defendant's [sic] promise to remit the proceeds of the consigned sale of 2005 Kia 7152 was expected and foreseeable by Michael Colando, Dominic Pugliani, Larry Hall, Anthony Colando, Dominic Mancini, VW Credit [VWC], KMA, Pugi Kia, and D&M." Each of the other four promissory estoppel counts alleges that only the Colandos, Pugliani, Hall, Pugi Kia, and D&M made the promise to sell the relevant vehicle on consignment, and alleges that only the Colandos, Pugliani, Hall, Pugi Kia, and D&M expected and foresaw Kramer's reliance on that promise. VWC is not mentioned at all.

Once again, the detailed facts pleaded in the General Allegations section of the Complaint contradict the incredible contention that VWC had anything to do with the alleged promise to Kramer to sell 2005 Kia 7152 on consignment for his benefit. Paragraphs 55 through 71, which narrate the sad tale of 2005 Kia 7152, make it clear that only defendants Michael Colando, Anthony Colando, Pugliani, and Hall were involved in the scheme involving that car, that only they made promises to Kramer, and that only they could have intended him to rely on those promises. VWC is only mentioned as having lent $7200 to Kramer, using 2005 Kia 7152 as collateral for the loan. (See Complaint, ¶59.) Once again, Kramer's Complaint demonstrates that VWC was completely

uninvolved in any wrongdoing.  Kramer has pleaded himself out of any

promissory estoppel claims against VWC, and all promissory estoppel claims

against VWC should be dismissed.

## IV.    Conclusion

Kramer's Complaint is long, tedious, repetitive, and full of boilerplate,

conclusory allegations.  As a matter of form alone, it is blatantly defective, and

should be stricken or dismissed pursuant to Rule 8.

Because of the Complaint's formal defects, it takes repeated readings to

determine just what VWC is alleged to have done wrong.  The answer to that

question, finally, is "nothing."  Taking the allegations of the Complaint as true,

VWC was lied to by the Pugi Kia defendants, and because of that lie produced

an inventory sheet that incorrectly listed a single vehicle on it that Pugi Kia had

already sold.  The Pugi Kia defendants then used that inventory sheet, without

VWC's knowledge and along with other documents, to obtain a loan from

Kramer.  Unrelatedly, VWC loaned $7200 to Kramer, collateralized by a car

that Kramer placed on Pugi Kia's lot for consignment sale, and the Pugi Kia

defendant then defrauded Kramer out of the proceeds of the sale of the car.

That's it.  Out of those facts, Kramer would brand VWC as a racketeer under

RICO, and hold it liable under both common law contract and tort theories.

What nonsense.  The facts pleaded in the Complaint make it abundantly clear

that Kramer cannot recover from VWC under any theory.  All claims against

VWC in his Complaint therefore should be dismissed pursuant to Rule 12(b)(6).

Dated:  July 11, 2008                    Respectfully submitted,

                                         VW CREDIT, INC.

                                         By: /s/      Jeffrey H. Bergman

*Of Counsel:*
R. Scott Alsterda
Jeffrey H. Bergman
UNGARETTI & HARRIS LLP
3500 Three First National Plaza
Chicago, Illinois  60602
312-977-4400
312-977-4405 (Fax)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney of record hereby certified that he caused a true and correct copy of the foregoing **Defendant VW Credit, Inc.'s Motion To Strike And Dismiss** to be served, on July 11, 2008, by CM/ECF filing notification, on all counsel of record in this case.


/s/ Jeffrey H. Bergman
Jeffrey H. Bergman