UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID KRAMER, Individually, and as the President and Sole Owner of CERTIFIED CAR SALES, LLC., a Missouri Limited Liability Company,<br>                   Plaintiff,<br>v.<br><br>SHERIFF'S DEPUTY STEVEN STELTER; Individually and as a Deputy of the DuPage County Sheriff's Office; JOHN P. CREEDON, Individually and as Director Of the Tri-County Auto Theft Unit; MICHAEL J. COLANDO, deceased, Individually and as a member of PUGI KIA, LLC and as the President and sole Owner of D & M AUTO SALES, INC.; DOMINIC L. PUGLIANI, Individually, and as a member of PUGI KIA, LLC; LARRY M. HALL, Individually and as a Manager of PUGI KIA, LLC; ANTHONY J. COLANDO, Jr., Individually and as a Manager of PUGI KIA, LLC; ANTHONY J. COLANDO, Sr., not individually but as named executor in his capacity as executor of the estate of MICHAEL J. COLANDO, *deceased*; DOMINIC MANCINI, Individually and as an attorney; PUGI KIA, LLC; D & M AUTO SALES, INC.; KIA MOTORS AMERICA, INC.; VW CREDIT, INC.,<br>                  Defendants. | Case No. 08 CV 2530<br><br>Judge Castillo<br>Magistrate Judge Keys |

## MOTION TO DISMISS

NOW COME the Defendants, PUGI KIA, LLC, LARRY M. HALL and DOMINIC MANCINI by and through their attorneys, Kelly & King, P.C. and pursuant to Federal Rule of Civil Procedure, 12(b)(6) moves to dismiss Plaintiff's Verified Complaint at Law. In support of this motion, Defendants state as follows.

I.   **INTRODUCTION**

Plaintiff, David Kramer, brings this action against two police officers, (hereinafter, "the law enforcement defendants") and the remaining defendants, alleging that in the course of attempting to purchase Defendant, Pugi Kia, LLC, an automobile dealership, he was defrauded. This case revolves around allegations of breach of contract, conversion and fraud. Defendants contend that this action should be dismissed against all Defendants [1] based on *res judicata* and also that Counts I through X and XIII and XIV should be dismissed as to all defendants for independent reasons set forth in Sections III and IV of this brief.

II.  **PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO *RES JUDICATA***

*Res judicata* bars this action because the same cause of action was previously adjudicated by this Court. Defendants will begin the discussion with a recitation of the significant events that occurred prior to the filing of the case at bar. The court record shows the following:

1.   On 11/13/06 Certified Car Sales. LLC, filed its Complaint under case number 06 C 6192, entitled, <u>Certified Car Sales, LLC v. John E. Zaruba, et al</u>. (A copy of this complaint is attached hereto as exhibit A.) Aside from the law enforcement defendants, the named defendants in that case, Pugi Kia, LLC, Dominic L. Pugliani and Michael Colando, are named defendants in the instant case.[2] The first complaint consisted of five counts alleging a violation of 42 U.S.C. Section 1983, conversion, breach of contract and requesting an accounting and a piercing of the corporate veil.

---

[1] Plaintiff's counsel, Kelly & King, PC represents Pugi Kia, LLC, Larry Hall and Dominic Mancini who have been served and who have appeared and also Dominic Pugliani, who has never been served and has not appeared. The *res judicata* arguments apply to all defendants.

[2] Since the filing of the first case Michael Colando died and his executor, Anthony J. Colando, Sr. is named in the present case.

The first complaint alleged that David Kramer had entered into a contractual arrangement with Michael Colando and Pugi-Kia whereby Kramer was to first act as a consultant and assume full responsibility for the day-to-day responsibilities of Pugi-Kia, an automobile dealership, and then would purchase Colando's interest in the business. The complaint further alleges that pursuant to Kramer's contract to purchase Colando's interest in the business, Kramer's business, Certified Car Sales, LLC, would place certain of its vehicles on consignment with Pugi Kia and that Pugi Kia agreed to sell said vehicles and pay the proceeds to Certified, less a commission. The complaint references four specific vehicles that were the subject of this sales arrangement and alleged that Pugi-Kia sold three of the vehicles but refused to forward the proceeds to Certified. The complaint also alleges that Pugi-Kia falsely reported the fourth vehicle stolen and elicited the assistance of the law enforcement defendants to wrongfully obtain possession of the fourth vehicle as well as the titles to all four vehicles.

