UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID KRAMER, Individually, and as the President and Sole Owner of CERTIFIED CAR SALES, LLC., a Missouri Limited Liability Company,<br><br>      Plaintiff,<br><br> v.<br><br>SHERIFF'S DEPUTY STEVEN STELTER; Individually and as a Deputy of the DuPage County Sheriff's Office; JOHN P. CREEDON, Individually and as Director Of the Tri-County Auto Theft Unit; MICHAEL J. COLANDO, deceased, Individually and as a member of PUGI KIA, LLC and as the President and sole Owner of D & M AUTO SALES, INC.; DOMINIC L. PUGLIANI, Individually, and as a member of PUGI KIA, LLC; LARRY M. HALL, Individually and as a Manager of PUGI KIA, LLC; ANTHONY J. COLANDO, Jr., Individually and as a Manager of PUGI KIA, LLC; ANTHONY J. COLANDO, Sr., not individually but as named executor in his capacity as executor of the estate of MICHAEL J. COLANDO, *deceased*; DOMINIC MANCINI, Individually and as an attorney; PUGI KIA, LLC; D & M AUTO SALES, INC.; KIA MOTORS AMERICA, INC.; VW CREDIT, INC.,<br><br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 08 CV 2530<br><br>Judge Castillo<br>Magistrate Judge Keys |

# <u>EXHIBITS IN SUPPORT OF MOTION TO DISMISS</u>

Paul E. Kelly, ARDC No. 1437356
David L. King, ARDC No. 3128899
M. Kellett McConville, ARDC No. 6290167
20 North Clark Street, Suite 2900
Chicago, Illinois 60602
312-553-5290
(Fax) 312-553-5291

# EXHIBIT INVENTORY

**EXHIBIT A**         **COMPLAINT**

**EXHIBIT B**         **PUGI KIA'S MOTION TO DISMISS**

**EXHIBIT C**         **ORDER OF 1/30/2007 FROM JUDGE CASTILLO**

**EXHIBIT D**         **FIRST AMENDED COMPLAINT**

**EXHIBIT E**         **ORDER OF 4/4/2007 TRANSFERRING CASE TO MAGISTRATE JUDGE KEYS**

**EXHIBIT F**         **BRIEFING SCHEDULE AS SET BY MAGISTRATE JUDGE KEYS**

**EXHIBIT G**         **JUDGE KEYS' 7/9/2007 ORDER GRANTING LOFTUS & SALTZBERG LEAVE TO WITHDRAW AS ITS COUNSEL OF RECORD**

**EXHIBIT H**         **PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT & TO SUSPEND ADJUDICATION OF DEFENDANTS' MOTIONS TO DISMISS**

**EXHIBIT I**           **JUDGE KEYS' 9/14/2007 ORDER GRANTING STETLER AND CREEDONS' MOTIONS TO DISMISS**

**EXHIBIT J**           **JUDGE KEYS' MEMORANDUM & OPINION RE: DEFENDANTS STETLER AND CREEDONS' MOTIONS TO DISMISS**

**EXHIBIT K**           **ENTERED JUDGMENT**

**EXHIBIT L**           **JUDGE KEYS' 9/17/2007 ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE ITS SECOND AMENDED COMPLAINT FOR "REASONS STATED ON THE RECORD"**

**EXHIBIT M**           **TRANSCRIPT OF 9/17/2007 HEARING BEFORE JUDGE KEYS IN WHICH HE DENIES PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT**

**EXHIBIT N**           **WHITMER V. JOHN HANCOCK MUTUAL LIFE INSURANCE CO.**

**EXHIBIT A**    **COMPLAINT**

AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

Certified Car Sales, LLC

|  |  |
|---|---|
| CASE NUMBER: | 06 C 6192 |

V.

|  |  |
|---|---|
| ASSIGNED JUDGE: | Castillo |

John E. Zaruba, Sheriff of DuPage County, et al.

|  |  |
|---|---|
| DESIGNATED MAGISTRATE JUDGE: | Keys |

TO: (Name and address of Defendant)

Daniel G. Coman
Registered Agent for Pugi Kia
2525 Cabot Drive, Suite 300
Lisle, IL 60532

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

P. Michael Loftus
Loftus & Saltzberg, P.C.
53 W. Jackson Blvd., Suite 1515
Chicago, IL 60604

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MICHAEL W. DOBBINS, CLERK

(By) DEPUTY CLERK

NOV 1 5 2006

DATE

12/6/06

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CERTIFIED CAR SALES, LLC,           )
a Missouri Limited Liability Company,   )
                                    )
                    Plaintiff,      )
                                    )
        v.                          )        Case No.
                                    )
JOHN E. ZARUBA, SHERIFF OF          )        Jury Demand
DUPAGE COUNTY ILLINOIS,             )
SHERIFF'S DEPUTY STEVEN STELTER,)
Individually and as a Deputy of the )
DuPage County Sheriff's Office, JOHN P. )
CREEDON, Individually and as Director )
of the Tri-County Auto Theft Unit,  )
PUGI KIA, LLC, an Illinois limited liability )
company, DOMINIC L. PUGLIANI and    )
MICHAEL COLANDO,                    )
                                    )
                    Defendants.     )

## COMPLAINT

Now comes the Plaintiff, CERTIFIED CAR SALES, LLC, a Missouri Limited

Liability Company, by and through its attorneys, Loftus & Saltzberg, P.C. and complains

of the defendants as follows:

## JURISDICTION

1.      Plaintiff files this complaint under 42 U.S.C. §1983 *et. seq.*, commonly

known as the Civil Rights Act of 1971, and the jurisdiction of this Court is conferred by

28 U.S.C. §1331 and 1343.

## VENUE

2.    Venue is proper under 28 U.S.C. §1391, because the claims all arise from actions taking place in this District, and plaintiff believes that all parties are residents of this District.

## PARTIES

3.    Plaintiff Certified Car Sales, LLC, a Missouri Limited Liability Company (hereinafter "Certified"). All of the ownership interest of Certified is owned by David Kramer. Certified's principal place of business is located at 5419 Lemay Ferry, St. Louis, Missouri 63129.

4.    Defendant, Steven Stelter ("Stelter") is a deputy Sheriff of DuPage County, Illinois and the Deputy Director of the DuPage County Auto Theft Task Force. The DuPage County Auto Theft Task Force serves DuPage County and was formed to combat auto theft and insurance fraud in DuPage County. Stelter is sued in his individual and official capacity.

5.    Defendant, John P. Creedon, ("Creedon") is the Director of the Tri-County Auto Theft Unit.  The Tri-County Auto Theft Unit is funded by and controlled by the State of Illinois and was formed for the purpose of combating auto theft in Will, Kankakee and Grundy Counties of Illinois. He is named herein in his individual and official capacity.

6.    Pugi Kia, LLC ("Pugi Kia") is an Illinois limited liability company which operates an automobile sales and service business and which has its principal place of business at 21 W. 475 North Ave., Lombard, Illinois.

2

7.     Dominic L. Pugliani is an individual and is one of the members of Pugi Kia.

8.     Michael Colando is an individual and is one of the members of Pugi Kia.

## FACTS COMMON TO ALL COUNTS

9.     On or about December 16, 2005, David Kramer, individually, entered into a contract for consultation and services with Michael Colando and Pugi Kia, LLC, an Illinois limited liability company, ("Pugi Kia") whereby Kramer was to assume full responsibility for the day-to-day operation of Pugi and Kramer would acquire the ownership interest of Michael Colando (hereinafter "Colando") in Pugi Kia.

10.     In light of Kramer's agreement to purchase Colando's ownership interest, Certified agreed to purchase used vehicles and placed them on consignment with Pugi Kia for resale. Pugi Kia agreed to market and sell each vehicle and upon a sale, it would pay Certified, in full, the sale price less a portion of the sale price which would be paid to Pugi Kia for its commission. In order to fully secure Certified, the parties agreed that each of the vehicles were to be titled in Certified's name and the original titles were to be retained by Kramer. Certified also agreed to fund certain expenses of Pugi Kia during the period prior to his acquisition of Colando's ownership interest and Pugi Kia and Colando agreed to repay Certified for all monies advanced on it's behalf.

11.     On December 22, 2005, Certified specifically agreed to acquire four (4) vehicles and to deliver them to Pugi Kia pursuant to the above agreement. The purchases, totaling $29,910.00, were made as follows:

a. On or about November 30, 2005 Certified purchased a 2004 Kia Rio, VIN KNADC125946340125 (the 2004 Kia Rio") for $7,500.00. A copy of Certified Car Sale's title to the vehicle is attached hereto and made a part hereof as exhibit A

b. On or about December 28, 2005, Certified purchased a 2005 Pontiac Sunfire, VIN 3G2JB12F15S193477 (the "Sunfire") for $9,550.00. A copy of Certified's title to the vehicle is attached hereto and made a part hereof as exhibit B

c. On or about January 10, 2006, Certified purchase a 2003 Chevy, VIN 2GCEC19XX31254424 (the "Chevy") for $10,995.00. A copy of Certified Car Sale's title to the vehicle is attached hereto and made a part hereof as exhibit C.

d. On or about January 10, 2006, Certified purchased a 2005 Kia Rio, VIN KNADC125 756357152 (the " 2005 Kia Rio") for $9,065.00. A copy of Certified Car Sale's title to the vehicle is attached hereto and made a part hereof as exhibit D.

13. On or about March 1, 2006, Kramer terminated his agreement with Michael Colando to acquire an interest in Pugi Kia. Kramer then attempted to obtain payment from Pugi Kia for the vehicles that Certified had purchased and which were on consignment. At some point, Kramer determined that three of the four vehicles purchased had been sold by Pugi Kia but no money had been paid to Certified in violation of their agreement. Certified still retained the original titles to all of the vehicles even though three of them had been sold by Pugi Kia.

4

14.    On  or about May 4. 2006 Certified took possession of the 2005 Kia Rio placed it for sale at the Greater Chicago Auto Auction in Cook County. Illinois (the "Auto Auction".)

15.    Immediately after Certified took possession of the 2005 Kia Rio, Pugi Kia falsely reported the 2005 Kia Rio stolen. In response to Pugi Kia's false report Creedon went to the Auto Auction to investigate the matter even though it was outside of his jurisdiction.

16.    Creedon met with Kramer at the Auto Auction and wrongfully took possession of the 2005 Kia Rio. He then directed Kramer to meet with Stelter and returned the 2005 Kia Rio to Pugi Kia.

17.    Kramer then met with Deputy Stelter in DuPage County and explained to Deputy Stelter that Certified was the titleholder of the 2005 Kia Rio and the other three (3) subject vehicles. for which Pugi still owed money to Certified.    During their conversation. Stelter asked to see the original titles to each of the subject vehicles and Kramer tendered all four (4) titles to Stelter.    Thereafter, Stelter,  individually and as a Deputy Sheriff of DuPage County, Illinois told Kramer he needed to make copies of the titles for use in his investigation and stepped away. Upon his return. Stelter told Kramer that he would be retaining the original titles to all four of the subject vehicles throughout the duration of his investigation. despite Kramer's demand that he return them.

18.    Thereafter. between May 5. 2006 and May 8, 2006. Kramer left various messages with Stelter requesting the return of all four (4) original titles.

19.    Between May 5, 2006 and May 8, 2006, Stelter met with Colando and Pugliani to discuss the titles to the four vehicles mentioned above. During that meeting,

Colando, Pugliani and Stelter agreed that the titles should be delivered to Pugi Kia, notwithstanding the ownership of Certified. Stelter then delivered the original titles to Colando, Pugliani and Pugi Kia.

20.    On or about May 8, 2006, Stelter left Kramer a message saying that Kramer "was not getting the titles back" and that he "gave them to Pugi Kia because they deserved them more."

21.    Thereafter, Pugi as directed by Pugliani and Colando forged Certified's name on each of the titles for the 2004 Kia Rio, the 2005 Pontiac Sunfire and the Chevy and delivered them to the parties who had purchased the vehicles and Pugi retained the title to the 2005 Kia Rio.

22.    Neither Creedon nor Stelter had an arrest warrant, search warrant or any lawful authority whatsoever to search Kramer's person. In addition, neither Creedon nor Stelter had any lawful authority whatsoever to confiscate documents or the 2005 Kia Rio from Certified's possession, to turn them over to Pugi Kia or to refuse to return them to Certified.

## COUNT I
### 42 U.S.C. Section 1983 Claim

23.    Plaintiffs incorporate and reallege paragraphs 1 through 22 as if fully set forth herein.

24.    Plaintiff claims damages for injuries set forth above under 42 U.S.C. Sec. 1983 against Defendants Stelter and Creedon for violations of Plaintiffs' Constitutional Rights under color of state law.

25.    The misconduct described above was undertaken with malice, willfulness, and reckless indifference to the rights of others.

26.    As a result of the above-described wrongful infringement of Plaintiff's constitutional rights, Plaintiff has suffered financial damages in the amount of $29,910.00, and additional damages including but not limited to the loss of property and mental stress and anguish.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants Stelter and Creedon, award Plaintiff compensatory damages, punitive damages, attorneys' fees and any other relief this Court deems just and appropriate under the circumstances.

## COUNT II
### (Conversion – Pugi Kia)

27.    Plaintiff restates and incorporates paragraphs 1 through 22 as if fully stated herein.

28.    Plaintiff is the legal title holder and owner of the 2005 Kia Rio.

29.    Plaintiff has superior interest to Defendant Pugi Kia in the Vehicle.

30.    Defendant Pugi Kia has wrongfully retained possession of the Vehicle .

31.    Despite Plaintiff's demands for return of the Vehicle, Defendant Pugi Kia has refused and continues to withhold the Vehicle from Plaintiff.

32.    Plaintiff is therefore entitled to the return of the Vehicle.

WHEREFORE. Plaintiff requests this Court enter judgment in its favor and against Defendant in the amount of $9,065.00 plus interest, costs, reasonable attorneys' fees, or in the alternative, order the return of the Vehicle to Plaintiff, and enter whatever other relief this Court deems just and equitable.

