**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID KRAMER, et al.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 08 C 2530** |
| **v.** | ) | |
| | ) | **Judge Ruben Castillo** |
| **SHERIFF'S DEPUTY STEVEN STELTER,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT CREEDON'S MEMORANDUM IN SUPPORT OF HIS
MOTION TO DISMISS**

Defendant JOHN P. CREEDON, by and through his attorney, LISA MADIGAN, Illinois

Attorney General, submits this memorandum of law in support of his motion to dismiss the

Plaintiff's Verified Complaint ("Complaint").

**BACKGROUND**

On May 2, 2008, Plaintiff filed the Verified Complaint in this action against Defendant

Creedon and several others. Defendant Creedon is a Master Sergeant for the Illinois State Police.[1]

The claims against Defendant Creedon, brought under 42 U.S.C. §1983 and state law, involve

allegations that he violated Plaintiff's rights in investigating an auto theft report filed by certain

other defendants in this action when he was the Director of the Tri-County Auto Theft Unit. The

factual allegations in the Complaint against Defendant Creedon are virtually identical to those in

a previous lawsuit filed by Plaintiff's wholly owned business, Certified Car Sales, LLC,

("Certified"), against Defendant Creedon.

---

[1]Defendant Creedon is incorrectly identified as a "Joliet Police Officer" in the Complaint.
(Complaint, ¶523)

I.    **The Prior Lawsuit**

On November 13, 2006, a complaint was filed in *Certified Car Sales, LLC, v. Stelter*, No. 06 C 6192, against many of the same defendants sued herein, including Defendant Creedon. After the original complaint in that action was dismissed without prejudice, Certified filed an amended complaint against Defendant Creedon and Steven Stelter, a DuPage County Sheriff's Deputy, under §1983, claiming violations of its constitutional rights. (The amended complaint is attached hereto as exhibit A.) In pertinent part, it alleged that in December 2005, based on its agreement to purchase used vehicles and place them on consignment with Pugi Kia, a car dealership, it delivered four vehicles to Pugi Kia. (Exhibit A ¶¶ 6, 7) In March 2006, Certified terminated its agreement with Pugi Kia and sought payment for the vehicles, three of which had been sold. (Exhibit A ¶ 8) On May 4, 2006, Certified "took possession" of the unsold vehicle, a 2005 Kia Rio, and placed it for sale at the Greater Chicago Auto Auction ("Auto Auction") in Cook County, Illinois. (Exhibit A ¶ 9) Pugi Kia reported the 2005 Kia Rio stolen, allegedly falsely. (Exhibit A ¶ 10) In response to the theft report, Defendant Creedon went to the Auto Auction to investigate. (Exhibit A ¶ 10) At the Auto Auction, Defendant Creedon met with David Kramer, Plaintiff in the instant case, who advised him that Certified was the rightful owner of the 2005 Kia Rio and that it held the title to that vehicle and three others sold by Pugi Kia. (Exhibit A ¶ 11) Certified alleged that Defendant Creedon took possession of the 2005 Kia Rio, directed Plaintiff to meet with Defendant Stelter, and delivered the 2005 Kia Rio to Pugi Kia. (Exhibit A ¶ 11) Plaintiff met with Defendant Stelter in DuPage County and gave Defendant Stelter the paper titles to the 2005 Kia Rio and three other cars. (Exhibit ¶12) Certified alleged that Defendant Stelter gave those titles to Pugi Kia. (Exhibit ¶¶12, 14)

2

Defendants Creedon and Stelter both filed motions to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). Magistrate Judge Arlander Keyes granted the Defendants' motions, finding that "no reasonable trier of fact could conclude that the defendants violated Certified's constitutional rights." (The Memorandum Order and Opinion is attached hereto as exhibit B.) Certified did not appeal the dismissal.

## II.    This Lawsuit

Plaintiff's 108-page Complaint contains more detailed allegations regarding the contractual agreements between Certified and the Defendants who are involved in commercial automobile sales ("Auto Sale Defendants"). However, the allegations against Defendants Creedon and Stelter are the same as those in *Certified Car Sales*. In the allegations against Defendant Creedon, Plaintiff asserts that Certified purchased an automobile ("2005 Kia 7152") [identified in the Complaint as both as a "2005 Kia Sorrento" (Complaint ¶57) and as a "2005 Kia Rio" (Complaint, p 16, ¶¶89, 228a, 237a, etc.)] and placed it for sale by consignment on the Pugi Kia car lot. (Complaint ¶¶57-58) Plaintiff alleges that he became concerned about fraud by the Auto Sale Defendants, so he "repossessed" the 2005 Kia 7152 and brought it to the Auto Auction to sell. (Complaint ¶60) Certain of the Auto Sale Defendants filed an allegedly false theft report for the 2005 Kia 7152. (Complaint ¶61) Defendant Creedon met with Plaintiff at the Auto Auction and "demanded that Plaintiff surrender title to the 2005 Kia 7152." (Complaint ¶63) Plaintiff asserts that "while reluctant to do so," he "allowed Officer Creedon to make a photocopy of title to 2005 Kia 7152" after Defendant Creedon "made assurances to Plaintiff that

3

the original title would be returned to him."[2] (Complaint ¶64) On the same day, Defendant

Creedon "arranged a meeting" between Plaintiff and Defendant Stelter regarding the 2005 Kia

7152. (Complaint ¶65) The Complaint does not allege that Defendant Creedon took any other

action or was present at the meeting between Plaintiff and Defendant Stelter. Plaintiff does allege

that he gave the title to the 2005 Kia 7152 and three other automobiles to Defendant Stelter,

which Defendant Stelter allegedly gave to the Auto Sale Defendants. (Complaint, ¶¶66-68, 78-

80, 90-92, 102-104)

    In Count XII, the only count of the Complaint brought solely against Defendant Creedon,

Plaintiff claims that Defendant Creedon "aided and conspired with" certain of the Auto Sale

Defendants to seize his personal property, the paper titles to four automobiles, in violation of the

Fourth Amendment. (Complaint ¶238) Plaintiff does not allege that Defendant Creedon

committed the actual seizure himself; instead, he attributes the actual seizure to Defendant

Stelter.[3] (Complaint ¶237) Plaintiff also brings claims for conversion against Defendant Creedon.

(Complaint ¶¶403, 436, 469) While Plaintiff also makes claims against "the Defendants" in

several counts, it does not appear that these counts are brought against Defendant Creedon. For

instance, in the claim brought under the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. §1962(c), he simply names Defendant Creedon within the allegations but

does not assert that he was involved in an association or an association-in-fact. (Complaint

---

    [2]This is a difference between the allegations in *Certified Car Sales* and the instant; in that case Certified alleged that Defendant Creedon seized the actual automobile. Here, Defendant Creedon is alleged to have merely made a photocopy of the title with Plaintiff's permission.

    [3]Plaintiff, however, does not allege that a conspiracy existed between Defendants Creedon and Stelter.

¶¶244, 250) He also includes Defendant Creedon's name in various paragraphs of counts for state

law claims for fraudulent misrepresentation, tortious interference with a business expectancy, and

breach of contract. (Complaint, ¶¶275c, 344, 523) However, the Complaint does not specify that

these counts are brought against Defendant Creedon.[4]

## STANDARD FOR MOTION TO DISMISS

To state a claim under 42 U.S.C. §1983, Plaintiff must show he was deprived of a federal

right, privilege, or immunity by a person acting under color of state law. 42 U.S.C. §1983. In

ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the

complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon*

*v. Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 977 (7th

Cir. 1999). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965 (2007)

(citations and quotations omitted).

---

[4]Given the lack of clarity in the Complaint, if Plaintiff somehow did intend these state law counts and the RICO count to apply to Defendant Creedon, *res judicata* would apply to them as well because they arise from the same "core of operative facts" as the previous lawsuit. (See below.) In the alternative, they should be dismissed under Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 775 (7th Cir. 1994) ("Under Rule 8, a complaint must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.") (citations omitted); *Brainerd v. Potratz*, 421 F.Supp. 836, 838 (N.D.Ill. 1976) (A complaint was "confusing in that it commingles various theories and individuals so as to make responsive pleading impossible," and the confusing nature of the complaint made it "especially unclear against which defendants the allegations are directed.")

ANALYSIS

I.    **Res Judicata**

Plaintiff's claims against Defendant Creedon in the Complaint are barred by the doctrine

of *res judicata*, or claim preclusion. This doctrine bars all claims that were or could have been

raised against the parties and their privies in the previous case. *Simon v. Allstate Employee*

*Group Med. Plan*, 263 F.3d 656, 657 (7th Cir. 2001). Claim preclusion bars a claim where three

requirements are met: "1) an identity of the causes of action; 2) an identity of the parties or their

privies; and 3) a final judgment on the merits." *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d

1027, 1034 (7th Cir. 1997) (*quoting Perkins v. Board of Trustees of the Univ. of Illinois*, 116 F.3d

235, 236 (7th Cir. 1997)). The purpose of the doctrine is promotion of finality - a plaintiff has one

chance to litigate a claim to final judgment, and has no right to re-litigate the same claim or a

related claim merely because he lost the first time. *Hoffman v. Fermilab NAL/URA*, 205

F.Supp.2d 900, 903 (N.D.Ill. 2002). "This is 'tantamount to a rule requiring parties to consolidate

all closely related matters into one suit,' and therefore serves the interest of judicial economy by

preventing piecemeal litigation." *Walsh Const. Co. of Illinois v. National Union Fire Ins. Co.*,

153 F.3d 830, 832 (7th Cir. 1998) (*citing Hagee v. City of Evanston*, 729 F.2d 510, 514 (7th

Cir.1984)) .

A.    **Identity of the Causes of Action**

For purposes of claim preclusion analysis, "identity of claims is established where they

emerge from the same 'core of operative facts.'" *Brzostowski v. Laidlaw Waste Systems, Inc.*, 49

F.3d 337, 338-39 (7th Cir. 1995). The central or "operative" facts of a claim may be identical,

even if the legal elements of each claim are different. *Id.* at 339. As the Seventh Circuit has

6

explained:

> Even though one group of facts may give rise to different claims for relief
> upon different theories of recovery, there remains a single cause of action.
> If the same set of facts are essential to the maintenance of both proceedings
> or the same evidence is needed to sustain both, then there is identity between
> the alleged different causes of action asserted.

*Mandarino v. Pollard*, 718 F.2d 845, 849 (7th Cir. 1983) (*quoting Lee v. City of Peoria*, 685 F.2d

196, 200 (7th Cir. 1982)).