2.   On 1/23/07 Pugi-Kia filed a 12(b)(6) motion to dismiss on behalf of itself and its two members, Dominic Pugliani and Michael Colando. (A copy of this motion is attached as exhibit B). This motion alleged lack of diversity jurisdiction in as much as Plaintiff's complaint alleged only $41,716.36 in damages – far below the diversity damage threshold of $75,000.00.

3.   Also on 1/23/07 the DuPage County State's Attorney's Office filed a 12(b)(6) motion to dismiss on behalf of John E. Zaruba, Sheriff of DuPage County Illinois, and Sheriff's Deputy Steven Stelter, alleging, *inter alia*, that the facts pled in the complaint undermined the claimed §1982 cause of action.

4.   On 1/30/07 Judge Ruben Castillo granted the defendants' motions to dismiss. Defendant John E. Zaruba was dismissed with prejudice. All other defendants were dismissed

without prejudice and Plaintiff was given until 3/02/07 to file an amended complaint. (A copy of this order is attached hereto as Exhibit C).

5.  On 3/02/07 the Plaintiff filed its First Amended Complaint. (A copy of this amended complaint is attached as exhibit D). The only defendants named in this Complaint were Steven Stelter, and John P. Creedon. It had one count, alleging violations of 42 U.S.C. §1983. Significantly, the complaint does not name the Pugi Kia LLC, Dominic Pugliani and Michael Colando as defendants. As in the original complaint, the amended complaint alleged the contractual arrangement between Certified and Pugi-Kia, referenced the same four vehicles and alleged that when Pugi-Kia did not pay Certified for the sale of three of the cars, falsely reported the fourth vehicle stolen and elicited the assistance of the law enforcement defendants to wrongfully obtain possession of the fourth vehicle and the titles to all four vehicles.

6.  On 3/23/07 the DuPage County State's Attorney's Office filed another 12(b)(6) motion to dismiss on behalf Sheriff's Deputy Steven Stelter .

7.  On 4/04/07, pursuant to Local Rule 72.1, the case was transferred to Magistrate Judge Arlander Keys. (A copy of this order is attached as exhibit E).

8.  On 4/18/07 the Illinois Attorney General filed a 12(b)(6) motion to dismiss on behalf of Defendant, Creedon, alleging that the §1983 claim should be barred due to issues concerning probable cause, qualified immunity, ripeness and the Eleventh Amendment.

9.  On 4/27/07 Magistrate Keys set a briefing schedule for both remaining defendants' motions to dismiss. (A copy of this order is attached as exhibit F).

10.  On 5/18/07 the Plaintiff filed its responses to Creedon's and Stelter's Motions to Dismiss and on 5/29/07 the Defendants filed replies thereto.

11. On 7/9/07 Judge Keys granted the original Plaintiff's attorneys leave to withdraw and set the matter for a status hearing on 9/14/07. In the order the Court noted that the *Plaintiff appeared and informed the Court that he has retained Michael Rodgers as his new counsel.* The order also contains language which stated: *"The Court will rule on the pending dispositive motion before the next status hearing."* (emphasis added) (A copy of this order is attached as exhibit G).

12. On 9/13/07 attorney Stephen Komie filed three motions:

   a. a Motion for Leave to file an Appearance on behalf of Plaintiff, Certified Car Sales LLC;

   b. a Motion for Leave to File Additional Authority (regarding the law enforcement defendants' motions to dismiss);

   c. a Motion for Leave to File Second Amended Complaint and to Suspend Adjudication of Defendants' Motion to Dismiss. This motion speaks of adding new theories and facts and naming new defendants. It did not identify the new defendants. (A copy of this Motion is attached as Exhibit H).