## COUNT III
## BREACH OF CONTRACT
(Defendants Pugi Kia and Colando)

33.    Plaintiff restates and incorporates paragraphs 1 through 22 as if fully stated herein.

34.    Plaintiff has performed all that was required of it under the terms of its contract with Defendant Pugi Kia.

35.    There is presently due and owing to Plaintiff, the sum of $96,986.60 for payment of the Vehicle from Defendant ALC.

36.    Plaintiff has, on numerous occasions, requested that Defendant Pugi Kia and Colando remit payment to satisfy this outstanding obligation.

37.    Defendant Pugi Kia and Colando have breached their contract with Plaintiff by not making payment on monies due and Defendants Pugi Kia and Colando continue to unreasonably withhold payment.

38.    As a result of said breach, Plaintiff has been damaged in the amount of $96,986.60.

WHEREFORE. Plaintiff requests this Court enter judgment against Defendants PUGI KIA and MICHAEL COLANDO in the amount of $41,716.36 plus interest, costs, attorney fees, and any other relief this Court deems equitable.

## COUNT IV
## ACCOUNTING
(Defendant Pugi Kia)

39.    Plaintiff restates and incorporates paragraphs 1 through 22 as if fully stated herein.

40.    Pugi Kia has received the proceeds of the payments on the vehicles purchased with Certifieds funds.

41.    Plaintiff is entitled to an accounting for those payments.

WHEREFORE, Plaintiff requests that this Court enter an order directing PUGI KIA, LLC to provide a full and complete accounting of all payments received by it from vehicles purchased with funds from Certified and order that all such payments be turned over to plaintiff and for such other relief as this Court deems just and equitable.

## COUNT V
## PIERCING OF CORPORATE VEIL
(Defendants Pugliani and Colando)

42.    Plaintiff restates and incorporates paragraphs 1 through 22 as if fully stated herein.

43.    Upon information and belief, in the conduct of the business of Pugi Kia, the individual defendants Pugliani and Colando (the "Individual Defendants") failed to follow corporate formalities and protocol having, among other things, failed to adequately capitalize Pugi Kia, failed to conduct company meetings and maintain company records, failed to segregate personal and company financial matters, commingled company and personal assets, and used company funds for personal reasons.

44.    Further, the individual defendants failed to follow protocol required by the State of Illinois in maintaining Pugi Kia as a going concern and in good standing and, as such, Pugi Kia is no longer in good standing on the books of the Illinois Secretary of State.

45.    Further, the Individual Defendants used the assets of Pugi Kia and monies paid to Pugi Kia for business and corporate activities or their own personal gain and purposes.

46.    As such, the Individual Defendants acted as the alter ego of Pugi Kia and are personally responsible and liable for the debts, obligations and liabilities of Pugi Kia.

WHEREFORE, Plaintiff prays that this Court:

A.    Enter judgment against Defendants Pugliani and Colando for all actual, punitive and other damages to which Plaintiff is entitled;

B.    Enter an order rescinding the transaction;

C.    Award attorneys fees, litigation expenses and costs;    and any additional relief this Court deems just and appropriate

Dated: October 24, 2006

Respectfully Submitted,
**CERTIFIED CAR SALES, LLC**

By: _____
One of Its Attorneys

Sally H. Saltzberg
P. Michael Loftus
LOFTUS & SALTZBERG, P.C.
53 West Jackson Blvd., Suite 1515
Chicago, Illinois 60604
(312) 913-2000

6-225-9-230

## STATE OF MISSOURI

### CERTIFICATE OF TITLE

200407-6130082
504217

REPOSSESSED

TITLE NUMBER
1G164739

00261EX003

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY STYLE | FUEL |
|---|---|---|---|---|---|
| KNADC125946340125 | 04 | KIA | | FODOR | |

| CYL. | HP | PREVIOUS STATE | MILEAGE AT TIME OF TRANSFER | TAX | PURCHASE DATE | DATE ISSUED |
|---|---|---|---|---|---|---|
| 4 | 17 | | 12734* | EX 13 | 08/25/05 | 10/27/05 |

OWNER   HYUNDAI MOTOR FINANCE COMPANY
10550 TALBERT AVE
FOUNTAIN VALLEY    CA

MAIL TO

HYUNDAI MOTOR FIN
10550 TALBERT AVE
FOUNTAIN VALLEY    CA 92708

VEHICLE SUBJECT TO FOLLOWING LIEN(S)

ALL TITLES ISSUED ON OR AFTER
JULY 1, 2003, WILL BE MAILED TO
THE OWNER.

FIRST LIEN                          LIEN DATE

Lien release – To release any lien shown
on the face of this title, the lienholder must
complete a notarized Lien Release, form
DOR-4809, to be attached to this title.

Any person who knowingly and
intentionally submits a separate document
releasing a lien of another without
authority to do so shall be guilty of a class
C felony. (301.640 RSMo)

SECOND LIEN                          LIEN DATE

BUYER ON REVERSE SIDE MUST TITLE IN 30 DAYS TO AVOID PENALTY

MILEAGE STATEMENT

*ACTUAL MILEAGE.
ANNUAL ODOMETER UPDATES MAY BE AVAILABLE FROM THE
DEPARTMENT OF REVENUE.
EFFECTIVE 1/1/06 YOU MUST SUBMIT A NOTICE OF SALE
TO THE DEPARTMENT OF REVENUE WITHIN 30 DAYS OF
SELLING THIS VEHICLE.

640582713

DIRECTOR OF REVENUE   DOR-387 (09-03)

MO 860-0331 (09-03)

ANY ALTERATION OR ERASURE VOIDS THIS TITLE

EXHIBIT
A

Nov 13 06 09:14a    David Kramer        1-314-892-5168        P.1

**C40582713**

INSTRUCTIONS; FEDERAL (AND STATE) LAW, IF APPLICABLE, REQUIRES THAT ALL SELLERS STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILING TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT. ALL OWNERS (SELLERS) ON THE FACE OF THE TITLE AND PURCHASERS MUST SIGN AND HAND PRINT THEIR NAMES AFTER THE PURCHASER(S) NAME. LIENHOLDER, SALE PRICE, TRADE-IN IF APPLICABLE, NET PRICE, DATE OF SALE, AND MILEAGE SPACES ARE COMPLETED. IF PURCHASER/SELLER IS AN AGENT/OFFICER OF A FIRM, RECORD OFFICIAL POSITION AFTER PRINTED NAME. PURCHASER(S) MUST APPLY FOR A NEW CERTIFICATE OF TITLE WITHIN 30 DAYS FROM THE DATE OF PURCHASE OR PAY A DELINQUENT PENALTY. ALL LIENS ON THE FRONT OF THIS CERTIFICATE OF TITLE MUST BE RELEASED BEFORE PURCHASER APPLIES FOR A NEW CERTIFICATE OF TITLE. ALL PURCHASERS/SELLERS SHOULD RETAIN A COPY OF THE FRONT AND BACK OF THIS CERTIFICATE OF TITLE.
WARNING: ALTERATIONS, ERASURES OR MISTREATMENT WILL VOID THIS CERTIFICATE OF TITLE.
ASSIGNMENT OF TITLE: I/WE HEREBY ASSIGN AND WARRANT CERTIFICATE OF TITLE OF THE VEHICLE DESCRIBED ON THE FRONT OF THIS CERTIFICATE OF TITLE SUBJECT TO THE FOLLOWING LIEN(S) OR ENCUMBRANCE(S), IF ANY, AND NONE OTHER. I/WE FURTHER CERTIFY THE ACCURACY OF THE SALE PRICE AND MILEAGE AS SPECIFIED BELOW.

### ASSIGNMENT

| PURCHASER(S) NAME: (PRINTED OR TYPED) *Certified Car Sales* | | SALE PRICE $ |
| ADDRESS *5419 Lemay Ferri STL MO 63129* | | TRADE-IN $ |
| DATE OF SALE *11-30-05* | MODEL | DEALER NUMBER OF SELLER | NET PRICE $ |

ODOMETER READING (NO TENTHS)  — I state that the odometer now reads the afore mentioned miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described herein, unless one of the following statements is checked.
☐ MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS
☐ MILEAGE READING IS NOT ACTUAL (WARNING ODOMETER DISCREPANCY)

SIGNATURE OF ALL PURCHASER(S)  *[signature]*

SIGNATURE OF ALL SELLER(S)  *[signature]*

HAND PRINTED NAME(S) BY PURCHASER(S) (AGENT/POSITION)  *David Kramer*

HAND PRINTED NAME(S) BY SELLER(S) (AGENT/POSITION)

### REASSIGNMENT BY REGISTERED DEALER

| PURCHASER(S) NAME: (PRINTED OR TYPED) | | SALE PRICE $ |
| ADDRESS | | TRADE-IN $ |
| DATE OF SALE | MODEL | DEALER NUMBER OF SELLER | NET PRICE $ |

ODOMETER READING (NO TENTHS) — I state that the odometer now reads the afore mentioned miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described herein, unless one of the following statements is checked.
☐ MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS
☐ MILEAGE READING IS NOT ACTUAL (WARNING ODOMETER DISCREPANCY)

SIGNATURE OF ALL PURCHASER(S)

SIGNATURE OF ALL SELLER(S)

HAND PRINTED NAME(S) BY PURCHASER(S) (AGENT/POSITION)

HAND PRINTED NAME(S) BY SELLER(S) (AGENT/POSITION)

### REASSIGNMENT BY REGISTERED DEALER

| PURCHASER(S) NAME: (PRINTED OR TYPED) | | SALE PRICE $ |
| ADDRESS | | TRADE-IN $ |
| DATE OF SALE | MODEL | DEALER NUMBER OF SELLER | NET PRICE $ |

ODOMETER READING (NO TENTHS) — I state that the odometer now reads the afore mentioned miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described herein, unless one of the following statements is checked.
☐ MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS
☐ MILEAGE READING IS NOT ACTUAL (WARNING ODOMETER DISCREPANCY)

SIGNATURE OF ALL PURCHASER(S)

SIGNATURE OF ALL SELLER(S)

HAND PRINTED NAME(S) BY PURCHASER(S) (AGENT/POSITION)

HAND PRINTED NAME(S) BY SELLER(S) (AGENT/POSITION)

### REASSIGNMENT BY REGISTERED DEALER

| PURCHASER(S) NAME: (PRINTED OR TYPED) | | SALE PRICE $ |
| ADDRESS | | TRADE-IN $ |
| DATE OF SALE | MODEL | DEALER NUMBER OF SELLER | NET PRICE $ |

ODOMETER READING (NO TENTHS) — I state that the odometer now reads the afore mentioned miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described herein, unless one of the following statements is checked.
☐ MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS
☐ MILEAGE READING IS NOT ACTUAL (WARNING ODOMETER DISCREPANCY)

SIGNATURE OF ALL PURCHASER(S)

SIGNATURE OF ALL SELLER(S)

HAND PRINTED NAME(S) BY PURCHASER(S) (AGENT/POSITION)

HAND PRINTED NAME(S) BY SELLER(S) (AGENT/POSITION)

### LIENHOLDER INFORMATION

| FIRST LIENHOLDER NAME (PRINTED OR TYPED) | DATE OF LIEN |
| FIRST LIENHOLDER ADDRESS | |
| SECOND LIENHOLDER NAME (PRINTED OR TYPED) | DATE OF LIEN |
| SECOND LIENHOLDER ADDRESS | |

MO 860-0331 (09-03)                    DOR-387 (09-03)



**STATE OF MISSOURI**

### CERTIFICATE OF TITLE

ORIGINAL

TITLE NUMBER: FE902915

00533FK25G

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY STYLE | FUEL |
|---|---|---|---|---|---|
| 3G2JB12F15S193477 | 2005 | PONT | | COUPE | |

| CYL | HP | PREVIOUS STATE | MILEAGE AT TIME OF TRANSFER | TAX | PURCHASE DATE | DATE ISSUED |
|---|---|---|---|---|---|---|
| 4 | 19 | NV | 15583* | EX 03 | 12/28/2005 | 02/21/2006 |

OWNER CERTIFIED CAR SALES
5419 LEMAY FERRY RD
SAINT LOUIS         MO 63129

MAIL TO

CERTIFIED CAR SALES
5419 LEMAY FERRY RD
SAINT LOUIS         MO 63129-2204

VEHICLE SUBJECT TO FOLLOWING LIEN(S)

FIRST LIEN                    LIEN DATE

SECOND LIEN                   LIEN DATE

ALL TITLES ISSUED ON OR AFTER JULY 1, 2003, WILL BE MAILED TO THE OWNER.

Lien release - To release any lien shown on the face of this title, the lienholder must complete a notarized Lien Release, form DOR-4809, to be attached to this title.

Any person who knowingly and intentionally submits a separate document releasing a lien of another without authority to do so shall be guilty of a class C felony. (301.640 RSMo)

**BUYER ON REVERSE SIDE MUST TITLE IN 30 DAYS TO AVOID PENALTY**

MILEAGE STATEMENT
*ACTUAL MILEAGE.
EFFECTIVE 1/1/06 YOU MUST SUBMIT A NOTICE OF SALE TO THE DEPARTMENT OF REVENUE WITHIN 30 DAYS OF SELLING THIS VEHICLE

MO 860-0331(03-03)        C41170701

DIRECTOR OF REVENUE DOR-387 (03-03)

**ANY ALTERATION OR ERASURE VOIDS THIS TITLE**

EXHIBIT
B
Blumberg No. 5118

# CERTIFICATE OF TITLE

| Identification Number | Year | Make | Body | Wt-L-BHP | Vessel Regis. No. | Title Number |
|---|---|---|---|---|---|---|
| 2GCEC19XX31254424 | 2003 | CHEV | PK | 4457 | | 87969544 |

| Prev State | Color | Primary Brand | Secondary Brand | No of Brands | | Use | Prev Issue Date |
|---|---|---|---|---|---|---|---|
| FL | WHT | | | | | PRIVATE | 05/14/2003 |

| Odometer Status or Vessel Manufacturer or of Use | Hull Material | Prop | Date of Issue |
|---|---|---|---|
| 24,784 MILES 12/14/2005 ACTUAL | | | 12/21/2005 |

Registered Owner

AMERICREDIT FINANCIAL SERVICES
4001 EMBARCADERO DR
ARLINGTON, TX 76014

Lien Release

Interest in the above described vehicle is hereby released

By _____

Title _____ Date _____

1st Lienholder
NONE

DIVISION OF MOTOR VEHICLES        TALLAHASSEE        FLORIDA        DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES

Carl A. Ford
Director

Fred O. Dickinson, III.
Executive Director

Tc Control Number 70713817
1376S  70713817

TRANSFER OF TITLE BY SELLER (This section must be completed at the time of sale.)