Here, the core of operative facts is the same in the present lawsuit and *Certified Car*

*Sales.* In both cases, the allegations against Defendant Creedon involve the events on May 4,

2006 at the Auto Auction when Defendant Creedon met with Plaintiff to investigate the

automobile theft report filed after Plaintiff "repossessed" or "took possession" of the 2005 Kia

1752. (Complaint ¶¶60-65; Exhibit __ ¶¶9-11) Simply because Plaintiff has raised additional

claims for conversion against Defendant Creedon in the present action, in addition to the

constitutional claims raised in both actions, and alleges that Defendant Creedon was involved in

a conspiracy does not mean that *res judicata* does not apply. When "all of the issues raised . . .

could have been raised and decided in [the earlier] action," dismissal based on *res judicata* is

proper. *Mandarino* at 850. Thus, the claims against Defendant Creedon are barred by *res*

*judicata*.

**B.      Identity of the Parties or their Privies**

The identities of the parties and their privies in the present case is the same as that in

*Certified Car Sales*. As stated in the Complaint, Plaintiff is suing both individually and as the

sole owner of Certified. In the prior litigation, Certified itself was the named plaintiff. However,

the slight difference in the designation of the plaintiffs does not change the preclusionary effect

7

of the prior litigation.

For *res judicata* purposes, a closely-held corporation and its officers/shareholders are privies. *Janusz v. Fasco Indus., Inc.*, No. 97 C 7976, 1999 WL 162793, *5 (N.D.Ill. Mar. 12, 1999) (Exhibit C) ("The Seventh Circuit has found that for *res judicata* purposes, a corporation, its officers, directors, and employees, are privies.") (*citing Henry v. Farmer City State Bank,* 808 F.2d 1228 (7th Cir. 1986); *Mandarino* at 850; *Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982)). Similarly, limited liability companies ("LLCs") like Certified have been held to be in privity with their individual owners for claim preclusion purposes, particularly where, as here, the individual owner exercises exclusive and total control over the LLC. *See, e.g., Direct Marketing Concepts, Inc. v. Trudeau*, 266 F. Supp. 2d 794 (N.D.Ill. 2003) (J. Shadur) ("In light of Trudeau's self-created total control over both Shop America entities [both LLCs] by virtue of his managership, coupled with his ownership interest in both, it would represent the height of artificiality-an impermissible exaltation of form (and indeed not much formal separation at that) over substance-to view the Shop America entities as anything other than in privity with Trudeau as an individual.") Thus, Plaintiff and Certified are in privity, and the *res judicata* bar of *Certified Car Sales* acts against both.

### C.    A Final Judgment on the Merits

The third element for *res judicata* was also met. A dismissal under Rule 12(b)(6) becomes a final judgment on the merits when the plaintiff fails to appeal. *Tartt v. Northwest Community Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006) ("Because Tartt did not appeal the dismissal of the action within 30 days, the entry of judgment pursuant to Rules 12(b)(6) and 41(b) on January 29, 2003, amounts to a final judgment on the merits for res judicata purposes.") (*citing*

Fed. R.App. P. 4(a)(1)(A); *Horwitz v. Alloy Auto. Co.,* 992 F.2d 100, 102 (7th Cir.1993); *Cannon v. Loyola Univ. of Chicago,* 784 F.2d 777, 780 (7th Cir.1986); *Phillips v. Shannon,* 445 F.2d 460, 462-63 (7th Cir.1971)). *See also Brown v. Chrysler Financial Services*, 218 Fed.Appx. 536, 539 (7th Cir. 2007) ("the district court correctly noted that the judgment in the first case was a dismissal under Rule 12(b)(6) for failing to state a claim, a ruling on the merits that became final when Brown failed to appeal.")

In *Certified Car Sales,* there was a ruling on the merits. Magistrate Judge Keyes granted the defendants' motions to dismiss, which were brought under Rule 12(b)(6). (Exhibit B, p. 11) Magistrate Judge Keyes also denied Certified's motion to file a second amended complaint. (See minute order, exhibit D, and transcript of hearing, exhibit E hereto.) Certified did not appeal the dismissal; thus, it constitutes a final ruling on the merits.

## II.     Failure to State a Claim

In the alternative, Plaintiff has failed to state a claim against Defendant Creedon; thus, dismissal of the instant action would also be proper under Rule 12(b)(6). As Magistrate Judge Keyes held in the *Certified Car Sales* case, "no reasonable trier of fact could conclude that the defendants violated Certified's constitutional rights." (Exhibit B, p. 11) This holds true in the instant action as well.

### A.     Probable Cause

Actual existence of probable cause is an absolute bar to a § 1983 action. *Fernandez v. Perez*, 937 F.2d 368, 370 (7th Cir. 1991); *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989); *Lenard v. Argento*, 699 F.2d 874, 884 (1983); *Terket v. Lund*, 623 F.2d 29, 31 (7th Cir. 1980). Probable cause exists when "a reasonable person in the officer's position would have

probable cause to believe that an offense has been committed." *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000). "[W]hen an officer receives information from a third party whom the officer has reason to believe is telling the truth, the officer has probable cause." *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998); *see also, e.g., Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 43 (7th Cir. 1986) ("When an officer has 'received his information from some person – normally the putative victim or an eye witness – who seems reasonable to believe is telling the truth,' he has probable cause." (citations omitted) (*citing Daniels v. United States*, 393 F.2d 359, 361 (D.C.Cir. 1968).)

Here, Plaintiff admits that the Auto Sale Defendants reported that the 2005 Kia 7152 was stolen. (Complaint ¶61) While Plaintiff asserts that the report was false, the truth or falsity of the report does not matter in determining whether Defendant Creedon had probable cause to believe a theft had been committed. "'Probable cause does not depend on the witness turning out to have been right; it is what the police know, not whether they know the truth, that matters.'" *Kelley*, *quoting Gramenos*. Plaintiff gives no reason why it would be unreasonable for Defendant Creedon to believe that the Auto Sale Defendants were truthful in its report. Thus, the existence of probable cause bars the claims against Defendant Creedon.

While Plaintiff does not allege that a conspiracy existed between Defendants Creedon and Stelter, Plaintiff somehow attributes Defendant Stelter's alleged action of giving the titles to four vehicles to the Auto Sale Defendants to Defendant Creedon. Notwithstanding that this attribution is improper as there is no *respondeat superior* liability available under §1983 (*Monell v. Dept. of Social Services,* 436 U.S. 658, 691 (1978); *Kernats v. O'Sullivan,* 35 F.3d 1171, 1182 (7th Cir.1994); *Del Raine v. Williford,* 32 F.3d 1024, 1047 (7th Cir.1994)), Defendant Stelter's

10

actions were also proper, based on the probable cause raised by the theft report. Thus, this action must be dismissed.

### B.    Qualified Immunity

Even if Defendant Creedon was mistaken in the existence of probable cause, he is immune from suit from his actions by the doctrine of qualified immunity. Qualified immunity is a doctrine of American law that protects police officers and other officials from reasonable mistakes in judgment in the exercise of their duties. *Harlow v. Fitzgerald*, 457 U.S. 800, 816-17 (1982), *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The defense of qualified immunity is available if a reasonable police officer could have mistakenly believed that probable cause existed, which has been described as "arguable probable cause." *Williams v. Jaglowski,* 269 F.3d 778, 781 (7th Cir. 2001); *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). "The question ... is whether there was any reasonable basis to suppose there was probable cause." *Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004). Here, the existence of the theft report filed by the Auto Sale Defendants demonstrates that Defendant Creedon (and Defendant Stelter) had a "reasonable basis to suppose there was probable cause."

### C.    Limited involvement

To establish liability under § 1983, a plaintiff must demonstrate that the defendant was "'personally responsible for the deprivation of [their property without due process].'" *Campbell v. Chappelow*, 95 F.3d 576, 579 (7th Cir 1996) (*quoting Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995)). In *Campbell*, the plaintiffs sued Indiana State Police officers under § 1983 and state law claims of conversion and bailment, asserting that the officers had improperly seized their cattle and gave the cattle to the Humane Society. One officer, Trooper Stockton,

investigated the complaint of cruelty to animals with regards to the cattle and took pictures of

them, but had no other role in the case. The Seventh Circuit found that "given Stockton's limited

role in this whole matter, we agree with the district court that 'Stockton's activities did not

amount to personal participation in the alleged constitutional violations sufficient for him to have

any liability under §1983.'" *Id.* Similarly, the sole allegations against Defendant Creedon involve

his investigation of the theft report at the Auto Auction, making a photocopy of the paper title to

the 2005 Kia 7152, and arranging a meeting between Plaintiff and Defendant Stelter. These

allegations to not amount to personal participation in the alleged constitutional violations

sufficient for him to have any liability under §1983.

### D.    Conspiracy related to "seizure" of the titles

Plaintiff alleges that Defendant Creedon "aided and conspired with" certain of the Auto

Sale Defendants to help them fraudulently obtain Plaintiff's personal property, the paper titles to

four vehicles.[5] (Complaint ¶238) However, there was no unconstitutional seizure in this case.

Plaintiff admits that he voluntarily "allowed Officer Creedon to make a photocopy of the title to

the 2005 Kia 7152," and he gave the titles to that and other cars to Defendant Stelter. (Complaint,

¶¶64, 66, 78, 90, 102) As Defendants Creedon and Stelter took possession of the documents with

Plaintiff's consent, there can be no constitutional violation. *See, e.g., Schneckloth v. Bustamonte*,

412 U.S. 218, 219 (1973); *Lee v. City of Chicago*, 330 F.3d 456, 465 (7th Cir. 2003).

Plaintiff's allegations of conspiracy against Defendant Creedon are similarly baseless. To

establish a claim of civil conspiracy, the plaintiff must show "a combination of two or more

---

[5]As noted above, Plaintiff does not allege that Defendant Creedon conspired with
Defendant Stelter.

persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir.1979) (quotations omitted), *reversed in part on other grounds,* 446 U.S. 754 (1980). "A properly pled civil conspiracy claim in a civil rights action must include factual allegations showing a meeting of the minds concerning unconstitutional conduct." *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir.1982). Plaintiff has not made any factual allegations that Defendant Creedon had a "meeting of the minds" or "acted in concert" with any of the Auto Sale Defendants; thus, he has failed to plead the elements of civil conspiracy.

Further, to state a claim for relief for conspiracy under a civil rights statute, the plaintiff must allege and prove both a conspiracy *and* an actual deprivation of rights; mere proof of a conspiracy is insufficient to establish a claim. *See House v. Belford,* 956 F.2d 711, 721 (7th Cir.1992).Where, as here, there was no constitutional violation, relief based on a conspiracy claim is foreclosed. *See Cefalu v. Village of Elk Grove,* 211 F.3d 416, 423 (7th Cir.2000); *Goldschmidt* (holding that Section 1983 does not punish conspiracy -"an actual denial of a civil right is necessary before a cause of action arises").