13. On 9/14/07 Judge Keys granted attorney Komie leave to file his appearance as counsel for Plaintiff and also granted the law enforcement defendants' motions to dismiss and entered judgment in the case. (Attached are copies of the Court's order (Exhibit I), the Court's Memorandum Opinion and Order (Exhibit J) and Judgment (Exhibit K)).

14. On 9/17/07 Judge Keys denied Plaintiff's Motion for Leave to file Second Amended Complaint for the "reasons stated on the record." (A copy of this order is attached as exhibit L). In the hearing on Plaintiff's motion, Judge Keyes noted that he had ruled on Defendants' motions to dismiss prior to Plaintiff filing his Motion for Leave to File Second Amended Complaint (A copy of the transcript of this hearing is attached as exhibit M, see pp. 2-3.) The Court also advised Plaintiff's counsel that he "certainly can appeal." (Exhibit M. p. 13.)

This was the final order in the original lawsuit. Almost eight months later, on May 2,

2008, Plaintiff filed the instant Verified Complaint at Law. The named Defendants are the same law enforcement Defendants that were named in the first lawsuit, (with the exception of John E. Zaruba) who are again alleged to have committed §1983 violations. As in the first lawsuit, it names Pugi Kia, LLC and Dominic Pugliani and also names Anthony J. Colando, Sr., as the executor of the estate of Michael J. Colando. Strangely, it also names Michael J. Colando despite the fact that he is deceased. In addition, the Verified Complaint names the following new Defendants: Larry M. Hall, Anthony J. Colando, Dominic Mancini, D & M Auto Sales, Inc., Kia Motors America, Inc. and V.W. Credit, Inc. As in the first lawsuit, the new case alleges theories of breach of contract and conversion and adds new theories of fraudulent misrepresentation, tortuous interference with business expectancy, promissory estoppel and Wire and Mail Fraud, and RICO violations.

> The law on *res judicata* is well settled.
>
> "Under the doctrine of *res judicata*, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" (citation omitted). There are three requirements for *res judicata*: "(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits." "If these requirements are fulfilled, *res judicata* 'bars not only those issues which were actually decided in a prior suit, but also all other issues which could have been raised in that action.'" (citation omitted). There is identity of causes of action if the claim "emerges from the same core of operative facts as that earlier action." (citation omitted). "[T]wo claims are one for purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations." (citation omitted). In other words, "a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment." (citation omitted). Also, "[w]hile the legal elements of each claim may be different, the central factual issues are identical." (citation omitted). Cole v. Board of Trustees of the University of Illinois, 497 F.3d 770, 772-773; 2007 U.S. App. LEXIS 19450 (7th Cir. 2007).

A.     **Identity of the Parties**

With respect to the first requirement of *res judicata*, an identity of the parties or their privies, the current Plaintiff, David Kramer, is clearly in privity with the Plaintiff in the first lawsuit, Certified Car Sales, LLC. In the caption of the present case, David Kramer declares himself to be the

6

"President and Sole Owner of Certified Car Sales, LLC." In paragraphs five and six of the Verified Complaint, Kramer states that he conducts his business as Certified Car Sales, LLC and that he wholly owns this corporation.

Turning to the Defendants, Pugi Kia, LLC and its two members (shareholders) Dominic Pugliani and Michael Colando were named in the first suit. Michael Colando has since passed away and the second lawsuit now names Anthony J. Colando, Sr., as executor of his estate. Clearly, Colando and his estate are in privity. In addition, the present complaint names Larry M. Hall, Anthony J. Colando, Jr. and Dominic Mancini. Larry Hall and Anthony J. Colando, Jr. are identified as employees of Pugi Kia, LLC (see paragraphs 7 and 12 of Verified Complaint) who participated in the scheme to defraud the Plaintiff. Dominic Mancini is identified as the attorney for Pugi Kia, LLC and other Defendants[3] (paragraph 14 of Verified Complaint). The Complaint alleges that all of the defendants participated in the alleged scheme to defraud the Plaintiff. (See Plaintiff's Verified Complaint at Law pp. 2-5.)