ODOMETER CERTIFICATION–Federal and state law require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

This title is warranted and certified to be free from any liens except as noted on the face of this certificate and the motor vehicle or vessel described is hereby transferred to:

Purchaser _Certified Car Sales_ Address _541 Lemay Ferry St Louis MO 63124_

I/We state that this ☐ 5 or ☐ 6 digit odometer now reads __24,784__ (no tenths) Selling Price $_____ Date Sold _1-10-06_

miles, date read _____ and to the best of my knowledge
that it REFLECTS THE ACTUAL MILEAGE of the vehicle described herein,
unless one of the odometer mileage blocks is checked.

CAUTION:
DO NOT CHECK
BOX IF ACTUAL
MILEAGE

☐ 1. I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage IN EXCESS OF ITS MECHANICAL LIMITS.

☑ 2. I hereby certify that the odometer reading IS NOT THE ACTUAL MILEAGE. WARNING - ODOMETER DISCREPANCY.

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

Signature of Purchaser _David Kraner_   Printed Name of Purchaser _David Kraner_

Signature of Co-Purchaser _____   Printed Name of Co-Purchaser _____

Signature of Seller _____ AmeriCredit Financial Services, Inc. _____   Printed Name of Seller _Tamara Fann_

Signature of Co-Seller _____   Printed Name of Co-Seller _____

(When Applicable) Selling Dealer License Number: ____   Tax Collected: $____

Auction Name: ____   License Number: ____

# STATE OF FLORIDA

HSMV 82250 (REV 12/00)

EXHIBIT
C

# CERTIFICATE OF TITLE OF A VEHICLE

BILL KAY HONDA
1360 LOCKE DR
BOURBONNAIS IL 60914-4930

ORIGINAL

OWNER'S NAME AND ADDRESS
BILL KAY HONDA
1360 LOCKE DR
BOURBONNAIS IL 60914-4930

ACTUAL MILEAGE

FIRST LIENHOLDER NAME AND ADDRESS

SECOND LIENHOLDER NAME AND ADDRESS

**RELEASE OF LIEN**
The holder of a Lien on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

NEW LIEN ASSIGNMENT: the information below must be an application for title and presented to the Secretary of State.

**ASSIGNMENT OF TITLE**
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
**WARNING-ODOMETER DISCREPANCY.**

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any.
IN WITNESS WHEREOF I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS, AT SPRINGFIELD.

D37315188

CONTROL NO.

*Jesse White*
JESSE WHITE, Secretary of State

EXHIBIT
D

FIRST REASSIGNMENT
DEALER ONLY

Name of Purchaser

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ The mileage stated is in excess of its mechanical limits.
☐ The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING

Date of Sale: 1-00-06

Dealer's Name: *Ceslen Honda*

Printed Name (same as signature): *Honda Hotsville*

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent: *Dav. R. Kra*

Printed Name (same as signature): *David Kramer*

---

SECOND REASSIGNMENT
DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ The mileage stated is in excess of its mechanical limits.
☐ The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING

Date of Sale:

Dealer's Name: *Central Car Sales*

Printed Name (same as signature): *Dav. R. K*

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent:

Printed Name (same as signature):

---

THIRD REASSIGNMENT
DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ The mileage stated is in excess of its mechanical limits.
☐ The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING

Date of Sale:

Dealer's Name:

Printed Name (same as signature):

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent:

Printed Name (same as signature):

---

DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ The mileage stated is in excess of its mechanical limits.
☐ The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING

Date of Sale:

Dealer's Name:

Printed Name (same as signature):

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent:

Printed Name (same as signature):

**EXHIBIT B**    **PUGI KIA'S MOTION TO DISMISS**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CERTIFIED CAR SALES, LLC, <br> A Missouri Limited Liability Company, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | Case No.  06 C 6192 |
| JOHN E. ZARUBA, SHERIFF OF <br> DUPAGE COUNTY ILLINOIS, <br> SHERIFF'S DEPUTY STEVEN STELTER, <br> Individually and as a Deputy of the <br> DuPage County Sheriff's Office, JOHN P. <br> CREEDON, Individually and as Director <br> of the Tri-County Auto Theft Unit, <br> PUGI KIA, LLC, an Illinois limited liability <br> company, DOMINIC L. PUGLIANI and <br> MICHAEL COLANDO, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Honorable Ruben Castillo |
| Defendants. | ) | |

**PUGI KIA, LLC'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JUSRISDICTION
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

NOW COMES the Defendant, PUGI KIA, LLC, an Illinois limited liability company, by and through its attorneys, KELLY & KING, P.C., and moves this Honorable Court, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.  In support of this motion Defendant states as follows:

1.      Plaintiff has filed a five count Complaint against the above captioned defendants. Count I alleges a Section 1983 violation against Zaruba, Stelter and Creedon, the governmental defendants.  The remaining counts allege conversion, breach of contract, accounting and piercing the corporate veil against one or more of the remaining defendants, including Pugi Kia, LLC.

2.      Count II, against Pugi Kia, LLC, seeks a judgment in the amount of $9,065 plus interest, costs and attorneys fees.  Count III, against Pugi Kia, LLC and defendant, Colando,

seeks a judgment in the amount of $41,716.36 plus interest, costs and attorneys fees. [1] Counts IV

and V do not seek monetary damages.

3.     Plaintiff's prayers for relief, even when added together do not exceed $75,000.

Further, the damages alleged in Count II are a subset of the damages in Count III.  Thus the

maximum amount of damages sought by Plaintiff is $41,716.36, exclusive of interest, costs and

attorneys fees.

4.     According to paragraph I of its Complaint, this Court's jurisdiction against Pugi

Kia, LLC, Dominic L. Pugliani and Michael Colando is based on diversity, 28 U.S.C. §1332.

Diversity jurisdiction requires not only diversity between the Plaintiff and Defendants, but also

that the amount in controversy exceed $75,000.

5.     On the face of Plaintiff's complaint the amount in controversy is substantially less

than $75,000.

6.     On January 22, 2007 Defendant's counsel, Paul E. Kelly, spoke with Plaintiff's

counsel, P. Michael Loftus, about the issues raised in this motion and also faxed him a copy of

this motion.  Plaintiff's counsel stated that he would look into the matter and would attempt to

respond to Defendant's counsel by January 23, 2007.  As of the time of the filing of this motion

Defendant's counsel had not heard back from Plaintiff's counsel.

WHEREFORE, Defendant, PUGI KIA, LLC, respectfully requests that Plaintiff's

complaint be dismissed against PUGI KIA, LLC, DOMINIC L. PUGLIANI and MICHAEL

COLANDO.

> s/ Paul E. Kelly_____
> Attorney for Defendant,
> PUGI KIA, LLC.

---

[1]     Paragraph 35 of Count III alleges that Plaintiff is owed the sum of $96,986.60 from "Defendant ALC."
There is no defendant by that name in this case and thus it is apparent that this is a mistake as is paragraph 38, a
repeat of paragraph 35.

Paul E. Kelly - No. 1437356
KELLY & KING, P.C.
20 North Clark Street
Suite 2900
Chicago, Illinois 60602
312-553-5290

**EXHIBIT C**        **ORDER OF 1/30/2007 FROM
JUDGE CASTILLO**

Order Form (01/2005)

*EF*

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 6192 | **DATE** | 1/30/2007 |
| **CASE TITLE** | Certified Car Sales, LLC vs. John E. Zaruba, et al. | | |

**DOCKET ENTRY TEXT**

Settlement conference held in chambers.  The Court grants the defendants' motions to dismiss [17] and [21]. Defendant John E. Zaruba is hereby dismissed with prejudice.  All other defendants are hereby dismissed without prejudice.  Plaintiff is given until 3/2/2007 to file an amended complaint.

Docketing to mail notices.

00:40

| | Courtroom Deputy Initials: | RO |
|---|---|---|

**EXHIBIT D    FIRST AMENDED COMPLAINT**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CERTIFIED CAR SALES, LLC, | ) | |
| a Missouri Limited Liability Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06 C 6192 |
| | ) | |
| SHERIFF'S DEPUTY STEVEN STELTER, | ) | |
| Individually and as a Deputy of the | ) | |
| DuPage County Sheriff's Office, JOHN P. | ) | |
| CREEDON, Individually and as Director | ) | |
| of the Tri-County Auto Theft Unit, | ) | |
| | ) | |
| Defendants. | ) | |

### FIRST AMENDED COMPLAINT

Now comes the Plaintiff, CERTIFIED CAR SALES, LLC, a Missouri Limited

Liability Company, by and through its attorneys, Loftus & Saltzberg, P.C. and complains

of the defendants as follows:

### JURISDICTION

1.      Plaintiff files this complaint under 42 U.S.C. §1983 *et. seq.*, commonly

known as the Civil Rights Act of 1971, and the jurisdiction of this Court is conferred by

28 U.S.C. §1331 and 1343.

### VENUE

2.      Venue is proper under 28 U.S.C. §1391, because the claims all arise from

actions taking place in this District, and plaintiff believes that all parties are residents of

this District.

**PARTIES**

3.    Plaintiff Certified Car Sales, LLC, a Missouri Limited Liability Company (hereinafter "Certified"). All of the ownership interest of Certified is owned by David Kramer. Certified's principal place of business is located at 5419 Lemay Ferry, St. Louis, Missouri 63129.

4.    Defendant, Steven Stelter ("Stelter") is a deputy Sheriff of DuPage County, Illinois and the Deputy Director of the DuPage County Auto Theft Task Force. The DuPage County Auto Theft Task Force serves DuPage County and was formed to combat auto theft and insurance fraud in DuPage County. Stelter is sued in his individual and official capacity.

5.    Defendant, John P. Creedon, ("Creedon") is the Director of the Tri-County Auto Theft Unit.  The Tri-County Auto Theft Unit is funded by and controlled by the State of Illinois and was formed for the purpose of combating auto theft in Will, Kankakee and Grundy Counties of Illinois. He is named herein in his individual and official capacity.

**42 U.S.C. Section 1983 Claim**

6.    On or about December 16, 2005, Certified agreed to purchase used vehicles and placed them on consignment with Pugi Kia for resale.  Pugi Kia agreed to market and sell each vehicle and upon a sale, it would pay Certified, in full, the sale price less a portion of the sale price which would be paid to Pugi Kia for its commission. In order to fully secure Certified, the parties agreed that each of the vehicles were to be titled in Certified's name and the original titles were to be retained by Kramer.

2

7.    On December 22, 2005, Certified specifically agreed to acquire four (4) vehicles and to deliver them to Pugi Kia pursuant to the above agreement.    The purchases, totaling $29,910.00, were made as follows:

    a.  On or about November 30, 2005 Certified purchased a 2004 Kia Rio, VIN KNADC125946340125 (the 2004 Kia Rio") for $7,500.00.    A copy of Certified Car Sale's title to the vehicle is attached hereto and made a part hereof as exhibit A

    b.  On or about December 28, 2005, Certified purchased a 2005 Pontiac Sunfire, VIN  3G2JB12F15S193477 (the "Sunfire") for $9,550.00.    A copy of Certified's title to the vehicle is attached hereto and made a part hereof as exhibit B

    c.  On or about January 10, 2006, Certified purchase a 2003 Chevy, VIN 2GCEC19XX31254424 (the "Chevy") for $10,995.00.    A copy of Certified Car Sale's title to the vehicle is attached hereto and made a part hereof as exhibit C.

    d.  On or about January 10, 2006, Certified purchased a 2005 Kia Rio, VIN KNADC125 756357152 (the " 2005 Kia Rio") for $9,065.00.    A copy of Certified Car Sale's title to the vehicle is attached hereto and made a part hereof as exhibit D.

8.    On or about March 1, 2006, Certified terminated its agreement with Pugi Kia and sought payment from Pugi Kia for the vehicles that Certified had purchased and which were on consignment or the return of those vehicles. At some point, Certified determined that three of the four vehicles purchased had been sold by Pugi Kia but no

3

money had been paid to Certified in violation of their agreement. Certified still retained

the original titles to all of the vehicles even though three of them had been sold by Pugi

Kia.

9. On or about May 4, 2006 Certified took possession of the 2005 Kia Rio

and placed it for sale at the Greater Chicago Auto Auction in Cook County, Illinois (the

"Auto Auction".)

10. Immediately after Certified took possession of the 2005 Kia Rio, Pugi Kia

falsely reported the 2005 Kia Rio stolen. In response to Pugi Kia's false report Creedon

went to the Auto Auction to investigate the matter even though it was outside of his

jurisdiction.

11. Creedon met with representatives of Certified at the Auto Auction. Those

representatives advised Creedon that it was the rightful owner of the 2005 Kia Rio and

that Certified held the title to that vehicle and three others that had been sold by Pugi Kia.

Creedon then wrongfully took possession of the 2005 Kia Rio. He then directed Kramer

to meet with Stelter and wrongfully and without any authority delivered the 2005 Kia Rio

to Pugi Kia.

12. David Kramer, the managing member of Certified, ("Kramer") then met

with Deputy Stelter in DuPage County and explained to Deputy Stelter that Certified was

the titleholder of the 2005 Kia Rio and the other three (3) subject vehicles. Kramer told

Deputy Stelter that Certified had demanded the return of the vehicles or the value of the

vehicles. During their conversation, Stelter asked to see the original titles to each of the

subject vehicles and Kramer tendered all four (4) titles to Stelter (the "Titles").

Thereafter, Stelter, individually and as a Deputy Sheriff of DuPage County, Illinois told

Kramer he needed to make copies of the titles for use in his investigation and stepped away. Upon his return, Stelter told Kramer that he would be retaining the original titles to all four of the subject vehicles throughout the duration of his investigation, despite Kramer's demand that he return them.

13.     Thereafter, between May 5, 2006 and May 8, 2006, Kramer left various messages with Stelter demanding the return of all four (4) original titles.