### E.    Conversion

In Illinois "[i]n an action for conversion, plaintiff must prove: (1) defendant assumed unauthorized and wrongful control or ownership over the personalty of plaintiff; (2) plaintiff's right in the property; (3) the right to immediate possession of the property; and (4) a demand for possession." *Martel Enterprises v. City of Chicago*, 223 Ill. App.3d 1028, 1034, 584 N.E.2d 157, 160 (1st Dist. 1991). First, Plaintiff brings no conversion claim against Defendant Creedon related

to the 2005 Kia 7152. Plaintiff's only allegations against Defendant Creedon regarding conversion involve a 2007 Pontiac, a 2003 Chevy, and a 2004 Kia. (Complaint ¶¶ 403, 436, 469) As the Complaint does not allege that these other automobiles were ever in Defendant Creedon's possession and control, these conversion claims must be dismissed against him.

Even assuming that the failure to name Defendant Creedon in the conversion count related to the 2005 Kia 7152 was merely an oversight that could be corrected by amending the Complaint, Plaintiff has failed to state a cause of action against Defendant Creedon for conversion. Plaintiff admits that he merely "allowed Officer Creedon to make a photocopy of the title to the 2005 Kia 7152." As discussed above, Defendant Creedon acted with Plaintiff's consent and probable cause in taking all actions related to Plaintiff and the title to the 2005 Kia 7152. Therefore, Plaintiff has not and cannot show that Defendant Creedon took unauthorized and wrongful control or ownership over the title, and he never took any control or ownership of the actual automobile, wrongful or otherwise. Similarly, Plaintiff does not allege that he made any demand for the return of the paper title from Defendant Creedon at any time. Thus, based on Plaintiff's own allegations, he has not and cannot properly plead conversion against Defendant Creedon. *See, e.g., Green v. D'Anna*, 1995 WL 642808, *3 (N.D.Ill. 1995) (J. Norgle) (claim for conversion dismissed when plaintiff did not plead that defendant officer's control over money allegedly stolen from plaintiff's car was unauthorized; court found "it is possible that the money is evidence for some case or that Plaintiff failed to follow the appropriate procedures for return of the $400.") (Exhibit F).

**CONCLUSION**

For the foregoing reasons, Defendant Creedon respectfully requests that this Honorable

14

Court dismiss Plaintiff's claims against him in their entirety with prejudice.

                                    Respectfully submitted,


                                    /s/ Alice E. Keane
LISA MADIGAN                        ALICE E. KEANE
Illinois Attorney General           JAMES LANG
                                    Assistant Attorneys General
                                    General Law Bureau
                                    100 W. Randolph Street, 13th Floor
                                    Chicago, Illinois 60601
                                    (312) 814-3711

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CERTIFIED CAR SALES, LLC, a Missouri Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 06 C 6192 |
| SHERIFF'S DEPUTY STEVEN STELTER, Individually and as a Deputy of the DuPage County Sheriff's Office, JOHN P. CREEDON, Individually and as Director of the Tri-County Auto Theft Unit, | ) ) ) ) ) ) | |
| Defendants. | ) | |

### FIRST AMENDED COMPLAINT

Now comes the Plaintiff, CERTIFIED CAR SALES, LLC, a Missouri Limited Liability Company, by and through its attorneys, Loftus & Saltzberg, P.C. and complains of the defendants as follows:

### JURISDICTION

1.    Plaintiff files this complaint under 42 U.S.C. §1983 *et. seq.*, commonly known as the Civil Rights Act of 1971, and the jurisdiction of this Court is conferred by 28 U.S.C. §1331 and 1343.

### VENUE

2.    Venue is proper under 28 U.S.C. §1391, because the claims all arise from actions taking place in this District, and plaintiff believes that all parties are residents of this District.

## PARTIES

3.      Plaintiff Certified Car Sales, LLC, a Missouri Limited Liability Company (hereinafter "Certified"). All of the ownership interest of Certified is owned by David Kramer. Certified's principal place of business is located at 5419 Lemay Ferry, St. Louis, Missouri 63129.

4.      Defendant, Steven Stelter ("Stelter") is a deputy Sheriff of DuPage County, Illinois and the Deputy Director of the DuPage County Auto Theft Task Force. The DuPage County Auto Theft Task Force serves DuPage County and was formed to combat auto theft and insurance fraud in DuPage County. Stelter is sued in his individual and official capacity.

5.      Defendant, John P. Creedon, ("Creedon") is the Director of the Tri-County Auto Theft Unit.  The Tri-County Auto Theft Unit is funded by and controlled by the State of Illinois and was formed for the purpose of combating auto theft in Will, Kankakee and Grundy Counties of Illinois. He is named herein in his individual and official capacity.

## 42 U.S.C. Section 1983 Claim

6.      On or about December 16, 2005, Certified agreed to purchase used vehicles and placed them on consignment with Pugi Kia for resale.  Pugi Kia agreed to market and sell each vehicle and upon a sale, it would pay Certified, in full, the sale price less a portion of the sale price which would be paid to Pugi Kia for its commission. In order to fully secure Certified, the parties agreed that each of the vehicles were to be titled in Certified's name and the original titles were to be retained by Kramer.

2

7.    On December 22, 2005, Certified specifically agreed to acquire four (4) vehicles and to deliver them to Pugi Kia pursuant to the above agreement.    The purchases, totaling $29,910.00, were made as follows:

a. On or about November 30, 2005 Certified purchased a 2004 Kia Rio, VIN KNADC125946340125 (the 2004 Kia Rio") for $7,500.00.    A copy of Certified Car Sale's title to the vehicle is attached hereto and made a part hereof as exhibit A

b. On or about December 28, 2005, Certified purchased a 2005 Pontiac Sunfire, VIN 3G2JB12F15S193477 (the "Sunfire") for $9,550.00.    A copy of Certified's title to the vehicle is attached hereto and made a part hereof as exhibit B

c. On or about January 10, 2006, Certified purchase a 2003 Chevy, VIN 2GCEC19XX31254424 (the "Chevy") for $10,995.00.    A copy of Certified Car Sale's title to the vehicle is attached hereto and made a part hereof as exhibit C.

d. On or about January 10, 2006, Certified purchased a 2005 Kia Rio, VIN KNADC125 756357152 (the " 2005 Kia Rio") for $9,065.00.    A copy of Certified Car Sale's title to the vehicle is attached hereto and made a part hereof as exhibit D.

8.    On or about March 1, 2006, Certified terminated its agreement with Pugi Kia and sought payment from Pugi Kia for the vehicles that Certified had purchased and which were on consignment or the return of those vehicles. At some point, Certified determined that three of the four vehicles purchased had been sold by Pugi Kia but no

3

money had been paid to Certified in violation of their agreement. Certified still retained the original titles to all of the vehicles even though three of them had been sold by Pugi Kia.

9.     On or about May 4, 2006 Certified took possession of the 2005 Kia Rio and placed it for sale at the Greater Chicago Auto Auction in Cook County, Illinois (the "Auto Auction".)

10.     Immediately after Certified took possession of the 2005 Kia Rio, Pugi Kia falsely reported the 2005 Kia Rio stolen. In response to Pugi Kia's false report Creedon went to the Auto Auction to investigate the matter even though it was outside of his jurisdiction.

11.     Creedon met with representatives of Certified at the Auto Auction. Those representatives advised Creedon that it was the rightful owner of the 2005 Kia Rio and that Certified held the title to that vehicle and three others that had been sold by Pugi Kia. Creedon then wrongfully took possession of the 2005 Kia Rio. He then directed Kramer to meet with Stelter and wrongfully and without any authority delivered the 2005 Kia Rio to Pugi Kia.

12.     David Kramer, the managing member of Certified, ("Kramer") then met with Deputy Stelter in DuPage County and explained to Deputy Stelter that Certified was the titleholder of the 2005 Kia Rio and the other three (3) subject vehicles. Kramer told Deputy Stelter that Certified had demanded the return of the vehicles or the value of the vehicles. During their conversation, Stelter asked to see the original titles to each of the subject vehicles and Kramer tendered all four (4) titles to Stelter (the "Titles"). Thereafter, Stelter, individually and as a Deputy Sheriff of DuPage County, Illinois told

Kramer he needed to make copies of the titles for use in his investigation and stepped away. Upon his return, Stelter told Kramer that he would be retaining the original titles to all four of the subject vehicles throughout the duration of his investigation, despite Kramer's demand that he return them.

13.    Thereafter, between May 5, 2006 and May 8, 2006, Kramer left various messages with Stelter demanding the return of all four (4) original titles.

14.    Between May 5, 2006 and May 8, 2006, Stelter met with Pugi Kia employees to discuss the titles to the four vehicles mentioned above. During that meeting, Stelter wrongfully should be delivered the titles to the four vehicles owned by Certified to Pugi Kia, notwithstanding the ownership of Certified.

15.    On or about May 8, 2006, Stelter left Kramer a message saying that Kramer "was not getting the titles back" and that he "gave them to Pugi Kia because they deserved them more."

16    Neither Creedon nor Stelter had an arrest warrant, search warrant or any lawful authority whatsoever to seize the titles. In addition, neither Creedon nor Stelter had any lawful authority whatsoever to seize the Titles or the 2005 Kia Rio from Certified's possession, to turn them over to Pugi Kia or to refuse to return them to Certified.

17.    Plaintiff claims damages for injuries set forth above under 42 U.S.C. Sec. 1983 against Defendants Stelter and Creedon for violations of Plaintiffs' Constitutional Rights under the Fourth, Fifth and Fourteenth amendments to the United States Constitution under color of state law.

18.    The misconduct described above was undertaken with malice, willfulness, and reckless indifference to the rights of others.

19.    As a result of the above-described wrongful infringement of Plaintiff's constitutional rights, Plaintiff has suffered financial damages in the amount of $29,910.00, and additional damages including but not limited to the loss of property and mental stress and anguish.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants Stelter and Creedon, award Plaintiff compensatory damages, punitive damages, attorneys' fees and any other relief this Court deems just and appropriate under the circumstances.

Dated: March 2, 2007                    Respectfully Submitted,
                                        CERTIFIED CAR SALES, LLC


                                        By: /s/ P. Michael Loftus
                                            One of Its Attorneys

Sally H. Saltzberg
P. Michael Loftus
LOFTUS & SALTZBERG, P.C.
53 West Jackson Blvd., Suite 1515
Chicago, Illinois 60604
(312) 913-2000

# Exhibit B



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CERTIFIED CAR SALES, LLC,       )
a Missouri Limited Liability    )
Company,                        )
                                )   No. 06 C 6192
          Plaintiff,            )
                                )   Magistrate Judge
      v.                        )   Arlander Keys
                                )
SHERIFF'S DEPUTY STEVEN STETLER,)
individually and as a Deputy of )
the DuPage County Sheriff's Office,)
and JOHN P. CREEDON, individually )
and as Director of the Tri-County )
Auto Theft Unit,                )
                                )
          Defendants.           )

**MEMORANDUM OPINION AND ORDER**

Certified Car Sales, a company owned and operated by David
Kramer, agreed to buy used cars and place them on consignment
with Pugi Kia, a dealership, for resale.  Pugi agreed to market
and sell each car, and to pay Certified the sales price, less a
commission.  The relationship was short-lived; Certified
terminated its relationship with Pugi less than 4 months later
and learned that Pugi had sold three of four cars Certified had
delivered within the contract period, yet had not paid a dime to
Certified.  According to the allegations in the complaint,
Certified "took possession" of the fourth car, a 2005 Kia Rio,
from Pugi, and brought it to the Greater Chicago Auto Auction to
sell it.  Certified retained the titles on all four of the

vehicles it had placed with Pugi under the contract, including
the three that Pugi had already sold.