Where a complaint makes allegations against a defendant not named in an initial suit, and alleges that the defendants in the second suit were closely related to those in the first suit, in that all were allegedly involved in the same conspiracy, the defensive assertion of claim preclusion is appropriate. Also, where there is a significant relationship between the new defendants and the previous defendants, such as a subsidiary, employee or agency relationship, then the doctrine of *res judicata* applies to the new defendants. Whitmer v. John Hancock Mutual Life Insurance Co., 1993 U.S. Dist. LEXIS 7163 (U.S. Dist. Court, N. Dist. Il. 1993) (attached as exhibit N). Without question, the newly named defendants are in privity with the originally named defendants.

B.   **Identity of the Causes of Action**

---

[3] In fact Dominic Mancini only acted as attorney for Pugi Kia, LLC and Dominic Pugliani.

7

As to the second requirement, a fair reading of the two complaints compels the conclusion that there is an identity of the causes of action. Clearly the present lawsuit "emerges from the same core of operative facts" as in the first lawsuit. Although the second suit expands upon the first complaint's factual allegations and gives more detail it still involves the same core of operative facts, i.e. the Plaintiff's allegations that in the course of purchasing the Pugi Kia dealership he was cheated by the Defendants. Both complaints allege conversion of certain automobiles that Plaintiff claims he placed on consignment with Pugi Kia and were sold by Pugi Kia but Pugi Kia did not remit the proceeds to him. In the second case the Plaintiff adds several more automobiles that were allegedly converted and claims that as part of the conversion the titles were forged. He also comes up with new theories of fraudulent misrepresentation, tortuous interference with business expectancy, promissory estoppel, Wire Fraud/Mail Fraud and RICO violations. None of these new allegations and theories change the core of operative facts underlying both suits. *Res judicata* bars all issues which could have been raised in the first action. Certainly, Plaintiff's new legal theories could have been raised in the first case.

### C. A Final Judgment on the Merits

The chronology of events set forth above reveals that the first lawsuit resulted in a final judgment on the merits, not only with respect to the law enforcement defendants but also with respect to Pugi Kia, LLC, Dominic Pugliani and Michael Colando. Although the January 30, 2007 dismissal by Judge Castillo was not a final judgment on the merits, it eventually became a final judgment on the merits due to subsequent events in the case. On January 30, 2007 Judge Castillo dismissed the action as to all defendants and gave the Plaintiff until March 2, 2007 to file an amended complaint. Plaintiff chose to file an amended complaint only against the law enforcement defendants.

Over six months later, on September 13, 2007, Plaintiff filed a motion which sought leave to file a Second Amended Complaint. The motion indicated that the new complaint would allege additional facts and theories and name additional parties. However, this motion did not identify the new parties nor did it attach the new complaint. In the six months preceding this motion, the parties had fully briefed the law enforcement defendants' motions to dismiss and on July 9, 2007 Judge Keys set the matter for a status hearing on September 14, 2007. He specifically stated in this order that he would be ruling on the defendants' pending motions to dismiss <u>before</u> that next hearing. The record indicates that Plaintiff was personally present for this July 9, 2007 hearing. (Exhibit G, Exhibit M, p. 3) Although the file date of this motion, September 13, 2007, is one day before the file date of Judge Key's ruling on the motions to dismiss, Judge Keys pointed out in the September 17, 2007 hearing that he had actually granted these motions prior to the filing of Plaintiff's motion. (Exhibit M, pp. 2-3) Judge Keys rightfully denied Plaintiff leave to file a Second Amended Complaint as the case had already been decided and dismissed and advised Plaintiff's counsel that he could file an appeal. (Exhibit M, pp. 13-14) Plaintiff did not appeal any aspect of the case. Instead, Plaintiff filed the instant action six months later, on May 2, 2008.