14.     Between May 5, 2006 and May 8, 2006, Stelter met with Pugi Kia employees to discuss the titles to the four vehicles mentioned above. During that meeting, Stelter wrongfully should be delivered the titles to the four vehicles owned by Certified to Pugi Kia, notwithstanding the ownership of Certified.

15.     On or about May 8, 2006, Stelter left Kramer a message saying that Kramer "was not getting the titles back" and that he "gave them to Pugi Kia because they deserved them more."

16     Neither Creedon nor Stelter had an arrest warrant, search warrant or any lawful authority whatsoever to seize the titles.  In addition, neither Creedon nor Stelter had any lawful authority whatsoever to seize the Titles or the 2005 Kia Rio from Certified's possession, to turn them over to Pugi Kia or to refuse to return them to Certified.

17.     Plaintiff claims damages for injuries set forth above under 42 U.S.C. Sec. 1983 against Defendants Stelter and Creedon for violations of Plaintiffs' Constitutional Rights under the Fourth, Fifth and Fourteenth amendments to the United States Constitution under color of state law.

18.    The misconduct described above was undertaken with malice, willfulness, and reckless indifference to the rights of others.

19.    As a result of the above-described wrongful infringement of Plaintiff's constitutional rights, Plaintiff has suffered financial damages in the amount of $29,910.00, and additional damages including but not limited to the loss of property and mental stress and anguish.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants Stelter and Creedon, award Plaintiff compensatory damages, punitive damages, attorneys' fees and any other relief this Court deems just and appropriate under the circumstances.

Dated: March 2, 2007                    Respectfully Submitted,
                                        **CERTIFIED CAR SALES, LLC**


                                        By: /s/ P. Michael Loftus
                                            One of Its Attorneys

Sally H. Saltzberg
P. Michael Loftus
LOFTUS & SALTZBERG, P.C.
53 West Jackson Blvd., Suite 1515
Chicago, Illinois 60604
(312) 913-2000

**EXHIBIT E**     **ORDER OF 4/4/2007 TRANSFERRING CASE TO MAGISTRATE JUDGE KEYS**

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0
### Eastern Division

Certified Car Sales LLC

                            Plaintiff,

v.

                                         Case No.: 1:06−cv−06192

Steven Stelter, et al.                                 Honorable Ruben Castillo

                            Defendant.

## ORDER REFERRING A CIVIL CASE TO THE
## DESIGNATED MAGISTRATE JUDGE

Pursuant to Local Rule 72.1, this case is hereby referred to the calendar of Magistrate Judge Arlander Keys for the purpose of holding proceedings related to: settlement conference.(rao, )Mailed notice.

Dated: April 4, 2007

                                                 /s/ Ruben Castillo

                                            United States District Judge

**EXHIBIT F**   **BRIEFING SCHEDULE AS SET BY MAGISTRATE JUDGE KEYS**

Order Form (01/2005)

Case 1:06-cv-06192     Document 46     Filed 04/30/2007     Page 1 of 1

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 6192 | **DATE** | 4/27/2007 |
| **CASE TITLE** | Certified Car Sales LLC vs. Zaruba et al | | |

**DOCKET ENTRY TEXT**

Motion hearing held on 4/27/2007. Plaintiff's responses to defendant Steven Stelter's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [30] and defendant John P Creedon's motion to dismiss [42] shall be filed by 5/18/07. Defendants' reply shall be filed by 5/29/07. Court will rule by mail. With the pendency of defendants' motions to dismiss, the Court hereby strikes the settlement conference set for 5/16/07. Court will set status hearing upon ruling on motions. *AK*

Docketing to mail notices.

00:07 oah

| | Courtroom Deputy Initials: | yp |
|---|---|---|

**EXHIBIT G**    **JUDGE KEYS' 7/9/2007 ORDER GRANTING LOFTUS & SALTZBERG LEAVE TO WITHDRAW AS ITS COUNSEL OF RECORD**

Order Form (01/2005)

Case 1:06-cv-06192    Document 58    Filed 07/11/2007    Page 1 of 1

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 6192 | **DATE** | 7/9/2007 |
| **CASE TITLE** | Certified Car Sales LLC v. Zaruba et al | | |

**DOCKET ENTRY TEXT**

Motion hearing held on Plaintiff Certified Car Sales LLC's Motion to Withdraw as counsel for Plaintiff. The motion is granted. Michael Loftus and Sally H. Saltzberg of the firm Loftus and Saltzberg are granted leave to withdraw their appearances as counsel for Plaintiff. Plaintiff appeared and informed the Court that he has retained Michael Rodgers as new counsel. Status hearing set for 9/14/07 at 9:00 a.m. The Court will rule on the pending dispositive motion before the next status hearing.

Docketing to mail notices.

00:05;oah

| | Courtroom Deputy Initials: | AC |
|---|---|---|

06C6192

**EXHIBIT H**    **PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT & TO SUSPEND ADJUDICATION OF DEFENDANTS' MOTIONS TO DISMISS**

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CERTIFIED CAR SALES, LLC <br> a Missouri Limited Liability Company, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) <br> ) | |
| v. | ) <br> ) | No. 06 C 6192 |
| JOHN E. ZARUBA, SHERRIFF OF <br> DUPAGE COUNTY, ILLINOIS; <br> SHERIFF'S DEPUTY STEVEN STELTER, <br> Individually and as a Deputy of the DuPage <br> County Sheriff's Office; JOHN P. <br> CREEDON, Individually and as Director <br> of the Tri-County Auto Theft Unit; PUGI <br> KIA, LLC, an Illinois Limited Liability <br> Company; DOMINIC L. PUGLIANI; and <br> MICHAEL COLANDO, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Honorable Ruben Castillo <br> District Judge <br><br> Honorable Arlander Keys, <br> Magistrate Judge Presiding |
| Defendants. | ) <br> ) | |

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND TO
SUSPEND ADJUDICATION OF DEFENDANTS' MOTION TO DISMISS**

The Plaintiff, CERTIFIED CARE SALES, LLC, by and through one of its attorneys,

STEPHEN M. KOMIE, of the law firm, KOMIE AND ASSOCIATES, pursuant to Federal Rules

of Civil Procedure 15(a), 20(a) and 21 moves to file a second amended complaint and to add

party defendants to this litigation. In support thereof, Plaintiff states as follows:

1.    That Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend the party's

pleading... only by leave of court or by written consent of the adverse party; and leave

shall be freely given when justice so requires..."

2.    That in 1962 Mr. Justice Goldberg writing for the majority of the United States Supreme

Court in <u>Foman v. Davis</u> 371 U.S. 178 (1962), wrote:

> Rule 15(a) declares that leave to amend 'shall be freely given when
> justice so requires'; this mandate is to be heeded. <u>See Generally,</u> 3
> Moore, Federal Practice. If the underlying facts or circumstances
> relied upon by a plaintiff may be a proper subject of relief, he
> ought to be afforded an opportunity to test his claim on the merits.
> In the absence of any apparent or declared reason-such as undue
> delay, bad faith or dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by amendments previously
> allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc.-the leave
> sought should as the rules require, be freely given.

3.    That there is a pending motion to dismiss; however, amendment to the complaint is not

sought to cure any deficiencies in the current complaint.

4.    That in the instant case, Plaintiff recently retained new counsel.

5.    That in advocating for Plaintiff, new counsel undertook an investigation of the facts.

6.    That counsel discovered the titles seized from Plaintiff without probable cause and in

violation of the Fourth, Fifth, and Fourteenth Amendments to the United States

Constitution, were negotiated with forged signatures.

7.    That the police officers named in the caption seized the titles by exercising the authority

of their office.

8.    That this matter should be squarely in front of the Court by allowing the Plaintiff to file a

second amended complaint and allowing the Plaintiff to plead the forged titles before

ruling on the pending motions to dismiss.

9.    That further it would appear as a result of the forgeries of the four car titles, new causes

of action arise. RICO violations are now likely, due to the criminal acts of seizure of the

titles by law enforcement officers, the subsequent transfer by forgery, the use of the mails

in furtherance of this scheme, and the transportation of the vehicles in interstate

commerce.

10.    That it will be necessary to name additional parties as a result of further investigation of

the stolen titles.  Subsequent discovery will has be necessary as the forged titles were then

transferred to third parties.

11.    That discovery is not yet complete; prior counsel had not yet obtained copies of the seized

titles from the Secretary of State and did not discover they were subsequently forged to

transfer the titles for the subject vehicles.  New counsel obtained copies of the forged

titles and thus there is new evidence which gives rise to amended pleadings, additional

causes of actions and adding party-defendants to this case.  See Hindo v. University of

Health Sciences/ The  Chicago Medical School 65 F.3d 608 (7th Cir. 1985)(holding the

court should consider why the plaintiff was unable to make an amendment sooner.)  Here

discovery has not even commenced, so leave to amend should be freely given.

12.    Judicial economy will be served as all matter will be before the Court and thus the

Court's time will not be wasted adjudicating the present motions to dismiss when new

causes will be added, likely causing another round of motions to dismiss.

WHEREFORE, the Plaintiff CERTIFIED CAR SALES, LLC, respectfully prays for the

Court to enter an order granting the Plaintiff leave to file a second amended complaint and an

order suspending the ruling on the motions to dismiss pending the filing of a second amended

complaint.

Respectfully submitted,

CERTIFIED CARE SALES, LLC
by and through his attorneys,
KOMIE AND ASSOCIATES

By:     /s/ Stephen M. Komie
       Attorney for Plaintiff

Komie and Associates
One North LaSalle Street, 42nd Flr.
Chicago, IL 60602
312.263.2800

4

**EXHIBIT I**  **JUDGE KEYS' 9/14/2007 ORDER GRANTING STETLER AND CREEDONS' MOTIONS TO DISMISS**



Order Form (01/2005)    Case 1:06-cv-06192    Document 66    Filed 09/14/2007    Page 1 of 1

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 6192 | **DATE** | 9/14/2007 |
| **CASE TITLE** | CERTIFIED CAR SALES, LLC. Vs. SHERIFF'S DEPUTY STEVEN STEELER, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in the attached Memorandum Opinion and Order, the Court Grants the Motions to Dismiss filed by Defendants Steven Stetler [30] and John P. Creedon [42]. *AK*

Docketing to mail notices.

| | Courtroom Deputy Initials: | |
|---|---|---|

**EXHIBIT J**     **JUDGE KEYS' MEMORANDUM & OPINION RE: DEFENDANTS STETLER AND CREEDONS' MOTIONS TO DISMISS**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CERTIFIED CAR SALES, LLC,          )
a Missouri Limited Liability       )
Company,                           )
                                   )     No. 06 C 6192
          Plaintiff,               )
                                   )     Magistrate Judge
     v.                            )     Arlander Keys
                                   )
SHERIFF'S DEPUTY STEVEN STETLER,   )
individually and as a Deputy of    )
the DuPage County Sheriff's Office,)
and JOHN P. CREEDON, individually  )
and as Director of the Tri-County  )
Auto Theft Unit,                   )
                                   )
          Defendants.              )

## MEMORANDUM OPINION AND ORDER

Certified Car Sales, a company owned and operated by David
Kramer, agreed to buy used cars and place them on consignment
with Pugi Kia, a dealership, for resale.  Pugi agreed to market
and sell each car, and to pay Certified the sales price, less a
commission.  The relationship was short-lived; Certified
terminated its relationship with Pugi less than 4 months later
and learned that Pugi had sold three of four cars Certified had
delivered within the contract period, yet had not paid a dime to
Certified.  According to the allegations in the complaint,
Certified "took possession" of the fourth car, a 2005 Kia Rio,
from Pugi, and brought it to the Greater Chicago Auto Auction to
sell it.  Certified retained the titles on all four of the

vehicles it had placed with Pugi under the contract, including
the three that Pugi had already sold.

Pugi reported (falsely, allegedly) the 2005 Rio stolen, and
John Creedon, then director of the Tri-County Auto Theft Unit,
was dispatched to the Auto Auction to investigate. After meeting
with Certified's Kramer, who told him that the Rio belonged to
Certified, Director Creedon took the Rio and delivered it to
Pugi; he also directed Mr. Kramer to meet with Steven Stetler, a
Deputy DuPage County Sheriff. Mr. Kramer did so, and told Deputy
Stetler that Certified held title to the Rio, as well as the
other three cars Pugi had sold on Certified's behalf. Mr. Kramer
showed Deputy Stetler the original titles to all four cars;
Deputy Stetler took them, made copies and gave the copies back to
Mr. Kramer, keeping the originals. He later gave the original
title documents to Pugi and advised Mr. Kramer that Certified
would not be getting the original titles back.

Certified sued Director Creedon and Deputy Stetler, alleging
that the above-described conduct violates several of Certified's
constitutional rights.[1] The parties consented to proceed before
a United States magistrate judge, and the case was reassigned to
this Court on April 19, 2007. The case is now before the Court

---

[1]In its original complaint, Certified also sued Pugi Kia and
John Zaruba, the Sheriff of DuPage County, as well as three other
defendants; they have all been dismissed, leaving Creedon and
Stetler as the only defendants named in the amended complaint
presently before the Court.

on motions to dismiss filed by defendants Stetler and Creedon

under Federal Rule of Civil Procedure 12(b)(6).

Defendant Stetler argues that the complaint against him

should be dismissed because Certified has pled facts in its

amended complaint that undermine Certified's allegation that

Deputy Stetler took the actions he took with malice, willfulness

and reckless indifference to the rights of others; on the

contrary, Deputy Stetler argues, the facts, as alleged, show that

Deputy Stetler requested the titles and that Mr. Kramer

voluntarily surrendered the titles to him.  Defendant Creedon

argues that the complaint against him should be dismissed because

the facts, as pled, show that he had probable cause to act.

A motion to dismiss under Rule 12(b)(6) "challenges the

sufficiency of the complaint, and dismissal of an action under

this rule is warranted only if 'no relief could be granted under

any set of facts that could be proved consistent with the

allegations.'" *Christensen v. County of Boone, Illinois*, 483 F.3d

454, 458 (7th Cir. 2007)(quoting *DeWalt v. Carter*, 224 F.3d 607,

612 (7th Cir. 2000)).  In ruling on a motion to dismiss, the

Court construes the complaint's allegations in the light most

favorable to the plaintiff, and all well-pleaded facts and

allegations in the plaintiff's complaint must be taken as true.

*Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461

(7th Cir. 1993).  To withstand a motion to dismiss for failure to

3

state a claim, the complaint need only "'outline or adumbrate a
violation of the statute or constitutional provision upon which
the plaintiff relies and connect the violation to the named
defendants.'" *Christensen*, 483 F.3d at 459 (quoting *Brownlee v.
Conine*, 957 F.2d 353, 354 (7th Cir. 1992)).

To state a claim under 42 U.S.C. §1983, the plaintiff must
allege that a government official, acting under color of state
law, deprived him of a right secured by the Constitution or laws
of the United States. *Christenson*, 483 F.3d at 459 (citing
*Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000);
*Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). In its amended
complaint, Certified alleges that "[n]either Creedon nor Stetler
had an arrest warrant, search warrant or any lawful authority
whatsoever to seize the Titles or the 2005 Kia Rio from
Certified's possession, to turn them over to Pugi Kia or to
refuse to return them to Certified." Amended Complaint, ¶16.
Certified alleges that, by acting as described above, and without
any legal authority, defendants Creedon and Stetler violated
Certified's rights under the Fourth, Fifth and Fourteenth
Amendments to the United States Constitution. *Id.*, ¶17.
Certified further alleges that defendants Creedon and Stetler did
what they did "with malice, willfulness, and reckless
indifference to the rights of others," causing Certified to
suffer financial damage in an amount equal to the value of the

4

four cars, plus "additional damages including but not limited to the loss of property and mental stress and anguish." *Id.*, ¶¶18-19.

The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The amendment does not prohibit all seizures, only those that are unreasonable. Here, Certified alleges different conduct by each defendant; it alleges that Director Creedon seized the Kia Rio in violation of its Fourth Amendment rights and that Deputy Stetler seized the title documents in violation of its Fourth Amendment rights.

Turning first to the allegations relating to the 2005 Kia Rio, Director Creedon physically took this vehicle away from Mr. Kramer; to be sure, this would amount to a "seizure" within the meaning of the Fourth Amendment. *See, e.g., Soldal v. Cook County, Illinois*, 506 U.S. 56, 61 (1992)(a "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property.")(citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). But the Fourth Amendment does not protect against all seizures, only those that are "unreasonable." Thus, the real question is whether the allegations in the amended complaint can fairly be read to sustain a claim that the seizure was unreasonable.

Certified's allegations appear to challenge as

5

unconstitutional not only the initial seizure of the Kia Rio, but
also the continued seizure of the Rio in light of the title
documents that Mr. Kramer displayed, and also the turn over of
the Rio to Pugi. Taking them one at a time, the Court finds as a
matter of law that Director Creedon had probable cause to seize
the Kia Rio initially; Pugi's stolen car report would have
provided that. *See Pasiewicz v. Lake County Forest Preserve
District*, 270 F.3d 520, 524 (7th Cir. 2001)(information obtained
by a police officer that establishes the elements of a crime is
generally, absent information that the person providing the
information is not credible, sufficient to provide probable
cause). *See also Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246
(7th Cir. 1994)("When the question of probable cause arises in a
damages suit its resolution typically falls within the province
of the jury, though a conclusion that probable cause existed as a
matter of law is appropriate when there is no room for a
difference of opinion concerning the facts or the reasonable
inferences to be drawn from them.")(citing *Maxwell v. City of
Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993); *Gerald M. v.
Conneely*, 858 F.2d 378, 384-385 (7th Cir. 1988); *Gramenos v.
Jewel Companies, Inc.*, 797 F.2d 432, 438 (7th Cir. 1986)).
And, if Director Creedon had probable cause to seize the Rio,
Certified's §1983 claim necessarily fails. *See Reynolds v.
Jamison*, 488 F.3d 756, 765 (7th Cir. 2007).

6

Certified argues that the fact that Mr. Kramer advised Director Creedon that Certified, not Pugi, was the true owner of the Rio changes things. But it doesn't. That Mr. Kramer, on behalf of Certified, disputed the stolen car report is immaterial to the question of probable cause. *See Askew v. City of Chicago*, 440 F.3d 894, 895 (7th Cir. 2006)(it does not matter that accused denies allegations giving rise to probable cause; police need not conduct an investigation but may arrest and let prosecutors and courts determine who is telling the truth)(citing *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432 (7th Cir. 1986); *Wilson v. McRae's, Inc.*, 413 F.3d 692 (7th Cir. 2005); *Dreibel v. Milwaukee*, 298 F.3d 622, 643-44 (7th Cir. 2002); *Pasiewicz*, 270 F.3d at 524). Of course, this principle has exceptions, but the facts alleged do not suggest that one applies; they do not, for example, provide any basis to suggest that the defendants knew or should have known that the report was false, or that they knew or should have known that Pugi somehow harbored a grudge against Mr. Kramer and Certified.

Moreover, the Seventh Circuit has rejected the idea that a state actor's refusal to return once lawfully obtained property can amount to an unreasonable seizure (i.e, that the refusal can transform the seizure from reasonable to unreasonable). *See Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003) ("*Soldal's* 'meaningful interference with a possessory interest' definition

7

is limited to an individual's interest in retaining his property"; "once an individual has been meaningfully dispossessed, the seizure of property is complete, and once justified by probable cause, that seizure is reasonable."). Thus, the fact that Director Creedon failed to return the Rio – in fact, turned it over to Pugi – does not give rise to a constitutional violation.  In fact, given the police report, the defendants were under no obligation to investigate Mr. Kramer's claim that Certified, not Pugi, was lawfully entitled to possession of the Rio.  *See Reynolds*, 488 F.3d at 766; *Pasiewicz*, 270 F.3d at 524.

In response to Director Creedon's motion to dismiss, Certified admits that the mere seizure of the Kia Rio would "probably not" have resulted in a lawsuit; it argues, however, that, because Director Creedon turned the car over to Pugi, a reasonable jury could find that he lacked probable cause.  *See* Plaintiff's Response to Defendant John Creedon's Motion to Dismiss, p. 6.  But *Lee* says otherwise; as does *Pasiewicz*.  Once Certified concedes that Director Creedon had probable cause to seize the Rio, its Fourth Amendment claim falls away.

Turning to the title documents, a reasonable trier of fact would similarly be unable to conclude that Deputy Stetler's conduct amounts to a constitutional violation.  Initially, the only possessory interest the "seizure" of the title documents

8

interfered with is the possessory interest in those pieces of
paper; nothing the defendants are alleged to have done interfered
with Certified's possessory rights in the three vehicles covered
by the titles (the same is not true of the Kia Rio, but the Court
has already addressed that seizure).  More importantly, the
allegations establish that the papers were not "seized"; rather,
as the allegations make clear, Mr. Kramer offered the documents
and willingly handed them over when asked.  Thus, to the extent
these papers can be said to have been "seized," they were seized
with consent, and there can be no Fourth Amendment violation and
no §1983 claim.  *See, e.g., Schneckloth v. Bustamonte*, 412 U.S.
218, 219 (1973).  That Mr. Kramer may later have tried to revoke
his consent and get the papers back does not change that result.
*See Lee*, 330 F.3d at 456.

     The Court similarly finds that the allegations of the
amended complaint fail to state a claim for violation of the
Fifth Amendment.  Even if the Court were to find that the conduct
alleged in the amended complaint amounted to a "taking" within
the context of the Fifth Amendment, Certified's complaint does
not allege - and the Court therefore has no basis to find - that
Certified has been denied just compensation for any such taking.
Accordingly, any Fifth Amendment claim must be dismissed as
premature.  *See, e.g., Peters v. Village of Clifton*, No. 06-3735,
— F.3d —, 2007 WL 2377385, at *2 & n.4 (7th Cir. Aug. 22,

2007)(no constitutional violation occurs until the property owner's claim for just compensation has been denied)(citing *Williamson County Reg. Planning Comm'n v. Hamilton Bank of Johnson County*, 473 U.S. 172, 194-195 (1985)).  Indeed, Certified concedes as much and has agreed to dismiss the Fifth Amendment claim.  *See* Plaintiff's Response to Defendant John Creedon's Motion to Dismiss, p. 14 n.4.

Although Certified has made no similar concessions concerning any attempt to state a claim under the Fourteenth Amendment or to state a claim against the defendants in their official capacities, neither claim can be sustained based upon the facts alleged in the amended complaint.  *See Hanno v. Sheahan*, No. 01 C 4677, 2004 WL 2967442, at *10 (N.D. Ill. Nov. 29, 2004)(citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))(no Fourteenth Amendment due process claim if a meaningful postdeprivation remedy for the loss is available); *Porco v. Trustees of Indiana University*, 453 F.3d 390, 394-95 (7th Cir. 2006)(Eleventh Amendment bars damages claims against state actors in their official capacities)(citing *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002); *Doe v. Heck*, 327 F.3d 492, 508 n. 13 (7th Cir. 2003)).

### Conclusion

As more fully explained above, the Court finds that no
reasonable trier of fact could conclude that the defendants
violated Certified's constitutional rights.  Accordingly, the
Court grants the motions to dismiss filed by defendants Steven
Stetler [#30] and John P. Creedon [#42].

Dated: September 14, 2007

ENTER:

ARLANDER KEYS
United States Magistrate Judge

11

# EXHIBIT K    ENTERED JUDGMENT

# United States District Court
## Northern District of Illinois
### Eastern Division

| | |
|---|---|
| Certified Car Sales | **JUDGMENT IN A CIVIL CASE** |
| v. | Case Number: 06 C 6192 |
| Sheriffs Deputy Steven Steeler | |

- ☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

- ■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the Court grants the Motions to Deismissed filed by Defendants Stetler and Creedon.

Michael W. Dobbins, Clerk of Court

Date: 9/14/2007

_____

/s/ Alicia Castillo, Deputy Clerk

**EXHIBIT L**    **JUDGE KEYS' 9/17/2007 ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE ITS SECOND AMENDED COMPLAINT FOR "REASONS STATED ON THE RECORD"**

Order Form (01/2005)    Case 1:06-cv-06192    Document 69    Filed 09/17/2007    Page 1 of 1

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 6192 | **DATE** | 9/17/07 |
| **CASE TITLE** | Certified Car Sales LLC v. Zaruba et al | | |

**DOCKET ENTRY TEXT**

Motion hearing held on Plaintiff Certified Car Sales LLC 's motion for to file Second Amended Complaint. The motion is denied for the reasons stated on the record (#63). *AK*

Docketing to mail notices.

| | Courtroom Deputy Initials: | AC |
|---|---|---|

**EXHIBIT M**     **TRANSCRIPT OF 9/17/2007 HEARING BEFORE JUDGE KEYS IN WHICH HE DENIES PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS (Chicago)

CERTIFIED CAR SALES, LLC.,          )
a Missouri Limited Liability        )
Company,                            )
                                    )
            Plaintiff,              )
                                    )          Docket No. 06-cv-6192
        v.                          )
                                    )
JOHN E. ZARUBA, et al.,             )
                                    )          Chicago, Illinois
            Defendants.             )          September 17, 2007


REPORT OF PROCEEDINGS
BEFORE THE
HONORABLE MAGISTRATE JUDGE ARLANDER KEYS

APPEARANCES:

For Plaintiffs:              STEPHEN M. KOMIE
                             KOMIE & ASSOCIATES
                             One North LaSalle Street
                             Suite 4200
                             Chicago, IL  60602


For Defendants:              PAUL BRUCKNER
                             Assistant State's Attorney
                             DuPage County States Attorney's Ofc.
                             503 North County Farm Road
                             Wheaton, IL  60187


        PLEASE PROVIDE CORRECT VOICE IDENTIFICATION

Transcribed by:              Riki Schatell
                             6033 North Sheridan Road, 28-K
                             Chicago, Illinois  60660-3046
                             773/728-7281

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

```
 1            THE CLERK:  Certified Car Sales vs. Zaruba, motion to
 2   dismiss.
 3            THE COURT:  Good morning, counsel.
 4            MR. KOMIE:  Good morning, your Honor, I'm Stephen,
 5   S-t-e-p-h-e-n, middle M., last name Komie, K-o-m-i-e.  You
 6   granted my motion for leave to file my appearance last week.
 7            THE COURT:  Okay.
 8            MR. KOMIE:  On behalf of the plaintiffs.
 9            THE COURT:  All right.
10            MR. BRUCKNER:  Good morning, your Honor, Paul
11   Bruckner, Assistant State's Attorney, on behalf of the DuPage
12   defendants.
13            THE COURT:  Good morning, counsel.
14            MR. KOMIE:  Judge, I was informed by your wonderful
15   minute clerk that you are in the middle of deliberating a
16   motion to dismiss.
17            THE COURT:  Well, maybe then I was but I have already
18   -- This case has been decided.  This case was dismissed on
19   Friday.
20            MR. KOMIE:  Was it?
21            THE COURT:  It was dismissed.  I granted the motion
22   to dismiss.
23            MR. KOMIE:  Were you aware that we filed a motion
24   with additional authority from the Seventh Circuit that had an
25   identical fact pattern?
```

3

```
 1            THE COURT:  Well, I was -- I know you filed some
 2   stuff.  I granted you leave to appear in this case and I
 3   assumed at that time that it was for the purpose of appealing
 4   to the Seventh Circuit perhaps.
 5            MR. KOMIE:  No, Judge.  I can --
 6            THE COURT:  But it was not.  I can tell you, Mr.
 7   Komie, the problem in this case -- And you have some real
 8   problems in this case, and that is that we set some deadlines
 9   in this case for dispositive motions back in May.  The deadline
10   was May 29th, I believe.  And everybody met those deadlines
11   with prior counsel.
12            I've been waiting to issue -- I indicated to both
13   parties that I was going to issue my ruling in this case prior
14   to Friday, this past Friday, and at a July 11th status hearing
15   your client was there.  Mr. Kramer, I believe his name was.  Is
16   that his name, Kramer?
17            MR. KOMIE:  You know, I'm sure the Court did all the
18   right things and I'm not here --
19            THE COURT:  Right, I did all the right things.
20            MR. KOMIE:  And I'm not here criticizing the Court in
21   any way.  I'm here making sure the Court is aware that in
22   August the Seventh Circuit decided an identical case where a
23   deputy took away the titles of people at a car operation in
24   Indiana.
25            THE COURT:  Um-hum.
```

```
 1            MR. KOMIE:  And it was almost an identical case so I

 2   wanted to make sure you saw that before you ruled in any manner

 3   on the case so that you were aware --

 4            THE COURT:  Well, I can tell you, I didn't -- I

 5   remember reading that case when it first came down and in the

 6   Zip opinion a couple of months ago, I believe it was, but I

 7   didn't -- I wasn't, you know, you didn't bring it to my

 8   attention until after I had issued the opinion, but it's okay.

 9    I understand that you have a legal position that -- But what

10   you are asking for, though, Mr. Komie, you're asking for leave

11   to amend the complaint to make additional allegations, and

12   that's -- I can't do that.  And obviously I can't do that

13   because this case was fully briefed as of May 29th, I believe.

14    Was it May 29th?

15            I believe was -- Yes, May 29th --

16            MR. KOMIE:  Well, Judge --

17            THE COURT:  -- for reply, and it was briefed on a

18   theory.  Now whether you agreed with that theory that prior

19   counsel proceeded on or you think that you could have raised

20   better arguments than prior counsel did, the case is as it was

21   as of May 29th.  That is, a motion to dismiss was filed by the

22   defendants, a response was made, and a reply was made pursuant

23   to my schedule.

24            I then had a -- Then the prior counsel filed a motion

25   to withdraw, saying that he had irreconcilable differences with
```

5

1    the client and the client appeared for that motion and the

2    client said I want them to withdraw, and told me that he had

3    retained a Michael Rogers as new counsel.  So from July 11th

4    to, well, last week, I guess, I never heard anything from Mr.