Pugi reported (falsely, allegedly) the 2005 Rio stolen, and
John Creedon, then director of the Tri-County Auto Theft Unit,
was dispatched to the Auto Auction to investigate.  After meeting
with Certified's Kramer, who told him that the Rio belonged to
Certified, Director Creedon took the Rio and delivered it to
Pugi; he also directed Mr. Kramer to meet with Steven Stetler, a
Deputy DuPage County Sheriff.  Mr. Kramer did so, and told Deputy
Stetler that Certified held title to the Rio, as well as the
other three cars Pugi had sold on Certified's behalf.  Mr. Kramer
showed Deputy Stetler the original titles to all four cars;
Deputy Stetler took them, made copies and gave the copies back to
Mr. Kramer, keeping the originals.  He later gave the original
title documents to Pugi and advised Mr. Kramer that Certified
would not be getting the original titles back.

Certified sued Director Creedon and Deputy Stetler, alleging
that the above-described conduct violates several of Certified's
constitutional rights.[1]  The parties consented to proceed before
a United States magistrate judge, and the case was reassigned to
this Court on April 19, 2007.  The case is now before the Court

---

[1]In its original complaint, Certified also sued Pugi Kia and
John Zaruba, the Sheriff of DuPage County, as well as three other
defendants; they have all been dismissed, leaving Creedon and
Stetler as the only defendants named in the amended complaint
presently before the Court.

2

on motions to dismiss filed by defendants Stetler and Creedon

under Federal Rule of Civil Procedure 12(b)(6).

Defendant Stetler argues that the complaint against him

should be dismissed because Certified has pled facts in its

amended complaint that undermine Certified's allegation that

Deputy Stetler took the actions he took with malice, willfulness

and reckless indifference to the rights of others; on the

contrary, Deputy Stetler argues, the facts, as alleged, show that

Deputy Stetler requested the titles and that Mr. Kramer

voluntarily surrendered the titles to him.  Defendant Creedon

argues that the complaint against him should be dismissed because

the facts, as pled, show that he had probable cause to act.

A motion to dismiss under Rule 12(b)(6) "challenges the

sufficiency of the complaint, and dismissal of an action under

this rule is warranted only if 'no relief could be granted under

any set of facts that could be proved consistent with the

allegations.'" *Christensen v. County of Boone, Illinois*, 483 F.3d

454, 458 (7th Cir. 2007)(quoting *DeWalt v. Carter*, 224 F.3d 607,

612 (7th Cir. 2000)).  In ruling on a motion to dismiss, the

Court construes the complaint's allegations in the light most

favorable to the plaintiff, and all well-pleaded facts and

allegations in the plaintiff's complaint must be taken as true.

*Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461

(7th Cir. 1993).  To withstand a motion to dismiss for failure to

3

state a claim, the complaint need only "'outline or adumbrate a violation of the statute or constitutional provision upon which the plaintiff relies and connect the violation to the named defendants.'" *Christensen*, 483 F.3d at 459 (quoting *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992)).

To state a claim under 42 U.S.C. §1983, the plaintiff must allege that a government official, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. *Christenson*, 483 F.3d at 459 (citing *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). In its amended complaint, Certified alleges that "[n]either Creedon nor Stetler had an arrest warrant, search warrant or any lawful authority whatsoever to seize the Titles or the 2005 Kia Rio from Certified's possession, to turn them over to Pugi Kia or to refuse to return them to Certified." Amended Complaint, ¶16. Certified alleges that, by acting as described above, and without any legal authority, defendants Creedon and Stetler violated Certified's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. *Id.*, ¶17. Certified further alleges that defendants Creedon and Stetler did what they did "with malice, willfulness, and reckless indifference to the rights of others," causing Certified to suffer financial damage in an amount equal to the value of the

4

four cars, plus "additional damages including but not limited to
the loss of property and mental stress and anguish." *Id.*, ¶¶18-
19.

The Fourth Amendment protects '[t]he right of the people to
be secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures." The amendment does not
prohibit all seizures, only those that are unreasonable. Here,
Certified alleges different conduct by each defendant; it alleges
that Director Creedon seized the Kia Rio in violation of its
Fourth Amendment rights and that Deputy Stetler seized the title
documents in violation of its Fourth Amendment rights.

Turning first to the allegations relating to the 2005 Kia
Rio, Director Creedon physically took this vehicle away from Mr.
Kramer; to be sure, this would amount to a "seizure" within the
meaning of the Fourth Amendment. *See, e.g., Soldal v. Cook
County, Illinois,* 506 U.S. 56, 61 (1992)(a "seizure" of property
occurs when "there is some meaningful interference with an
individual's possessory interests in that property.")(citing
*United States v. Jacobsen,* 466 U.S. 109, 113 (1984)). But the
Fourth Amendment does not protect against all seizures, only
those that are "unreasonable." Thus, the real question is
whether the allegations in the amended complaint can fairly be
read to sustain a claim that the seizure was unreasonable.

Certified's allegations appear to challenge as

5

unconstitutional not only the initial seizure of the Kia Rio, but
also the continued seizure of the Rio in light of the title
documents that Mr. Kramer displayed, and also the turn over of
the Rio to Pugi.  Taking them one at a time, the Court finds as a
matter of law that Director Creedon had probable cause to seize
the Kia Rio initially; Pugi's stolen car report would have
provided that.  *See Pasiewicz v. Lake County Forest Preserve
District*, 270 F.3d 520, 524 (7th Cir. 2001)(information obtained
by a police officer that establishes the elements of a crime is
generally, absent information that the person providing the
information is not credible, sufficient to provide probable
cause).  *See also Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246
(7th Cir. 1994)("When the question of probable cause arises in a
damages suit its resolution typically falls within the province
of the jury, though a conclusion that probable cause existed as a
matter of law is appropriate when there is no room for a
difference of opinion concerning the facts or the reasonable
inferences to be drawn from them.")(citing *Maxwell v. City of
Indianapolis,* 998 F.2d 431, 434 (7th Cir. 1993); *Gerald M. v.
Conneely,* 858 F.2d 378, 384-385 (7th Cir. 1988); *Gramenos v.
Jewel Companies, Inc.,* 797 F.2d 432, 438 (7th Cir. 1986)).
And, if Director Creedon had probable cause to seize the Rio,
Certified's §1983 claim necessarily fails.  *See Reynolds v.
Jamison*, 488 F.3d 756, 765 (7th Cir. 2007).

6

Certified argues that the fact that Mr. Kramer advised
Director Creedon that Certified, not Pugi, was the true owner of
the Rio changes things. But it doesn't. That Mr. Kramer, on
behalf of Certified, disputed the stolen car report is immaterial
to the question of probable cause. *See Askew v. City of Chicago*,
440 F.3d 894, 895 (7th Cir. 2006)(it does not matter that accused
denies allegations giving rise to probable cause; police need not
conduct an investigation but may arrest and let prosecutors and
courts determine who is telling the truth)(citing *Gramenos v.
Jewel Companies, Inc.*, 797 F.2d 432 (7th Cir. 1986); *Wilson v.
McRae's, Inc.*, 413 F.3d 692 (7th Cir. 2005); *Dreibel v.
Milwaukee*, 298 F.3d 622, 643-44 (7th Cir. 2002); *Pasiewicz*, 270
F.3d at 524). Of course, this principle has exceptions, but the
facts alleged do not suggest that one applies; they do not, for
example, provide any basis to suggest that the defendants knew or
should have known that the report was false, or that they knew or
should have known that Pugi somehow harbored a grudge against Mr.
Kramer and Certified.

Moreover, the Seventh Circuit has rejected the idea that a
state actor's refusal to return once lawfully obtained property
can amount to an unreasonable seizure (i.e, that the refusal can
transform the seizure from reasonable to unreasonable). *See Lee
v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003) ("*Soldal*'s
'meaningful interference with a possessory interest' definition

7

is limited to an individual's interest in retaining his
property"; "once an individual has been meaningfully
dispossessed, the seizure of property is complete, and once
justified by probable cause, that seizure is reasonable.").
Thus, the fact that Director Creedon failed to return the Rio -
in fact, turned it over to Pugi - does not give rise to a
constitutional violation.   In fact, given the police report, the
defendants were under no obligation to investigate Mr. Kramer's
claim that Certified, not Pugi, was lawfully entitled to
possession of the Rio.   See Reynolds, 488 F.3d at 766; Pasiewicz,
270 F.3d at 524.

In response to Director Creedon's motion to dismiss,
Certified admits that the mere seizure of the Kia Rio would
"probably not" have resulted in a lawsuit; it argues, however,
that, because Director Creedon turned the car over to Pugi, a
reasonable jury could find that he lacked probable cause.   See
Plaintiff's Response to Defendant John Creedon's Motion to
Dismiss, p. 6.   But Lee says otherwise; as does Pasiewicz.   Once
Certified concedes that Director Creedon had probable cause to
seize the Rio, its Fourth Amendment claim falls away.

Turning to the title documents, a reasonable trier of fact
would similarly be unable to conclude that Deputy Stetler's
conduct amounts to a constitutional violation.   Initially, the
only possessory interest the "seizure" of the title documents

8

interfered with is the possessory interest in those pieces of
paper; nothing the defendants are alleged to have done interfered
with Certified's possessory rights in the three vehicles covered
by the titles (the same is not true of the Kia Rio, but the Court
has already addressed that seizure).  More importantly,  the
allegations establish that the papers were not "seized"; rather,
as the allegations make clear, Mr. Kramer offered the documents
and willingly handed them over when asked.  Thus, to the extent
these papers can be said to have been "seized," they were seized
with consent, and there can be no Fourth Amendment violation and
no §1983 claim.  *See, e.g., Schneckloth v. Bustamonte*, 412 U.S.
218, 219 (1973).  That Mr. Kramer may later have tried to revoke
his consent and get the papers back does not change that result.
*See Lee*, 330 F.3d at 456.

The Court similarly finds that the allegations of the
amended complaint fail to state a claim for violation of the
Fifth Amendment.  Even if the Court were to find that the conduct
alleged in the amended complaint amounted to a "taking" within
the context of the Fifth Amendment, Certified's complaint does
not allege – and the Court therefore has no basis to find – that
Certified has been denied just compensation for any such taking.
Accordingly, any Fifth Amendment claim must be dismissed as
premature.  *See, e.g., Peters v. Village of Clifton*, No. 06-3735,
– F.3d –, 2007 WL 2377385, at *2 & n.4 (7th Cir. Aug. 22,

9

2007)(no constitutional violation occurs until the property
owner's claim for just compensation has been denied)(citing
*Williamson County Reg. Planning Comm'n v. Hamilton Bank of
Johnson County*, 473 U.S. 172, 194-195 (1985)). Indeed, Certified
concedes as much and has agreed to dismiss the Fifth Amendment
claim. *See* Plaintiff's Response to Defendant John Creedon's
Motion to Dismiss, p. 14 n.4.