With respect to Pugi Kia, LLC, Dominic Pugliani and Michael Colando, and their privies, a final judgment on the merits occurred on September 14, 2007 when the Court granted the law enforcement defendants' motions to dismiss. This fact was confirmed three days later when the Court denied Plaintiff's Motion for Leave to File Second Amended Complaint. At that point Plaintiff's only option was to file an appeal. He did not and thus there can be no question that Plaintiff is barred from filing the case at bar. At the time that the Court granted the two law enforcement defendants' motions to dismiss the case was entirely disposed of and thus that judgment was a final judgment on the merits. See, <u>Harper Plastics, Inc. v. Amoco</u>, 657 F.2d 939, 943 (7th Cir.

9

1981), (for purposes of *res judicata*, a judgment is on the merits if it completely disposes of the underlying cause of action and its effect is that of an absolute bar to a subsequent action).

The Court was also completely justified in denying Plaintiff's Motion for Leave to File Second Amended Complaint even if it had been filed in advance of the dismissal of the law enforcement defendants because the Plaintiff had utterly failed to prosecute any case against the Pugi Kia Defendants after they were dismissed on January 30, 2007. The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an inherent power necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. Jones v. Township High School District No. 211, 966 F.2d 1456 (7th Cir. 1992). Here Plaintiff obviously failed to prosecute the Pugi Kia defendants and the Court would have been entirely justified in denying the Motion to File Second Amended Complaint on this ground alone.

The case of Pullen-Walker v. Roosevelt University, 2006 WL 1843364 (N.D.Ill., 2006); 2006 U.S. Dist. LEXIS 47229 (2006) is instructive. In that case the pro-se Plaintiff filed a multiple count complaint against the defendants. The Court dismissed all but one count (a sex discrimination claim) of the complaint and gave Plaintiff leave to file an amended complaint. She did not do so within the time allowed. Eventually the Court terminated her case for failure to file an amended complaint and Plaintiff appealed. The Seventh Circuit summarily affirmed the dismissal and Plaintiff subsequently refiled her complaint as a new case. In dismissing the new case on *res judicata* grounds, District Judge Darrah stated as follows:

> Dismissal of an action for failure to prosecute or to comply with a court order constitutes a dismissal with prejudice and an adjudication on the merits for purposes of *res judicata*. *Fed. R. Civ. P. 41(b)*. (citation omitted). *"Rule 41(b)* puts the burden on the plaintiff to persuade the district court to specify that a dismissal is without prejudice." (citation omitted).
>
> The dismissal of the sex discrimination claim was a dismissal for failure to prosecute and/or to comply with a court order. The court explicitly stated: "If the plaintiff wishes to proceed

with such a claim, she is hereby ordered to file an amended complaint setting forth her purported sex discrimination claim under the Title IX." Judge Coar Minute Order July 28, 2004. Pullen-Walker failed to do so; and, as a result the case, was dismissed. Because the dismissal of the sex discrimination claim was for failure to prosecute and/or to comply with a court order it constitutes an adjudication on the merits for purposes of *res judicata*.

Further, Federal Rule of Civil Procedure 41(b) states:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule - except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 - operates as an adjudication on the merits.

Although Rule 41(b) and Pullen-Walker involve a dismissal of a case for failure to prosecute the reasoning in the case and in Rule 41(b) should apply equally to the case at bar where the Plaintiff failed to re-file against the Pugi-Kia defendants within the allotted time. If a court has the inherent authority to dismiss for failure to prosecute, it certainly has the inherent authority to deny a motion to reinstate or a motion file an amended complaint where plaintiff has failed to prosecute the case against certain defendants. Further, under the authority of Rule 41(b), Judge Keys' dismissal was a dismissal on the merits.

Finally, because the Plaintiff failed to appeal this Court's dismissal of the law enforcement defendants and this Court's denial of Plaintiff's Motion for Leave to File Second Amended Complaint he has forfeited his right to further adjudicate either of these issues in any forum. See, Lebeau v Taco Bell, Inc., 892 F.2d 605, 1989 U.S. App. LEXIS 19464 (7th Cir. 1989)

> Because no appeal was taken from the dismissal order or the denial of the motions to vacate, what may have been Ms. LeBeau's strongest argument has been forfeited. Her brief complains that it was an abuse of discretion to dismiss her case because of her attorney's lapses, but we do not have jurisdiction to address this issue. The appeal was taken from December 1, 1988 order. It was, of course, far too late to appeal from the June 3 order. The time limits for filing an appeal are "mandatory and jurisdictional." (citation omitted).