5    Rogers.

6            But then the day before I was going to issue the

7    opinion, obviously the opinion was ready to go.  I just hadn't

8    signed it because I spent a week, an entire week of judicial

9    time drafting that dismissal, considering the motion and the

10   arguments and drafting the opinion.  So I learned on the day

11   that I was issuing the opinion that -- actually issuing it --

12   that you then filed a motion to cite additional authority and

13   also to amend the complaint.  And you think that you need more

14   discovery and tell me how this doesn't prejudice the defendants

15   here.

16           MR. KOMIE:  Well, your Honor, I see that you have

17   excellent recall of the facts of the case.  However, we did not

18   file our appearance to be appellate counsel; we filed our

19   appearance to be trial court counsel.

20           THE COURT:  Right.

21           MR. KOMIE:  Secondly, when we motioned that up, we

22   did not know your Honor's schedule and we motioned it up with

23   the expectation we would have had the privilege of standing in

24   front of you to make the motion till we were called by

25   telephone by your very good clerk to tell us not to come, but

6

the expectation was is that when we came before you we would

explain the posture of the case from the perspective of the

plaintiff.  When --

THE COURT:  But you knew that I was going to rule

prior to the 14th.

MR. KOMIE:  No, we didn't have a schedule for your

ruling.  Your minute orders don't --

THE COURT:  You didn't read the minute order?

MR. KOMIE:  No, the dockets don't tell us the date

you were intending to rule.

THE COURT:  No, it said the Court would rule on the

pending dispositive motion before the next status hearing.

MR. KOMIE:  We were under the impression that it was

under advisement.  That was the impression the plaintiff had.

So anyway, finally --

THE COURT:  Okay, I don't take cases on advisement.

MR. KOMIE:  Well, but the motion hadn't been

decided at the time --

THE COURT:  Okay.

MR. KOMIE:  -- he came in and retained us.  We then

reviewed the case and discovered that the titles had been

negotiated and the signatures on the titles forged by parties

who may or may not be a part of the case today.

We then were in the intention immediately to bring to

your attention both the authority of the Seventh Circuit, where

7

1   the Seventh Circuit said the District Court couldn't grant

2   summary judgment where a constable of a town in Indiana had

3   pressured the titles out of the hands of people who had been

4   stopped on the Indiana Toll Road; their cars towed to the tow

5   yard, and the deputy comes over, the constable comes over there

6   and orders them to surrender their titles to the possession of

7   the towing operator who had a lien, under Indiana law, for

8   towing the car.

9          And it's an identical situation in that the plaintiff

10  here is pressured out of his titles in favor of somebody who

11  claims a superior right without going to court and without

12  anybody intervening in a judicial process to obtain a judicial

13  decision as to who is the lawful owner of the cars and who has

14  a right to the title.

15         So we immediately felt, once we learned from your

16  clerk that you intended to rule, because that's all we knew at

17  the time, that you intended to rule in the very near future, we

18  then made the motion for leave to file additional authority

19  because if you're not going to grant us ability to amend the

20  complaint and put everything in front of the Court, then we're

21  in the posture of making sure your Honor is being treated very

22  fairly by each side, and that you have been told what's out

23  there in the way of precedent which may apply to whatever you

24  are considering.

25         Now, you know, both cases are civil rights cases.

8

1   Both cases a person with a badge shows up and takes a title

2   away from a citizen and tells the citizen that the title really

3   belongs to the person who has other claims, without the benefit

4   of a court order or any court process.

5           So with respect to the motion to, you know, grant

6   leave to file additional authority, I can't possibly see why

7   your Honor wouldn't grant that motion in light of the fact it

8   helps you do your job and your function in deciding the case.

9           Secondly is the question of whether or not you're

10  going to let us file an amended complaint.  At the time we

11  filed that motion the docket doesn't reflect the decision on

12  the case, and as of so far, I can't tell there's a decision on

13  the case as of Friday when I closed business on Friday, there

14  was no docketed decision on the motion.

15          THE COURT:  Um-hum.

16          MR. KOMIE:  Now maybe your Honor, you know, has

17  penned the decision and with the, you know, process and

18  machinery of government it doesn't quite make it through the

19  docket by the time I stand before your Honor.  I am, in good

20  faith appearing before you both to let you know about that case

21  and also to tell you that if you haven't decided the case, we

22  would like to file an amended complaint because, quite frankly,

23  you know, once the title is negotiated it's a stolen title.

24  And if it's negotiated that may have a bearing on your

25  resolution of the case for whatever basis.

9

1          THE COURT:  Um-hum.  There's one issue here that I
2   think that you might be not addressing here, and that is that
3   you know, when a court -- We don't just decide something.  I'm
4   going to pen a decision tomorrow or today to be issued
5   tomorrow.  There's a lot goes into that as you probably know.
6   As you know.
7          MR. KOMIE:  Sure.
8          THE COURT:  I've got to consider the arguments of
9   both sides and do my own research and decide which side is
10  correct on the law here, and so we have, and the Seventh
11  Circuit Court of Appeals, has repeatedly admonished counsel
12  that judges have a right to control their docket, that they
13  have -- If I've got a list of cases that I want to be worked on
14  in order and I told you that I'm going to issue this decision
15  prior to 9-14, everybody should have been aware that I'm not
16  going to wait until 9-13 to do work on this case.  And it's not
17  going to be helpful to judicial economy to not consider, I mean
18  to consider your argument at this late date and I think that
19  the defendants have some rights here.  I haven't heard from you
20  and I'm not going to make your case for you, so go ahead, Mr.
21  Bruckner?
22         MR. BRUCKNER:  No, I have nothing to add, your Honor.
23  I haven't seen the decision yet.
24         THE COURT:  You didn't see it?
25         MR. BRUCKNER:  No, we -- Actually I haven't entered

10

1    my appearance on this case yet.

2            THE CLERK:  It was mailed, Judge, if I can

3    (inaudible) by mail.

4            THE COURT:  Wouldn't it also get to the docket?

5            THE CLERK:  Well, it's probably going to be docketed

6    today.  (Inaudible) get docketed today.

7            MR. KOMIE:  That was the point I was making, Judge,

8    is there's no way we could know in advance before we got

9    here --

10            THE COURT:  Well, I'm not going to chastise you for

11    doing that you did.  You did the best you could.  You know,

12    you're representing a party and that's fine with me, but I just

13    wanted you to know that the decision has issued and including a

14    judgment has issued in this case and it was issued, I believe

15    it was, Friday morning.  It should -- I'm surprised that it

16    hasn't been --

17            THE CLERK:  No, I don't (inaudible) the docket.

18    Imaged first, there's a delay while it gets imaged and placed

19    onto the CMCS system.

20            THE COURT:  Okay.

21            THE CLERK:  And then (inaudible).

22            THE COURT:  So --

23            MR. KOMIE:  I'm not critical of the Court.  All I'm

24    saying --

25            THE COURT:  Right.

11

1          MR. KOMIE:  -- is that when I went to bed, my law

2   firm went to bed on Friday, we had no idea that you had decided

3   the case and that you know, we were trying to be fair to you by

4   bringing this before you.

5          THE COURT:  But when were you retained in this case,

6   Mr. Komie?

7          MR. KOMIE:  Just recently.

8          THE COURT:  Because he'd indicated back in July that

9   he had a Michael Rogers that he had retained.

10         MR. KOMIE:  Yes, well, I'm not Mike Rogers,

11  (inaudible).

12         THE COURT:  Obviously you're not Michael Rogers.  You

13  were just retained in the last week probably.

14         MR. KOMIE:  Yes.

15         THE COURT:  Okay.

16         MR. KOMIE:  And when -- I think it's largely a

17  situation of financing of a pro se defendant at that point.  I

18  think it was a matter of him getting sufficient funds to come

19  before the Court.

20         THE COURT:  Um-hum.  Well, the case is what it is,

21  and I've -- I'm going to -- Again, I grant -- I always grant --

22  You paid your filing fee, didn't you?

23         MR. KOMIE:  I didn't have to because I'm additional

24  counsel.

25         THE COURT:  No, no, you're substitute counsel.

12

```
 1          MR. KOMIE:  Substitute counsel pays a fee now?

 2          THE COURT:  A whole new law firm?

 3          MR. KOMIE:  Yeah.  You pay a new fee every time you

 4   file an appearance down here now?

 5          THE COURT:  Yes.  Well, you might --

 6          MR. KOMIE:  I'm so used to criminal, you know, where

 7   I --

 8          THE COURT:  You might want to check with --

 9          THE CLERK:  (Inaudible).

10          THE COURT:  Felicia, Mr. Komie is coming in.  You

11   remember the prior counsel represented the plaintiff in this

12   case and they withdrew.  Does Mr. Komie have to pay a fee?

13          THE LAW CLERK:  For filing an appearance?

14          THE COURT:  Yes.

15          THE LAW CLERK:  Oh, no.

16          THE COURT:  He doesn't.

17          THE LAW CLERK:  Not for filing an appearance, no.

18          MR. KOMIE:  Thank God there's one free service left.

19          THE COURT:  All right.  See, that stuff, I know that

20   that's your, you know, I wasn't sure about that procedural

21   stuff but if she says no --

22          MR. KOMIE:  Great.

23          THE COURT:  It doesn't help me at all.  I didn't want

24   any money.  I just wanted to make sure that procedurally that

25   you had done what you're supposed to do.  So your appearance, I
```

13

1    granted that.  And -- But as I always do.  I don't want a pro

2    se plaintiff out there when I can have someone who has

3    indicated they want to represent him.  So your appearance is

4    granted.  And in fact, you were served with a copy of the

5    opinion.

6         THE CLERK:  Okay.  I know.

7         THE COURT:  She did.

8         THE CLERK:  And I have extras here.

9         MR. KOMIE:  So we're being served in open court.

10        THE COURT:  Well, it --

11        THE CLERK:  Extra copies.

12        THE COURT:  Extra copies.  We'll give you extra ones.

13        So we'll see how that plays out.  I mean you

14   certainly can file an appeal on that if you like, Mr. Komie,

15   and cite the case that you cited to me and saying that --

16        MR. KOMIE:  Well, I'm not so much enjoying the idea

17   of going elsewhere as I might very well come back before your

18   Honor and --

19        THE COURT:  Right.

20        MR. KOMIE:  -- ask you to reconsider based on that

21   case, you know?  I may say, you know, give the guy a fair shot

22   at it, you know?

23        THE COURT:  Well, we'll see.

24        MR. KOMIE:  You know?

25        THE COURT:  All right.  So your motion to appear

14

```
 1   obviously is granted already, and the other motions I'm
 2   denying.
 3          MR. KOMIE:   They're moot, I guess, for the moment.
 4          THE COURT:   They're moot.
 5          MR. KOMIE:   Yes.
 6          THE COURT:   Denied as moot because case has been
 7   dismissed.
 8          MR. KOMIE:   Right.
 9          THE COURT:   All right.
10          MR. KOMIE:   Well, thank you, Judge.
11          THE COURT:   You're welcome.
12          MR. KOMIE:   It's a pleasure to meet you.
13          THE COURT:   Nice meeting you, sir.
14                       (Hearing adjourned.)
```

        I, RIKI SCHATELL, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.

/s/ Riki Schatell                    June 29, 2008
                                     Date

**EXHIBIT N**    **WHITMER V. JOHN HANCOCK
MUTUAL LIFE INSURANCE CO.**

LEXSEE 1993 U.S. DIST. LEXIS 7163

**FRANK L. WHITMER and JOAN P. WHITMER, Plaintiffs, v. JOHN HANCOCK MUTUAL LIFE INSURANCE CO., SKIDMORE, OWINGS and MERRILL, SUDLER and CO., SUDLER MARLING, INC., TISHMAN CONSTRUCTION CO., ALUMINUM COMPANY OF AMERICA, ADMIRAL HEATING and VENTILATING, INC., R.B. HAYWARD CO., UNIVERSAL SHEET METAL CORP. d/b/a UNIVERSAL-HAYWARD, CUPPLES PRODUCTS CORPORATION, a division of H H ROBERTSON CO., H H ROBERTSON CO., 175 EAST DELAWARE PLACE HOMEOWNERS ASSOCIATION, H S NACHMAN AND ASSOCIATES, INC., ENVIRONMENTAL SYSTEMS DESIGN, INC., L C KOHLMAN, INC., GENERAL PARKING CORPORATION, WILSON & McILVAINE, CITY OF CHICAGO, JOHN HANCOCK PROPERTIES, INC., STANDARD PARKING CORPORATION, COLDWELL BANKER COMMERCIAL GROUP, C.B. COMMERCIAL REAL ESTATE GROUP INC., HELBIG & SONS CONSTRUCTION CO., INC., BOELTER ASSOCIATES, INC., McKENNA STORER ROWE WHITE & FARRUG, and DOES 1-50 inclusive, Defendants.**

**Case No. 91 C 3067**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**1993 U.S. Dist. LEXIS 7163**

**May 26, 1993, Decided**
**May 27, 1993, Docketed**

**JUDGES:** [*1] Rosemond, Jr., Lindberg

**OPINION BY:** W. THOMAS ROSEMOND, JR.

**OPINION**

*REPORT AND RECOMMENDATION*

**TO THE HONORABLE GEORGE W. LINDBERG,** a District Judge of the United States District Court for the Northern District of Illinois.