Although Certified has made no similar concessions
concerning any attempt to state a claim under the Fourteenth
Amendment or to state a claim against the defendants in their
official capacities, neither claim can be sustained based upon
the facts alleged in the amended complaint. *See Hanno v.
Sheahan*, No. 01 C 4677, 2004 WL 2967442, at *10 (N.D. Ill. Nov.
29, 2004)(citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))(no
Fourteenth Amendment due process claim if a meaningful
postdeprivation remedy for the loss is available); *Porco v.
Trustees of Indiana University*, 453 F.3d 390, 394-95 (7th Cir.
2006)(Eleventh Amendment bars damages claims against state actors
in their official capacities)(citing *See, e.g., Edelman v.
Jordan,* 415 U.S. 651, 663 (1974); *Lapides v. Bd. of Regents,* 535
U.S. 613, 617 (2002); *Doe v. Heck,* 327 F.3d 492, 508 n. 13 (7th
Cir. 2003)).

## Conclusion

As more fully explained above, the Court finds that no reasonable trier of fact could conclude that the defendants violated Certified's constitutional rights.  Accordingly, the Court grants the motions to dismiss filed by defendants Steven Stetler [#30] and John P. Creedon [#42].

Dated: September 14, 2007

ENTER:

_Arlander Keys_

ARLANDER KEYS
United States Magistrate Judge

11

# Exhibit C

Westlaw.

Not Reported in F.Supp.2d                                                           Page 1
Not Reported in F.Supp.2d, 1999 WL 162793 (N.D.Ill.)

**H**

Janusz v. Fasco Industries, Inc.
N.D.Ill.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Frank JANUSZ, Plaintiff,
v.
FASCO INDUSTRIES, INC., BTR, Inc., H.S. In-
vestments, Inc. and Robert T. Coyle, Defendants.
**No. 97 C 7976.**

March 12, 1999.

MEMORANDUM OPINION AND ORDER

COAR, District J.
*1 Before this court are three motions in plaintiff
Frank Janusz's ("plaintiff" or "Janusz") two-count
case of retaliatory discharge and tortious interfer-
ence in an employment contract. First is plaintiff's
motion to reconsider this court's grant of summary
judgment in favor of Fasco Industries, Inc.
("defendant" or "Fasco") on the Count I claim of
retaliatory discharge. The second and third motions
are defendants BTR, Inc. ("defendant" or "BTR")
and Robert Coyle's ("defendant" or "Coyle") mo-
tion to dismiss and motion for summary judgment
on plaintiff's Amended Count II claim of tortious
interference in an employment contract. For the fol-
lowing reasons, plaintiff's motion to reconsider is
DENIED, defendants' motion to dismiss is
DENIED, and defendants' motion for summary
judgment is GRANTED.

Statement of Facts

This case surrounds the October, 1992 termination
of the plaintiff, Frank Janusz, from his position as
Tax Manager for Fasco, a subsidiary of BTR
plc.FN1 As a result of this termination, on Septem-
ber 24, 1994 Janusz filed a complaint *Janusz v.
Fasco Industries, Inc.*, No. 94 C 5962, in the United

States District Court for the Northern District of
Illinois, Eastern Division, alleging that Fasco viol-
ated 29 U.S.C. Sec. 1132 and 28 U.S.C. Sec. 133
("ERISA") by wrongly withholding his severance
benefits ("*Janusz I* "). (Dft.'s 12(M) Stmt. ¶ 11;
Group Ex. 2). On February 16, 1995, the court
entered an order that stated:

> FN1. BTR plc is the parent corporation of
> H.S. Investments, Inc. ("HSII"), which is
> the direct parent corporation of Fasco.
> BTR Dunlop, Inc. is the sister corporation
> of HSII and the direct parent corporation
> of BTR, Inc. BTR, Inc. provides a variety
> of services to HSII, BTR Dunlop, Inc., and
> their direct and indirect subsidiaries, in-
> cluding tax management. (Dft's 12(M)
> Stmt. ¶ 9).

Pursuant to agreement of parties, this action is dis-
missed with prejudice with leave to reinstate by or
on 3/14/95. Each party to bear its own costs and
fees. All pending motions are now moot. Any fu-
ture status date is stricken. Terminating case.
On April 21, 1195, the case was closed, for no mo-
tion to reinstate was filed.

The plaintiff then filed another complaint with the
Circuit Court of Cook County, which was removed
to this court ("*Janusz II*"). This complaint consisted
of two counts: the first count alleged retaliatory dis-
charge against Fasco, BTR, and HSII; the second
count alleged tortious interference with an employ-
ment contract against Janusz's supervisor, Robert
Coyle, BTR's Vice President of Taxation. (Pl's Ori-
ginal Complaint ¶¶ 26, 27, 28; 23, 24, 25
(misnumbered)). The defendants filed for dismissal
and summary judgment on these claims. On April
24, 1998, this court granted summary judgment on
Count I for Fasco, BTR, and HSII, finding that
BTR and HSII were not employers of Janusz, and
that the doctrine of res judicata barred Janusz's
claim against Fasco.FN2 (Opinion and Order, pp.
7-9). However, Coyle's motion to dismiss on Count

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 162793 (N.D.Ill.)

II was denied, because it could be reasonably inferred from Janusz's complaint that Coyle acted to further his personal goals or against the best interests of the corporation. (Opinion and Order, p. 5).

> FN2. This court found that the central factual issue in *Janusz I* and Count I against Fasco were the same: "Both cases concerned whether or not Janusz was fired in retaliation for questioning accounting procedures and tax returns."(Opinion and Order, p. 9).

As a result of these rulings, Janusz amended Count II of his complaint to allege that BTR as well as Coyle of tortiously interfering with his employment contract. In the complaint, Janusz alleges that Coyle was acting within his authority as BTR's Vice President of Taxation when Coyle and BTR caused Janusz to be terminated. (Amended Complaint ¶ 29). Janusz also alleges that Coyle and BTR's actions were "a willful, wanton and malicious"violation of the public policy of Illinois and interference with plaintiff's employment contract. (Amended Complaint ¶ 30).

**\*2** This brings us to the present set of motions before the court. Janusz has filed a motion for reconsideration of this court's grant of summary judgment for Fasco on Count I.[FN3] Janusz argues that this court misapprehended the claim brought in *Janusz I*. (Pl's Motion to Reconsider Memo, p. 1). The defendants Coyle and BTR filed a motion to dismiss and a motion for summary judgment on Count II of the plaintiff's amended complaint. The defendants argue that Count II should be dismissed because Coyle and BTR benefit from a qualified privilege to act on behalf of the corporation to the detriment of third party contracts unless the action was "totally unrelated" to the corporation's interest. (Dft's Motion to Dismiss Memo, p. 1). In their motion for summary judgment, the defendants argue that Janusz's claim is barred by res judicata. (Dft's Motion for Summary Judgment Memo, p. 3). The court addresses each of these motions in turn.

> FN3. Janusz does not ask the court to reconsider its decision to grant summary judgment to BTR and HSII on Count I.

Analysis

I. Motion for Reconsideration

A. Standard

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence."*Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656, 665-66 (N.D.Ill.1982), *aff'd*736 F.2d 388 (7th Cir.1988). A court should entertain a motion of reconsideration under very limited circumstances:

where 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise that the motion to reconsider should be equally rare.'

*Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983)). Therefore, a motion for reconsideration may not be used "as a vehicle to introduce new evidence that could have been adduced during the pendency of the summary judgment motion" or "as the occasion to tender new legal theories for the first time."*Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir.1987) (quoting *Keene,* 561 F.Supp. at 665-66;*Publishers Resource, Inc. v. Walker-Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir.1985).

B. Discussion

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 162793 (N.D.Ill.)

The plaintiff argues that the retaliatory discharge claim in the present case (Count I) is separate and distinct from the ERISA claim in *Janusz I.* (Pl's Motion for Reconsideration Memo, p. 5). To support this argument, the plaintiff refers to *Herrmann v. Cencom Cable Associates, Inc.,* 999 F.2d 223 (7th Cir.1993).[FN4] In *Herrmann,* the Seventh Circuit ruled that the plaintiff's unsuccessful suit under ERISA does not bar the plaintiff's subsequent Title VII suit, even though the cases arose from the same discharge. Instead, the court found the claims were not based on the same factual allegations, for the ERISA suit addressed the employer's behavior after the dismissal and the Title VII suit addressed the employer's behavior before the dismissal. *Herrmann,* 999 F.2d at 226-7. Janusz argues the same is true here: his ERISA claim was based on Fasco's behavior after the termination, and the retaliatory discharge claim is based on Fasco's behavior before the termination. (Pl's Motion for Reconsideration Memo, pp. 6-7).

> FN4. The plaintiff also refers to *Perkins v. Board of Trustees of the University of Illinois,* 116 F.3d 235 (7th Cir.1997), which upholds *Herrmann.*However, *Perkins* addresses the effect of two separate events on a res judicata argument, while in the present case there is only one event-the termination of the plaintiff.

**\*3** Janusz misunderstood the reasoning of *Herrmann.*The Seventh Circuit in *Herrmann* presents the standard for when two claims are treated as one for purposes of res judicata: "if they are based on the same, or nearly the same, factual allegations."*Herrmann,* 999 F.2d at 226 (citations omitted). The court then gives several examples of what it means by this standard in employment cases and follows up with the reasoning, "... it is enough that the question *why she was fired* would as a practical matter be at the center of litigation of both claims," for res judicata to apply. *Id,* at 227 (emphasis added). In the present situation, both the ERISA claim in *Janusz I* and the retaliatory dis-

charge claim here are dependent upon the same factual issue-why Janusz was terminated. As this court reasoned in its previous opinion, both claims concern the same operative facts and factual allegations. Therefore, res judicata bars Count I of plaintiff's complaint and the plaintiff's motion to reconsider is denied.

## II. Motion to Dismiss

### A. Standard

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure does not test whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim for which relief may be granted. *Pickerel v. City of Springfield, Ill.,* 45 F.3d 1115 (7th Cir.1995). The court must accept as true all of the plaintiff's well-pleaded factual allegations, as well as all reasonable inferences. *Id.* Thus, the court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."*Bedford v. Sullivan,* 105 F.3d 354, 357 (7th Cir.1997) (quoting *Hechuan v. King & Spalding,* 467 U.S. 69, 78, 104 S.Ct. 2229, 2232 (1984)). Any ambiguities are construed in favor of the plaintiff. *Curtis v. Bembenek,* 48 F.3d 281, 283 (7th Cir.1995). However, the court need "not strain to find inferences favorable to the plaintiffs which are not apparent on the face of the complaint."*Coates v. Illinois State Bd. of Ed.,* 559 F.2d 445, 447 (7th Cir.1977).