For all of the above reasons Plaintiff's complaint should be dismissed, with prejudice, as to all defendants, based on *res judicata*.

### III. COUNTS I – X OF PLAINTIFF'S COMPLAINT ALLEGING MAIL FRAUD UNDER 18 U.S.C. §1341 AND WIRE FRAUD UNDER 18 U.S.C. §1343 SHOULD BE DISMISSED AS NEITHER STATUTE PROVIDES A PRIVATE RIGHT OF ACTION

In Plaintiff's Verified Complaint, Counts I through X allege that various defendants are liable for wire fraud and mail fraud. Defendants contend that these Counts should be dismissed as both 18 U.S.C. §1341 Mail Fraud, and 18 U.S.C. §1343 Wire Fraud are criminal statutes with criminal penalties; neither statute provides for any sort of civil remedy.

This Court previously addressed this issue and held that, "Plaintiff's claims alleging mail and wire fraud must be dismissed because … they are criminal statutes which provide no cause of action to a private litigant like Plaintiff." Jeffries v. Dutton & Dutton P.C., 2006 WL 1343629 (N.D.Ill); 2006 U.S. Dist. LEXIS 32439 (N.D. Ill. May 11, 2006) citing Wisdom v. First Midwest Bank of Poplar Bluff, 167 F.3d 402, 408 (8th Cir. 1999) finding no congressional intent to create a private right of action for mail or wire fraud.

Accordingly, Counts I, through X should be dismissed pursuant to Rule 12(b)(6).

### IV. COUNTS XIII AND XIV OF PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED AS PLAINTIFF HAS NOT ALLEGED THE REQUISITE PATTERN OF RACKETEERING ACTIVITY NECESSARY TO MAINTAIN A RICO CLAIM

In Counts XIII and XIV of his Verified Complaint at Law, Plaintiff alleges that various defendants violated RICO by engaging in a pattern of racketeering activity involving a conspiracy to defraud the Plaintiff. Congress passed RICO in an effort to combat organized, long-term criminal activity. Jennings v. Auto Meter Prod., Inc., 495 F.3d 466, 472 (7th Cir. 2007). To that end, RICO

provides: It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c). Although RICO is a criminal statute, it provides a private right of action to "[a]ny person injured in his business or property by reason of a violation." 18 U.S.C. § 1964(c); Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006). Despite this private right of action, RICO was "never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." Jennings, 495 F.3d at 472.

In order to state a claim under § 1962(c), a plaintiff must adequately allege each of the following elements: (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Jennings*, 495 F.3d at 472  A RICO plaintiff is required to allege sufficient facts to support each element, and cannot simply allege these elements using boilerplate language. Slaney v. The Intern. Amateur Athletic Fed'n, 244 F.3d 580, 597 (7th Cir. 2001); Starfish Invest. Corp. v. Hansen, 370 F. Supp. 2d 759, 768 (N.D. Ill. 2005).

Defendants contend that Plaintiff has failed to adequately allege a pattern of racketeering activity. A pattern of racketeering activity consists, at a minimum, of two predicate acts of racketeering activity committed within a ten-year period. 18 U.S.C. § 1961(5); Jennings, 495 F.3d at 472. "In order to curb widespread attempts to turn routine commercial disputes into civil RICO actions . . . courts carefully scrutinize the pattern requirement to forestall RICO's use against isolated or sporadic criminal activity, and to prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law." Jennings, 495 F.3d at 472-73 (internal citations omitted). To fulfill the pattern requirement, the plaintiff must satisfy the "continuity plus"

13

relationship test: she must demonstrate at least two predicate acts that are both related to each other *and* that pose a threat of continued criminal activity. Id. at 473.