*Recommendation:* The Magistrate Judge recommends that the District Judge grant the various *Motions For Summary Judgment* and *Motions To Dismiss* filed in this case. [1] We further recommend that the District Judge **deny** the *Motion For Sanctions* by defendants R.B. Hayward & Co. and Aluminum Company of America.

1    Defendant Tishman Construction Company did not join in any of these motions.

*Procedural History.* The present lawsuit is the latest in a series of litigation filed by *pro se* plaintiffs, Mr. Frank L. Whitmer and his wife, Ms. Joan P. Whitmer, ("Whitmers") arising out of the construction and management of the John Hancock Building in Chicago. The Whitmers are owners and past residents of condominium 8504 in the John Hancock Center, 175 East Delaware Place, Chicago, [*2] Illinois.

On June 10, 1986, Frank Whitmer took a voluntary non-suit with respect to an action pending in the Circuit Court of Cook County. One year later, June 10, 1987, the Whitmers filed another lawsuit (Case No. 87 C 20306) in the Western Division of the United States District Court for the Northern District of Illinois. In October of 1989, that lawsuit was transferred to the Eastern Division of the United States District Court for the Northern District of

Illinois, at which time it was assigned to Judge Nicholas J. Bua (Case No. 89 C 8341).

On June 26, 1990, Judge Bua dismissed that lawsuit *with prejudice* for failure to prosecute when the Whitmers failed to appear for a status hearing. Plaintiffs subsequently appealed that dismissal *and* filed a motion pursuant to Rule 60(b) to vacate the dismissal. The Seventh Circuit dismissed the appeal for want of prosecution on May 10, 1991. Judge Bua denied the 60(b) motion.

On May 17, 1991, the Whitmers filed the current suit in the United States District Court for the Northern District of Illinois, Eastern Division. The first federal suit (Case Nos. 87 C 20306 and 89 C 8341) named eighteen defendants who are also named in the [*3] current suit. The current lawsuit names an additional seven defendants. Because the complaint in the first federal suit is incorporated in full within the current complaint, a brief description of the first federal suit is warranted.

*Case No. 89 C 8341.* The first federal complaint alleged civil conspiracy, fraud, fraudulent concealment of a cause of action, negligence, breach of warranty of habitability, nuisance, trespass, intentional infliction of emotional distress and a request for injunctive relief. The complaint also alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, the Civil Rights Act, 42 U.S.C. § 1983, and the Illinois Consumer Fraud and Business Practices Act, Ill. Rev. Stat. ch. 121 1/2, P 261 *et seq..*

The Whitmers alleged that the design, construction and operation of the John Hancock Center exposed them to "noxious and deleterious gases, fumes, emissions, particulates, and other noxious by-products of motor vehicle exhaust and other pollutants from other sources" [2] This exposure occurred from February 28, 1977 to June 22, 1981, the [*4] period in which they lived in the building. [3] Allegedly, this exposure caused Frank Whitmer various health problems, including a "permanent sensitivity to motor vehicle exhaust caused by inadequate ventilation in his condominium and the resulting continued exposure to inhalation of carbon monoxide and other noxious by-products of motor vehicle exhaust and other pollutants". [4]

    2    *Whitmer* v. *John Hancock,* Case No 89 C 8341, P 182.
    3    *Id.*

    4    *Whitmer,* Case No. 89 C 8341, at 46, P 187.

The Whitmers sought to recover for personal injuries and damages to themselves and their property as the result of an alleged "continuing conspiracy" among the defendants to provide inadequate ventilation to occupants of the John Hancock Center in Chicago, including the plaintiffs.

*The Current Lawsuit.* In the current complaint, the Whitmers add the following counts: assault and battery, negligence, premise and equipment liability, intentional infliction of emotional distress and a conspiracy to obstruct [*5] justice. The current complaint incorporates both the original complaint in total and issues arising from incidents involving the original federal complaint. The Whitmers seek damages for injuries to Frank L. Whitmer as a result of alleged toxic exposure during a suit-related inspection of the John Hancock Center garage on May 17, 1989 *and* allege that defendants conspired to expose Frank Whitmer to toxic fumes in order to obstruct his prosecution of his suit resulting in the dismissal for want of prosecution of the previous suit.

During the initial federal litigation, the Whitmers filed an emergency motion on May 15, 1989 asking the court to halt cleaning of the John Hancock Center parking garage so that they could preserve physical evidence necessary to support their claims. Magistrate Judge Patrick Michael Mahoney (sitting in Rockford, Illinois, the Western Division) granted plaintiffs' request to conduct testing in the garage on the evening of May 17, 1989. Frank Whitmer accompanied his two experts, James Woodring and Kenneth Woods, to the inspection site. [5] Mr. Woodring is an industrial hygienist and Mr. Woods is an engineer and architect with indoor pollution expertise. [*6] Mr. Whitmer stayed with his experts in the parking garage approximately five hours during the inspection. [6]

    5    *Plaintiffs' Local Rule 12(n) Statement,* at P 17.
    6    *Plaintiffs' Local Rule 12(n) Statement,* at P 36.

The Whitmers allege in the current complaint that Frank Whitmer was subjected to an "unexpected, continuing and extreme carbon monoxide assault" in the parking garage of the John Hancock Center on the evening of May 17, 1989 as he attempted to retrieve evidence from the garage. [7] The main pollutant source was a gasoline engine used by the workmen who were scheduled to do the floor cleaning. [8] This "carbon

monoxide assault" allegedly aggravated his existing medical problems.

> 7   *Whitmer*, Case No. 89 C 8341, at 012.
> 8   *Plaintiffs' Local Rule 12(n) Statement*, at PP 34, 44, 49.

The Whitmers are clearly trying [*7] to revive the original federal complaint; they specifically state, **"The record is clear that plaintiffs made no deliberate choice not to formally include the 91 C 3067 issues in 87 C 20306/ 89 C 8341."** [9] They regard the new allegations as mere amendments to the prior claim. [10]

> 9   *Plaintiffs' Opposition To Defendants' Motions For Summary Judgment and Dismissal*, at P 21.
> 10  *Id.* at PP 20-23.

## MOTIONS FOR SUMMARY JUDGMENT.

The following eighteen defendants filed motions for summary judgment on grounds of *res judicata* and collateral estoppel.

### Parties named in both complaints:

1. John Hancock Mutual Life Insurance Co. ("John Hancock"),

2. Skidmore, Owings & Merrill ("Skidmore"),

3. Sudler & Co. (now Sudler Marling, Inc.) ("Sudler"),

4. Sudler Marling, Inc. ("Sudler"),

5. Aluminum Company of America ("Alcoa"),

6. Admiral Heating & Ventilating, Inc. ("Admiral"),

7. Universal Sheet Metal Corporation, doing business as, Universal-Hayward [*8] and R. B. Hayward Co. ("Hayward"), [11]

8. Cupples Products Corporation, a division of H.H. Robertson Co. ("Cupples"),

9. H.H. Robertson Co. ("Robertson"),

10. General Parking Corporation ("General Parking"),

11. Wilson & McIlvaine,

12. City of Chicago.

### Parties added by the new complaint:

13. John Hancock Properties, Inc. ("Hancock Properties"),

14. Standard Parking Corporation ("Standard"),

15. Coldwell Banker Commercial Group Inc., and C.B. Commercial Real Estate Group Inc. ("Coldwell"), [12]

16. Helbig & Sons Construction Co., Inc. ("Helbig"),

17. Boelter Associates, Inc. ("Boelter"), and

18. McKenna, Storer, Rowe, White & Farrug ("McKenna"). [13]

---

11   The summons for Universal Sheet Metal Corporation and R. B. Hayward Company were both served upon Robert Kuechenberg. Since both parties have the same agent for service of process, we have assumed that the parties are one and the same. In any event, the parties have not indicated otherwise.

12   The summons for Coldwell Banker Commercial Group Inc. and C. B. Commercial Real Estate Group Inc. were both served upon Debra Petrusek. Since both parties have the same agent for service of process, we have assumed that they are one and the same. In any event, the parties have not indicated otherwise.

[*9]

13   Defendants Standard Parking, Hayward and Skidmore have also filed alternative motions to dismiss for failure to state a claim. Since we are ruling in favor of their motions for summary judgment, we will not address their motions to dismiss.

### RES JUDICATA.

The doctrine of *res judicata* precludes the same cause of action from being re-tried in a subsequent suit between the same parties or parties in privity. [14] *Res judicata* is conclusive as to all matters which were actually decided in the prior action as well as any matter which might have been offered for that purpose. [15]

> 14  *La Preferida* v. *Cerveceria Modelo*, 914 F.2d 900, 907 (7th Cir. 1990).
> 15  *Lee* v. *Peoria*, 685 F.2d 196, 198 (7th Cir. 1982); *Millonzi* v. *Bank of Hillside*, 605 F. Supp. 140, 142 (N.D. Ill. 1985).

There are three elements to the [*10] doctrine of *res judicata*:

> (1) a final judgment on the merits in an earlier action;
>
> (2) identity of the cause of action in both the earlier and later suit; and
>
> (3) an identity of parties or privies in the two suits. [16]

The elements of *res judicata* are met in the current complaint; therefore, we will not discuss the parties' alternate defense of collateral estoppel.

> 16  *La Preferida*, 914 F.2d at 907; *Lee*, 685 F.2d at 199.

**Final Judgment On The Merits.** *Res judicata* requires a final judgment on the merits. The prior action, Case 89 C 8341, was decided on the merits. **Rule 41(b) of the Federal Rules of Civil Procedure states that "a dismissal under this subdivision [involuntary dismissal] . . . operates as an adjudication upon the merits."** [17] Thus, this element is met.

> 17  Fed. R. Civ. P. 41(b) (1992).

[*11] **Same Cause Of Action.** The second element is also met. **The cause of action in the current complaint is the same as in the original federal complaint.**

The Whitmers argue that the May 17, 1989 incident of exposure to carbon monoxide pollution within the John Hancock Center parking garage is a separate occurrence from the exposure to carbon monoxide pollution within the John Hancock Building upon which Case 89 C 8341 was founded, and thus should stand on its own merits. [18] They differentiate the May 17, 1989 incident based on source of pollution, [19] location of exposure within the John Hancock Building, [20] and lapse of time between the previous alleged exposure and the 1989 incident. [21] Their argument is without merit.

> 18  *Plaintiffs' Opposition To Defendants's Motions For Summary Judgment And Dismissal*, at 13, P 35.
> 19  *Id.*, at 3, P 16 and P 17.
> 20  *Id.*
> 21  *Id.*, at 13, P 34 and P 35.

**The Source Of Pollution And Its Location Is Identical To That Alleged In 89** [*12] **C 8341.** The Whitmers allege that the original federal complaint specified automobile exhaust gases; [22] while the current complaint specifies non-automobile gases from the "hydro washing Honda engine gasoline pump." [23] However, both incidents arise from carbon monoxide fumes emitted from gasoline-powered engines. A distinction between a gasoline engine in a power washer and one in an automobile draws too fine a line when the definitive issue is the resulting injury. Likewise, the location of the exposure to carbon monoxide fumes remained the same for purposes of injury. Whether the exposure was in the garage or in the Whitmers' condominium unit, the exposure still occurred within the John Hancock Building.

> 22  *Whitmer*, 89 C 8341, at 46, P 182.
> 23  *Whitmer*, 91 C 3067, at O12, P 58.

Even if these distinctions in type and location of fumes were relevant, the original federal complaint was alleged in broad enough terms to include fumes in the garage, both from car engines and other sources. The original [*13] federal complaint alleges that "as a result of the failure of the Defendants to properly operate the supply and exhaust air systems in the public parking garage in the Hancock Center . . . noxious and deleterious gases, fumes, emissions, particulates, and other noxious by-products of motor vehicle exhaust and other pollutants from other sources are not discharged from the Hancock Center". [24]

> 24  *Whitmer*, 89 C 8341 at 61, P 176.

***The Whitmers' Lapse Of Time Argument Fails For Similar Reasons.*** Although a significant period of time did elapse between the alleged initial exposure and the 1989 incident, no new injury is alleged. The Whitmers merely allege that the incident "aggravated all of his disabilities and pre-existing conditions." [25] If there is no new injury, the lapse of time is irrelevant. Each separate exposure to fumes which occurred during the original four-year period of exposure alleged in the original federal complaint could also be said to have "aggravated" his disabilities.

    25  *Complaint,* at O13, P 62.

[*14] ***The Basic Controversy Is Still The Same.*** The Whitmers are alleging a heightened sensitivity to exhaust fumes brought on by the exhaust system in the John Hancock building. The facts and evidence essential to maintain the original case would be repeated in this case. Separate exposures to fumes within the building can not be separated into separate causes of action since they are a series of connected transactions out of which the action arose:

> **The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. The mere multiplication of grounds . . . alleged as causing the same injury does not result in multiplying the causes of action.** [26]

    26  *Baltimore S. S. Co.* v. *Phillips,* 274 U.S. 316, 321, 71 L. Ed. 106, 47 S. Ct. 600 (1927).