### B. Discussion

Defendants Coyle and BTR argue that plaintiff's amended Count II of complaint should be dismissed because both BTR and Coyle, as a corporation and one of its officers, benefit from a qualified privilege to interfere with contracts when exercising their business judgment and discretion on behalf of the corporation. (Dft's Motion to Dismiss Memo, p. 4, citing *Swager v. Courie,* 77 Ill.2d 173, 185 (1979)).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 162793 (N.D.Ill.)

Since the plaintiff alleged in his complaint that Coyle was acting within the scope of his authority as BTR's Vice President of Taxation, then the plaintiff cannot overcome this privilege. (Dft's Motion to Dismiss Memo, p. 6).

Under Illinois law, to establish a claim of tortious interference with a contractual relationship, a plaintiff must show: 1) the existence of a valid and enforceable contract between the plaintiff and another party; 2) that the defendant was aware of the contractual relationship; 3) an intentional and unjustified inducement of a breach of the contract by the defendant; 4) the subsequent breach of the contract by the other party caused by the defendant's inducement; and 5) damages. *Williams v. Shell Oil Co.,* 18 F.3d 396, 402 (7th Cir.1994) (citations omitted). Illinois courts have recognized a privilege in intentional interference with contract cases when the defendant acts to protect an interest "which the law deems to be of equal or greater value than the plaintiff's contractual rights."*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,* 131 Ill.2d 145, 157 (1989). To overcome this privilege, the plaintiff "must set forth factual allegations from which it can be reasonably inferred that the defendant's conduct was unjustified."*Id.,* at 158.

*4 In the present case, the plaintiff did allege that Coyle was acting within the scope of his authority as BTR's Vice President of Taxation when he filed the tax returns in question and when he terminated the plaintiff. (Pl's Amended Complaint, ¶ 29). However, the qualified privilege that defendants assert "does not apply where officers act solely for their own gain or solely for the purpose of harming the plaintiff since such conduct is not taken to further the corporation's interest."*Mittleman v. Witous,* 135 Ill.2d 220, 248 (1989). The plaintiff alleged activity by Coyle that is illegal-i.e. the filing of incorrect tax returns-as the underlying reason for plaintiff's termination, as well as allege that Coyle and BTR's actions were "a willful, wanton and malicious violation of the public policy of the State of Illinois and a willful, wanton and malicious inter-

ference with Plaintiff's employment contract."(Pl's Amended Complaint, ¶ 30). These allegations are enough to overcome the privilege on a motion to dismiss. *Roy v. Austin Co.,* 1996 WL 599435, *11 (N.D.Ill.1996) (stating that a plaintiff's contention that the defendant's given reason for termination is pretextual is enough to overcome qualified privilege); *HPI,* 131 Ill.2d at 158-9 (stating that a defendant who is protected by a privilege is unjustified in using illegal means). Therefore, the defendants' motion to dismiss is denied.

### III. Motion for Summary Judgment

#### A. Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c); *Cox v. Acme Health Serv., Inc.,* 55 F.3d 1304, 1308 (7th Cir.1995). A genuine issue of material fact exists for trial when, after viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant.*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co,* 47 F.3d 928, 931 (7th Cir.1995). The party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hedberg,* 47 F.3d at 931. If this burden is met by the movant, the non-movant must then set forth specific facts to show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U .S. at 324. In deciding a motion for summary judgment, the court must read the facts in a light most favorable to the non-movant. *Cuddington v. Northern Ind. Public Serv. Co.,* 33 F.3d 813, 815 (7th Cir.1994). However, Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                    Page 5
Not Reported in F.Supp.2d, 1999 WL 162793 (N.D.Ill.)

of an element essential to that party's case, and in which that party will bear the burden of proof at trial ."*Celotex,* 477 U.S. at 322. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion: "there must be evidence on which they jury could reasonably find for the [non-movant]."*Anderson,* 477 U.S. at 250.

B. Discussion

**\*5** The defendants argue that this court should grant summary judgment to BTR and Coyle on plaintiff's amended Count II under the res judicata doctrine. This court ruled previously that plaintiff's claim of retaliatory discharge against Fasco was barred under the doctrine of res judicata. (Opinion and Order, pp. 8-9). The defendants argue that plaintiff's claim against BTR and Coyle should also be barred, since they are privies to Fasco. (Dft's Motion for Summary Judgment Memo, pp. 3-5).

Res judicata prohibits parties from relitigating issues that were actually decided in a prior lawsuit, as well as those issues that could have been raised in a previous suit. *Humphrey v. Tharaldson Enters., Inc.,* 95 F.3d 624, 626 (7th Cir.1996). Three elements must be present for a court to apply res judicata: 1) judgment on the merits in an earlier action, 2) identity of the parties or parties in privity to the two suits, and 3) identity of the cause of action in both suits. *Brzostowski v. Laidlaw Waste Systems, Inc.,* 49 F.3d 337, 338 (7th Cir.195). All three elements are met in this case.

First, there is a judgment in the earlier action. The judgment on the ERISA claim against Fasco (*Janusz I* ) was a final judgment on the merits, for a dismissal with prejudice has the same res judicata effects as a litigation. (Opinion and Order, pp. 8-9, citing *Phillips v. Shannon,* 445 F.2d 460, 462 (7th Cir.1971); *Cartolano v. Tyrrell,* 421 F.Supp. 526, 630 (N.D.Ill.1976)). This court then found that the retaliatory discharge claim against Fasco was barred by res judicata because of the judgment in

*Janusz I.*

Second, the claims are based on the same factual allegations. "A claim has 'identity' with a previous litigated matter if it emerges from the same 'core of operative facts' as the earlier action."*Brzostowski,* 49 F.3d at 338-39. Here, the ERISA claim, the retaliatory discharge claim, and the tortious interference with an employment contract claims all come from the same factual allegations. In fact, the defendants and plaintiff used the same 12(M) and 12(N) statement of facts in the motion for summary judgment on the retaliatory discharge claim and on the tortious interference with an employment contract claim. As this court stated in its previous opinion, the same central factual issue is key to all these claims: why Janusz was terminated from his position. (Opinion and Order, p. 9).

Finally, BTR and Coyle are in privity with Fasco for the purposes of res judicata. The Seventh Circuit has found that for res judicata purposes, a corporation, its officers, directors, and employees, are privies. See *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1235 (7th Cir.1986); *Mandarino v. Pollard,* 718 F.2d 845, 850 (7th Cir.1983); *Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982). The Seventh Circuit has also found that a corporation and its subsidiaries are in privity for res judicata purposes. See *Aetna Casualty and Surety Co. v. Kerr-McGee Chemical Corp.,* 875 F.2d 1252 (7th Cir.1989). Therefore, BTR, as the parent corporation of Fasco, and Coyle, as an officer and employee who was acting within his authority as Vice President, are in privity with Fasco.

**\*6** Since all three elements of the doctrine of res judicata are met, Janusz's claim of tortious interference of an employment contract against BTR and Coyle is barred by res judicata. BTR and Coyle's motion for summary judgment is granted.

Conclusion

For the foregoing reasons, plaintiff Frank Janusz's

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 162793 (N.D.Ill.)

motion to reconsider is DENIED, defendants BTR, Inc. and Robert Coyle's motion to dismiss is DENIED, and defendants' motion for summary judgment is GRANTED. This case is now CLOSED.

N.D.Ill.,1999.
Janusz v. Fasco Industries, Inc.
Not Reported in F.Supp.2d, 1999 WL 162793 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# Exhibit D

Order Form (01/2005)      Case 1:06-cv-06192    Document 69    Filed 09/17/2007    Page 1 of 1

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 6192 | **DATE** | 9/17/07 |
| **CASE TITLE** | Certified Car Sales LLC v. Zaruba et al | | |

**DOCKET ENTRY TEXT**

Motion hearing held on Plaintiff Certified Car Sales LLC 's motion for to file Second Amended Complaint. The motion  is denied for the reasons stated on the record (#63). *AK*

Docketing to mail notices.

| | Courtroom Deputy Initials: | AC |
|---|---|---|

06C6192

# Exhibit E

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS (Chicago)

CERTIFIED CAR SALES, LLC.,  )
a Missouri Limited Liability )
Company,                     )
                             )
          Plaintiff,         )
                             )  Docket No. 06-cv-6192
          v.                 )
                             )
JOHN E. ZARUBA, et al.,      )
                             )  Chicago, Illinois
          Defendants.        )  September 17, 2007


REPORT OF PROCEEDINGS
BEFORE THE
HONORABLE MAGISTRATE JUDGE ARLANDER KEYS

APPEARANCES:

For Plaintiffs:          STEPHEN M. KOMIE
                         KOMIE & ASSOCIATES
                         One North LaSalle Street
                         Suite 4200
                         Chicago, IL  60602


For Defendants:          PAUL BRUCKNER
                         Assistant State's Attorney
                         DuPage County States Attorney's Ofc.
                         503 North County Farm Road
                         Wheaton, IL  60187


PLEASE PROVIDE CORRECT VOICE IDENTIFICATION

Transcribed by:          Riki Schatell
                         6033 North Sheridan Road, 28-K
                         Chicago, Illinois  60660-3046
                         773/728-7281

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

1          THE CLERK:  Certified Car Sales vs. Zaruba, motion to
2   dismiss.

3          THE COURT:  Good morning, counsel.

4          MR. KOMIE:  Good morning, your Honor, I'm Stephen,
5   S-t-e-p-h-e-n, middle M., last name Komie, K-o-m-i-e.  You
6   granted my motion for leave to file my appearance last week.

7          THE COURT:  Okay.

8          MR. KOMIE:  On behalf of the plaintiffs.

9          THE COURT:  All right.

10         MR. BRUCKNER:  Good morning, your Honor, Paul
11  Bruckner, Assistant State's Attorney, on behalf of the DuPage
12  defendants.

13         THE COURT:  Good morning, counsel.

14         MR. KOMIE:  Judge, I was informed by your wonderful
15  minute clerk that you are in the middle of deliberating a
16  motion to dismiss.

17         THE COURT:  Well, maybe then I was but I have already
18  -- This case has been decided.  This case was dismissed on
19  Friday.

20         MR. KOMIE:  Was it?

21         THE COURT:  It was dismissed.  I granted the motion
22  to dismiss.

23         MR. KOMIE:  Were you aware that we filed a motion
24  with additional authority from the Seventh Circuit that had an
25  identical fact pattern?