The continuity requirement was intended to give effect to Congress's intention to target long-term criminal behavior as opposed to more discrete acts of fraud. H. J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 242, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989); Jennings, 495 F.3d at 473. Continuity can be either a "closed-ended" or "open-ended" concept. Jennings, 495 F.3d at 473. Closed-ended continuity involves criminal behavior that has come to an end but that went on for a *substantial* period of time. Id (emphasis added). Open-ended continuity involves "a course of criminal activity which lacks the duration and repetition" necessary to establish closed-end continuity, but that "by its nature projects into the future with a threat of repetition." Id. (internal citations omitted).

There is no open-ended continuity in the case at bar as the Plaintiff states in his Complaint that the alleged racketeering activity occurred during a definite time period; more specifically from, "October 2005 through May 2006" (Plaintiffs' Complaint at Law ¶ 244).

In determining whether there is closed-ended continuity, the Court considers the following factors: the number and variety of predicate acts; the length of time over which they were committed; the number of victims; the presence of separate schemes; and the occurrence of distinct injuries. Jennings, 495 F.3d at 473. The Court evaluates each of these factors to achieve a "natural and commonsense result, consistent with Congress's concern with long-term criminal conduct." Id. Although there is no bright-line test, the duration of the alleged racketeering activity is "perhaps the most important element." Id.

As stated above, Plaintiffs allege that the racketeering activity in this case occurred over an *eight month period*: October 2005 through May 2006. (Plaintiffs' Complaint at Law ¶ 244) The

Seventh Circuit has repeatedly held that conduct occurring over a period of a few weeks or months is insufficient to establish a closed-ended pattern. See Jennings, 495 F.3d at 474-75 (no closed-ended continuity where alleged fraudulent acts occurred over ten-month period); Vicom, Inc. v. Harbridge Merch. Servs., 20 F.3d 771, 780-81 (7th Cir. 1994) (finding no pattern where alleged fraud scheme lasted nine months); Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1024 (7th Cir. 1992) (nine-month period of alleged fraudulent activity insufficient to establish pattern); Uni*Quality, 974 F.2d at 922 (fraud scheme that lasted seven to eight months was "precisely the type of short-term, closed-ended fraud that, ... this circuit consistently has held does not constitute a pattern.").

As such, Counts XIII and XIV of Plaintiff's Verified Complaint at Law should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as Plaintiff has failed to allege the requisite pattern of racketeering activity necessary to maintain a RICO claim.

Respectfully submitted,

By: s/Paul E. Kelly
    One of the attorneys for Defendants
    Larry M. Hall, Dominic Mancini and
    Pugi Kia, LLC.

Paul E. Kelly, ARDC No. 1437356
David L. King, ARDC No. 3128899
M. Kellett McConville, ARDC No. 6290167
20 North Clark Street, Suite 2900
Chicago, Illinois 60602
312-553-5290
(Fax) 312-553-5291

## STATEMENT OF COMPLIANCE WITH JUDGE RUBEN CASTILLO'S CASE MANAGEMENT PROCEDURES

Within three days after the Court's initial Status Hearing in this case, I phoned Plaintiff's counsel, Steven Komie, in an attempt to discuss with him the issue of res judicata. I left a message with his secretary for him to call me but I never received a return call.

On July 11, 2008 at 11:30 a.m. I spoke with Mr. Komie's associate, Jeannie Gallucci, regarding this Motion to Dismiss and the Court's requirement that I serve on plaintiff's counsel a concise letter summarizing the legal and factual grounds for the motion with references to supporting authorities and made a sincere effort to resolve the issues relating to the motion. I did not become aware of this procedural rule until July 11, 2008. On July 11, 2008 at 12:45 a.m. I hand-delivered a letter to Plaintiff's counsel in an attempt to comply with this rule and subsequently spoke with Ms. Gallucci who confirmed that she had the letter but that Mr. Komie was out of the office, had been out of the office for the last week and would not be able to speak with me until Monday, July 14, 2008.

Respectfully submitted,

By: s/Paul E. Kelly
   One of the attorneys for Defendants
   Larry M. Hall, Dominic Mancini and
   Pugi Kia, LLC.