Also, the Whitmers raised the May 17, 1989 incident both in their appeal of Case 89 C 8341 before [*15] the 7th Circuit and before Judge Bua in their Rule 60(b) motion. [27] The issue framed by this new complaint is that the Whitmers' failure to prosecute the previous case was the product of a conspiracy by the defendants to render Frank Whitmer incapable of prosecuting his case. In the Whitmers' Rule 60(b) motion, they related the circumstances surrounding the garage inspection of May 17, 1989 and unsuccessfully argued that the event constituted "extraordinary circumstances" justifying

reinstatement of the case. [28] The alleged health crisis of Frank Whitmer, *including* the alleged exacerbation arising out of the garage inspection of May 17, 1989, was the defense asserted by the plaintiffs to which the District Judge concluded that the Whitmers had failed to prosecute. This defense was considered and rejected, both by Judge Bua in his denial of plaintiffs' Rule 60(b) motion and by the Seventh Circuit in dismissing the appeal for want of prosecution. Thus, the courts had the opportunity to consider this argument before.

    27  *Plaintiffs' Rule 60(b) Motion,* Exhibit 9, PP 91-113.
    28  *Id.*

[*16] ***Parties Bound By Res Judicata.*** *Res judicata* applies when the second action is between the same parties to the first action or parties who are in privity with persons in the first action. The parties who were named in both the original federal complaint and the present case clearly meet this element.

However, additional explanation is needed for the seven parties who were not named in the original federal complaint but who are now seeking summary judgment based on *res judicata.* Defendants Hancock Properties, Standard, Coldwell, C.B. Commercial, Helbig, Boelter and McKenna were not named in the previous action. These parties are seeking *res judicata* based upon privity with the named parties.

***Hancock Properties.*** Defendant Hancock Properties is a subsidiary of John Hancock Mutual Life Insurance Company, headquartered in Boston, Massachusetts.

***Standard.*** Defendant Standard is an Illinois corporation, and was at all relevant times the operator of the garage facilities in the John Hancock Center in Chicago.

***Coldwell/C.B. Commercial.*** Defendant Coldwell, now known as C.B. Commercial, is a Delaware corporation engaged in the business of real estate [*17] management. Coldwell was the manager of the commercial portion of the John Hancock Center on May 17, 1989. [29]

    29  Coldwell was at all relevant times the agent of both the owner John Hancock and its' wholly-owned subsidiary Hancock Properties. *Plaintiff's Local Rule 12(n) Statement,* at PP 14 &

15; *Defendants Hancock, Sudler, General Parking and Coldwell Local Rule 12(m) Statement,* P 36.

**Helbig.** Defendant Helbig is an Illinois corporation engaged in the business of construction and maintenance. Helbig rendered power washing services to the owners, operators and managers of the John Hancock Center garage. [30]

> 30    Plaintiffs allege that "at all relevant times Helbig was the agent of the owner, Hancock; the operator, Standard; the managers, Hancock Properties, and Coldwell Banker and their respective employees, agents, directors and officers." *Plaintiffs' Local Rule 12(n) Statement,* at PP 12 & 13.

[*18]    **Boelter.** Defendant Boelter is an Illinois Corporation and engaged in the business of architectural, environmental and analytical consulting. Boelter is a professional engineer and certified industrial hygienist, and rendered consulting and supervisory services to the owners, operators and managers of the Hancock Center. A Chicago based, national environmental consultant, Boelter was hired to perform a building survey and to oversee all asbestos abatement in the John Hancock Center.

**McKenna.** Defendant McKenna is a law firm in Chicago which represented defendants John Hancock, Sudler and General Parking in plaintiffs' first action. In paragraph 26 of the present Complaint (at page 06), plaintiffs allege that McKenna is:

> a law firm in the City of Chicago who has represented John Hancock Mutual Life Company, Sudler & Company and Sudler-Marling, Inc., therefore *privy to and at times a participant in the activities.* Defendant was at all relevant times hereto legal counsel for one or all of these entities.

The allegations against defendant McKenna are based solely on the firm's position as counsel during the prior suit. [31]

> 31    McKenna stands in privity to those defendants for purposes of *res judicata. Morgan Consultants* v. *American Telephone and*

*Telegraph Co.,* 546 F. Supp. 844, 846 and 847-48 n.5 (S.D. N.Y 1982) (attorney who represented defendant in first and second suits, but was not named in the earlier suits, was held to be in privity with client for application of res judicata when he was named in the third suit).

[*19]    *Privity Applies To Successive Parties Who Adequately Represent The Same Legal Interests.* [32] Where a complaint makes allegations against a defendant not named in an initial suit, and alleges that "the defendants in the second suit were closely related to those in the first, in that all were allegedly involved in the same conspiracy, the defensive assertion of claim preclusion is appropriate." [33]

> 32    *Donovan* v *Estate of Fitzsimmons,* 778 F.2d 298, 301 (7th Cir. 1985).
> 33    *McLaughlin* v. *Bradlee,* 599 F. Supp. 839, 848 (D.C.D.C. 1984), *aff'd* 256 U.S. App. D.C. 119, 803 F.2d 1197 (D.C. Cir. 1986).

*The Whitmers' complaint charges that every defendant in this case is and was an agent of every other defendant in the original federal complaint and that all defendants acted jointly and severally throughout.*

[34] Plaintiffs' own pleadings support a theory of privity. In the instant case, there is a significant relationship between [*20] the new defendants and the previous defendants. All are either subsidiaries of previous defendants or employees or agents of previous defendants. Thus, the doctrine of *res judicata* applies to these new defendants.

> 34    *Complaint,* P 75, P 82, P 83, P 88; See unnumbered opening paragraph of each substantive count.

Accordingly, the entry of summary judgment in favor of defendants Hancock Properties, Standard, Coldwell, C.B. Commercial, Helbig, Boelter, and McKenna is also appropriate.

*MOTIONS TO DISMISS.*

*Defendants' motions to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) are examined next.* Four defendants have not filed motions for summary judgment under the doctrine of *res judicata;* but rather they contend that the complaint should be dismissed

because it contains no specific allegations against them. All four parties were named in the initial federal complaint and based on the analysis discussed above, the elements of *res judicata* are satisfied by each of the four. [*21] These parties are:

>   (1) 175 East Delaware Place Homeowners Association ("Delaware Place")
>
>   (2) H. S. Nachman & Associates, Inc. ("Nachman"),
>
>   (3) Environmental Systems Design, Inc. ("ESD"), and
>
>   (4) L. C. Kohlman ("Kohlman").

Not only is the present Whitmer cause of action *res judicata* as to these four defendants, but viewing the Whitmer complaint through the prism of a motion to dismiss, it fails to state a claim against these defendants.

When considering a motion to dismiss, allegations in the complaint, as well as all reasonable inferences which can be drawn from them, are taken as true. [35] Only if plaintiffs cannot prove any set of facts in support of their claim which would entitle them to relief can their claim be dismissed under Rule 12(b)(6). n36

>   35    *McBride* v. *Lindsay,* 718 F. Supp. 24, 26 (N.D.Ill. 1989).

35

>   35    *Id.*

In paragraphs 11-27 of the complaint, the Whitmers identify the individuals and entities allegedly liable in the [*22] instant lawsuit. Significantly, neither Kohlman, Delaware Place, Nachman nor ESD is mentioned in these paragraphs. The complaint bears two separate series of paginations. The page numbers of the complaint preceded by the letter "O" indicate the portions of the complaint pertaining to the May 17, 1989 occurrence. None of these four defendants is named or mentioned in any of the pages bearing the "O" demarcations. The second series of paginations included in the complaint are numbered consecutively 1 through 65. These pages comprise the identical complaint filed in Case No. 89 C 8341, which was dismissed with prejudice by Judge Bua. These defendants are named only in that previously dismissed complaint.

The Whitmers' current complaint makes no specific new allegations against these defendants. They are merely included in the caption of the complaint and the general reference, "all defendants", which accompanies each specific count of the complaint. [37] However, this is not a factual allegation, but merely an indication that all defendants are being sued for all counts of the complaint.

>   37    *See, for example,* O15, P 71.

[*23] When the complaint names a defendant in the caption but fails to include allegations indicating how the defendant injured the plaintiff, a motion to dismiss the complaint with regard to that defendant should be granted. [38] The Whitmers' current complaint provides no basis upon which to determine why they think Kohlman, Delaware Place, Hayward, Nachman and ESD violated the law or otherwise injured one or both of them.

>   38    *Kirkland* v. *Bianco,* 595 F. Supp. 797, 799-800 (S.D.N.Y. 1984), *aff'd.* 828 F.2d 104 (2nd Cir. 1987); *Morabito* v. *Blum,* 528 F. Supp. 252 (S.D.N.Y. 1981).

In their response memorandum, plaintiffs request leave of court to file an amended complaint to plead with particularity all items necessary to overcome the objections of the defendants. The Whitmers' request to file an amended complaint is hereby denied. Even if the Whitmers were to revise their complaint to specifically name these defendants, [*24] we find that such a complaint would be barred by the doctrine of *res judicata.* Therefore, the defendants' motions to dismiss, **with prejudice,** must be **granted.**

***Motions For Sanctions.*** R. B. Hayward Company seeks sanctions in the form of reasonable attorneys' fees and costs against plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure. Hayward complains that plaintiffs filed "more than 100 pages of rambling and convoluted assertions, allegations and exhibits" but made "no coherent legal argument which would implicate Hayward." [39] Hayward alleges that plaintiffs have used tactics of "delay, misrepresentation, and other wilful actions to delay adjudication and to vexate the court." [40]

>   39    *Defendant's Reply Brief In Further Support of Its Motion to Dismiss,* at 2.
>   40    *Id.,* at 3.

Rule 11 of the Federal Rules of Civil Procedure requires a party who is not represented by an attorney to sign the pleading certifying that the suit is not brought for "any improper purpose, [*25] such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." [41] Sanctions are imposed using an objective reasonableness test. [42] They do not require a finding of subjective bad faith or a willful violation. [43] If the court can determine from the face of the pleading that it was not based on a plausible theory of law, sanctions are appropriate. [44] Failure to plead any allegations beyond what was previously adjudicated generally fails this objective standard for reasonableness. A party may be sanctioned for filing claims barred by *res judicata*. [45]

    41  Fed. R. Civ. P. 11 (1992).
    42  *Rodgers* v. *Lincoln Towing Service, Inc.,* 596 F. Supp. 13, 27 (N.D. Ill. 1984), *affd.* 771 F.2d 194 (7th Cir. 1985).
    43  *Id.,* at 22.
    44  *Id.*
    45  *Thomas* v. *Evans,* 880 F.2d 1235, 1240 (11th Cir. 1989), *cert. denied,* 498 U.S. 901, 112 L. Ed. 2d 218, 111 S. Ct. 261 (1990).

[*26] However *pro se* litigants are allowed greater latitude than attorneys with respect to the reasonableness of their legal theories and pleadings. [46] We have no indication that the Whitmers did not act in good faith nor that they filed their claims for any improper purpose. They appear to have endeavored to investigate the facts and to research the law even though they did not gain a firm understanding of the law. Sanctions are not appropriate in this case and the motion for sanctions is *denied.*

    46  *Id.*

Alcoa has also asked for an assessment of Rule 11 sanctions in the form of reasonable attorneys' fees and costs against the Whitmers. For the reasons stated above, Alcoa's request is also *denied.*

**Recommendation:** The District Judge should grant the motions for summary judgment filed by certain defendants and grant the motions to dismiss with prejudice filed by certain other defendants; *to-wit:*

    1. Defendants John Hancock Mutual Life Insurance Company, Sudler & Company (now [*27] known as Sudler Marling Inc.), General Parking Corporation, John Hancock Properties, Inc.'s, and Coldwell Banker Commercial Real Estate Group, Inc.'s *Motion For Summary Judgment.*

    2. *Motion Of Defendant McKenna, Storer, Rowe, White & Farrug For Summary Judgment.*

    3. L. C. Kohlman, Inc.'s *Motion To Dismiss.*

    4. *Skidmore, Owings & Merrill's Motion To Dismiss Under Rule 12(b)(6) Or For Summary Judgment.*

    5. Defendant Wilson & McIlvaine's *Motion For Summary Judgment.*

    6. *Motion Of Defendants Cupples Products Corporation and H. H. Robertson Corporation To Adopt The Motion For Summary Judgment In Lieu Of Answer Of Certain Defendants.*

    7. Defendant Helbig & Sons Construction Co., Inc.'s *Motion To Join In Motion For Summary Judgment Of Co-Defendants Hancock, Sudler, General Parking Corporation And John Hancock Properties, Inc. In Lieu Of Answer.*

    8. *Motion Of Defendant Boelter Associates, Inc. To Join And Adopt Motion For Summary Judgment By Defendants John Hancock, et al. In Lieu Of Answer.*

    9. Defendant Admiral Heating & Ventilating, Inc.'s *Motion To Adopt.*

    10. Defendant Aluminum Company Of America's [*28] *Motion For Summary Judgment.*

    11. *Defendant City of Chicago's Motion For Summary Judgment.*

    12. Defendant R. B. Hayward & Company's *Motion To Dismiss And For Sanctions.*

**13.** Defendant Standard Parking Corporation's *Motion For Summary Judgment In Lieu Of Answer.*

**14.** Defendants H. S. Nachman and Environmental System's *Motion To Dismiss In Lieu Of An Answer.*

**15.** Defendant 175 East Delaware Place's *Motion To Adopt The Motion To Dismiss Of Defendant, L. C. Kohlman, Inc.* [47]

The cause of action continues to pend against defendant Tishman Construction Company.

[47]     Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties must file their objections to the Report and Recommendation with The Honorable George W. Lindberg within 10 days after being served with a copy of the report. Failure to file objections within the specified time period waives the right to appeal the Magistrate Judge's report. *Video Views, Inc.* v. *Studio 21, Ltd.,* 797 F.2d 538 (7th Cir. 1986). *See also, Provident Bank* v. *Manor Steel Corporation,* 882 F.2d 258, 261 (7th Cir. 1989) (when a matter has been referred to a Magistrate Judge, acting as a special master or § 636(b)(2) jurist, a party waives his right to appeal if he has not preserved the issues for appeal by first presenting them to the District Judge as objections to the Magistrate Judge's report).

[*29] **So Recommended.**

Dated: May 26, 1993

Respectfully submitted,

W. Thomas Rosemond, Jr.

United States Magistrate Judge