3

1           THE COURT:  Well, I was -- I know you filed some
2     stuff.  I granted you leave to appear in this case and I
3     assumed at that time that it was for the purpose of appealing
4     to the Seventh Circuit perhaps.
5           MR. KOMIE:  No, Judge.   I can --
6           THE COURT:  But it was not.  I can tell you, Mr.
7     Komie, the problem in this case -- And you have some real
8     problems in this case, and that is that we set some deadlines
9     in this case for dispositive motions back in May.  The deadline
10    was May 29th, I believe.  And everybody met those deadlines
11    with prior counsel.
12          I've been waiting to issue -- I indicated to both
13    parties that I was going to issue my ruling in this case prior
14    to Friday, this past Friday, and at a July 11th status hearing
15    your client was there.  Mr. Kramer, I believe his name was.  Is
16    that his name, Kramer?
17          MR. KOMIE:  You know, I'm sure the Court did all the
18    right things and I'm not here --
19          THE COURT:  Right, I did all the right things.
20          MR. KOMIE:  And I'm not here criticizing the Court in
21    any way.  I'm here making sure the Court is aware that in
22    August the Seventh Circuit decided an identical case where a
23    deputy took away the titles of people at a car operation in
24    Indiana.
25          THE COURT:  Um-hum.

4

```
 1          MR. KOMIE:  And it was almost an identical case so I
 2   wanted to make sure you saw that before you ruled in any manner
 3   on the case so that you were aware --
 4          THE COURT:  Well, I can tell you, I didn't -- I
 5   remember reading that case when it first came down and in the
 6   Zip opinion a couple of months ago, I believe it was, but I
 7   didn't -- I wasn't, you know, you didn't bring it to my
 8   attention until after I had issued the opinion, but it's okay.
 9    I understand that you have a legal position that -- But what
10   you are asking for, though, Mr. Komie, you're asking for leave
11   to amend the complaint to make additional allegations, and
12   that's -- I can't do that.  And obviously I can't do that
13   because this case was fully briefed as of May 29th, I believe.
14    Was it May 29th?
15          I believe was -- Yes, May 29th --
16          MR. KOMIE:  Well, Judge --
17          THE COURT:  -- for reply, and it was briefed on a
18   theory.  Now whether you agreed with that theory that prior
19   counsel proceeded on or you think that you could have raised
20   better arguments than prior counsel did, the case is as it was
21   as of May 29th.  That is, a motion to dismiss was filed by the
22   defendants, a response was made, and a reply was made pursuant
23   to my schedule.
24          I then had a -- Then the prior counsel filed a motion
25   to withdraw, saying that he had irreconcilable differences with
```

5

1   the client and the client appeared for that motion and the

2   client said I want them to withdraw, and told me that he had

3   retained a Michael Rogers as new counsel. So from July 11th

4   to, well, last week, I guess, I never heard anything from Mr.

5   Rogers.

6        But then the day before I was going to issue the

7   opinion, obviously the opinion was ready to go. I just hadn't

8   signed it because I spent a week, an entire week of judicial

9   time drafting that dismissal, considering the motion and the

10  arguments and drafting the opinion. So I learned on the day

11  that I was issuing the opinion that -- actually issuing it --

12  that you then filed a motion to cite additional authority and

13  also to amend the complaint. And you think that you need more

14  discovery and tell me how this doesn't prejudice the defendants

15  here.

16       MR. KOMIE: Well, your Honor, I see that you have

17  excellent recall of the facts of the case. However, we did not

18  file our appearance to be appellate counsel; we filed our

19  appearance to be trial court counsel.

20       THE COURT: Right.

21       MR. KOMIE: Secondly, when we motioned that up, we

22  did not know your Honor's schedule and we motioned it up with

23  the expectation we would have had the privilege of standing in

24  front of you to make the motion till we were called by

25  telephone by your very good clerk to tell us not to come, but

6

1    the expectation was is that when we came before you we would

2    explain the posture of the case from the perspective of the

3    plaintiff.  When --

4              THE COURT:  But you knew that I was going to rule

5    prior to the 14th.

6              MR. KOMIE:  No, we didn't have a schedule for your

7    ruling.  Your minute orders don't --

8              THE COURT:  You didn't read the minute order?

9              MR. KOMIE:  No, the dockets don't tell us the date

10   you were intending to rule.

11             THE COURT:  No, it said the Court would rule on the

12   pending dispositive motion before the next status hearing.

13             MR. KOMIE:  We were under the impression that it was

14   under advisement.  That was the impression the plaintiff had.

15   So anyway, finally --

16             THE COURT:  Okay, I don't take cases on advisement.

17             MR. KOMIE:  Well, but the motion hadn't been

18   decided at the time --

19             THE COURT:  Okay.

20             MR. KOMIE:  -- he came in and retained us.  We then

21   reviewed the case and discovered that the titles had been

22   negotiated and the signatures on the titles forged by parties

23   who may or may not be a part of the case today.

24             We then were in the intention immediately to bring to

25   your attention both the authority of the Seventh Circuit, where

7

1   the Seventh Circuit said the District Court couldn't grant

2   summary judgment where a constable of a town in Indiana had

3   pressured the titles out of the hands of people who had been

4   stopped on the Indiana Toll Road; their cars towed to the tow

5   yard, and the deputy comes over, the constable comes over there

6   and orders them to surrender their titles to the possession of

7   the towing operator who had a lien, under Indiana law, for

8   towing the car.

9          And it's an identical situation in that the plaintiff

10  here is pressured out of his titles in favor of somebody who

11  claims a superior right without going to court and without

12  anybody intervening in a judicial process to obtain a judicial

13  decision as to who is the lawful owner of the cars and who has

14  a right to the title.

15         So we immediately felt, once we learned from your

16  clerk that you intended to rule, because that's all we knew at

17  the time, that you intended to rule in the very near future, we

18  then made the motion for leave to file additional authority

19  because if you're not going to grant us ability to amend the

20  complaint and put everything in front of the Court, then we're

21  in the posture of making sure your Honor is being treated very

22  fairly by each side, and that you have been told what's out

23  there in the way of precedent which may apply to whatever you

24  are considering.

25         Now, you know, both cases are civil rights cases.

8

1  Both cases a person with a badge shows up and takes a title

2  away from a citizen and tells the citizen that the title really

3  belongs to the person who has other claims, without the benefit

4  of a court order or any court process.

5          So with respect to the motion to, you know, grant

6  leave to file additional authority, I can't possibly see why

7  your Honor wouldn't grant that motion in light of the fact it

8  helps you do your job and your function in deciding the case.

9          Secondly is the question of whether or not you're

10  going to let us file an amended complaint.  At the time we

11  filed that motion the docket doesn't reflect the decision on

12  the case, and as of so far, I can't tell there's a decision on

13  the case as of Friday when I closed business on Friday, there

14  was no docketed decision on the motion.

15          THE COURT:  Um-hum.

16          MR. KOMIE:  Now maybe your Honor, you know, has

17  penned the decision and with the, you know, process and

18  machinery of government it doesn't quite make it through the

19  docket by the time I stand before your Honor.  I am, in good

20  faith appearing before you both to let you know about that case

21  and also to tell you that if you haven't decided the case, we

22  would like to file an amended complaint because, quite frankly,

23  you know, once the title is negotiated it's a stolen title.

24  And if it's negotiated that may have a bearing on your

25  resolution of the case for whatever basis.

1      THE COURT:  Um-hum.  There's one issue here that I
2  think that you might be not addressing here, and that is that
3  you know, when a court -- We don't just decide something.  I'm
4  going to pen a decision tomorrow or today to be issued
5  tomorrow.  There's a lot goes into that as you probably know.
6  As you know.
7      MR. KOMIE:  Sure.
8      THE COURT:  I've got to consider the arguments of
9  both sides and do my own research and decide which side is
10  correct on the law here, and so we have, and the Seventh
11  Circuit Court of Appeals, has repeatedly admonished counsel
12  that judges have a right to control their docket, that they
13  have -- If I've got a list of cases that I want to be worked on
14  in order and I told you that I'm going to issue this decision
15  prior to 9-14, everybody should have been aware that I'm not
16  going to wait until 9-13 to do work on this case.  And it's not
17  going to be helpful to judicial economy to not consider, I mean
18  to consider your argument at this late date and I think that
19  the defendants have some rights here.  I haven't heard from you
20  and I'm not going to make your case for you, so go ahead, Mr.
21  Bruckner?
22      MR. BRUCKNER:  No, I have nothing to add, your Honor.
23  I haven't seen the decision yet.
24      THE COURT:  You didn't see it?
25      MR. BRUCKNER:  No, we -- Actually I haven't entered

10

1    my appearance on this case yet.

2         THE CLERK:  It was mailed, Judge, if I can

3    (inaudible) by mail.

4         THE COURT:  Wouldn't it also get to the docket?

5         THE CLERK:  Well, it's probably going to be docketed

6    today.  (Inaudible) get docketed today.

7         MR. KOMIE:  That was the point I was making, Judge,

8    is there's no way we could know in advance before we got

9    here --

10        THE COURT:  Well, I'm not going to chastise you for

11   doing that you did.  You did the best you could.  You know,

12   you're representing a party and that's fine with me, but I just

13   wanted you to know that the decision has issued and including a

14   judgment has issued in this case and it was issued, I believe

15   it was, Friday morning.  It should -- I'm surprised that it

16   hasn't been --

17        THE CLERK:  No, I don't (inaudible) the docket.

18   Imaged first, there's a delay while it gets imaged and placed

19   onto the CMCS system.

20        THE COURT:  Okay.

21        THE CLERK:  And then (inaudible).

22        THE COURT:  So --

23        MR. KOMIE:  I'm not critical of the Court.  All I'm

24   saying --

25        THE COURT:  Right.

1          MR. KOMIE:  -- is that when I went to bed, my law

2  firm went to bed on Friday, we had no idea that you had decided

3  the case and that you know, we were trying to be fair to you by

4  bringing this before you.

5         THE COURT:  But when were you retained in this case,

6  Mr. Komie?

7          MR. KOMIE:  Just recently.

8         THE COURT:  Because he'd indicated back in July that

9  he had a Michael Rogers that he had retained.

10        MR. KOMIE:  Yes, well, I'm not Mike Rogers,

11  (inaudible).

12        THE COURT:  Obviously you're not Michael Rogers.  You

13  were just retained in the last week probably.

14        MR. KOMIE:  Yes.

15        THE COURT:  Okay.

16        MR. KOMIE:  And when -- I think it's largely a

17  situation of financing of a pro se defendant at that point.  I

18  think it was a matter of him getting sufficient funds to come

19  before the Court.

20        THE COURT:  Um-hum.  Well, the case is what it is,

21  and I've -- I'm going to -- Again, I grant -- I always grant --

22  You paid your filing fee, didn't you?

23        MR. KOMIE:  I didn't have to because I'm additional

24  counsel.

25        THE COURT:  No, no, you're substitute counsel.

12

1          MR. KOMIE:   Substitute counsel pays a fee now?

2          THE COURT:   A whole new law firm?

3          MR. KOMIE:   Yeah.   You pay a new fee every time you

4     file an appearance down here now?

5          THE COURT:   Yes.   Well, you might --

6          MR. KOMIE:   I'm so used to criminal, you know, where

7     I --

8          THE COURT:   You might want to check with --

9          THE CLERK:   (Inaudible).

10         THE COURT:   Felicia, Mr. Komie is coming in.   You

11    remember the prior counsel represented the plaintiff in this

12    case and they withdrew.   Does Mr. Komie have to pay a fee?

13         THE LAW CLERK:   For filing an appearance?

14         THE COURT:   Yes.

15         THE LAW CLERK:   Oh, no.

16         THE COURT:   He doesn't.

17         THE LAW CLERK:   Not for filing an appearance, no.

18         MR. KOMIE:   Thank God there's one free service left.

19         THE COURT:   All right.   See, that stuff, I know that

20    that's your, you know, I wasn't sure about that procedural

21    stuff but if she says no --

22         MR. KOMIE:   Great.

23         THE COURT:   It doesn't help me at all.   I didn't want

24    any money.   I just wanted to make sure that procedurally that

25    you had done what you're supposed to do.   So your appearance, I

13

1   granted that.  And -- But as I always do.  I don't want a pro

2   se plaintiff out there when I can have someone who has

3   indicated they want to represent him.  So your appearance is

4   granted.  And in fact, you were served with a copy of the

5   opinion.

6          THE CLERK:  Okay.  I know.

7          THE COURT:  She did.

8          THE CLERK:  And I have extras here.

9          MR. KOMIE:  So we're being served in open court.

10         THE COURT:  Well, it --

11         THE CLERK:  Extra copies.

12         THE COURT:  Extra copies.  We'll give you extra ones.

13         So we'll see how that plays out.  I mean you

14  certainly can file an appeal on that if you like, Mr. Komie,

15  and cite the case that you cited to me and saying that --

16         MR. KOMIE:  Well, I'm not so much enjoying the idea

17  of going elsewhere as I might very well come back before your

18  Honor and --

19         THE COURT:  Right.

20         MR. KOMIE:  -- ask you to reconsider based on that

21  case, you know?  I may say, you know, give the guy a fair shot

22  at it, you know?

23         THE COURT:  Well, we'll see.

24         MR. KOMIE:  You know?

25         THE COURT:  All right.  So your motion to appear

14

```
1   obviously is granted already, and the other motions I'm
2   denying.
3            MR. KOMIE:  They're moot, I guess, for the moment.
4            THE COURT:  They're moot.
5            MR. KOMIE:  Yes.
6            THE COURT:  Denied as moot because case has been
7   dismissed.
8            MR. KOMIE:  Right.
9            THE COURT:  All right.
10           MR. KOMIE:  Well, thank you, Judge.
11           THE COURT:  You're welcome.
12           MR. KOMIE:  It's a pleasure to meet you.
13           THE COURT:  Nice meeting you, sir.
14                       (Hearing adjourned.)
```

I, RIKI SCHATELL, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Riki Schatell

June 29, 2008
Date

# Exhibit F

Westlaw.

Not Reported in F.Supp.                                                                Page 1
Not Reported in F.Supp., 1995 WL 642808 (N.D.Ill.)

C

Green v. D'Anna
N.D.Ill.,1995.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Theodore GREEN, Plaintiff,
v.
Thomas D'ANNA, Defendant.
**No. 95 C 2830.**

Oct. 27, 1995.

*OPINION AND ORDER*

NORGLE, District Judge:
**\*1** Before the court is the motion to dismiss of Defendant Thomas D'Anna. For the reasons that follow, the motion is granted.

On a motion to dismiss, the court accepts all well-pleaded factual allegations as true, as well as all reasonable inferences drawn from those allegations. *Stephenson v. Stone,* 21 F.3d 159, 161 (7th Cir. 1994). However, the court is not obligated to accept legal conclusions either alleged or inferred from pleaded facts. *Chawla v. Klapper,* 743 F. Supp. 1284, 1285 (N.D. Ill. 1990). The absence of facts to support a claim renders the allegations mere legal conclusions, subject to dismissal. *Rodgers v. Lincoln Towing Serv., Inc.,* 771 F.2d 194, 198 (7th Cir. 1985). Accordingly, a plaintiff will not avoid dismissal if the complaint merely recites bare legal conclusions. *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 654 (7th Cir. 1984).

The complaint alleges that on July 1, 1994, Defendant D'Anna, a Sauk Village police officer, stopped Plaintiff as he drove his truck on Interstate 394. Plaintiff showed Defendant a bill of lading. Defendant issued a traffic citation. Plaintiff protested the merits of the citation, and Defendant arrested him for disorderly conduct and impounded his truck.

Count I complains that Defendant falsely arrested Plaintiff, thereby violating 42 U.S.C. § 1983. Count II, mislabelled as a count for malicious prosecution, avers that within the impounded truck was a briefcase containing $400, and that the money was not returned.

To state a viable claim under § 1983, a plaintiff must allege he was deprived his constitutional rights, and the deprivation was visited upon him by a one acting under color of state law. *Wright v. Associated Ins. Cos. Inc.,* 29 F.3d 1244, 1249 (7th Cir. 1994). Here there is no question that Defendant was acting under color of state law and that false arrest, if properly pleaded, would be a constitutional deprivation. The issue is whether Plaintiff sufficiently pleaded false arrest.

As the court declared in its order of May 16, 1995, to sustain a § 1983 claim of false arrest, it is a necessary prerequisite that there be a lack of probable cause. *Jones By Jones v. Webb,* 45 F.3d 178, 181 (7th Cir. 1995); *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir. 1989) ("[T]he existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution."); *Jones v. Village of Villa Park,* 815 F. Supp. 249, 253 (N.D. Ill. 1993). Even malicious motives will not support a claim of false arrest if probable cause exits. *Fernandez v. Perez,* 937 F.2d 368, 371 (7th Cir. 1991). An officer has probable cause to arrest where the totality of the circumstances would warrant a prudent officer in believing that the suspect had committed an offense. *Edwards v. Cabrera,* 58 F.3d 290, 292, 293 (7th Cir. 1995).

Regarding the disorderly conduct arrest specifically, probable cause depends not on the views of an omniscient observer, but on the facts as they would have appeared to a reasonable person in the position of the arresting officer-- seeing what he saw, hearing what he heard. *Richardson v. Bonds,* 860 F.2d 1427, 1431 (7th Cir. 1988). This formulation

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1995 WL 642808 (N.D.Ill.)

of the standard is an objective one. *Scott v. United States,* 436 U.S. 128, 128 (1978). Probable cause, objectively conceived, signifies not that this particular officer believed that the person he arrested had committed a crime but that a reasonable officer would have believed the person had committed a crime. *United States v. Anton,* 633 F.2d 1252, 1254 (7th Cir. 1980). If so, the arrest is lawful even if the belief was mistaken. *Hunter v. Bryant,* 112 S. Ct. 534, 536 (1991).

**\*2** Plaintiff's complaint states that Defendant initiated the traffic stop and arrested him "without probable cause." Plaintiff basically asserts he should not have been stopped by the traffic officer. The complaint does not mention how the stop occurred, for what the citation was issued, or whether Plaintiff was found guilty of the alleged violation. The complaint only states that it should not have occurred. Plaintiff admits that he was driving a truck and that he was stopped by a police officer for a traffic stop. Plaintiff does not dispute that a police officer has the right to issue traffic tickets, but he argues they were issued without probable cause.

However, all an officer need do is comply with *Terry v. Ohio,* 392 U.S. 1 (1968) when stopping a vehicle. Furthermore, the existence of probable cause is a legal conclusion, *Beck v. Ohio,* 85 S. Ct. 223, 228 (1964); thus, Plaintiff's bald allegation that the arrest was made without probable cause is not enough to support his § 1983 claim. Without more, the complaint fails to plead an absence of probable cause.

Under the doctrine of qualified immunity, public officials performing discretionary functions are protected against suits from damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Doe v. Bobbitt,* 881 F.2d 510, 511 (7th Cir. 1989) (citing *Hallow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Furthermore, "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing

violates that right."*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *see Azeez v. Fairman,* 795 F.2d 1296, 1201 (7th Cir. 1986).

To determine whether the law was clearly established at the time of the alleged violation, we ask "whether the law was clear in relation to the specific facts confronting the public official when he or she acted."*Green v. Carlson,* 826 F.2d 647, 649 (7th Cir. 1987)*accord Powers v. Lightner,* 820 F.2d 818, 821 (7th Cir. 1987)*cert. denied,*484 U.S. 1078, S. Ct. 1057, 98 L.Ed.2d 1019 (1988). The test is also an objective one, requiring that the "plaintiff ... demonstrate that a reasonable official, confronted with the specific facts at issue and the law in effect at the time, would have known that his conduct violated the plaintiff's constitutional rights."*Schertz v. Waupaca County,* 875 F.2d at 583. Although its application is rarely as simple as its articulation, "[t]he test for immunity is whether the law is clear in relation to the specific facts confronting the public official when he acted."*Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.) (en banc) *cert. denied,*488 U.S. 968 (1988).

Plaintiff admits protesting the issuance of the traffic tickets. *See Berkemer v. McCarty,* 468 U.S. 420 (1994); *United States v. Robinson,* 414 U.S. 218 (1973); *Gustafson v. Florida,* 414 U.S. 260 (1973); *Colorado v. Bannister,* 449 U.S. 1 (1980). Ironically, Plaintiff's admission actually lends to the conclusion that probable cause existed. In any event, since the complaint fails to plead facts demonstrating that there were no reasonable grounds for arrest, Count I is dismissed.

**\*3** Count II is a claim for conversion. Plaintiff alleges that Defendant took $400 from Plaintiff's briefcase and did not return it. A cause of action for conversion consists of four elements: (1) a right in the property; (2) an unconditional right to immediate possession of the property; (3) the unauthorized control by defendant over the personal property; and (4) a demand for possession of the property. *Lewis v. National City Bank,* 814 F. Supp. 696, 699

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                                    Page 3
Not Reported in F.Supp., 1995 WL 642808 (N.D.Ill.)

(N.D. Ill. 1993); *General Motors Corp. v. Douglass,* 565 N.E.2d 93, 96-97 (Ill. App. Ct. 1990). Although Federal Rule of Civil Procedure 8(a) merely requires "a short and plain statement of the claim," the court finds Plaintiff did not "show that the pleader is entitled to relief ...." The complaint does not plead all elements of a conversion claim. It is not pleaded, for instance, that Plaintiff demanded his property; nor is it pleaded that Defendant's control over the property was or is unauthorized (e.g., it is possible that the money is evidence for some case or that Plaintiff failed to follow the appropriate procedures for return of the $400). Accordingly, Count II is dismissed for failure to state a claim.

In conclusion, the motion to dismiss is granted without prejudice as to both Count I and Count II.

IT IS SO ORDERED.

N.D.Ill.,1995.
Green v. D'Anna
Not Reported in F.Supp., 1995 WL 642808 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.